IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| **HEDWIN CORPORATION** | * | Case No.: 14-15194 |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**EMERGENCY APPLICATION TO EMPLOY SHARED MANAGEMENT RESOURCES, LTD AS CHIEF RESTRUCTURING OFFICER TO THE DEBTOR PURSUANT TO 11 U.S.C. §327(a) AND (b) AND APPROVAL OF COMPENSATION ARRANGEMENT PURSUANT TO 11 U.S.C. § 328(a)**

Hedwin Corporation (the "Debtor" or "Hedwin"), debtor and debtor-in-possession, through counsel and pursuant to 11 U.S.C. §§ 327(a), 327(b), and 328(a), Federal Rule of Bankruptcy Procedure 2014, and Local Rules of Bankruptcy Procedure 2016-1, files this application to employ Shared Management Resources, Ltd. ("SMR") as Chief Restructuring Officer to the Debtor (the "Application"). In support of the Application, the Debtor submits the Declaration of Charles Deutchman, managing director at SMR. In further support of this Application, the Debtor states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On April 2, 2014, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

#2152771v.1

3. The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

4. As of the date of the filing of this Application, no Committee of Unsecured Creditors has been appointed.

5. The Debtor is a Maryland corporation and since 2004 has been wholly owned by current and former employees of the company pursuant to an Employee Stock Option Plan (the "ESOP").

6. The company was founded in 1946 as a manufacturer of molten sheet thermoforms for use in plastic heat-sealing. In 1956, Hedwin patented its Cubitainer® design. In subsequent years, the company's product lines grew to include blow molding and injection molding technologies.

7. The Debtor is a leading manufacturer of customized industrial plastic packaging, which it sells to wholesalers and distributors throughout the United States, Canada and Europe. The company's products include high performance and regulated specialty industrial packaging for use in the chemical, medical and institutional food industries. The principal product lines consist of: (i) the Cubitainer® Package with accompanying Cube® Insert, which is high performance alternative to open pail heads; (ii) blow-molded high density polyethylene containers, which include branded and custom extruded and lightweight containers, bottles and pails; and (iii) branded liners designed to protect materials processed in pails and drums.

8. As of the Petition Date, the Debtor employed approximately 300 non-union employees, of which approximately 50 are salaried and approximately 250 are hourly. None of the Debtor's employees are represented by a labor union. Hourly, salaried and contract labor comprise nearly 25% of the Debtor's production costs.

#2152771v.1

- 3 -

9. The Debtor's manufacturing facility is located at 1600 Roland Heights Avenue, Baltimore, Maryland. The Debtor has a warehouse facility at 1700 West 41st Street, Baltimore, Maryland and a warehouse and assembly facility at 9175 Moya Blvd. (Unit D), Reno, Nevada. All of the Debtor's facilities are leased.

10. In 2012, the Debtor recorded net sales of $44 million with $4.5 million in gross profit. In 2013, the Debtor generated net sales of $43.5 million and had gross profits of $3.4 million. However, the decline in revenue in 2013 was primarily attributable to the business interruption resulting from a major fire in June 2013 to the Debtor's manufacturing facility. The fire negatively affected the Debtor's operations, causing a shutdown in certain assembly lines.

11. As of the fiscal year end December 31, 2013, the Debtor had total assets of approximately $15 million.

12. A combination of factors and events has negatively impacted and continue to adversely affect the Debtor's business operations and its financial condition. The Debtor's current weakened and worsening financial condition stems from, among other things: (i) expenses incurred and losses sustained due to the June 2013 fire to the Debtor's manufacturing facility; (ii) fluctuating and higher resin prices; (iii) margin compression; (iv) delayed capital investment in equipment and production processes, resulting in increased production costs and inefficiencies; and (v) quality control problems.

13. In October, 2013, the Debtor hired Charles S. Deutchman ("Deutchman") to provide turnaround management services. Deutchman has conducted extensive due diligence into the Debtor's financial condition, has explored various strategies with management for improving the company's performance, and has assisted and continues to assist management in restructuring the current operations of the business.

14. In December 2013, the Debtor retained Mesirow Financial ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction.

15. The Debtor, in consultation with its advisors, determined that the filing of a Chapter 11 bankruptcy case was necessary and appropriate and that a sale of substantially all of the Debtor's assets was the best option presently available to maximize value and preserve employee jobs. Absent a sale, the Debtor would have to immediately terminate its employees and begin the wholesale liquidation of its assets to the detriment of its estate and creditors.

## THE SMR AGREEMENT

16. On February 24, 2014, Hedwin entered into a letter agreement with SMR, dated February 1, 2014 (the "Agreement") for certain operational consulting services to be provided by SMR. A copy of the Agreement is attached hereto as **Exhibit A.** Pursuant to the Agreement, SMR, through its Managing Director, Deutchman will serve as the Chief Restructuring Officer of the Debtor.

