# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Bankruptcy Case No.: |
| HEDWIN CORPORATION, | 14-15194-NVA |
| Debtor | Chapter 11 |

**OPPOSITION OF THE U.S. TRUSTEE TO
DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, AND 364 AND
RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTOR OF
POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL
OTHER SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE
SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH
COLLATERAL BY THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 363 AND
PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE
<u>AUTOMATIC STAY, AND (5) SCHEDULING A FINAL HEARING</u>[1]**

Judy A. Robbins, the United States Trustee for Region Four, which includes the District of Maryland, Baltimore Division (the "U.S. Trustee"), in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a), respectfully opposes some of the relief requested by Debtor and in support thereof, the U.S. Trustee represents as follows:

1.  On April 2, 2014, Hedwin Corporation, ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has since acted as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

## OVERVIEW

---

[1]  Doc. 18.

2.     With its voluntary petition, the Debtor filed (at Doc. 18) an Emergency Motion for the Use of Cash Collateral and for Post-Petition Financing, as well as other extensive relief (the "Emergency Post-Petition Financing Motion").   Appended to Debtor's Emergency Post-Petition Financing Motion is a 45-page, highly complex proposed order that not only would authorize the Debtor to receive needed post-petition financing, but also would impermissibly award - on an emergency basis, and with extremely limited notice - unreasonable, overreaching, and unfair protections to the proposed post-petition lender, Bank of America, N.A. ("B of A") to, perhaps, the serious detriment of unsecured creditors and other parties in this case.

3.     The U.S. Trustee is not opposed to reasonable post-petition lending in this case, even on an interim emergency basis, as it is the U.S. Trustee's understanding that some reasonable post-petition funding is necessary to provide continued operations, making a going concern sale a possibility and thereby avoiding immediate and irreparable harm to the Debtor's business operations.

4.     However, the U.S. Trustee is troubled by the complexity, overreaching nature, and sheer length of the proposed financing order the Debtor is requesting that the Court approve on an interim, emergency basis.   There is no reason that such an overreaching and lengthy order is necessary, or even remotely warranted, to secure Debtor the funding it needs on an emergency interim basis to avoid immediate and irreparable harm.

5.     Emergency relief of the type requested by Debtor herein should adhere to the four basic principles set forth in the case of *In re Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005).

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can effect appropriate notice to creditors and parties in interest.   In particular, a first day order should avoid

substantive rulings that irrevocably determine the rights of parties.

Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.

Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

324 B.R. at 213-14.

6.      The U.S. Trustee submits that the relief requested by the Debtor herein violates, to a degree, all of the above basic principles of fairness.

## SPECIFIC OBJECTIONS[2]

7.      The proposed financing order and the attached Agreement for Post-Petition Financing, reveal unreasonable and overreaching provisions including, without limitation: cross-collateralization of pre- and post-petition claims at the interim stage; permanent injunctions against third party creditors with little or perhaps no notice; requirements for Debtor to pay unknown amounts of transaction fees inclusive of professional fees not subject to review or authorization; restrictions on marshaling; and automatic stay relief.

8.      Article VIII of the Agreement for Post-Petition Financing and Paragraphs F(c), and 6(c) and (d) of the proposed financing order provide for cross-collateralization of the BofA's

---

[2]      Due to the complexity and length of the proposed financing order and Agreement for Post-Petition Financing and based on the limited time the U.S. Trustee has had to review the documents and prepare this objection on an emergency basis, the U.S. Trustee reserves the right to supplement the objections contained in this Objection.

prepetition debt with its proposed post-petition lending.  Each week, BofA proposes to require debtor to use its cash collateral solely to satisfy the prepetition debt of BofA and proposes to protect itself with protections reserved for post-petition financers.  Each week, $850,000 is applied to BofA's pre-petition debt and an identical amount is added to Debtor's Post-Petition Obligation to BofA so that, at the end of the proposed interim period, BofA has lent Debtor $430,000 and received in exchange a super-priority administrative claim in the amount of $430,000 plus $4,250,000.  Cross-collateralization has been held to be "directly contrary to the fundamental priority scheme of the Bankruptcy Code." *Shapiro v. Saybrook (In re Saybrook)*, 963 F.2d 1490 (11th Cir. 1992).  Cross-collateralization of BofA's debt on an interim emergency basis, without any opportunity for parties in interest to understand - much less investigate - the nature, priority and perfection of BofA's prepetition debt and liens would violate due process and, potentially, could cause great harm to the Debtor's estate and the unsecured creditors. Accordingly, no form of cross-collateralization should be approved on an interim emergency basis.

