Contract (together with all amendments), and set forth with specificity (a) all defaults under the Assumed Contract, the cure costs that the Counterparty believes are owing and must be paid as a condition to assumption, and (c) any other objection to the assumption and assignment of the Assumed Contract, by _____, 2014 at 4:00 p.m. (Eastern Daylight Time).

9.      Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the (a) assumption and assignment of the Assumed Contract and shall be forever barred from objecting to the Cure Costs and from asserting any additional cure costs or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty, and (b) the reinstatement, without default, of the Assigned Contract upon receipt by the Counterparty of payment of the applicable Cure Cost.  Notwithstanding anything to the contrary, none of the Assumed Contracts, and no executory contract or unexpired lease, will be assumed unless and until the occurrence of the closing by the Debtor and the Successful Bidder pursuant their asset purchase agreement as approved by order of this Court.

10.     Any other objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and shall be filed with the Court (with a courtesy copy to the Judge's chambers) on or before _____, 2014, at 4:00 p.m. (Eastern Daylight Time), and, and such objections shall be served in accordance with the Sale and Bidding Procedures Notice and the Creditor Notice so as to be received by such date and time by the Notice Parties and the Office of the United States Trustee.

11.    Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed Sale of the Assets free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale Motion and proposed order submitted therewith (the "Sale Order")), the contemplated assumption and assignment of each Assumed Contract and the proposed amount of Cure Costs with respect to each such Assumed Contract (all as set forth in the Bid Procedures Motion, this Order, the Sale Motion, and the Sale Order), and no additional notice of such contemplated transactions need be given.

12.    If the Debtor receives more than one Qualified Bid (as defined in the Bidding Procedures), an auction (the "Auction") shall be held on _____, 2014, at 10:00 a.m. **(Eastern Daylight Time)**, at the offices of Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or at any such other location as the Debtor may hereafter designate.

13.    The Court hereby approves the following terms:

a.    Notwithstanding anything contained in the Bid Procedures Order or in the Bidding Procedures to the contrary, Bank of America, N.A. shall be deemed a Qualified Bidder and shall be entitled to credit bid, as a Qualified Bid, all or a portion of its claims against the Debtor, without the need to pay the Deposit, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

b.    In the event the Court approves an Alternative Transaction (as defined in the Stalking Horse APA), the Debtor shall pay (as a general, not super-priority, administrative claim) a break-up fee to Buyer in an amount equal to $600,000 (the "Break-Up Fee") and shall reimburse Buyer in an amount not to exceed $250,000 (the "Expense Reimbursement") for Buyer's reasonable and documented out-of-pocket expenses incurred in connection with the transaction contemplated by the Stalking Horse APA.  The Break-Up Fee and the Expense Reimbursement shall be paid to Buyer from the proceeds (the "Alternative Transaction Proceeds") of sale on the closing of an Alternative Transaction approved by Bankruptcy Court. Such payments shall be made to Buyer (i) on the closing date of the Alternative Transaction and (ii) prior to any other distributions to creditors (or otherwise) from the Alternative Transaction Proceeds.  No further or additional order from the Court shall be required in order to give effect to these provisions relating to the terms of payment of the Break-Up Fee and the Expense Reimbursement.

14.     Counsel to the Debtor is authorized to hold and conduct the Auction in accordance with the Bidding Procedures.

15.     The Sale Hearing shall be conducted on _____, 2014, at __:__0 __.m. (Eastern Daylight Time), and may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

17.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

**Bidding Procedures**

**A.**    **General**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of substantially all of the assets (the "Assets") of Hedwin Corporation, debtor-in-possession in Case No. 14-_____ (the "Debtor"). These Bidding Procedures are being distributed in connection with the Debtor's Motion (the "Bid Procedures Motion") for Entry of Order: (A) Approving Bidding Procedures for Sale of Substantially All of the Debtor's Assets; (B) Authorizing and Scheduling an Auction; (C) Scheduling Hearing for Approval of the Sale of Assets Free and Clear of Liens and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to Successful Bidder (D) Approving Breakup Fee and Expense Reimbursement; (E) Approving Procedures and Setting Deadlines for the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Cure Amount Relating Thereto; (F) Approving Certain Deadlines and the Form, Manner and Sufficiency of Notice; and (G) Granting Other Related Relief.

On April ___, 2014, the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") approving, incorporating, and authorizing, among other things, the implementation of these Bidding Procedures and scheduling a timeline for the sale of the Assets (the "Sale").

**B.**    **Stalking Horse Bid**

On April 1, 2014, the Debtor entered into an Asset Purchase Agreement (the "APA")[3] with Fujimori Kogyo Co., Ltd.    (the "Buyer") pursuant to which the Debtor agreed to sell and

---

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Stalking Horse APA. As used herein, the term Assets means the same as "Purchased Assets" under the Stalking Horse APA. The terms of the Stalking Horse

the Buyer agreed to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets for (i) the sum of $16,500,000.00 (subject to adjustments as set forth in the APA); plus (iii) the assumption of the Assumed Liabilities (the "Initial High Bid"). Pursuant to the terms of the APA, the Buyer proposes to acquire the Assets free and clear of all Encumbrances.[4]

### C.    The Bidding Process

Pursuant to the Bidding Procedures Order and the terms contained herein, the Debtor may conduct an auction (the "Auction") to sell the Assets to the person or entity making the highest and best bid (the "High Bid" and such person or entity making such bid, the "High Bidder") or to the person or entity making next highest and best bid (the "High Back-up Bid" and such person or entity making such bid, the "High Back-up Bidder") for the Assets submitted in accordance with these Bidding Procedures provided the bid is a Qualified Bids (defined below) made by a Qualified Bidder (defined below). If no Qualified Bids are received by the Debtor prior to the Bid Deadline, the Initial High Bid shall be deemed the High Bid and the Buyer shall be deemed the High Bidder for the purposes of the Sale Hearing (defined below). The Assets will only be offered and sold as a package and not individually. The Buyer is deemed to be a Qualified Bidder (defined below) without the need to take any action and may, but it is not required to, participate at the Auction and may submit additional higher bids.

The Debtor shall have the sole right, subject to the terms and conditions set forth herein to: (i) determine whether any person is a Qualified Bidder; (ii) determine whether any further

---

APA shall not be deemed modified by the terms of the Bidding Procedures or the order approving the Bidding Procedures.

due diligence investigation regarding the Assets shall be permitted and, if so, coordinate the efforts of potential bidders in conducting their respective due diligence investigations regarding the Assets; (iii) receive offers from Qualified Bidders; (iv) invite Qualified Bidders to any Auction; (v) negotiate any offer made to purchase the Assets; and (vi) determine the High Bid and the High Back-up Bid, subject only to Bankruptcy Court approval (collectively, clauses (i) through (vi) are the "Bidding Process").

Based upon the terms and conditions of the bids received from Qualified Bidders, the level of interest expressed by the bidders in the Assets, and such other information as the Debtor determines is relevant, the Debtor may conduct the Auction in the manner it determines will achieve the maximum value for the Assets including, but not limited to, offering the Assets for bidding in such successive rounds as the Debtor determines to be appropriate.

Any person that wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not a Qualified Bidder and the Debtor and its professionals shall use good faith efforts to provide all Qualified Bidders with substantially similar information.

**D.    Required Bid Documents**

All bids must include the following to constitute a Qualified Bid (the "Required Bid Documents"):

1.      A written irrevocable offer that expressly states the terms of the offer, including the purchase price being offered for the Assets, with an acknowledgement that the purchase price shall be paid in immediately available U.S. funds at closing. Any offer must include: (a) the full

---

4       The scope and nature of the "free and clear" Sale will be described in the Court's order approving the Sale (the "Sale Order"), the proposed form of which is attached to the APA and was submitted with the Sale Motion.

name and identity of the bidder; (b) the full name and identity of the bidder's broker (if any); and (c) an express statement that the bidder has read, understands, and agrees to be bound by and comply with these Bidding Procedures. The foregoing shall apply to all bids made by any bidder or on behalf of any bidder by a broker.

2.      An acknowledgement by the bidder that the bidder agrees to and will be bound by all of the terms set forth in the form of APA attached to the Sale Motion as **Exhibit 2**, except for specifically enumerated proposed modifications (which in no event shall include a financing contingency). Any modifications proposed by the bidder shall be clearly shown in a clean and blacklined version (a "Marked APA") of the APA signed by an individual authorized to bind the proposed bidder. No bidder, except for the Buyer, shall be eligible for a breakup fee or reimbursement of expenses under the APA. Subject to the first sentence of this paragraph, the Debtor reserves the right, where appropriate in its business judgment, to modify the APA with any bidder by accepting reasonable changes as determined by the Debtor.