17. Under the Agreement, SMR has agreed to provide certain consulting and restructuring services to the Debtor, and upon approval of the Court, SMR will continue to provide the following services to the Debtor:

(a) evaluate the Debtor's cash position and utilization of collateral base with the Bank of America, N.A. ("Bank of America"), the Debtor's pre-petition and post-petition secured lender;

(b) review the reasonableness of weekly thirteen week cash forecasts prior to submission to Bank of America;

(c) manage the sales and marketing of the business by Mesirow Financial, Inc. ("Mesirow"), including participation in all substantive discussions and meetings with prospective

buyers, and providing updates on the sales process to both Debtor's management and Board of Directors;

(d) manage the Debtor's relationship with Bank of America, including but not limited to weekly conference calls between the Debtor and Bank of America

(e) assist Debtor's outside bankruptcy counsel;

(f) enhance the Debtor's "Dashboard" reporting mechanism to assist management in effectively monitoring the Debtor's critical operations;

(g) manage the resolution of certain insurance claims with the Debtor's insurers;

(h) prepare written reports as requested by the Debtor's board of directors;

(i) provide all additional services related to the engagement as Chief Restructuring Officer of the Debtor.

18. Regarding the compensation to be paid to SMR, SMR will be compensated at a flat rate of $1,900 per day, and will be reimbursed for all reasonable and necessary out-of-pocket expenses including, but not limited to, costs of travel, lodging, reproduction, computer usage, postage, mileage and other direct expenses; provided, however, that such compensation and reimbursements paid to SMR shall not exceed the amounts allocated in the Debtor's cash flow budget set forth in any Interim Order and Final Order authorizing use of cash collateral and debtor-in-possession financing (collectively, the "DIP Financing Orders") as approved and consented to by Bank of America, and shall be paid in accordance with the terms of the DIP Financing Orders or as otherwise ordered by the Court. Prior to the Petition Date, the Debtor provided a $5,000 retainer to SMR.

19. Bank of America has consented to both the retention of SMR and to this compensation arrangement. The compensation to be paid to SMR has been incorporated into the

Debtor's cash flow budget and shall be paid in accordance with the terms of the DIP Financing Orders.

## BASIS FOR RELIEF REQUESTED

20. Section 327(a) provides that a debtor-in-possession, with the Court's approval may employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons[1], to represent or assist the [debtor-in-possession] in carrying out its duties under this title." Subject to the Court's approval, the Debtor has broad discretion to employ professionals and establish the terms of the specific employment of professionals. *See In re Computer Learning Centers, Inc.*, 272 B.R. 897, 902 (Bankr. E.D. Va. 2001) (discussing employment of special insurance counsel). In addition to the requirement of disinterestedness, the Debtor must demonstrate that the employment of the professional is reasonably necessary. *Id*.

21. As set forth in the Declaration of Charles S. Deutchman, SMR is a disinterested person, as that term is defined by the Bankruptcy Code. Furthermore, the employment of SMR is reasonably necessary to maximize the value of the Debtor's bankruptcy estate. First, SMR has significant turnaround management experience. Deutchman has 30 years of experience in providing financial, operational and strategic advice to distressed companies, and has acted as a chief restructuring officer in various business contexts. The Debtor's bankruptcy filing, corporate structure, and secured creditor relationships have and will raise a myriad of issues related to the Debtor's operations and restructuring. At this time, Hedwin does not have an internal option with significant restructuring experience. The experience and expertise of SMR

---

[1] A disinterested person is defined as a person that: (i) is not a creditor, equity security holder, or insider of the debtor, (ii) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor, and (iii) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship with, or interest in the debtor or for any other reason. 11 U.S.C. § 101(14).

- 6 -

#2152771v.1

is necessary to allow the Debtor to successfully navigate its restructuring, continued operations and potential sale of the Debtor's assets or certain product lines. SMR's services are reasonably necessary for the Debtor to effectively manage its current restructuring. Secondly, SMR is familiar with the Debtor's operations, having served as a management consultant to the company since October 1, 2013. Accordingly, the employment of SMR will benefit the Debtor's bankruptcy estate and should be approved.

22. Furthermore, pursuant to 11 U.S.C. § 328(a), the Court should approve the compensation arrangement set forth in the Agreement. Under Section 328(a), a professional employed pursuant to Section 327(a) may be compensated "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Here, the fee arrangement set forth in the Agreement is reasonable. SMR will provide turnaround advisory services to the Debtor specifically related to the Debtor's continued operation during the pendency of the bankruptcy case, and the restructuring of the Debtor's business. SMR's compensation is a flat rate for services provided. This compensation arrangement is a standard arrangement in the marketplace for these types of workout, advisory and restructuring services and the terms of the SMR engagement are reasonable. *In re Baltimore Emergency Services II, LLC*, 291 B.R. 382, 383 (Bankr. D. Md. 2003). Further, the compensation arrangement is fair and reasonable in light of SMR's significant experience in the restructuring context. Accordingly, the SMR fee arrangement should be approved.