9.      Despite its insistence to the contrary, in at least two places, the form order would order a waiver of any and all claims under § 506(c) (*see* ¶s K and 4(a), 4(g)).  The permanent waiver of such rights at this interim emergency stage is inappropriate and should not be permitted. The Debtor should not be permitted on an emergency interim basis to give up such a fundamental estate right.  *See Colad Group,* 324 B.R. at 224 (refusing to approve post-petition financing agreement to extent that the agreement purported to modify statutory rights and obligations created by the Bankruptcy Code prohibiting any surcharge of collateral under Section 506(c)); and *In re Ridgeline Structures, Inc.*, 154 B.R. 831 (Bankr. D.N.H. 1993) (declining to approve a Section 506(c) waiver, finding it against public policy and unenforceable *per se*).

10.     As written, the proposed financing order, at paragraph 20, provides drop-dead relief from the automatic stay after entry of a final order (without apparent regard to any limitations outlined in that final order) upon five days notice of default.[3]

11.     At paragraph 22(a), the proposed financing order grants BofA the protections of Section 364(e) at an inappropriate time.   Findings as to good faith for the purposes of this kind of protection need to be made when the reasons for reversal, modification or appeal of the financing order have come to light.

12.     Paragraphs 2, 4(a) and 22(b) obligate the Debtor to repayment of fees and expenses of BofA incurred in connection with the financing in unknown amounts, specifically including professional fees, without the necessity of court review or approval.

13.     Paragraph 4(d) of the proposed financing order obligates the Debtor to satisfy conditions precedent contained in the Pre-Petition Financing documents.   At the time of this writing, the U.S. Trustee has not had an opportunity to review what those conditions might be or entail.

## **CONCLUSION**

14.      The U.S. Trustee supports the Debtor's request for post-petition lending on reasonable terms. The Bankruptcy Code and Rules provide for such lending on an interim and emergency basis on limited notice, but only to the extent necessary to avoid immediate and irreparable harm to the debtor. The order provided for consideration by the Debtor and BofA goes so far beyond providing what is necessary to avoid immediate and irreparable harm, it appears the Debtor and BofA have attempted to skip over the interim procedural stage by asking the court to

---

3 In a telephone conversation between counsel for BofA and counsel for the U.S. Trustee last night the parties agreed that this issue could be resolved with the addition of the words "to the extent approved in the final order" in paragraph 20.

approve, on an emergency basis with limited notice, what is essentially a final order.

15.    There is no reason that BofA cannot propose reasonable interim post-petition lending terms for the Debtor that will more than adequately protect both BofA's pre- and (proposed) post-petition lending positions and provide needed interim emergency capital for the Debtor pending a final hearing.

<div style="margin-left:40%">

Respectfully submitted,

Judy A. Robbins
United States Trustee, Region Four

</div>

Date: April 3, 2014                    By:  /s/Katherine A. Levin
                                       Katherine A. Levin Federal Bar Number: 10916
                                       101 West Lombard Street, Suite 2625
                                       Baltimore, Maryland 21201
                                       (410) 962-4300

<div style="text-align:center">

**<u>CERTIFICATE OF SERVICE</u>**

</div>

**I HEREBY CERTIFY** that on April 3, 2014, a copy of the foregoing Opposition will be sent, to the extent possible, via facsimile to:

| |
|---|
| Electronic Restoration Services |
| Specialty Industries |
| ServPro |
| Constellation Energy |
| Zacros America |
| Chevron Phillips Chemical |
| Meyers Construction |
| PCA - Salt Lake City |
| Ineos Olefins & Polymers USA |
| MD Umeployment Insurance Division |
| Worldwide Dispenser |
| Green Bay Packaging |
| Anchor Staffing |
| Sixth Sense Partners |

| |
|---|
| Transamerica Retirement Solutions |
| Baltimore Gas & Electric |
| Polyone |
| Guernsey Office Products |
| Priority Worldwide Services |
| Ampacet Corporation |

According to the Court's ECF records, electronic notice of this motion should be provided to the following persons:

Linda V. Donhauser - ldonhauser@milesstockbridge.com
Alan M. Grochal - agrochal@tydingslaw.com, bcammarata@tydingslaw.com;
jdunsmore@tydingslaw.com
Catherine Keller Hopkin - chopkin@tydingslaw.com, bcammarata@tydingslaw.com
Patrick John Potter - patrick.potter@pillsburylaw.com,    jerry.hall@pillsburylaw.com;
dania.slim@pillsburylaw.com

 _/s/Katherine A. Levin_____