3.      The payment, by wire transfer or certified check to Tydings & Rosenberg LLP, as escrow agent for the Debtor (or such other escrow agent as may be appointed by the Debtor for such purpose), of a good faith deposit equal to at least 10% of the purchase price (the "Deposit"). Any party claiming a lien on the Assets and making a credit bid must submit a deposit based upon the full amount of the bid without regard to the amount of credit included within such bid. Notwithstanding anything contained in the Bid Procedures Order or in the Bidding Procedures to the contrary, Bank of America, N.A. shall be deemed a Qualified Bidder and shall be entitled to credit bid, as a Qualified Bid, all or a portion of its claims against the Debtor, without the need to pay the Deposit, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

4.      Written evidence of the bidder's financial ability to purchase the Assets in whole, which, in the Debtor' sole discretion, evidences the bidder's ability to timely consummate the Sale and perform under the Marked APA and satisfy the requirements of section 363 of the Bankruptcy Code. Such written evidence may include a written commitment for financing from a financial institution (but which shall not be a condition of closing), the bidder's current audited financial statement, the most recent quarterly report filed with the U.S. Securities and Exchange Commission, if the bidder is a public entity, or if the bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the bidder, which persons and/or entities shall guarantee the performance of the bidder, and/or other form of financial disclosure acceptable to the Debtor and its representatives.

5.      A fully completed Bidder Registration Form.

6.      A written list of each executory contract and unexpired lease the assumption and assignment of which is a condition to consummation of the Sale.

7.      If any bid is conditioned on the assumption and assignment of executory contracts or unexpired leases of real property, then such bidder shall be required to provide adequate assurance of future performance of such contracts or leases with the bid.

8.      If the bidder employs a broker, a disclosure of the identity of the broker and terms of the broker's proposed commissions.

9.      Written evidence that the bidder has obtained the requisite authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid, execution of the APA, and consummation of the transaction, or a representation that no such authorization or approval is required.

E.      **Qualified Bids**

A "Qualified Bid" is a bid that includes each of the Required Bid Documents and:

(i)     is a bid for the Assets as a package, and NOT a bid for a portion of the Assets;

(ii)    is a binding irrevocable offer to purchase the Assets for cash only, with no contingencies to closing (other than the conditions set forth in the APA);

(iii)   has been timely received by each of the parties listed in the Section F below no later than the Bid Deadline or any extended Bid Deadline;

(iv)    the bid must not be materially more burdensome or conditional than the terms of the APA;

(v)     the bidder must establish that, in the Debtor's business judgment, the bidder has the ability and is reasonably likely to timely close on its proposed acquisition of the Assets if selected as the High Bid;

(vi)    is not subject to or conditioned on obtaining financing;

(vii)   is not conditioned on the outcome of unperformed due diligence;

(viii)  does not entitle the bidder, other than the Buyer, to any termination or break-up fee, expense reimbursement, or similar type of payment;

(ix)    is a good faith, bona fide offer to purchase the Assets;

(x)     is in an amount equal to or greater than the Initial Incremental Bid Amount (defined below in Section G);

(xi)    is a Qualified Bid, as determined in the sole and absolute discretion of the Debtor;

(xii)   by its terms will remain open and irrevocable until the earlier of: (i) the closing with respect to the High Bid or the High Back-Up Bid, as applicable; or (ii) 90 days after entry of the Order of the Bankruptcy Court approving the sale;

(xiii)    contains evidence satisfactory to the Debtor that the bidder is reasonably likely to

obtain prompt regulatory approval, if required, to purchase the Assets.

Any person or entity that submits a Qualified Bid shall be a "Qualified Bidder." The Buyer is

deemed to be a Qualified Bidder and may participate at the Auction, if any, without otherwise

complying with the pre-Auction terms of these Bidding Procedures.

**F.    Bid Deadline**

To be considered a timely bid for the Auction (described below), written copies of its bid

containing each of the Required Bid Documents (described above) must be delivered to: (i) the

Debtor's Chief Restructuring Officer, Charles S. Deutchman, c/o Hedwin Corporation, 1600

Roland Heights Avenue, Baltimore, MD 21211, cdeutchman@shrmgtres.com; (ii) the Debtor's

investment banker and financial advisor, Mesirow Financial, 353 North Clark Street, Chicago, IL

60654, Attention: Ketan Shah, Senior Vice President and Associate General Counsel,

kshah@mesirowfinancial.com; (iii) the Debtor's counsel, Alan M. Grochal, Esq. and Stephen M.

Goldberg, Esq., Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD

21202, agrochal@tydingslaw.com and sgoldberg@tydingslaw.com and (iv) Buyer's Counsel,

Shinya Akiyama, Esq., Pillsbury Winthrop Shaw Pittman, LLP, 1540 Broadway, New York, NY

10036-4039, shinya.akiyama@pillsburylaw.com; SO THAT SUCH BID IS RECEIVED NO

LATER THAN 5:00 P.M. (EASTERN DAYLIGHT TIME) ON _____, 2014 (the "Bid

Deadline"). The Debtor may, in its sole discretion, extend the Bid Deadline once or successively

without further notice but is not obligated to do so.

The submission of a bid shall constitute an express consent by the bidder to the exclusive

jurisdiction of the Bankruptcy Court to hear and determine all disputes relating to the bid, the

Auction, and the Sale.

In the event that the Debtor determines in good faith that is has not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the one represented by the APA, the Debtor shall seek the approval of the APA without conducting an Auction, and pursuant to the Sale Motion filed with the Court.

### G.    Pre-Auction Overbids

To constitute a Qualified Bid, a bidder's initial bid must exceed by at least $100,000, the combination of (i) the Initial High Bid,[5] (ii) the $600,000 Break-Up Fee and (iii) $250,000, the maximum amount of the Expense Reimbursement (the "Initial Incremental Bid Amount").

### H.    Due Diligence

Each bidder must complete all required due diligence prior to the submission of its bid. Due diligence information can be obtained by contacting the Debtor's investment banker, Mesirow Financial, 353 North Clark Street, Chicago, IL 60654, Attention: Ketan Shah, Senior Vice President and Associate General Counsel, (312)-595-6118, kshah@mesirowfinancial.com. All bidders seeking due diligence information will be required to execute a Confidentiality Agreement prior to the disclosure of such information. The Confidentiality Agreement shall be no less favorable to the Debtor than the Confidentiality Agreement signed by the Buyer. The Confidentiality Agreement will be provided to all bidders by Mesirow Financial upon request of due diligence information. The Debtor and Mesirow Financial shall not be obligated to furnish any due diligence information after the Bid Deadline or to any party that the Debtor determines, in its sole discretion, is not reasonably likely to be a Qualified Bidder.

---

[5]    The amount of the Initial High Bid is $16,500,000.00 plus the amount of the Assumed Liabilities. The Debtor estimates that the Assumed Liabilities as of March 31, 2014 (excluding accrued liabilities associated with payroll) total approximately $4,064,305. Potential bidders may obtain additional information on the nature and magnitude of the Assumed Liabilities from Debtor's counsel prior to the Auction.

I.    **Acceptance of Qualified Bids**

The Debtor intends to sell the Assets to the Qualified Bidder who submits the High Bid at the Auction, if any, or in the event no additional Qualified Bids are received, to the Buyer. The High Bid and any High Backup-Bid are subject to approval by the Bankruptcy Court at the Sale Hearing. No bid shall be deemed rejected until such rejection is communicated in writing by the Debtor.

In evaluating whether any Qualified Bidder has submitted a higher and better bid, the Debtor may consider, among other things: (i) the number, type and nature of any changes to the APA as indicated on the Marked APA required by each bidder; (ii) the extent to which such modifications are likely to delay closing of the Sale to such bidder and the cost to the bankruptcy estate from such modifications or delay; (iii) the purchase price and the bidder's financial status; and (iv) the probability of a prompt closing.

The Debtor shall provide the Buyer with all copies of what the Debtor has determined to be Qualified Bids at least five (5) calendar days prior to the date of the Auction.

J.    **Auction**

If, on or before the Bid Deadline, the Debtor has received at least one Qualified Bid, other than the Initial High Bid, the Debtor shall conduct an Auction with respect to the Assets. **The Auction shall take place on _____, 2014, at 10:00 A.M.** at the offices of Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other time and place to be designated by the Debtor in writing. At the start of the Auction, the Debtor (or their agent(s) as the case may be) will announce the highest and best Qualified Bid, as determined by the Debtor in its sole and absolute discretion. During the Auction, bidding shall begin initially with the highest and best Qualified Bid as determined by the Debtor. The Debtor shall not consider any subsequent bid at the Auction unless the bid exceeds the previous highest

bid by at least $100,000 (the "Bid Increment"). The Buyer shall have the right to include the amount of the Break-up Fee and Expense Reimbursement in the amount of any subsequent bid that it makes at the Auction.

During the course of the Auction, the Debtor may inform the participants which Qualified Bid reflects, in the Debtor's view, the highest and best offer and, if such bid has been determined to be the highest and best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the APA or the APA of the Qualified Bidder, as applicable, other than an increase in the cash purchase price, the value reasonably ascribed by the Debtor to such added, deleted or modified provision or provisions.

ONLY QUALIFIED BIDDERS THAT HAVE SUBMITTED QUALIFIED BIDS SHALL BE ELIGIBLE TO PARTICIPATE IN THE AUCTION. THE DEBTOR RESERVES THE RIGHT TO EXCLUDE ANY PARTY (OTHER THAN THE BUYER) FROM PARTICIPATING IN OR BEING PRESENT AT THE AUCTION FOR ANY REASON THAT THE DEBTOR DETERMINES MAY IMPACT NEGATIVELY UPON THE SUCCESS OF THE AUCTION OR THE DEBTOR'S BUSINESS.

The Auction may be adjourned in the Debtor' reasonable discretion. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to the Buyer and all Qualified Bidders.