## WAIVER OF LOCAL RULE 2016-1

23. Under Local Rule 2016-1, "unless the Court orders otherwise, all professionals seeking compensation pursuant to Bankruptcy Code 327, 328, 330, and 331, including

- 7 -

investment bankers and financial advisors must prepare and submit applications for compensation in accordance with the Guidelines attached as Appendix D to the Local Rules. Subject to the Court's authorization, the Debtor requests that SMR be compensated pursuant to the terms and conditions of the Agreement, and that SMR be paid in the ordinary course without further application to the Court. *See In re Phoenix Steel Corp*., 110 B.R. 141, 143 (Bankr. D. Del. 1989) (professionals employed by officers to the debtor and paid salary were not required to file fee application prior to payment).

24. The compensation negotiated with SMR was the result of arm's length negotiations with the Debtor, and the Debtor believes the terms of the Agreement and the compensation provided therein are fair and reasonable.

25. Due to the flat fee structure of the engagement, SMR should not be required to file periodic fee applications pursuant to Section 330 and 331 of the Bankruptcy Code. SMR will be compensated based on a fixed, flat amount for service as the Debtor's Chief Restructuring Officer and operational consultant to the Debtor.

26. Under the circumstances it is appropriate and reasonable for SMR to be compensated pursuant to the terms of the Agreement without being required to file interim fee applications as contemplated by Sections 330 and 331.

27. SMR will file a final fee application that states the final flat fee earned and all expenses incurred during the course of the Debtor's bankruptcy case. Accordingly, compensation set forth in the Agreement is reasonable and appropriate and affords the Court and other parties-in-interest an opportunity to review the reasonableness of the fees paid to SMR.

WHEREFORE, Hedwin Corporation requests that this Court approve this Application, grant the proposed order authorizing the employment of Shared Management Resources, Ltd., as

- 9 -

Chief Restructuring Officer to the Debtor upon the terms and conditions set forth in this Agreement, and grant such other and further relief as is just and equitable.

Date: April 2, 2014   /s/ Alan M. Grochal
Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
410-752-9700
agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Attorneys for Hedwin Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April, 2014, I served a copy of the foregoing Application to Employ Shared Management Resources, Ltd. As Chief Restructuring Officer to the Debtor Pursuant to 11 U.S.C. §327(a) and Approval of Compensation Arrangement Pursuant to 11 U.S.C. §328(a) by Federal Express on all parties on the attached matrix.

/s/ Alan M. Grochal
Alan M. Grochal

#2152771v.1

| | | |
|---|---|---|
| Hedwin Ltd. Matrix<br>3/25/14 | Office of the U.S. Trustee<br>Garmatz Federal Courthouse<br>101 West Lombard St., Suite 2625<br>Baltimore, MD  21201 | Linda V. Donhauser, Esquire<br>Miles & Stockbridge P.C.<br>100 Light Street<br>Baltimore, MD  21202 |
| Bank of America<br>John Getz<br>300 Galleria Parkway, Suite 800<br>Atlanta, GA  30339 | Specialty Industries<br>175 East Walnut Street<br>Red Lion, PA  17356 | Serv Pro<br>102 Cockeysville Road<br>Cockeysville, MD  21030 |
| Chevron Phillips Chemical<br>1400 Jefferson Avenue<br>Pasadena, TX  77502 | Electronic Restoration Services<br>12001 Levan Road<br>Livonia, MI  48150 | Zacros America<br>1821 Walden Office Square<br>Suite 400<br>Schaumburg, IL  60173 |
| Meyers Construction<br>1121 Greenwood Road<br>Suite 101<br>Pikesville, MD  21208 | Constellation Newenergy, Inc.<br>PO Box 414578<br>Boston, MD  02241 | Ineos Olefins & Polymers USA<br>13536 Collections Center Drive<br>Chicago, IL  60693 |
| PCA – Salt Lake City<br>4654 West 1525 South<br>Salt Lake City, UT  84104 | MD Unemployment Insurance Division<br>1100 North Eutaw Street<br>Baltimore, MD  21201 | Equistar Chemical, LP<br>2718 Collections Center Drive<br>Chicago, IL  60693 |
| Worldwide Dispenser<br>Lee Road Merton Park Estate<br>Merton London, UK | Green Bay Packaging<br>PO Box 3007<br>Kalamazoo, MI  49003 | Transamerica Retirement Solutions<br>PO Box 13699<br>Newark, NJ  07188 |
| Transamerica Retirement Solutions<br>Connie McDonald<br>4333 Edgewood Road NE<br>Cedar Rapids, IA  52499 | Anchor Staffing<br>6960 Aviation Blvd.<br>Suite D<br>Glen Burnie, MD  21061 | South Franklin Street Partners<br>c/o Paul W. Linehan<br>McDonald Hopkins<br>600 Superior Avenue East, Suite 2100<br>Cleveland, OH  44114 |
| Pillsbury<br>Patrick J. Potter, Esq.<br>2300 N. Street, NW<br>Washington, DC 20037 | | |

- 10 -

#2152771v.1