At the conclusion of the Auction the Debtor will identify the High Bid and the High Back-Up Bid, each of which shall be bound to comply with the terms of their respective sale agreements. Within three (3) business days of the conclusion of the Auction, the High Bidder and the High Back-Up Bidder shall supplement their Deposit by delivering to the escrow agent

for the Debtor such additional immediately available funds as may be necessary so that their Deposit equals ten percent (10%) of the High Bid.

**K.**   **Sale Hearing**

After the Auction, the Debtor will seek the entry of an order authorizing and approving the Sale to the High Bidder and the High Back-Up Bidder (in the event the Sale to the High Bidder is unable to close) at the **Sale Hearing which is scheduled for _____, 2014 at _____ _.m., Courtroom of the Honorable _____, United States Bankruptcy Court for the District of Maryland Bankruptcy Court, 101 W. Lombard Street, Baltimore, MD 21201,** or as soon thereafter as counsel may be heard.  Following approval of the Sale to the High Bidder, if the High Bidder fails to consummate an approved sale within 90 days after entry of the order approving the Sale to the High Bidder, the Debtor shall be authorized to consummate the Sale with the High Back-Up Bidder without further order of the Court.

**L.**   **Irrevocability Period**

ALL BIDS ARE IRREVOCABLE AND SHALL REMAIN BINDING UPON THE BIDDERS UNTIL THE EARLIER OF: (I) THE CLOSING OF THE SALE TO THE HIGH BIDDER OR HIGH BACK UP BIDDER, AS APPLICABLE, OR (II) 90 DAYS AFTER ENTRY OF THE SALE ORDER.

**M.**   **Return of Deposit**

The Deposit of any Qualified Bidder will be held in escrow as provided in Section D.3 above in a non-interest bearing trust account until the earlier of: (i) the closing of the High Bid or the High Back-Up Bid, as applicable, or (ii) 90 days after entry of an Order of the Bankruptcy Court approving the Sale, unless such bid is sooner expressly rejected in writing by the Debtor or the Debtor causes a termination of the applicable APA.  If the High Bidder fails to consummate the Sale due to the breach by such party, the Debtor shall retain the Deposit as partial liquidated

damages and have such other remedies as may be set forth in the breached APA, and the High Back-Up Bidder shall immediately proceed to closing with the Debtor.

### N.      "As Is" and "Where Is"

The sale of the Assets shall be on an "As Is" and "Where Is" basis and without warranties or representations of any kind by the Debtor or their agents concerning the condition of the Assets, except to the extent set forth in the APA of the High Bidder.  Except as provided in the APA, all of the Debtor' right, title and interest in and to the Assets shall be sold free and clear of all Encumbrances, if any, in accordance with sections 363 and 365 of the Bankruptcy Code, with such Encumbrances attaching to the net proceeds of Sale received by the Debtor, subject to any rights and defenses of the Debtor thereto and subject to further order of the Court.

By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that, except as otherwise set forth in the Qualified Bidder's APA, it has had an opportunity to inspect and examine the Assets and conduct any and all due diligence regarding the Assets prior to making its bid; that it has relied solely upon its own independent review, investigation and/or inspection of the Assets in making its bid; and that it did not rely upon or receive any written or oral statements, representation, promises, warranties or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, with respect to the Assets, or the completeness of any information provided in connection with the Assets or the Auction, except as expressly stated in these Bidding Procedures.

### O.      **Expenses**

Any bidders, other than the Buyer, presenting bids shall bear their own expenses in connection with the bidding and sale process, whether or not such Sale is ultimately approved, in accordance with the terms of the APA.  Buyer may recover expenses in accordance with the terms of the APA and the Bidding Procedures Order.

**P.**   **Debtor's Reservation of Rights**

The Debtor may, in its sole discretion:  (a) determine, in its business judgment, which bid, if any, is the highest or best offer for the Assets; and (b) reject at any time before entry of an order by the Bankruptcy Court approving a successful bid, any bid that, in the Debtor's sole discretion, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor, its estate, and/or its creditors.

The Debtor shall have the right to adopt such other rules for the bidding process that, in its sole discretion, will better promote the goals of the bidding process.

<u>**EXHIBIT 2**</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | Case No. _____ |
| **Debtor** | * | **Chapter 11** |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>NOTICE OF BIDDING PROCEDURES,</u>
<u>AUCTION DATE, AND SALE HEARING</u>

   **PLEASE TAKE NOTICE** that on April 2, 2014, Hedwin Corporation, debtor and debtor in possession (the "<u>Debtor</u>") filed the Debtor's Motion For An Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief (the "<u>Bidding Procedures Motion</u>").[6]

   On April ___, 2014, the Court entered an order (the "<u>Bidding Procedures Order</u>") granting the Bidding Procedures Motion and approving the bidding procedures attached hereto (the "<u>Bidding Procedures</u>") to be used in connection with a sale of substantially all of the Debtor's assets (the "<u>Assets</u>"). Pursuant to separate motion (the "<u>Sale Motion</u>," Doc. # ___), the Assets are being sold free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code.

   Fujimori Kogyo Co., Ltd. ("Fujimori") has submitted an offer, as the "<u>Stalking Horse Bidder</u>" to the Debtor to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets on the terms set forth in that certain Asset Purchase Agreement dated April 1,

---

[6]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Motion. The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the APA (defined herein). The APA is attached to the Sale Motion (defined herein) as Exhibit 2. To the extent there is any conflict between the terms of this Notice and either the APA, the Bidding Procedures Order, or the Bidding Procedures (defined herein), the APA, Bidding Procedures Order and Bidding Procedures, as the case may be, shall control.

## EXHIBIT 2

2014, between the Debtor and Fujimori (the "APA"), which is conditioned on Bankruptcy Court approval and is subject to higher or better offers. The sale terms are set forth with more particularly in the APA. The purchase price for the Assets under the APA is $16,500,000.00 plus the assumption of certain liabilities.

Other relevant terms of the APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party, the Stalking Horse Bidder will be paid a breakup fee of $600,000 (the "Breakup Fee"), plus up to an additional $250,000 for reimbursement of expenses that the Stalking Horse Bidder incurs in connection with the sales transaction (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain liabilities including all trade accounts payable remaining unpaid as of the closing and that were either reflected on the Debtor's balance sheet for the period ending December 31, 2013 or which thereafter arise in the ordinary course of business; (d) certain executory contracts and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse Bidder, all as set forth in the APA; (e) except as expressly stated in the Stalking Horse APA, the Debtor is making no representation or warranties whatsoever, express or implied, with respect to any matter relating to the Assets; (the Assets are being sold "AS IS," "WHERE IS," and "WITH ALL FAULTS"); and (f) the APA provides for the retention of all employees of the Debtor actively at work on the closing date.

As set forth in the Bidding Procedures Motion: (i) the Debtor is suffering a liquidity crisis and continues to suffer major cash flow problems; (ii) in October, 2013, due to the Debtor's deteriorating financial condition, the Debtor hired Shared Management Resources, Ltd. ("SMR"), by and through its managing directors Charles S. Deutchman, as Chief Restructuring Officer (the "CRO"), who has conducted extensive due diligence into the Debtor's financial condition, explored various strategies with management for improving the company's performance, and assisted and continues to assist management in restructuring the current operations of the business; (iii) in December 2013, the Debtor retained Mesirow Financial, Inc. ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction; (iv) for several months preceding the Petition Date, the Debtor, together with its CRO and Mesirow, worked cooperatively to analyze and evaluate the business, operations and financial condition of the Debtor and, as part of that process, Mesirow assisted in preparing and negotiating confidentiality agreements for prospective purchasers, preparing an offering memorandum containing detailed information about the Debtor's business, operations and financial condition, identifying and contacting potential purchasers, establishing a data room for due diligence to be conducted by prospective purchasers, evaluating proposals from prospective purchasers, and negotiating a stalking horse offer; (v) Mesirow contacted 78 parties to elicit interest in acquiring all or part of the business; (vi) interested parties were given operational, organizational and financial information on the Debtor and all were offered the opportunity to conduct on site due diligence; (vii) only 10 parties conducted on site due diligence; and (viii) a deadline of March 12, 2014 was set for the submission of offers and notice of the deadline was given to those parties that had expressed an interest in making an offer.

## EXHIBIT 2

The Debtor determined that the offer of the Stalking Horse Bidder is presently the highest and best offer.

If offers are received by the Debtor from other qualified bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtor the opportunity to subject the Assets to competitive bidding while preserving the bid of the Stalking Horse Bidder, thereby providing a floor price for the Assets.

The Debtor is seeking to sell substantially all of its assets under Chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtor will no longer operate its business, although the Debtor anticipates that the purchaser of its assets will continue such business operations. The Debtor believes the sale of the Assets is in the best interest of the Debtor's estate and will provide the highest and best value for the Assets.

### Bidding Procedures

A copy of the Bidding Procedures is attached hereto as **Exhibit 1**. The Bidding Procedures describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction. In the event of any inconsistency or conflict between this Notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as the case may be, shall control.

### The Auction

**PLEASE TAKE FURTHER NOTICE** that the Debtor is authorized to conduct the Auction in accordance with the Bidding Procedures to determine the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (Eastern Daylight Time) on April ___, 2014**, at Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other date or location as designated prior to the Auction.

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **May ___, 2014, at ___:__0 __.m. (Eastern Daylight Time)** (the "Sale Hearing") to consider either approval of the APA in the absence of an Auction or approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, ____Floor, Courtroom No. ____, Baltimore, Maryland 21201.

## EXHIBIT 2

**PLEASE BE TAKE FURTHER NOTICE** that the Bidding Procedures attached hereto shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments) or the Bidding Procedures Order (with all attachments) shall make such request in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, attention: Alan M. Grochal and Stephen M. Goldberg.

### OBJECTIONS

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to judge's chambers, and shall be served on: (i) counsel to the Debtor: Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460; (ii) counsel to the Committee: _____; and (iii) counsel to the Bank of America, N.A.: Miles and Stockbridge P.C., 100 Light Street, Baltimore, MD 21202 (Attention: Linda V. Donhauser and Frederick W. Runge): Facsimile: (410) 385-3800; (iv) counsel to ACP-I, L.P.: McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (Attention: Paul W. Linehan); (v) the Office of the United States Trustee, 101 West Lombard, Suite 2625, Baltimore, Maryland 21201; and (vi) counsel to the Stalking Horse Bidder: Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039 (Attention: Shinya Akiyama): Facsimile: (212) 858-1500, so as to be received by ____, **2014, at 4:00 p.m. (Eastern Daylighn Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets and all requests for information concerning the Bidding Procedures, should be directed in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg).

Dated: April ___, 2014

<div style="margin-left:40%">

Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone: 410-752-9700
Facsimile: 410-722-5460
emails: agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Counsel for Debtor and Debtor in Possession

</div>

**EXHIBIT 3**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | **Case No.** _____ |
| **Debtor** | * | **Chapter 11** |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**NOTICE OF AUCTION AND SALE HEARING**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS
CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT
HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

   **PLEASE TAKE NOTICE** that on April 2, 2014, the above-captioned debtor and
debtor in possession (the "Debtor") filed the Debtor's Motion For An Order: (A) Approving
Bidding Procedures For Sale Of Substantially All of the Debtor's Assets; (B) Authorizing And
Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And
Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And
Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense
Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And
Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating
Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice;
And (G) Granting Other Related Relief (the "Bidding Procedures Motion").[7]

   On April ___, 2014, the Court entered an order (the "Bidding Procedures Order"
Doc #___) granting the Bidding Procedures Motion and approving the bidding procedures (the
"Bidding Procedures") to be used in connection with an auction (the "Auction") of the Debtor's
assets (the "Assets"). Pursuant to a separate motion (the "Sale Motion," Doc. #_____), the Debtor
has requested Court authority to sell the Assets free and clear of all liens, claims, encumbrances
and interests pursuant to section 363(f) of the Bankruptcy Code.

---

[7] Capitalized terms not otherwise defined herein shall have the meanings set forth in the
Bidding Procedures Motion. The term "Assets" in this Notice shall have the same meaning as
"Purchased Assets" as set forth in the APA (as defined herein). The APA is attached to the
Sale Motion (defined herein) as Exhibit 2. To the extent there is any conflict between the terms
of this Notice and either the APA, the Bidding Procedures Order, or the Bidding Procedures
(defined herein), the APA, Bidding Procedures Order and Bidding Procedures, as the case may
be, shall control.

# EXHIBIT 3

Fujimori Kogyo Co., Ltd. ("Fujimori") has submitted an offer, as a "Stalking Horse Bidder" to the Debtor to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets on the terms set forth in that certain Asset Purchase Agreement, dated April 1, 2014, between the Debtor and Fujimori (the "APA"), which is conditioned on Bankruptcy Court approval and is subject to higher or better offers. The sale terms are set forth with more particularly in the APA. The purchase price for the Assets under the APA is $16,500,000.00 plus the assumption of certain liabilities.

Other relevant terms of the APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party, the Stalking Horse Bidder will be paid a breakup fee of $600,000 (the "Breakup Fee"), plus up to an additional $250,000 for reimbursement of expenses that the Stalking Horse Bidder incurs in connection with the sales transaction (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain liabilities including all trade accounts payable remaining unpaid as of the closing and that were either reflected on the Debtor's balance sheet for the period ending December 31, 2013 or which thereafter arise in the ordinary course of business; (d) certain executory contracts and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse Bidder, all pursuant to the terms of the APA; (e) except as expressly stated in the Stalking Horse APA, the Debtor is making no representation or warranties whatsoever, express or implied, with respect to any matter relating to the Assets (the Assets are being sold "AS IS," "WHERE IS," and "WITH ALL FAULTS"); and (f) the APA provides for the retention of all employees of the Debtor actively at work on the closing date.

As set forth in the Bidding Procedures Motion: (i) the Debtor is suffering a liquidity crisis and continues to suffer major cash flow problems; (ii) in October, 2013, due to the Debtor's deteriorating financial condition, the Debtor hired Shared Management Resources, Ltd. ("SMR"), by and through its managing director Charles S. Deutchman, as Chief Restructuring Officer (the "CRO"), who has conducted extensive due diligence into the Debtor's financial condition, explored various strategies with management for improving the company's performance, and assisted and continues to assist management in restructuring the current operations of the business; (iii) in December 2013, the Debtor retained Mesirow Financial, Inc. ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction; (iv) for several months preceding the Petition Date, the Debtor, together with its CRO and Mesirow, worked cooperatively to analyze and evaluate the business, operations and financial condition of the Debtor and, as part of that process, Mesirow assisted in preparing and negotiating confidentiality agreements for prospective purchasers, preparing an offering memorandum containing detailed information about the Debtor's business, operations and financial condition, identifying and contacting potential purchasers, establishing a data room for due diligence to be conducted by prospective purchasers, evaluating proposals from prospective purchasers, and negotiating a

## EXHIBIT 3

stalking horse offer; (v) Mesirow contacted 78 parties to elicit interest in acquiring all or part of the business; (vi) interested parties were given operational, organizational and financial information on the Debtor and all were offered the opportunity to conduct on site due diligence; (vii) only 10 parties conducted on site due diligence; and (viii) a deadline of March 12, 2014 was set for the submission of offers and notice of the deadline was given to those parties that had expressed an interest in making an offer.

The Debtor determined that the offer of the Stalking Horse Bidder is presently the highest and best offer.

If offers are received by the Debtor from other qualified bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtor the opportunity to subject the Assets to competitive bidding while preserving the bid of the Stalking Horse Bidder, thereby providing a floor price for the Assets.

The Debtor is seeking to sell substantially all of its assets under Chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtor will no longer operate its business, although the Debtor anticipates that the purchaser of its assets will continue such business operation. The Debtor believes the sale of the Assets is in the best interest of the Debtor's estate and will provide the highest and best value for the Assets.

### The Auction

PLEASE TAKE FURTHER NOTICE that the Debtor is authorized to conduct the Auction in accordance with the terms of the Bidding Procedures to determine the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (Eastern Daylight Time) on April ___, 2014**, at Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other date or location as designated prior to the Auction.

### The Sale Hearing

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court has scheduled a hearing for **May ___, 2014, at __:_0 __.m. (Eastern Daylight Time)** (the "Sale Hearing") to consider either approval of the APA in the absence of an Auction or approval of the winning bid and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, ____Floor, Courtroom No. ____, Baltimore, Maryland 21201.

## EXHIBIT 3

**PLEASE BE TAKE FURTHER NOTICE** that the Bidding Procedures approved by the Court shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments) or the Bidding Procedures Order (with all attachments) shall make such request in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, attention: Alan M. Grochal and Stephen M. Goldberg.

### OBJECTIONS

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to the judge's chambers, and shall be served on:  (i) counsel to the Debtor: Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460; (ii) counsel to the Committee: _____; (iii) counsel to the Bank of America, N.A.: Miles and Stockbridge P.C., 100 Light Street, Baltimore, MD 21202 (Attention: Linda V. Donhauser and Frederick W. Runge): Facsimile: (410) 385-3800; (iv) counsel to ACP-I, L.P.:  McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (Attention:  Paul W. Linehan; (v) the Office of the United States Trustee, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201; and (vi) counsel to the Stalking Horse Bidder: Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039 (Attention: Shinya Akiyama): Facsimile: (212) 858-1500 so as to be received by _____, 2014, at 4:00 p.m. **(Eastern Daylight Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets, the Bidding Procedures, and any other matters should be directed in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg).

Dated: April___, 2014

Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone:  410-752-9700
Facsimile:  410-722-5460
emails: agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Counsel for Debtor and Debtor in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | Case No. _____ |
| **Debtor** | * | **Chapter 11** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED**

**PLEASE TAKE NOTICE** that on April 2, 2014 (the "Petition Date"), Hedwin Corporation, debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on April __, 2014 the Bankruptcy Court entered an Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; And (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief (the "Bidding Procedures Order," Doc. # ___). This Notice is issued pursuant to the requirements of the Bidding Procedures Order.   The

Bidding Procedures Order and the order approving the Sale Motion (defined below) shall govern the Debtor's assumption and assignment of the Assumed Contracts (defined below).

**PLEASE TAKE FURTHER NOTICE** that on April 2, 2014, the Debtor filed its Motion for an Order (i) Approving Asset Purchase Agreement and Authorizing the Sale of Certain of Substantially All Assets Outside the Ordinary Course of Business; (ii) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief (the "Sale Motion").  Pursuant to the Sale Motion, the Debtor seeks, *inter alia*, the Bankruptcy Court's approval of the sale of the Debtor's assets, including the assumption and assignment of various executory contracts and unexpired leases (the "Assumed Contracts"), to the Successful Bidder (as defined in the Sale Motion), free and clear of liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Sale Motion has been set for **May _____, 2014, at ____: 0 ___.m. (Eastern Daylight Time)** before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, _____Floor, Courtroom No. _____, Baltimore, Maryland 21201.

**PLEASE TAKE FURTHER NOTICE** that the amount shown on **Exhibit A** attached to this Notice as the "Cure Cost" for the Assumed Contract listed on **Exhibit A** to which you are a party

is the amount, based upon the Debtor's books and records, which the Debtor asserts is owed to cure any defaults existing under the Assumed Contract as of the Petition Date.[8]

**PLEASE TAKE FURTHER NOTICE** that the buyer may exclude any agreement or agreements from the list of Assumed Contracts at any time within seven (7) calendar days prior to the closing.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has previously mailed a copy of the Sale Motion to you and will do so again by facsimile, email or overnight delivery if you fax a written request for such delivery to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460 or request a copy by email to agrochal@tydingslaw.com or sgoldberg@tydingslaw.com. Such request must specify how the information is to be transmitted.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown for the Assumed Contract on **Exhibit A**, or if you object to the assumption and assignment of your Assumed Contract on any ground, you must file an objection in writing with the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, ____Floor, Courtroom No. ____, Baltimore, Maryland 21201 on or before **4:00 p.m. Eastern Daylight Time on _____, 2014**. In addition, any objection must attached a complete copy of your contract

---

[8]      Your receipt of this notice does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement.

(including all amendments thereto) and set forth the specific default or defaults alleged, set forth any such other ground for objection, and set forth any Cure Cost as alleged by you.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and assumption of your Assumed Contract or to the Cure Cost must be served so as to be received by that same date and time stated above upon the following parties: (i) the Debtor:  Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460;  (ii) counsel to the Official Committee of Unsecured Creditors: _____; (iii) counsel to the Bank of America, N.A.: Miles and Stockbridge P.C., 100 Light Street, Baltimore, MD 21202 (Attention: Linda V. Donhauser and Frederick W. Runge): Facsimile: (410) 385-3800; (iv) counsel to ACP-I, L.P.:  McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (Attention: Paul W. Linehan); (v) the Office of the United States Trustee, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201; and (vi) counsel to the Stalking Horse Bidder: Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039 (Attention: Shinya Akiyama): Facsimile: (212) 858-1500.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE. ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH ASSUMED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND**

ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACT ON THE TERMS AND CONDITIONS REQUESTED BY THE DEBTOR.

Dated: April__, 2014

        Alan M. Grochal, Bar No. 01447
        Stephen M. Goldberg, Bar No. 01156
        Catherine K. Hopkin, Bar No. 28257
        Tydings & Rosenberg LLP
        100 East Pratt Street, 26th Floor
        Baltimore, Maryland 21202
        Telephone:  410-752-9700
        Facsimile:  410-722-5460
        emails: agrochal@tydingslaw.com
        sgoldberg@tydingslaw.com
        chopkin@tydingslaw.com
        Counsel for Debtor and Debtor in Possession

**EXHIBIT B**

**ESCROW AGREEMENT**

THIS ESCROW AGREEMENT (this "**Agreement**"), is made and entered into as of [DATE], by and among [Fujimori Kogyo Co., Ltd., a Japanese corporation, or an Affiliate designated by it] ("**Buyer**"), Hedwin Corporation, a Maryland corporation ("**Seller**"), and [ESCROW AGENT NAME], as escrow agent (the "**Escrow Agent**").

WHEREAS, Buyer and Seller have entered into a certain Asset Purchase Agreement, dated as of April 1, 2014 (the "**Purchase Agreement**"), pursuant to which Seller agreed to sell, and Buyer agreed to purchase from Seller, substantially all of the assets, and assume certain specified liabilities of Seller;

WHEREAS, the Purchase Agreement provides that a portion of the Purchase Price shall be deposited by Buyer into escrow to be held and distributed by the Escrow Agent in accordance with the terms of this Agreement; and

WHEREAS, the execution and delivery of this Agreement is a condition to the parties' obligations under the Purchase Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual and dependent covenants hereinafter set forth, the parties agree as follows:

1.      Defined Terms. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2.      Escrow Deposit. Simultaneously with the execution and delivery of this Agreement, $2,625,000 (the "**Escrow Amount**") has been deposited, by wire transfer of immediately available funds, with the Escrow Agent pursuant to Section 2.06(c) of the Purchase Agreement. The Escrow Amount, together with all interest, dividends, income, capital gains and other amounts earned thereon or derived therefrom ("**Escrow Income**") pursuant to the investments made on such amount pursuant to **Section 3** (collectively with the Escrow Amount, the "**Escrow Funds**"), will be available, pursuant to Section 4 of this Agreement, (a) for the payment of any Post-Closing Adjustment owed by Seller to Buyer pursuant to and in accordance with Section 2.07(b)(vi) of the Purchase Agreement and (b) to satisfy any losses incurred or sustained by, or imposed upon, the Buyer Indemnitees that are recoverable by the Buyer Indemnitees against Seller pursuant to and in accordance with the provisions of Section 7.06 of the Purchase Agreement. The Escrow Agent hereby acknowledges receipt of such funds and agrees to hold the Escrow Amount in a separate and distinct account in the State of Maryland, in the name of [NAME OF ACCOUNT], as Escrow Agent for Seller and Buyer (the "**Escrow Account**"), subject to the terms and conditions of this Agreement. The Escrow Fund shall be held as a trust

fund and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto. The Escrow Agent shall not distribute or release the Escrow Funds except in accordance with the express terms and conditions of this Agreement.

3.    Investment of Escrow Account. The Escrow Agent shall invest the Escrow Funds in the Escrow Account pursuant to joint written instructions signed by Seller and Buyer; *provided, however,* such investments shall be limited to:

(a)    interest bearing deposits with maturity dates of ninety (90) days or less of any bank or trust company located within the United States, including one or more accounts maintained in the commercial banking department (if any) of the Escrow Agent, *provided,* that any such bank or trust company shall have capital and surplus of at least $500,000,000;

(b)    certificates of deposit with maturity dates of ninety (90) days or less issued by the commercial banking department (if any) of the Escrow Agent, or of any bank or trust company located in the United States, *provided,* that any such bank or trust company shall have capital and surplus of at least $500,000,000;

(c)    direct obligations of, or obligations guaranteed as to all principal and interest by, the United States, in each case with maturity dates of ninety (90) days or less;

(d)    repurchase agreements with maturity dates of ninety (90) days or less that are fully secured as to payment of principal and interest by collateral consisting of obligations described in clauses (a) through (c) above; or

(e)    any money market fund substantially all of which is invested in the investment categories described in clauses (b) through (d) above, including any money market fund managed by the Escrow Agent or any of its affiliates.

Written investment instructions, if any, shall specify the type and identity of the investments to be purchased and/or sold. In the absence of any instructions from Seller and Buyer as to the initial investment of the Escrow Funds, or any portion thereof, in the obligations described in clauses (a) through (e) above, the Escrow Funds, or such portion thereof, shall be invested in [money market deposit account / United States Treasury bills having a remaining maturity of ninety (90) days or less]. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder, including, without limitation, charging an agency fee in connection with each transaction. The parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Account or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Agreement. The Escrow Agent shall not have any liability for any loss sustained as a

result of any investment in an investment made pursuant to the terms of this Agreement or as a result of any liquidation of an investment prior to its maturity or for the failure of the parties to give the Escrow Agent instructions to invest or reinvest the Escrow Funds. Any loss or expense incurred as a result of an investment will be borne by the Escrow Account.

4.      Release of Escrow Funds. The Escrow Funds held pursuant to this Agreement are intended to provide an exclusive source of funds for the payment of any amounts which may become payable in respect of the claims and matters described in **Section 2** above, on or prior to the Distribution Date (as defined below). The Escrow Funds shall only be distributed and released as follows:

(a)      **Purchase Price Adjustment.** Upon the Escrow Agent's receipt of a joint written instruction signed by Seller and Buyer stating that there has been a final determination of the Closing Net Asset Statement pursuant to Section 2.07(b)(ii) of the Purchase Agreement or the resolution of the Disputed Amounts pursuant to Section 2.07(b)(v) of the Purchase Agreement, and specifying the Post-Closing Adjustment, if any, to be paid by Seller to Buyer pursuant to Section 2.07(b)(vii) of the Purchase Agreement, the Escrow Agent shall promptly, and in any event within five (5) Business Days of its receipt of that instruction, release, by wire transfer to an account or accounts designated by Buyer, an amount of Escrow Funds from the Escrow Account equal to the Post-Closing Adjustment specified in such instruction.

(b)      **Indemnification Related Claims.**

(i)      At any time and from time to time on or prior to [insert a date that is 3 months after the Closing Date] (the "**Escrow Release Date**"), if any Buyer Indemnitee makes a claim for indemnity pursuant to and in accordance with Section 7.06 of the Purchase Agreement (a "**Claim**"), the Buyer Indemnitee (or Buyer on its behalf) shall deliver to the Escrow Agent a written notice (an "**Escrow Notice**") setting forth in reasonable detail the amount, nature and basis of the Claim by the Buyer Indemnitee. Within ten (10) days after its receipt of any Escrow Notice, the Escrow Agent shall send a copy of such Escrow Notice to Seller, and if the Escrow Agent has not received a written objection to such Claim or portion thereof or the amount of such Claim from Seller within fifteen (15) days following the Escrow Agent's sending of such Escrow Notice to Seller, then on the sixteenth (16th) day following such receipt, the Escrow Agent shall release, by wire transfer to an account or accounts designated by Buyer, an amount of Escrow Funds from the Escrow Account equal to the amount of such Claim.

(ii)      If the Escrow Agent receives a timely objection from Seller to any Claim or portion thereof or the amount of such Claim (a "**Dispute Notice**"), then the Escrow Agent shall, within 10 days after receipt by it of such Dispute Notice, send a copy of such Dispute Notice to Buyer and the Escrow Agent shall not distribute to Buyer any portion of the Escrow Funds in the Escrow Account that is the subject of the Dispute Notice until the Escrow Agent receives either (A) joint written instructions signed by Seller and Buyer authorizing the release to Buyer of the portion of the Escrow Funds in the Escrow Account that is agreed upon as the

amount recoverable in respect of the Dispute Notice or (B) a final and non-appealable order of any court of competent jurisdiction directing the release to Buyer of the portion of the Escrow Funds in the Escrow Account that is determined to be the amount recoverable in respect of the Dispute Notice; *provided*, that notwithstanding the foregoing, if Seller objects in part to the amount of the Claim, the Escrow Agent shall, after the lapse of the aforementioned fifteen (15) day period, deliver to Buyer an amount from the Escrow Fund equal to the portion of the Claim not objected to by Seller. Upon receipt of such joint written instructions or such final and non-appealable order, as the case may be, the Escrow Agent shall release to Buyer such amount of the Escrow Funds in the Escrow Account in accordance with such written instructions or final and non-appealable order.

(c)      **Release of Remaining Escrow Funds.**

(i)      Within five (5) Business Days of the later to occur of (A) the Escrow Release Date and (B) the release of the Escrow Funds equal to the Post-Closing Adjustment specified in a joint written instruction described in **Section 4(a)** (such later date, the **"Distribution Date"**), the Escrow Agent shall release to Seller, by wire transfer to an account or accounts designated by Seller, the remaining balance of the Escrow Funds in the Escrow Account, less the amount of all Unresolved Claims. For purposes of this Agreement, the term **"Unresolved Claims"** shall mean, as of the Distribution Date, the aggregate amount of all Claims that are the subject of a Dispute Notice that have not previously been resolved or satisfied in accordance herewith or that were otherwise properly and timely asserted under this Agreement but otherwise unsatisfied as of the Escrow Release Date, including any Claims for which an Escrow Notice has been delivered but for which the fifteen (15) day objection period has not expired as of the Escrow Release Date.

(ii)      Unresolved Claims for which Seller has objected in accordance with subclauses (i) and (ii) of **Section 4(b)** shall be administered in accordance with subclause (ii) of **Section 4(b)**. Upon the expiration of the fifteen (15) day objection period for any Unresolved Claims for which no Dispute Notice has been delivered, the Escrow Agent shall release by wire transfer to an account or accounts designated by Buyer an amount of funds in the Escrow Account equal to the amount of such Unresolved Claim for which no Dispute Notice has been delivered. After the resolution of each Unresolved Claim, any remaining portion of the Escrow Funds in the Escrow Account not distributed to Buyer pursuant to the immediately preceding sentences and not subject to other Unresolved Claims shall be released by wire transfer promptly thereafter by the Escrow Agent to an account or accounts designated by Seller.

(d)      **Distributions Deemed Adjustments to Purchase Price.** All distributions of the Escrow Funds to Buyer pursuant to this Agreement shall be deemed to be adjustments to the Purchase Price pursuant to the terms of the Purchase Agreement.

(e)      **Court Order.** Notwithstanding any other provision in this Agreement to the contrary, the Escrow Agent shall disburse the Escrow Funds (or any portion thereof) in accordance with a notice from either Buyer or Seller of a final and non-appealable order from a

court of competent jurisdiction, along with a copy of the order, pursuant to which such court has determined whether and to what extent Buyer or Seller are entitled to the Escrow Funds (or any portion thereof).

(f) **Claims in Excess of the Escrow Fund.** If at any time during the term of this Agreement the amount of any payment required to be made by the Escrow Agent to Buyer pursuant to **Section 4(b)** with respect to an Escrow Notice exceeds the amount of Escrow Funds in the Escrow Account, the Escrow Agent shall pay to Buyer the entire Escrow Fund (including any Escrow Income).

5.   <u>Inspection Rights and Account Statements</u>. Buyer and Seller shall have the right to inspect and obtain copies of the records of the Escrow Agent pertaining to this Agreement and to receive monthly reports of the status of the Escrow Account. On or before the ten (10) Business Day following each month during the term hereof, the Escrow Agent shall deliver account statements to Buyer and Seller with respect to the Escrow Account for the prior month, which statements shall include the account balance, disbursements made pursuant to **Section 4** hereof, Escrow Income earned during the preceding month and the status of any Unresolved Claims.

6.   <u>Termination</u>. This Agreement shall terminate when the entire Escrow Account has been distributed in accordance with **Section 4** of this Agreement.

7.   <u>Conditions to Escrow</u>. The Escrow Agent agrees to hold the Escrow Funds in the Escrow Account and to perform in accordance with the terms and provisions of this Agreement. Seller and Buyer agree that the Escrow Agent does not assume any responsibility for the failure of Seller or Buyer to perform in accordance with the Purchase Agreement or this Agreement. The acceptance by the Escrow Agent of its responsibilities hereunder is subject to the following terms and conditions, which the parties hereto agree shall govern and control with respect to the Escrow Agent's rights, duties, liabilities and immunities:

(a)   The Escrow Agent shall have only those duties as are specifically provided herein, which shall be deemed purely ministerial in nature, and shall under no circumstance be deemed a fiduciary for any of the other parties to this Agreement. The Escrow Agent shall not be required to take any action hereunder involving any expense unless the payment of such expense is made or provided for in a manner reasonably satisfactory to it.

(b)   The Escrow Agent shall be protected in acting upon any written notice, consent, receipt or other paper or document furnished to it, not only as to its due execution and validity and effectiveness of its provisions, but also as to the truth and accuracy of any information therein contained, which the Escrow Agent in good faith believes to be genuine and what it purports to be. Should it be necessary for the Escrow Agent to act upon any instructions, directions, documents or instruments issued or signed by or on behalf of any corporation, fiduciary or individual acting on behalf of another party hereto, which the Escrow Agent in good faith believes to be genuine, it shall not be necessary for the Escrow Agent to inquire into such corporation's, fiduciary's or individual's authority.

(c)    The Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for anything which it may do or refrain from doing in connection herewith, except for its own gross negligence or willful misconduct.

(d)    The Escrow Agent may consult with, and obtain advice from, legal counsel in the event of any question as to any of the provisions hereof or the duties hereunder, and it shall incur no liability and shall be fully protected in acting in good faith in accordance with the opinion and instructions of such counsel. The reasonable and documented costs of such counsel's services shall be paid to the Escrow Agent in accordance with **Section 12** below.

(e)    The Escrow Agent shall neither be responsible for, nor chargeable with knowledge of, the terms and conditions of any other agreement, instrument or document between the other parties hereto, including, without limitation, the Purchase Agreement. This Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred from the terms of this Agreement or any other agreement, instrument or document.

(f)    In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from Buyer or Seller which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing jointly by Buyer and Seller or by a final and non-appealable order of a court of competent jurisdiction. The Escrow Agent shall have the option, after ten (10) days' notice to Buyer and Seller of its intention to do so, to file an action in interpleader requiring Buyer and Seller to answer and litigate any claims and rights among themselves.

(g)    Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its escrow business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which it is a party, shall be and become the successor escrow agent hereunder and vested with all of the title to the whole property or trust estate and all of the trusts, powers, immunities, privileges, protections and all other matters as was its predecessor, without the execution or filing of any instrument or any further act, deed or conveyance on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

8.    <u>Resignation of Escrow Agent.</u>

(a)    The Escrow Agent reserves the right to resign at any time by giving five (5) days written notice of resignation, specifying the effective date thereof. On the effective date of such resignation, the Escrow Agent shall deliver this Agreement together with the Escrow Funds (including any Escrow Income earned thereon) and any and all related instruments or documents to any successor escrow agent agreeable to Buyer and Seller. If a successor escrow agent has not

been appointed and has not accepted such appointment prior to the expiration of five (5) days following the date of the notice of such resignation, the Escrow Agent may, but shall not be obligated to, apply to a court of competent jurisdiction for the appointment of a successor Escrow Agent. Any such resulting appointing shall be binding upon all of the parties to this Agreement. Notwithstanding anything to the contrary in the foregoing, the Escrow Agent or any successor escrow agent shall continue to act as Escrow Agent until a successor is appointed and qualified to act as Escrow Agent.

      (b)    Upon delivery of the Escrow Funds to a successor escrow agent in accordance with this **Section 8**, the Escrow Agent shall thereafter be discharged from any further obligations hereunder. All power, authority, duties and obligations of the Escrow Agent shall apply to any successor escrow agent.

9.    <u>Indemnification of Escrow Agent</u>. Buyer and Seller shall jointly and severally indemnify and hold the Escrow Agent harmless from and against any liability, loss, damage or expense (including, without limitation, reasonable and documented attorneys' fees) that the Escrow Agent may incur in connection with this Agreement and its performance hereunder or in connection herewith, except to the extent such liability, loss, damage or expense arises from its willful misconduct or gross negligence. The indemnification provided for under this **Section 9** shall be allocated and paid in the same manner as fees and expenses under **Section 12** below and shall survive the termination of this Agreement and the resignation or removal of the Escrow Agent.

10.    <u>Taxes</u>.

      (a)    **Ownership for Tax Purposes.** Each of Buyer and Seller agree that, for purposes of United States federal and other taxes based on income, Seller shall be treated as the owner of the Escrow Funds and that Seller shall report the income, if any, that is earned on, or derived from, the Escrow Funds as its income, in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto.

      (b)    **Tax Forms.** Prior to the date hereof, each of Buyer and Seller shall provide the Escrow Agent with a fully executed Internal Revenue Service Form W-9, or W-8, properly completed and signed, and such other forms and documents that the Escrow Agent may reasonably request.

      (c)    **Withholding.** The Escrow Agent shall be entitled to deduct and withhold from any amount distributed or released from the Escrow Funds all taxes which may be required to be deducted or withheld under any provision of applicable tax law. All such withheld amounts shall be treated as having been delivered to the party entitled to the amount distributed or released in respect of which such tax has been deducted or withheld.

11.    <u>Business Days</u>. If any date on which the Escrow Agent is required to make an investment or a delivery pursuant to the provisions hereof is not a day on which the Escrow Agent is open

for business, then the Escrow Agent shall make such investment or delivery on the next succeeding Business Day.

12.    <u>Escrow Costs</u>. Buyer shall pay all of the fees and expenses (including reasonable and documented attorneys' fees) of the Escrow Agent for the services to be rendered by the Escrow Agent pursuant to this Agreement. The Escrow Agent agrees to serve as Escrow Agent in accordance with the fee schedule attached as <u>Exhibit A</u> hereto.

13.    <u>Force Majeure</u>. No party shall be liable or responsible to the other parties, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond the affected party's reasonable control, including, without limitation: (a) acts of God; (b) flood, fire or explosion; (c) war, invasion, riot or other civil unrest; (d) government order or law; (e) actions, embargoes or blockades in effect on or after the date of this Agreement; (f) action by any governmental authority; (g) national or regional emergency; and (h) strikes, labor stoppages or slowdowns or other industrial disturbances. The party suffering a Force Majeure Event shall give notice to the other party, stating the period of time the occurrence is expected to continue and shall use diligent efforts to end the failure or delay and ensure the effects of such Force Majeure Event are minimized.

14.    <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 14**). Notwithstanding the above, in the case of communications delivered to the Escrow Agent whereby the Escrow Agent must act based on a specified number of days upon its receipt of such communication, if applicable, such communications shall be deemed to have been received on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the below-referenced office.

If to Seller:                    Hedwin Corporation

                                 c/o Charles Deutchman

                                 Chief Restructuring Officer

                                 Shared Management Resources, Ltd.

28026 Gates Mills Blvd.

Pepper Pike, OH 44124-4730

E-mail: cdeutchman@shrmgtres.com

Attention:    Chief Restructuring Officer

with a copy to:    Tydings & Rosenberg LLP

100 East Pratt Street, 26th Floor

Baltimore, MD 21202

Facsimile:    410-727-5460

E-mail: sgoldberg@tydingslaw.com

Attention:    Stephen M. Goldberg

If to Buyer:    Fujimori Kogyo Co., Ltd.

1-23-7 Nishi-Shinjuku

Shinjuku-ku, Tokyo 160-0023

Japan

Facsimile:    +81-3-5909-5779

E-mail: hiroshi-saga@zacros.co.jp

Attention:    Corporate Planning
Department

with a copy to:    Pillsbury Winthrop Shaw Pittman LLP

1540 Broadway

New York, NY 10036

Facsimile:    212-858-1500

E-mail: takeo.akiyama@pillsburylaw.com

Attention:    Takeo Akiyama

If to Escrow Agent:             [ESCROW AGENT ADDRESS]

                                Facsimile:    [FAX NUMBER]

                                E-mail: [E-MAIL ADDRESS]

                                Attention:    [TITLE OF OFFICER TO
                                RECEIVE NOTICES]

with a copy to:                 [ESCROW AGENT LAW FIRM]

                                Facsimile:    [FAX NUMBER]

                                E-mail: [E-MAIL ADDRESS]

                                Attention:    [ATTORNEY NAME]

15.    Entire Agreement. This Agreement, together with the Purchase Agreement and related exhibits and schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. Notwithstanding the foregoing, in the event of any inconsistency between the statements in the body of this Agreement and those of the Purchase Agreement, (i) with respect to any inconsistency as between Buyer and Seller, the statements in the body of the Purchase Agreement shall control; and (ii) with respect to any inconsistency as between the Escrow Agent, on the one hand, and either Buyer or Seller or both, on the other hand, the statements in the body of this Agreement shall control.

16.    Successor and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party may assign any of its rights or obligations hereunder without the prior written consent of the other parties hereto, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

17.    No Third-Party Beneficiaries. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

18.    Headings. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

19.    Amendment and Modification; Waiver. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party

of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

20.     Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

21.     Governing Law; Submission to Jurisdiction. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Maryland without giving effect to any choice or conflict of law provision or rule (whether of the State of Maryland or any other jurisdiction). Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the Bankruptcy Court and the United States District Court for the District of Maryland, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

22.     Waiver of Jury Trial. Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby. Each party to this Agreement certifies and acknowledges that (a) no representative of any other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action, (b) such party has considered the implications of this waiver, (c) such party makes this waiver voluntarily, and (d) such party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this **Section 22**.

23.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic

transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement on the date first written above.

[FUJIMORI KOGYO CO., LTD.]

By_____

Name:
Title:

HEDWIN CORPORATION

By_____

Name:
Title:

[ESCROW AGENT NAME]

By_____

Name:
Title:

**EXHIBIT C**

**Bill of Sale**

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Hedwin Corporation, a Maryland corporation ("**Seller**"), pursuant to, and to the extent authorized in, the authorization contained in the Order (A) Approving Asset Purchase Agreement And Authorizing Sale Of Assets Outside The Ordinary Course Of Business, (B) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To Sections 363(**b**), (**f**) And (**m**) Of The Bankruptcy Code, (C) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, and (D) Granting Related Relief entered on _____, 2014 by the United States Bankruptcy Court for the District of Maryland, does hereby grant, bargain, transfer, sell, assign, convey and deliver to [BUYER NAME], a [STATE OF ORGANIZATION] corporation ("**Buyer**"), all of its right, title and interest in and to the Tangible Personal Property, as such term is defined in the Asset Purchase Agreement, dated as of April 1, 2014 (the "**Purchase Agreement**"), by and between Seller and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Buyer acknowledges that Seller makes no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

Seller for itself, its successors and assigns, hereby covenants and agrees that, at any time and from time to time upon the written request of Buyer, Seller will do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances as may be reasonably required by Buyer in order to assign, transfer, set over, convey, assure and confirm unto and vest in Buyer, its successors and assigns, title to the assets sold, conveyed and transferred by this Bill of Sale.

IN WITNESS WHEREOF, Seller has duly executed this Bill of Sale as of [DATE].

HEDWIN CORPORATION

By_____

Name:
Title:

**EXHIBIT D**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | **Case No. _____** |
| **Debtor** | * | **Chapter 11** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING**
**SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B)**
**AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b),**
**(f) AND (m) OF THE BANKRUPTCY CODE, (C) AUTHORIZING THE**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Sale Motion") filed by Hedwin Corporation, debtor and debtor-in-possession (the "Debtor"), for the entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules: (a) approving that certain Asset Purchased Agreement dated

April 1, 2014 (the "APA") between the Debtor and Fujimori Kogyo Co., Ltd. ("Purchaser")[9] or, alternatively, the asset purchase agreement of the highest and best bidder at auction authorized by the Court in the Bidding Procedures (defined below); (b) approving the sale of the Debtor's assets (the "Assets")[10] to the Purchaser or the party with the highest and best bid at auction; (c) approving the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser or the party with the highest and best bid at auction; and (d) granting related relief; and this Court having entered that certain Order dated April___, 2014 (Doc. ___) (the "Bidding Procedures Order" and the "Bidding Procedures" attached thereto), authorizing the Debtor to conduct (and approving the terms and conditions of), the Auction,[11] and to consider higher and better offers for the Assets, setting a date for the Auction, and approving: (i) the Bidding Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Cure Notice; and (iii) the procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed cure amounts; and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been noted on the record at the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its bankruptcy estate, its creditors and all other parties in interest; and for good cause shown;

---

[9]    As used herein, the term "Purchaser" includes Fujimori and its designee to purchase the Assets, a direct or indirect wholly-owned subsidiary of Fujimori.

[10]    As used herein, the term "Assets" has the same meaning as "Purchased Assets" under the APA.

[11]    All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Sale Motion (Doc. ___) or, if not defined in the Sale Motion, in the APA (as defined below).

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[12]

G.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

H.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

I.    The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Assets to be sold, transferred or conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

J.    The statutory and other predicates for the relief sought in the Sale Motion (including the approvals and authorizations sought in the Motion) are as follows:  (i) Sections 102, 105, 363 and 365 of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

K.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

---

[12]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing relating to the Sale Motion and the matters addressed by this Sale Order are hereby incorporated herein to the extent not inconsistent with this Sale Order.

L.    On March __, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued in possession and management of its business and property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

M.    As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing was provided in accordance with sections 102(1), 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and such notice complied with the Bidding Procedures Order.  The Debtor also gave due and proper notice of the assumption, sale, and assignment of each contract proposed to be assumed and assigned pursuant to the APA (the "Assumed Contracts" and each an "Assumed Contract") through the Cure Notices given in accordance with the Bidding Procedures Order to each non-debtor party under each such Assumed Contract.  The notices described above were sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the sale of the Assets, the assumption and assignment of the Assumed Contracts, or of the entry of this Sale Order is necessary or required.

N.    Notice of the Sale Motion has been provided, and a reasonable opportunity to object or be heard regarding the requested relief has been afforded, to all interested persons and entities, including, without limitation, (a) the U.S. Trustee; (b) counsel to the Secured Parties and the Committee of Unsecured Creditors (if any); (c) the Trustees of the Employee Stock Ownership Plan; (d) the Trustees of the Debtor's pension plan; (e) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-1, L.P.) on any of the Assets

and who would appear as potentially holding a lien in any search conducted to determine who asserts a lien on the Assets; (f) all known counterparties to the Assumed Contracts (including Toyota Motor Corporation); (g) all entities known to have expressed an interest in bidding on the Assets; (h) the U.S. Attorney's Office for the District of Maryland; (i) the U.S. Department of Justice; (j) the U.S. Environmental Protection Agency; (k) the Securities and Exchange Commission; (l) the Pension Guaranty Corporation; (m) the attorney generals in Maryland and Nevada; (n) the state and local taxing authorities in Maryland and Nevada and the Internal Revenue Service; (o) the Debtor's unsecured creditors; and (p) all other parties that filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order. All other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

O.      The Debtor's notice of the sale was reasonably calculated to provide all interested parties with timely and proper notice of the sale and the Sale Hearing.

P.      The disclosures made by the Debtor concerning the Sale Motion, the APA, the Auction, and the sale of the Assets at the Sale Hearing were sufficient, complete and adequate.

Q.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the APA, sell the Assets, and assume and assign the Assumed Contracts, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its bankruptcy estate and its creditors. Such business reasons include, but are not limited to, the facts that (i) the APA and the Closing (as defined in the APA) present the best opportunity to realize the highest and best value of the Debtor on a going concern basis; (ii)

there is substantial risk of deterioration of the value of the Assets if the sale is not consummated quickly; and (iii) the APA evidences the highest and best offer for the Assets.

R.    The Debtor has also demonstrated (i) good, sufficient and sound business purposes and justifications, and (ii) compelling circumstances for the sale of the Assets other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate, and the sale will provide the means for the Debtor to maximize distributions to creditors.

S.    The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, and substantively and procedurally fair to all parties and were proposed by the Debtor in good faith.

T.    The Debtor and its professionals conducted an auction process in accordance with, and otherwise have complied, in good faith, in all respects with the Bidding Procedures Order, as demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing.  Through extensive marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest and best offer to purchase the Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, and (c) considered all bids, if any, submitted on or before the Bid Deadline.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.

U.    The Purchaser submitted the highest and best offer and is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order. The Purchaser's offer will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Bidding Procedures obtained the highest and best value for the Assets for the Debtor and its bankruptcy estate.

V.    The offer of the Purchaser, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtor pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and best offer for the Assets, (iii) is in the best interests of the Debtor's bankruptcy estate and its creditors; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Acts and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia. No other person or entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Purchaser. Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its estate and creditors and other parties in interest.

W.    The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The Purchaser is buying the Assets in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m). The Purchaser has proceeded in good faith in all respects in connection with this chapter 11 proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order to the extent applicable

to the Purchaser; (c) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; (d) all payments to be made by the Purchaser in connection with the sale of the Assets have been disclosed; and (e) no common identity of directors or stockholders exists between the Purchaser and the Debtor.

X.      The APA was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit (i) the application of or implicate section 363(n) of the Bankruptcy Code to the APA or to the consummation of the sale transaction and transfer of the Assets and the Assumed Contracts to the Purchaser, or (ii) costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among other interested purchasers.

Y.      The Debtor's execution of the APA and any other documents contemplated thereby is approved, and the Debtor is authorized to consummate the transaction contemplated by the APA.

Z.      The Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the APA, and (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. The sale of the Assets has been duly and validly authorized by all necessary corporate action of the Debtor. No further consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to consummate the sale and transfer of the Assets to Purchaser, the APA, and the transactions contemplated thereby. Further,

the sale and transfer of the Assets and the assumption and assignment of the Assumed Contracts are legal, valid and effective transfers of the Assets and Assumed Contracts under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a) and 365, and all applicable requirements of such sections have been complied with in respect thereof.

AA.    Except as otherwise provided in the APA, the Assets shall be sold free and clear of any and all liens (whether contractual, statutory or otherwise), hypothecations, encumbrances, security interests, mortgages, pledges, restrictions, charges, claims, instruments, licenses, preferences, priorities, security agreements, easements, covenants, encroachments, options, warrants, trusts or deemed trusts (whether contractual, statutory or otherwise), obligations, liabilities, demands, guarantees, restrictions, contractual commitments, rights, or other interest in the subject property, including without limitation any right of recovery, Tax (including foreign, federal, state and local Tax), order of any Governmental Authority, rights of first refusal and rights of set-off, liens, executions, levies, penalties, charges, or other financial or monetary claims, adverse claims, rights of use, or other Claim there against or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that Purchaser is a successor, transferee or continuation of the Debtor or the Assets, and (iv) any leasehold interest, license or other right, in favor of a person other than Purchaser, to use any portion of the Assets), whether arising prior to or subsequent to the commencement of this chapter 11 case, whether or not they have attached or been perfected, registered or filed and whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown, legal,

equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or before any governmental authority or person at law or in equity whether imposed by agreement, understanding, law, equity or otherwise, and any claim or demand resulting therefrom (collectively, "Interests") (other than the Permitted Encumbrances) with such Interests (other than the Permitted Encumbrances) to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

BB.    The Debtor is the sole and lawful owner of the Assets. The transfer of the Assets to Purchaser is a legal, valid and effective transfer of the Assets and shall vest Purchaser with all right, title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances). Except as specifically provided in the APA or this Order, the Purchaser shall not assume or become liable for any Interests (other than the Permitted Encumbrances) relating to the Assets being sold by the Debtor.

CC.    The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever (other than the Permitted Encumbrances) because, with respect to each creditor asserting an Interest, one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Interests from which the Assets are to be sold free and clear (including, to the extent applicable, the non-debtor parties to the Assumed Contracts) who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented to the Sale Motion and the sale of the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled. All holders of Interests (other than the Permitted Encumbrances) are adequately

protected by having their Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Interests.

DD.    The sale of Assets other than one free and clear of all Interests (other than the Permitted Encumbrances) would yield substantially less value than the sale of the Assets to Purchaser and would adversely impact the Debtor's bankruptcy estate and its creditors. Thus, the sale of the Assets free and clear of all Interests, other than the Assumed Liabilities and the Permitted Encumbrances, in addition to all of the relief provided herein, is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

EE.    The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and creditors and other parties in interest, if either: (i) the sale of the Assets to the Purchaser was not free and clear of all Interests, other than the Assumed Liabilities and the Permitted Encumbrances; or (ii) the Purchaser would, or in the future could, be liable for any of such Interests or any claims against the Debtor based upon successor or vicarious liability or otherwise. Unless otherwise expressly included in the Assumed Liabilities or the Permitted Encumbrances, the Purchaser shall not be responsible for any Interests or any such claims against the Debtor based upon successor or vicarious liability or otherwise.

FF.    The Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtor, its

bankruptcy estate, its creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtor.

GG.    The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of this chapter 11 case. The Purchaser, on behalf of the Debtor, has provided for the cures and/or other payments or actions required for the Debtor to assume and assign the Assumed Contracts to the Purchaser. To the extent necessary, the Purchaser has provided adequate assurance of its future performance under the Assumed Contracts. The Purchaser's promise to pay the Cure Costs (as defined below) and to perform the obligations under the Assumed Contracts as of the Closing will constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

HH.    The Debtor has released all Avoidance Claims (including Actions relating thereto) against all (a) counterparties to Assumed Contracts, and (b) customers and suppliers who paid to Seller or received from Seller aggregate consideration greater than or equal to $400,000 for each of the two most recent fiscal years; and such releases shall be, and hereby are, approved by the Court.

II.    In the absence of a stay pending appeal, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the APA at any time on or after the entry of this Sale Order and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).