JJ.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or its bankruptcy estate, there is no substantial continuity between the Purchaser and the Debtor, there is no common identity between the Debtor and the Purchaser, there is no continuity of enterprise between the Debtor and the Purchaser, the Purchaser is not a mere continuation of the Debtor or its bankruptcy estate and the Purchaser does not constitute a successor to the Debtor or its bankruptcy estate.

KK.     The sale of the Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.   The sale does not constitute a *sub rosa* chapter 11 plan.

LL.     Time is of the essence in consummating the sale.   In order to maximize the value of the Assets and preserve the viability of the business as a going concern, it is essential that the sale of the Assets occur within the time constraints set forth in the APA.   Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

MM.   Other than the Assumed Liabilities, and except as expressly provided for by the terms of the APA, the Purchaser shall have no obligations with respect to any other claims or liabilities of the Debtor.   The Purchaser shall have no obligations with respect to any Excluded Liabilities.

NN.     The Debtor, in connection with offering products or services, did not disclose to an individual any policy prohibiting the transfer of personally identifiable information and, therefore, the sale of the Assets may be approved pursuant to section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman.

OO.   Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the purchase price, the proposed sale of the Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

PP.   The consummation of the sale of the Assets is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS ORDERED THAT:

1.   The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein, and the sale of the Assets contemplated thereby is approved.

2.   All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Sale Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.   Any objections to the assumption and assignment of any of the Assumed Contracts to the Purchaser or to the Cure Costs that have not been withdrawn, waived, or settled are hereby overruled on the merits with prejudice. To the extent that any counterparty has failed to object to its respective Cure Cost, such counterparty is deemed to have consented to such Cure

Cost and reinstatement (without default) and assignment of its Assumed Contract to the Purchaser.

4.      Notice of the Sale Hearing was fair, reasonable, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006, and all due process requirements.

### *Approval of Sale*

5.      The sale of the Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are, authorized and approved in all respects.

6.      The sale of the Assets and the consideration provided by the Purchaser under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7.      Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to Bank of America, N.A. ("Bank of America"),arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents, postpetition financing documents and interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing (collectively, the "Bank of America Obligations") shall be paid in full to Bank of America from the proceeds of the sale of the Assets by wire transfer at Closing. The Debtor shall distribute such proceeds of the sale of the Assets to Bank of America at Closing.

8.    Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to ACP-1, L.P., arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents and interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing (collectively, the "ACP-1, L.P. Obligations") shall be paid in full to ACP-1, L.P. from the proceeds of the sale of the Assets by wire transfer at Closing. The Debtor shall distribute such proceeds of the sale of the Assets to ACP-1, L.P. at Closing.

9.    The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts as part of the sale of the Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order.

10.    Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacating shall not affect the validity and enforceability of any transfer under the APA or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal).

11.    The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

12.     The Debtor is hereby authorized to fully perform under, consummate and implement the terms of the APA, together with any and all additional instruments and documents that may be reasonably necessary to implement and effectuate the terms of the APA, this Sale Order and sale of the Assets including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take any and all further actions necessary to consummate the APA or necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Assets or Assumed Contracts, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the APA, without any further corporate action, approval, or orders of this Court.

13.     The provisions of this Sale Order authorizing the sale of the Assets free and clear of the Interests, other than the Permitted Encumbrances and the Assumed Liabilities shall be self-executing and neither the Debtor nor the Purchaser shall be required to execute any instrument or document in order to effectuate, consummate and implement the provisions of this Sale Order.   However, the Debtor and each other person or entity having duties or responsibilities under the APA, any agreements related thereto or this Sale Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA, to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; to take any and all actions contemplated by the APA, any related agreements or this Sale Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such

other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the APA, any related agreements and this Sale Order and the transaction contemplated thereby without further application to, or order of, the Court.

14.    The _____ of the Debtor shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtor is further authorized and empowered to cause to be filed with the Maryland State Department of Assessments and Taxation or with other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers or other duly authorized representatives of the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Maryland and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate names, with respect to the implementation and consummation of the APA, any related agreements and this Sale Order, and the transactions contemplated thereby.

15.    The Closing Date shall occur on or before June 30, 2014, unless such date is extended in writing by the Debtor, the Purchaser and Bank of America.  Effective as of the Closing: (a) the sale of the Assets by the Debtor to the Purchaser shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and vests Purchaser with all right, title and interest of the Debtor in and to the Assets, free and clear of all Interests of any kind (other than the Permitted Encumbrances), pursuant to section 363(f) of the Bankruptcy Code; and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtor of all liability with respect to any Assumed Liabilities.

16.    The sale of the Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

17.    The Purchaser has given substantial consideration under the APA for the benefit of the Debtor and its estate and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Interests pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtor or any of the Assets, other than holders of Interests relating to the Assumed Liabilities or the Permitted Encumbrances.  The consideration provided by the Purchaser for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### *Transfer of Assets*

18.    Except to the extent specifically provided in the APA, upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer the Assets to the Purchaser.  The sale and

transfer of the Assets shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Purchaser with all right, title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances), with all such Interests (other than the Permitted Encumbrances) to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they have in or against the Assets at Closing, subject to all claims and defenses the Debtor may possess with respect thereto. The Sale Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Assets free and clear of Interests. Following the Closing Date, no holder of any Interests (other than the Permitted Encumbrances) in the Assets or against the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Interests, or any actions that the Debtor may take in this chapter 11 case; provided however, that this sentence shall not be applicable to Bank of America and ACP-1, L.P. unless the Bank of America Obligations and the ACP-1, L.P. Obligations, respectively, are paid in full at Closing. Except with respect to enforcing the terms of the APA or this Sale Order, no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Sale Order. Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

19.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Assets, and all such

licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing.

20.    All of the Debtor's interests in the Assets to be acquired by the Purchaser under the APA shall be, upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Sale Order shall be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by the Purchaser under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.

21.    All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser on the Closing Date. On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist; provided however, that Bank of America and ACP-1, L.P. shall only be required to release any Interests in the Assets after receiving payment in full of all of the Bank of America Obligations and the ACP-1, L.P. Obligations at Closing.

22.    Except as expressly provided in or pursuant to the APA, the Purchaser is not assuming and is not deemed to assume, and the Purchaser shall not be, nor shall any affiliate of Purchaser be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Assets prior to the consummation of the transactions contemplated by the APA, or any liabilities calculable by reference to the Debtor or its operations or the Assets, or relating to continuing or other conditions existing on or prior to

consummation of the transaction contemplated by the APA, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

### *Assumed Contracts*

23.    Subject to the terms of the APA and the occurrence of the Closing, the assumption by the Debtor of the Assumed Contracts and the assignment of such agreements to the Purchaser, as provided for or contemplated by the APA, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.  The Debtor is authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing, the Assumed Contracts free and clear of all Interests (other than the Assumed Liabilities and the Permitted Encumbrances), and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

24.    The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all Cure Costs required to assume and assign the Assumed Contracts to the Purchaser, and with non-debtor parties to such Assumed Contracts being without basis to assert against Purchaser, among other things, defaults, breaches or claims of pecuniary losses existing as of the Closing or by reason of the Closing.

25.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each

Assumed Contract. The Debtor is authorized to take all actions reasonably necessary to effectuate the foregoing.

26.    Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Sale Order, the Purchaser, on behalf of the Debtor, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in the Cure Notice served by the Debtor on each of the parties to the Assumed Contracts (the "Cure Costs"), with respect to the assumption and assignment thereof. The Cure Costs in the Cure Notices (or such other amounts as may have been determined on the record of the Sale Hearing) reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to Purchaser of the Assumed Contracts. The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice served by the Debtor, or the amounts determined on the record of the Sale Hearing, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Purchaser or the Assets with respect to any claim for cure under any Assumed Contract occurring prior to closing.

27.    All defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs and the non-debtor parties to such contracts shall be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtor or Purchaser, or their respective property, (i) any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or against the Purchaser, any

counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor; or (ii) that any additional amounts are due or other defaults exist. Upon the Debtor's assignment of the Assumed Contracts, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Contract.

28.    With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract under section 365 of the Bankruptcy Code; and (b) the Debtor may assume and assign each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code. Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable and constitutes an unenforceable anti-assignment provision that is void and of no force and effect. All Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the APA and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract pursuant to the terms of the APA in any respect constitutes a default under any Assumed Contract. In the absence of objection, the non-debtor party to each Assumed Contract shall be

deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

29.    The Purchaser has satisfied any and all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts.  The Purchaser shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Contract.

30.    The Debtor and its bankruptcy estate shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

31.    Non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to Purchaser as a result of the assumption and assignment of the Assumed Contracts.

32.    The validity of the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assumed Contract relating to such Assumed Contract's respective Cure Cost.

33.    The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

***Additional Provisions***

34.    Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

35.    After Closing and after payment in full of the Bank of America Obligations and the ACP-1, L.P. Obligations, a certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities or included in Permitted Encumbrances.

36.    If any person or entity that has filed statements or other documents or agreements evidencing Interests in all or any portion of the Assets (other than Assumed Liabilities or Permitted Encumbrances) does not deliver to the Debtor, after the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests that the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets; provided however, that neither the Purchaser nor the Debtor shall be authorized to release any Interests of Bank of America or of ACP-1, L.P. in all or any portion of the Assets or otherwise unless and until the Bank of America Obligations and the ACP-1, L.P. Obligations are paid in full at Closing.

37.    No governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this Chapter 11 case or the consummation of the transaction contemplated by the APA.

38.     The Debtor's obligations relating to Taxes, whether arising under law, the APA or otherwise, shall be fulfilled and paid by the Debtor.

39.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtor's liabilities other than the Assumed Liabilities and as otherwise set forth in the APA, and the Purchaser has not purchased any of the Excluded Assets.   Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Interests (other than Permitted Encumbrances) based upon or arising out of liabilities retained by the Debtor are hereby enjoined from taking any action against the Purchaser or the Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Interests (other than Permitted Encumbrances) or on account of any liabilities of the Debtor other than Assumed Liabilities pursuant to the APA.   All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Interests or cause of action against the Purchaser or the Assets for any liability associated with the Excluded Assets.

40.     Neither the Purchaser, nor its affiliates, members, or shareholders, shall be deemed, as a result of any action taken in connection with the sale of the Assets or the Purchaser's post-Closing use or operation of the Assets, to: (a) be a successor to the Debtor; (b) have, de facto or otherwise, merged or consolidated with or into the Debtor; or (c) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.   Except for the Assumed Liabilities and the Permitted Encumbrances, the transfer of the Assets to the Purchaser under the APA and this Sale Order shall not result in the Purchaser Releasees (defined below) having any liability or responsibility whatsoever:  (y) for any Interest against the Debtors or against an insider of the Debtor; or (z) to the Debtor, except as is expressly set forth in the

APA and/or this Sale Order. Without limiting the generality of the foregoing, except as otherwise provided in the APA, neither the conveyance of the Debtor's rights, title, and interest in the Assets to the Purchaser under the APA, nor the assumption of the Assumed Contracts shall result in any Purchaser Releasee (defined below) having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly; (b) obligation under any of the Debtor's labor or employment agreements; (c) of the Debtor's mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtor and any non-Debtor subsidiary; (e) of the Debtor's pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including the Debtor's Benefit Plan; (f) any of the Debtor's, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including without limitation, claims that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1976 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, products liability law, product warranty law, alter ego, veil

piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtor or any obligations of the Debtor, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtor or its affiliates. For the avoidance of doubt, the Purchaser is not assuming, and shall not have any liability or responsibility whatsoever for, the Debtor's liabilities to (or in any way relating to) the Pension Benefit Guaranty Corporation.

41.    Except to the extent expressly included in the Assumed Liabilities or to enforce the APA or Permitted Encumbrances, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, the Committee, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding an Interest of any kind or nature whatsoever against, in or with respect to any of the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be forever barred, prohibited, estopped and permanently enjoined from (i) after the Closing Date, asserting, prosecuting or otherwise pursuing such Interest, whether by payment, setoff, or

otherwise, directly or indirectly, against the Purchaser, its affiliates, successors or assigns, and current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives (the "Purchaser Releasees"), or the Assets; and (ii) taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the APA and this Sale Order. For the avoidance of doubt, the foregoing shall not prevent the Debtor, its bankruptcy estate, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the APA. Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

42.    None of the Purchaser Releasees shall have or incur any liability to, or be subject to any action by the Debtor, or any of the Debtor's predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, or the entry into and consummation of the sale of the Assets.

43.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the APA and any related agreements.

44.    The failure specifically to include any particular provisions of the APA or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court, the Debtor and the Purchaser that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

45.    To the extent any provisions of this Order conflict with the terms and conditions of the APA, this Order shall govern and control.

46.    This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor's bankruptcy estate, the Debtor its successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's bankruptcy estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), the Purchaser and its successors and assigns, the Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required to report or insure any title in or to the Assets or who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Assets free and clear of all Interests, except as otherwise provided in the APA or this Sale Order, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

47.    The terms and provisions of the APA and this Sale Order shall be binding on and inure to the benefit of the Debtor, its bankruptcy estate, the Purchaser, the Debtor's creditors, and all other parties in interest, and any successors of the Debtor, the Purchaser and the Debtor's creditors, including any trustee, examiner, or receiver appointed in this case or under any chapter

of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, its creditors, or any trustee, examiner, or receiver.

48.    The provisions of this Sale Order are non-severable and mutually dependent.

49.    Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted cases of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, or in any related proceeding, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

50.    Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Debtor's request for waiver of the otherwise applicable stay of the Sale Order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to close under the APA at any time, subject to the terms of the APA.  The Purchaser has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtor and the Purchaser close under the APA the Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the APA if this Order or any authorization contained herein is reversed or modified on appeal.

51.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sale of the Assets.

52.    This Court shall retain exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith to which the Debtor is a party or that has been assigned by the Debtor to the Purchaser in all respects, and to decide any disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser; (b) interpret, implement and enforce the terms, conditions and provisions of this Sale Order and the APA, (c) determine the status, nature and extent of the Assets and any Assumed Contracts; (d) protect the Purchaser against any Interests in or against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the sale. Any proceeding commenced pursuant to this paragraph may be commenced as a contested matter.

53.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Sale Order shall govern.

**END OF ORDER**

**Section 2.01(a) of the Disclosure Schedule**

OTHER PERMITTED ENCUMBRANCES

NONE

## Section 2.01(a)(iii) of the Disclosure Schedule

| Count | Name & Mailing Address | Description of Contract |
|---|---|---|
| 1 | **WWGS, LLC d/b/a**<br>**Stonewall Corporation**<br>Attn: Louis J. Glick Esq.<br>2 Reservoire Circle, Suite 102<br>Baltimore, MD. 21208 | Lease of Non-Residential Real Estate<br>1600 Roland Heights Avenue<br>Baltimore, MD 21211<br>10 Year Lease maturing on 6/30/17 |
| 2 | **Kin Properties, Inc.**<br>Attn: Jeffrey Sandleman, President<br>185 NW Spanish River Blvd, Suite 100<br>Boca Raton, FL 33431-9921 | Lease of Non-Residential Real Estate<br>1700 W. 41st Street<br>Baltimore, MD 21211<br>3 Year Lease maturing on 1/31/16 |
| 3 | **Imelda Reno, LLC**<br>Attn: Edwin Gallagher<br>P. O. Box 779<br>Lafayette, CA. 94549 | Lease of Non-Residential Real Estate<br>9175 Moya Blvd., Unit D<br>Reno, NV 89506<br>10 Year Lease maturing on 9/30/20 |
| 5 | **Toyota Motor Credit Corp**<br>P. O. Box 2431<br>Carol Stream, IL. 60132-2431 | Lease for (12) Toyota Propane Powered Lift Trucks.<br>(11) located in Baltimore, MD.<br>(1) located in Reno, NV. |
| 6 | **De Lage Landen Financial Services**<br>1111 Old Eagle School Road<br>Wayne, PA. 19087 | Lease for (3) Caterpillar Lift Trucks.<br>(3) units located in Baltimore, MD. |
| 7 | **Ryder Transportation Services**<br>Attn: Mr. Gaylon Morris<br>201 Northpoint Blvd.<br>Baltimore, MD 21224 | Lease for (2) Trucks used for moving inventory<br>between Hedwin's Baltimore plant and warehouse.<br>Both, located in Baltimore, MD. |
| 8 | **Bowman Trailer Leasing**<br>Attn: Mike Starliper<br>10233 Governor Lane Blvd.<br>Williamsport, MD. 21795 | Lease for (14) "Road Worthy" and (5) "Non Road<br>Worthy" Storage Trailers.<br>All units located in Baltimore, MD. |
| 9 | **Automotive Rentals, Inc.**<br>Attn: Lisa Mrak<br>P. O. Box 8500-4375<br>Philadelphia, PA. 19178-4375 | Lease for (2) vehicles and Monthly Maintenance<br>agreement for (3) other vehicles.<br>(3) units located in Baltimore, MD.<br>(1) unit located in Cincinnati, OH.<br>(1) unit located in TX.<br>Client Code 2R78-01 |
| 10 | **ASG Software Solutions**<br>P. O. Box 2197<br>Carol Stream, IL. 60132-2197 | Annual Service Agreement on Safari Interface Software<br>One year agreement maturing 8/31/14. |

| 11 | **NCAS**<br>1501 S. Clinton St.<br>Baltimore, MD 21225 | Administrative Service Agreement<br>Medical and Dental Claims Admin. |
|----|---|---|
| 12 | **NCAS**<br>1501 S. Clinton St.<br>Baltimore, MD 21225 | Administrative Service Agreement<br>RX Benefits Claims Admin.<br>2/1/14 - 12/31/16 |
| 13 | **Symetra**<br>1 E. Uwchlan Avenue<br>Exton, PA. 19341 | Life Insurance & Long Term Disability<br>1/1/14 - 12/31/14 |
| 14 | **RCM&D**<br>555 Fairmount Avenue<br>Baltimore, MD 21286 | Payments for Insurance Policy Premiums<br>2/2/14 - 10/31/14 |
| 15 | **First Insurance Funding**<br>P. O. Box 66468<br>Chicago, IL 60062 | Payments for Insurance Policy Premiums<br>2/2/14 - 10/31/14 |
| 16 | **Constellation Energy**<br>1221 Lamar Street, Suite 750<br>Houston, Texas 77010 | Master Load Response Agreement |
| 17 | **AEG Environmental**<br>27 Liberty Street<br>Westminster, MD 21157 | Emergency Response Services Contract |

Schedule 2.01(a)(iii)

### Section 2.01(a)(v) of the Disclosure Schedule

LIST OF INTELLECTUAL PROPERTY ASSETS

See below list of Domestic and International Trademarks.

| Count | Trademark | Country | Number | Reg. Date | Exp. Date | Int'l Trade Class |
|-------|-----------|---------|--------|-----------|-----------|-------------------|
| 1 | WINPAK | USA | 1,126,204 | 10/23/99 | 10/23/19 | 21 |
| 2 | PAYLINER | USA | 935,844 | 06/20/02 | 06/20/12 (To be filed) | 20 |
| 3 | CUBE | USA | 869,219 | 05/13/69 | 05/13/19 | 21 |
| 4 | HEDPAK | USA | 841,836 | 01/09/68 | 01/09/18 | 2* |
| 5 | HEDLINER | USA | 836,510 | 10/10/67 | 10/10/17 | 2* |
| 6 | HEDLINER | USA | 832,339 | 07/25/67 | 07/25/17 | 2* |
| 7 | CUBITAINER | USA | 832,338 | 07/25/67 | 07/25/17 | 2* |
| 8 | TOPLINER | USA | 817,179 | 10/18/66 | 10/18/16 | 2* |
| 9 | WINLINER | USA | 767,332 | 03/31/04 | 03/31/14 | 2* |
| 10 | HEDWIN | USA | 712,330 | 03/24/01 | 03/14/11 (To be filed) | 2* |
| 11 | CUBITAINER | USA | 648,733 | 07/23/97 | 07/23/17 | 16, 20 |

There are no disputes or litigation pending, or threatened, in relation to the above Trac *Domestic

| Count | Trademark | Country | Number | Reg. Date | Exp. Date | Int'l Trade Class |
|-------|-----------|---------|--------|-----------|-----------|-------------------|
| Hedwin Corporation owns the following Trademarks: | | | | | | |
| 1 | CUBITAINER | AUSTRALIA | A153,944 | 05/19/59 | 05/19/18 | 16 |
| 2 | CUBITAINER | AUSTRIA | 46,304 | 07/03/61 | 09/30/21 | 21 |
| 3 | CUBITAINER | BENELUX | 53,977 | 07/13/71 | 07/13/21 | 16, 20, 21 |

Schedule 2.01(a)(v)

| 4 | CUBITAINER | CANADA | 116,132 | 12/04/74 | 12/04/19 | N/A |
|---|---|---|---|---|---|---|
| 5 | CUBITAINER | DENMARK | 00.800.1962 | 05/05/62 | 05/05/22 | 16, 20 |
| 6 | CUBITAINER | FINLAND | 41,172 | 07/03/63 | 07/15/23 | 16, 20 |
| 7 | CUBITAINER | FRANCE | 1,258,983 | 05/21/59 | 01/31/24 | 16, 20, 21 |
| 8 | CUBITAINER | GREAT BRITAIN | 775,708 | 03/24/58 | 03/24/17 | 17 |
| 9 | CUBITAINER | ITALY | 984,010 | 07/05/61 | 07/05/21 | 17, 21 |
| 10 | CUBITAINER | JAPAN | 596,102 | 09/05/62 | 09/05/22 | 18 |
| 11 | CUBITAINER | NEW ZEALAND | 70,077 | 12/19/72 | 12/19/20 | 16 |
| 12 | CUBITAINER | NORWAY | 58,829 | 02/22/62 | 02/22/22 | 16 |
| 13 | CUBITAINER | PORTUGAL | 168,331 | 12/13/61 | 12/31/21 | 21 |
| 14 | CUBITAINER | SOUTH AFRICA | 59/1451 | 05/18/59 | 05/18/13 (Filed 5/18/2013) | 20 |
| 15 | CUBITAINER | SPAIN | 384,509 | 04/17/61 | 06/21/21 | 13 |
| 16 | CUBITAINER | SWEDEN | 106,432 | 06/14/61 | 06/14/23 | 20 |
| 17 | CUBITAINER | SWITZERLAND | 287,973 | 04/07/77 | 04/17/17 | 21 |
| 18 | HEDLINER | CANADA | 138,253 | 11/27/79 | 11/27/24 | N/A |

**Section 2.01(a)(vi) of the Disclosure Schedule**

LIST OF TANGIBLE PERSONAL PROPERTY

| Asset ID | Description | Acqu. Date | Life Yr Mo | Book Cost |
|---|---|---|---|---|
| | | | | |
| 000140 | ANALOG PHONES - 65 | 2/1/2004 | 5 yr 0 mo | 650.00 |
| 000170 | TOSHIBA 4550 COPIER | 2/1/2004 | 5 yr 0 mo | 4,695.00 |
| 000180 | TOSHIBA 4550 COPIER | 2/1/2004 | 5 yr 0 mo | 4,695.00 |
| 000189 | TOSHIBA 4550 COPIER | 2/1/2004 | 5 yr 0 mo | 4,695.00 |
| 000193 | TWO COMPRESSION TABLES | 2/1/2004 | 10 yr 0 mo | 8,472.00 |
| 000194 | GUARD SCANNER SYSTEM | 2/1/2004 | 10 yr 0 mo | 1,298.00 |
| 000195 | BREAKRM AC CONDESING UNIT&VALVE | 2/1/2004 | 10 yr 0 mo | 3,633.00 |
| 000196 | TWO CAD SOFTWARE WORKSTATIONS | 2/1/2004 | 10 yr 0 mo | 11,348.00 |
| 000197 | NETWORK RF SYSTEM | 2/1/2004 | 3 yr 0 mo | 29,204.00 |
| 000198 | HP 4200dtn PRINTER - CUST. SRVC | 2/1/2004 | 3 yr 0 mo | 1,652.00 |
| 000200 | LAPTOP - IBM THINKPAD - S.STABLEY | 2/1/2004 | 3 yr 0 mo | 1,342.00 |
| 000201 | HP LASERJET 4200dtn PRINTER - CUBES | 2/1/2004 | 3 yr 0 mo | 1,767.00 |
| 000203 | LAPTOP - IBM THINKPAD - MIS | 2/1/2004 | 3 yr 0 mo | 1,331.00 |
| 000205 | LAPTOP - IBM THINKPAD - C.SIEBENSON | 2/1/2004 | 3 yr 0 mo | 1,331.00 |
| 000208 | LAPTOP - IBM THINKPAD - MIS | 2/1/2004 | 3 yr 0 mo | 1,330.00 |
| 000209 | LAPTOP - IBM THINKPAD - D.RUBLEY | 2/1/2004 | 3 yr 0 mo | 1,330.00 |
| 000210 | HP LASERJET 4200dtn PRINTER - DISTRIBUTION | 2/1/2004 | 3 yr 0 mo | 1,746.00 |
| 000211 | HP LASERJET 4200dtn PRINTER - MIS | 2/1/2004 | 3 yr 0 | 1,745.00 |

| | | | mo | |
|---|---|---|---|---|
| 000212 | LAPTOP - IBM THINKPAD | 2/1/2004 | 3 yr 0 mo | 1,330.00 |
| 000213 | HP LASERJET 4200dtn PRINTER - PURCHASING | 2/1/2004 | 3 yr 0 mo | 1,745.00 |
| 000214 | HP LASERJET 2300n PRINTER - DEVELOPMENT | 2/1/2004 | 3 yr 0 mo | 1,745.00 |
| 000216 | REBUILD ROOF - HARTIG ROOM(BEKUM) | 2/1/2004 | 8 yr 5 mo | 5,198.00 |
| 000217 | VENTILATION UPPER CUBE DEPT | 2/1/2004 | 8 yr 5 mo | 9,207.00 |
| 000218 | REPAIR FENCE DAMAGE | 2/1/2004 | 9 yr 0 mo | 1,275.00 |
| 000219 | RENOVATE RESTROOMS CUBE/CAFETERIA | 2/1/2004 | 8 yr 5 mo | 52,676.00 |
| 000220 | MOLD- REPLACE 10oz GIM | 2/1/2004 | 10 yr 0 mo | 13,046.00 |
| 000221 | TF1 TRIMTOOLING INSTALL PLATE SPACERS | 2/1/2004 | 10 yr 0 mo | 2,855.00 |
| 000222 | IN10 B MOLD REWORK 8 CAV TUBE | 2/1/2004 | 10 yr 0 mo | 7,575.00 |
| 000223 | IN17 LAB T&E 70MM CAP | 2/1/2004 | 10 yr 0 mo | 5,414.00 |
| 000224 | IN15 MOLD REPLACE INNER CORES | 2/1/2004 | 10 yr 0 mo | 13,415.00 |
| 000225 | IN13 PISTON MOLD SPLIT | 2/1/2004 | 10 yr 0 mo | 2,720.00 |
| 000226 | MOLD BACK PLATES 1gl RND BOTTLE | 2/1/2004 | 10 yr 0 mo | 3,250.00 |
| 000227 | NECK INSERTS RESIZE 63mm & 63mmTE | 2/1/2004 | 10 yr 0 mo | 2,600.00 |
| 000228 | PLEATED FORMING RING MODIFY CAV#2 | 2/1/2004 | 10 yr 0 mo | 2,061.00 |
| 000229 | TF1 5gl TOOLING 1/2" SPACER PLATE | 2/1/2004 | 10 yr 0 mo | 3,600.00 |
| 000230 | 17x9 POT LINER TOOLING | 2/1/2004 | 10 yr 0 mo | 19,758.00 |
| 000231 | TOP PLEATED SEAL RINGS 55gl | 2/1/2004 | 10 yr 0 mo | 5,147.00 |
| 000232 | DIE LIPS FABRICATE ONE SET OF 2 | 2/1/2004 | 10 yr 0 mo | 5,943.00 |
| 000233 | RING&TUBE GUAGES 38mm OMNITECH | 2/1/2004 | 10 yr 0 mo | 2,205.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000234 | DIE LIPS & FLOW CHANNEL 10121 | 2/1/2004 | 10 yr 0 mo | 3,795.00 |
| 000235 | MOLD 20L ETCHED (LINE F&G) | 2/1/2004 | 10 yr 0 mo | 18,655.00 |
| 000237 | DESIGN & BLD LINER WEEPHOLE CUTTER | 2/1/2004 | 10 yr 0 mo | 6,353.00 |
| 000238 | CONVERT GRANULATOR 460V TO 230V | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000239 | PL6 REBUILD FORM STATION | 2/1/2004 | 10 yr 0 mo | 1,770.00 |
| 000240 | 1998 CATERPILLAR LIFT TRUCK | 2/1/2004 | 10 yr 0 mo | 7,900.00 |
| 000241 | OVEN SCREEN CONTROLLER | 2/1/2004 | 10 yr 0 mo | 1,699.00 |
| 000242 | REPLACE OUTPUT SHAFT EXTRUDER | 2/1/2004 | 10 yr 0 mo | 7,048.00 |
| 000243 | SHEET 3 REBUILD 200HP& EXTR DRIVE | 2/1/2004 | 10 yr 0 mo | 6,510.00 |
| 000244 | ROTARY SHUTTLE SHOCK ABSORBERS | 2/1/2004 | 10 yr 0 mo | 2,345.00 |
| 000245 | REBUILD GRANULATOR ARBOR | 2/1/2004 | 10 yr 0 mo | 725.00 |
| 000246 | STATIC FIELD METER | 2/1/2004 | 10 yr 0 mo | 737.00 |
| 000247 | LEGGE SURFACE METER | 2/1/2004 | 10 yr 0 mo | 795.00 |
| 000248 | IN17 CONVEYOR BELT & COOLING FAN | 2/1/2004 | 10 yr 0 mo | 1,655.00 |
| 000249 | KEYENCE SYS 92mm SQUARE BACKLIGHT | 2/1/2004 | 10 yr 0 mo | 1,313.00 |
| 000250 | INJECTION MOLDER 18 | 2/1/2004 | 10 yr 0 mo | 169,718.00 |
| 000251 | IMPCO REAR SEAL SUPPORT BEARING | 2/1/2004 | 10 yr 0 mo | 2,311.00 |
| 000253 | REBLD 5gl RECTANGLE W/P SLEEVER | 2/1/2004 | 10 yr 0 mo | 4,718.00 |
| 000255 | ADD RAMPS TO STRAPPER | 2/1/2004 | 10 yr 0 mo | 450.00 |
| 000257 | SULLAIR DRYER/REFRIG COMPRESSOR UTL ROOM | 2/1/2004 | 10 yr 0 mo | 1,778.00 |
| 000258 | REPAIR SHEET 2 NDC THICKNESS GAGE | 2/1/2004 | 10 yr 0 | 4,909.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000259 | TP4 REBUILD TRAY TRANSPORT SYSTEM | 2/1/2004 | 10 yr 0 mo | 6,056.00 |
| 000260 | RC200 REBUILD FRONT GEAR BOX | 2/1/2004 | 10 yr 0 mo | 21,738.00 |
| 000261 | AUTOFLYCUTTER HEADS DESIGN BLD & TEST | 2/1/2004 | 10 yr 0 mo | 9,073.00 |
| 000262 | CUBE CHILLER COMPRESSOR#1 REPLACED | 2/1/2004 | 10 yr 0 mo | 13,947.00 |
| 000263 | RC9 INSTALL EXTRUDER | 2/1/2004 | 10 yr 0 mo | 13,315.00 |
| 000264 | FABRICATE 12 FLYCUTTER HEADS | 2/1/2004 | 10 yr 0 mo | 12,479.00 |
| 000265 | TOWER SUMP FABRICATE AND INSTALL | 2/1/2004 | 10 yr 0 mo | 9,760.00 |
| 000267 | RC200 INSTALL EXTRUDER ON CUBE 4 | 2/1/2004 | 10 yr 0 mo | 10,618.00 |
| 000268 | SURGE BIN LOADER REPLACE w/ ACESRC16 | 2/1/2004 | 10 yr 0 mo | 1,130.00 |
| 000269 | SURGE BIN LOADER REPLACE w/ AECSRC16 | 2/1/2004 | 10 yr 0 mo | 1,131.00 |
| 000270 | BERLYN SCRN CHANGER SLIDE PLATES & RINGS | 2/1/2004 | 10 yr 0 mo | 3,420.00 |
| 000271 | EVAPORATOR IN AEC CHILLER | 2/1/2004 | 10 yr 0 mo | 14,650.00 |
| 000275 | AEC 2HP TEMPERATURE CONTROLLER | 2/1/2004 | 10 yr 0 mo | 2,434.00 |
| 000276 | AEC 2HP TEMPERATURE CONTROLLER | 2/1/2004 | 10 yr 0 mo | 2,434.00 |
| 000277 | PVDC COATING TRANSFORMER | 2/1/2004 | 10 yr 0 mo | 5,168.00 |
| 000278 | AIR POWERED PVDC DRUM MIXER | 2/1/2004 | 10 yr 0 mo | 464.00 |
| 000279 | DUMPSTER | 2/1/2004 | 10 yr 0 mo | 1,139.00 |
| 000280 | SNOW BLOWER 9hp ELECTRIC STARTER | 2/1/2004 | 10 yr 0 mo | 756.00 |
| 000282 | 70mm TE NECK INSERTS | 2/1/2004 | 10 yr 0 mo | 1,928.00 |
| 000286 | PLANT PROCESS CHILLER CONDENSER | 2/1/2004 | 10 yr 0 mo | 6,990.00 |
| 000287 | INGERSOLL RAND AIR DRYER CONTROLS | 2/1/2004 | 10 yr 0 | 3,487.00 |

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000288 | AIR COMPRESSOR REPAIRS | 2/1/2004 | 10 yr 0 mo | 3,269.00 |
| 000290 | BOOMLIFT - GENIE 1995 ELECTRIC | 2/1/2004 | 7 yr 0 mo | 5,500.00 |
| 000291 | TRAILER 1984 FRUEHAUF 48' | 2/1/2004 | 5 yr 0 mo | 4,620.00 |
| 000292 | TRAILER 1985 MONOM 53' | 2/1/2004 | 5 yr 0 mo | 2,000.00 |
| 000293 | TRAILER 1985 MONOM 53' | 2/1/2004 | 5 yr 0 mo | 2,000.00 |
| 000295 | TRAILER 1985 MONOM 53' | 2/1/2004 | 5 yr 0 mo | 2,000.00 |
| 000296 | TRAILER 1988 STOUGHTON 53' | 2/1/2004 | 5 yr 0 mo | 3,000.00 |
| 000297 | TRAILER 1988 STOUGHTON 53' | 2/1/2004 | 5 yr 0 mo | 3,000.00 |
| 000298 | TRAILER 1988 STOUGHTON 53' | 2/1/2004 | 5 yr 0 mo | 3,000.00 |
| 000299 | TRAILER 1987 GREAT DANE 53' | 2/1/2004 | 5 yr 0 mo | 3,930.00 |
| 000300 | TRAILER 1986 GREAT DANE 53' | 2/1/2004 | 5 yr 0 mo | 3,420.00 |
| 000301 | TRAILER 1986 WABASH NATIONAL | 2/1/2004 | 5 yr 0 mo | 2,000.00 |
| 000302 | TRAILER 1987 WABASH NATIONAL | 2/1/2004 | 5 yr 0 mo | 2,000.00 |
| 000305 | HYDRAULIC CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 157,000.00 |
| 000306 | RC21 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 238,000.00 |
| 000307 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000308 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000309.1 | MERRICK WEIGHT FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000309.2 | MERRICK WEIGHT FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000310 | OMNI ATTACHER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000311 | OMNI DEFLATOR/STACKER | 2/1/2004 | 10 yr 0 | 20,000.00 |

| | | | mo | |
|---|---|---|---|---|
| 000312 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000313 | AIR/OIL CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000314 | RC14 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 55,000.00 |
| 000315 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000316 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000317.1 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000317.2 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000318 | OMNI ATTACHER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000319 | OMNI DEFLATOR/STACKER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000320 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000321 | AIR/OIL CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000322 | RC200 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 80,000.00 |
| 000323 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000324 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000325.1 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000325.2 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000326 | OMNI ATTACHER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000327 | OMNI DEFLATOR/STACKER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000328 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000329 | ARI/OIL CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000330 | RC14 EXTRUDER | 2/1/2004 | 10 yr 0 | 216,000.00 |

| | | | mo | |
|---|---|---|---|---|
| 000331 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000332 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000333.1 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000333.2 | MERRICK FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000334 | OMNI ATTACHER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000335 | OMNI DEFLATOR/STACKER | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000336 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000339 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000344 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000347 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000350 | OMNI ATTACHER-ADDTIONAL COSTS | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000351 | OMNI DEFLATOR | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000353 | ELECTRIC CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 230,000.00 |
| 000354 | RC40 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 288,000.00 |
| 000355 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000356 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000357 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000359 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000360 | HYDRAULIC CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 205,000.00 |
| 000361 | RC19 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 288,000.00 |
| 000362 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 | 15,000.00 |

| | | | mo | |
|---|---|---|---|---|
| 000363 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000364 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000365 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000366 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000367 | GIM AUTOMATION | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000368 | LASER CUTTER | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000369 | HYDRAULIC CUBE FORMER | 2/1/2004 | 10 yr 0 mo | 266,000.00 |
| 000370 | RC14 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 55,000.00 |
| 000371 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000372 | SCREEN CHANGER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000373 | MERRICK WEIGHT FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000374 | MERRICK WEIGHT FEEDER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000375 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000376 | GIM AUTOMATION | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000377 | LASER CUTTER | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000378 | PVDC COATING LINE | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000379 | SEMI-AUTOMATIC DEFLATOR | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000380 | SEMI-AUTOMATIC DEFLATOR | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000381 | GRANULATOR 50HP | 2/1/2004 | 10 yr 0 mo | 9,500.00 |
| 000382 | SULLARI 50HP VACUUM PUMP | 2/1/2004 | 10 yr 0 mo | 8,500.00 |
| 000383 | SULLAIR 25HP VACUUM PUMP | 2/1/2004 | 10 yr 0 | 7,500.00 |

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000384 | SULLAIR 25HP VACUUM PUMP | 2/1/2004 | 10 yr 0 mo | 7,500.00 |
| 000385 | SULLAIR 25HP VACUUM PUMP | 2/1/2004 | 10 yr 0 mo | 7,500.00 |
| 000386 | CHILLED WATER SYSTEM | 2/1/2004 | 10 yr 0 mo | 40,000.00 |
| 000387 | LANTECH STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 7,000.00 |
| 000388 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000389 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000390 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000391 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000392 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000393 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000394 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000395 | OMNITECH ATTACHERS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000396 | OMNITECH DEFALTOR/STACKER | 2/1/2004 | 10 yr 0 mo | 35,000.00 |
| 000397 | REGRIND HANDLING SYSTEM - LOWER CUBE | 2/1/2004 | 10 yr 0 mo | 50,000.00 |
| 000398 | REGRIND HANDLING SYSTEM - UPPER CUBE | 2/1/2004 | 10 yr 0 mo | 22,500.00 |
| 000399 | MATERIAL HANDLING SYSTEM - LOWER CUBE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000400 | MATERIAL HANDLING SYSTEM - UPPER CUBE | 2/1/2004 | 10 yr 0 mo | 12,500.00 |
| 000401 | MISC TOOLS, LADDERS, ETC | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000403 | OFFICE EQUIPMENT | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000410 | (2) HEDWIN ATTACHER & (1) FLYCUTTER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000411 | AIR/OIL CUBE FORMER | 2/1/2004 | 10 yr 0 | 30,000.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000412 | RC9 EXTRUDER | 2/1/2004 | 10 yr 0 mo | 360,000.00 |
| 000413 | HEDWIN CUBE DIE | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000414 | SCREEN CHANGER - LARGE | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000415 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000417 | (2) HEDWIN ATTACHERS & (1) FLYCUTTER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000422 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 26,300.00 |
| 000423 | MERRICK WEIGH FEEDER | 2/1/2004 | 10 yr 0 mo | 26,300.00 |
| 000425 | (2) HEDWIN ATTACHERS & (1) FLYCUTTER | 2/1/2004 | 10 yr 0 mo | 15,000.00 |
| 000434 | PRODEX SHEETING LINE | 2/1/2004 | 10 yr 0 mo | 85,000.00 |
| 000435 | EDGE SCRAP GRANULATOR | 2/1/2004 | 10 yr 0 mo | 2,250.00 |
| 000436 | DUMPER GRANULATOR | 2/1/2004 | 10 yr 0 mo | 6,000.00 |
| 000437 | WELLEX SHEETING LINE | 2/1/2004 | 10 yr 0 mo | 100,000.00 |
| 000438 | TF1 FORMER | 2/1/2004 | 10 yr 0 mo | 67,500.00 |
| 000441 | PAYLINER 6 FORMER | 2/1/2004 | 10 yr 0 mo | 12,500.00 |
| 000442 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000443 | TOPLINER 4 FORMER | 2/1/2004 | 10 yr 0 mo | 12,500.00 |
| 000444 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000448 | FOREMOST GRANULATOR 25HP | 2/1/2004 | 10 yr 0 mo | 2,500.00 |
| 000449 | LINCOLN WELDER | 2/1/2004 | 10 yr 0 mo | 850.00 |
| 000450 | MISC TOOLS & EQUIPMENT | 2/1/2004 | 10 yr 0 mo | 8,000.00 |
| 000451 | HEDLINER SHEETING LINE 3 | 2/1/2004 | 10 yr 0 | 125,000.00 |

| | | | | mo | |
|---|---|---|---|---|---|
| 000452 | HEDLINER FORMER 1 | | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000453 | HEDLINER FORMER 3 | | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000454 | HEDLINER FORMER 4 | | 2/1/2004 | 10 yr 0 mo | 325,000.00 |
| 000455 | GRANULATOR | | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000456 | GRANULATOR | | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000457 | GRANULATOR | | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000458 | MISC TOOLS & EQUIPMENT | | 2/1/2004 | 10 yr 0 mo | 6,500.00 |
| 000459 | OFFLINE GRANULATORS | | 2/1/2004 | 10 yr 0 mo | 3,500.00 |
| 000460 | SURGE BIN WITH LOADER | | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000461 | BOX TIPPER | | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000462 | BOX TIPPER | | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000463 | BOX TIPPER - ESGIGN | | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000464 | OFFLINE GRANULATOR | | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000465 | MISC TOOLS & EQUIPMENT | | 2/1/2004 | 10 yr 0 mo | 8,500.00 |
| 000466 | INJECTION MOLDER 10 | | 2/1/2004 | 10 yr 0 mo | 52,500.00 |
| 000467 | Montior and Cable for Cincinatti Milacron Hot Runner controller | | 2/1/2004 | 10 yr 0 mo | 9,000.00 |
| 000468 | INJECTION MOLDER 11 | | 2/1/2004 | 10 yr 0 mo | 55,000.00 |
| 000469 | INJECTION MOLDER 12 | | 2/1/2004 | 10 yr 0 mo | 60,000.00 |
| 000470 | INJECTION MOLDER 13 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000471 | INJECTION MOLDER 14 | | 2/1/2004 | 10 yr 0 mo | 45,000.00 |
| 000472 | INJECTION MOLDER 15 | | 2/1/2004 | 10 yr 0 mo | 52,250.00 |

| | | | | mo | |
|---|---|---|---|---|---|
| 000473 | INJECTION MOLDER 16 | | 2/1/2004 | 10 yr 0 mo | 60,000.00 |
| 000474 | INJECTION MOLDER 17 | | 2/1/2004 | 10 yr 0 mo | 125,000.00 |
| 000476 | RUNNER CONTROLLER | | 2/1/2004 | 10 yr 0 mo | 7,000.00 |
| 000477 | GLUE MACHINE | | 2/1/2004 | 10 yr 0 mo | 8,000.00 |
| 000478 | SIGNODE BANDER | | 2/1/2004 | 10 yr 0 mo | 1,000.00 |
| 000479 | SIGNODE BANDER | | 2/1/2004 | 10 yr 0 mo | 1,000.00 |
| 000481 | AEC WCD-40 CHILLER | | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000482 | LANTECH STRETCH WRAPPER | | 2/1/2004 | 10 yr 0 mo | 6,750.00 |
| 000483 | SIGNODE STAPPER | | 2/1/2004 | 10 yr 0 mo | 2,500.00 |
| 000484 | MISC TOOLS & EQUIPMENT | | 2/1/2004 | 10 yr 0 mo | 45,000.00 |
| 000485 | SULLAIR LS 20-200WC COMPRESSOR | | 2/1/2004 | 10 yr 0 mo | 40,000.00 |
| 000486 | POWER FOR INGERSOL RAND LLE 125HP COMPRESSOR | | 2/1/2004 | 10 yr 0 mo | 11,500.00 |
| 000487 | INGERSOL RAND DRYER | | 2/1/2004 | 10 yr 0 mo | 4,500.00 |
| 000488 | AEC CHILLER 50 TON SYSTEM | | 2/1/2004 | 10 yr 0 mo | 60,000.00 |
| 000489 | IMPCO 1; B-30 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000490 | IMPCO 2; B-30 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000491 | IMPCO 3; B-30 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000492 | IMPCO 8; B-30 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000493 | IMPCO 10; B-30 | | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000494 | GRANULATOR | | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000495 | LEAK TESTER | | 2/1/2004 | 10 yr 0 | 5,000.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000496 | CONVEYORS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000497 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000498 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000499 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000500 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 12,500.00 |
| 000501 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000502 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000503 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000504 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000505 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000506 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000507 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000508 | CASE ERECTOR | 2/1/2004 | 10 yr 0 mo | 11,500.00 |
| 000509 | CONVEYORS | 2/1/2004 | 10 yr 0 mo | 4,500.00 |
| 000510 | CONVEYORS | 2/1/2004 | 10 yr 0 mo | 4,500.00 |
| 000511 | CONVEYORS | 2/1/2004 | 10 yr 0 mo | 4,500.00 |
| 000512 | CONVEYORS | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000513 | BF2 - BATTENFELD BFB2-L | 2/1/2004 | 10 yr 0 mo | 575,000.00 |
| 000514 | STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 8,000.00 |
| 000516 | STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 6,750.00 |
| 000517 | BEKUM B504-E | 2/1/2004 | 10 yr 0 | 625,000.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000518 | STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 6,750.00 |
| 000519 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 12,500.00 |
| 000520 | KEB 30 | 2/1/2004 | 10 yr 0 mo | 75,000.00 |
| 000521 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000524 | FLAME TREATER - IN-LINE | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000526 | IMPCO 11; B-30 | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000528 | GRANULATOR | 2/1/2004 | 10 yr 0 mo | 9,000.00 |
| 000529 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000530 | LEAK TESTER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000531 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000532 | FLAME TREATER | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000534 | CONVEYOR | 2/1/2004 | 10 yr 0 mo | 30,000.00 |
| 000536 | BLOWN FILM LINE | 2/1/2004 | 10 yr 0 mo | 45,000.00 |
| 000537 | GRANULATOR 25HP | 2/1/2004 | 10 yr 0 mo | 2,500.00 |
| 000538 | BLOWN FILM DIE/CAVITY | 2/1/2004 | 10 yr 0 mo | 33,500.00 |
| 000539 | BLOWN FILM DIE/CAVITY | 2/1/2004 | 10 yr 0 mo | 33,500.00 |
| 000540 | GRANULATOR NELMOR 20HP | 2/1/2004 | 10 yr 0 mo | 2,850.00 |
| 000541 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000542 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000543 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000544 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000545 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000546 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000547 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000548 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000549 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000550 | SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000551 | TWENTY TABLES | 2/1/2004 | 10 yr 0 mo | 12,000.00 |
| 000552 | DIE PRESS | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000553 | 60" UNWIND/REWIND STAND | 2/1/2004 | 10 yr 0 mo | 800.00 |
| 000554 | FIVE SECTIONS H.D. RACK | 2/1/2004 | 10 yr 0 mo | 1,000.00 |
| 000555 | THIRTY-ONE SECTION STACKING RACKS | 2/1/2004 | 10 yr 0 mo | 3,100.00 |
| 000556 | AMPLAS BAG LINE | 2/1/2004 | 10 yr 0 mo | 25,000.00 |
| 000557 | FLAT BAR SEALER 80" | 2/1/2004 | 10 yr 0 mo | 1,500.00 |
| 000558 | MISC TOOLS, LADDERS, ETC | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000559 | INGERSOL RAND COMPRESSOR 30HP | 2/1/2004 | 10 yr 0 mo | 9,000.00 |
| 000560 | AEC CHILLER 20HP | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000561 | TINIUS OLSEN TENSILE TESTER | 2/1/2004 | 10 yr 0 mo | 7,500.00 |
| 000562 | O.G.P. OPTICAL MEASURING MACHINE | 2/1/2004 | 10 yr 0 mo | 8,500.00 |
| 000563 | ROI OPTICAL MEASURING MACHINE | 2/1/2004 | 10 yr 0 mo | 9,500.00 |
| 000564 | HUMIDITY CHAMBER - HOT PACK | 2/1/2004 | 10 yr 0 mo | 2,500.00 |
| 000565 | ELECTRIC OVEN - GRUENBURG | 2/1/2004 | 10 yr 0 | 2,250.00 |

Schedule 2.01(a)(vi)

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000566 | INGERSOLRAND SPECTROPHOTOMETER | 2/1/2004 | 10 yr 0 mo | 1,500.00 |
| 000567 | SHEFFIELD CMM | 2/1/2004 | 10 yr 0 mo | 4,500.00 |
| 000569 | MISC LAB TOOLS & EQUIPMENT | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000570 | INDCO MIKER 5 GAL | 2/1/2004 | 10 yr 0 mo | 1,250.00 |
| 000571 | MTL VIBRATION TESTER | 2/1/2004 | 10 yr 0 mo | 1,000.00 |
| 000572 | WALKIN FREEZER | 2/1/2004 | 10 yr 0 mo | 7,000.00 |
| 000573 | KMF BALER | 2/1/2004 | 10 yr 0 mo | 7,500.00 |
| 000574 | ARCWELD POWR SUPPLY 400AMP AC/DC | 2/1/2004 | 10 yr 0 mo | 700.00 |
| 000575 | ARCWELD POWR SUPPLY 250AMP AC/DC | 2/1/2004 | 10 yr 0 mo | 400.00 |
| 000576 | UNIVERSAL BELTSANDER W/ STAND 6X24 | 2/1/2004 | 10 yr 0 mo | 300.00 |
| 000577 | 10" DIA DISC 6X24 BELTSANDER W/ STAND | 2/1/2004 | 10 yr 0 mo | 400.00 |
| 000578 | 20" SINGLE SPINDLE FLOORDRILL W/ VISE | 2/1/2004 | 10 yr 0 mo | 600.00 |
| 000579 | 2 HOLE BLAST CABINET W/ SUPP EQUIP | 2/1/2004 | 10 yr 0 mo | 550.00 |
| 000580 | 2 HOLE BLAST CABINET W/ SUPP EQUIP | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000581 | 2 HOLE BLAST CABINET W/ SUPP EQUIP | 2/1/2004 | 10 yr 0 mo | 550.00 |
| 000582 | HAND BRAKE 36" | 2/1/2004 | 10 yr 0 mo | 900.00 |
| 000583 | RECIPROCATING 40 HP AIR COMPRESSOR | 2/1/2004 | 10 yr 0 mo | 300.00 |
| 000584 | 10" DIA 5 HP TABLE SAW | 2/1/2004 | 10 yr 0 mo | 175.00 |
| 000585 | UNIVERSAL VAR SPEED VERT MILLING MACH | 2/1/2004 | 10 yr 0 mo | 1,750.00 |
| 000586 | JIG SAW W/ 25X25 TABLE | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000587 | 150ARC WELDING POWR SUPLY & GEN | 2/1/2004 | 10 yr 0 | 850.00 |

Schedule 2.01(a)(vi)

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000588 | MISC MAINT. MACH & EQUIP INCLUDING | 2/1/2004 | 10 yr 0 mo | 8,500.00 |
| 000589 | VAR SPEED MILLING MACH W/ AXIS TRAVEL | 2/1/2004 | 10 yr 0 mo | 8,500.00 |
| 000590 | VERTICAL MACHING CNTR W/AXIS TRAVEL | 2/1/2004 | 10 yr 0 mo | 32,500.00 |
| 000591 | UNIVERSAL VERTICAL MILLING MACH | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000592 | 8"DIA COL X 30" RADIAL ARM DRILL | 2/1/2004 | 10 yr 0 mo | 1,500.00 |
| 000593 | HORIZONTAL MILLING MACHINE | 2/1/2004 | 10 yr 0 mo | 750.00 |
| 000594 | 15" DIA ROTARY CHUCK | 2/1/2004 | 10 yr 0 mo | 325.00 |
| 000595 | ARBOR PRESS W/ STAND | 2/1/2004 | 10 yr 0 mo | 85.00 |
| 000596 | MECHANICAL POWER SHEAR | 2/1/2004 | 10 yr 0 mo | 500.00 |
| 000597 | 30" VERTICAL BANDSAW W/ | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000598 | 40T IRONWORKER | 2/1/2004 | 10 yr 0 mo | 4,000.00 |
| 000599 | 9X18 HORIZONTAL BANDSAW | 2/1/2004 | 10 yr 0 mo | 650.00 |
| 000600 | 14X40 ENGINE LATHE WITH.. | 2/1/2004 | 10 yr 0 mo | 7,000.00 |
| 000601 | 27X80 NATURAL GAP ENGINE LATHE W/. | 2/1/2004 | 10 yr 0 mo | 2,500.00 |
| 000603 | HAAS CNC LATHE WITH... | 2/1/2004 | 10 yr 0 mo | 17,500.00 |
| 000604 | MISC MACH SHOP MACH&EQUIP INCLUDING | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000605 | MISC BLDG 10 MACHINERY & EQUIP | 2/1/2004 | 10 yr 0 mo | 65,000.00 |
| 000606 | NINE SECTION HD RACKS | 2/1/2004 | 10 yr 0 mo | 1,800.00 |
| 000607 | LANTECH STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 6,750.00 |
| 000608 | SIGNODE STRAPPER | 2/1/2004 | 10 yr 0 mo | 7,500.00 |
| 000609 | PACKAGING LINE 2 | 2/1/2004 | 10 yr 0 | 20,000.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000610.1 | LINE 1-ABC 330 CARTON FORMER & BTM SEALER | 2/1/2004 | 10 yr 0 mo | 74,000.00 |
| 000610.2 | LINE 1-CUBE INFLATION OVEN | 2/1/2004 | 10 yr 0 mo | 41,000.00 |
| 000610.3 | LINE 1-TOP FLAP SEALER | 2/1/2004 | 10 yr 0 mo | 4,000.00 |
| 000610.4 | LINE 1-CARTON PALLETIZER | 2/1/2004 | 10 yr 0 mo | 72,000.00 |
| 000610.5 | LINE 1-INK JET PRINTER | 2/1/2004 | 10 yr 0 mo | 9,000.00 |
| 000611 | MISC EQUIPMENT | 2/1/2004 | 10 yr 0 mo | 7,000.00 |
| 000612 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000613 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000614 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000615 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000616 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000617 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000618 | SILO | 2/1/2004 | 10 yr 0 mo | 10,000.00 |
| 000620 | MISC OFFICE EQUIPMENT IN BUILDING 7 | 2/1/2004 | 10 yr 0 mo | 35,000.00 |
| 000623 | REGRIND SYSTEM - GRANULATOR ENCLOSURE | 2/1/2004 | 10 yr 0 mo | 22,500.00 |
| 000624 | PACKING STATION- (6) STATION TOP SEALER | 2/1/2004 | 10 yr 0 mo | 5,000.00 |
| 000625 | SIGNODE STRAPPER 30 X 60 | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000626 | STRAPPER 30 X 60 | 2/1/2004 | 10 yr 0 mo | 3,000.00 |
| 000629 | PACKAGING LINE - CUBE ASSEMBLY | 2/1/2004 | 10 yr 0 mo | 23,500.00 |
| 000630 | HIGHLIGHT STRETCH WRAPPER | 2/1/2004 | 10 yr 0 mo | 4,000.00 |
| 000632 | HD STITCHER | 2/1/2004 | 10 yr 0 | 1,250.00 |

| | | | mo | |
|---|---|---|---|---|
| 000633 | HD STITCHER | 2/1/2004 | 10 yr 0 mo | 1,250.00 |
| 000639 | VACUUM FEED SYSTEM | 2/1/2004 | 10 yr 0 mo | 20,000.00 |
| 000640 | INGERSOL RAND DRYER | 2/1/2004 | 10 yr 0 mo | 3,750.00 |
| 000659 | PORTABLE GRANULATOR 25HP 12x20 OPENING | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000661 | SOLBERGA 20" VENTING FLOOR DRILL | 2/1/2004 | 10 yr 0 mo | 300.00 |
| 000668 | BRIDGEPORT UNIVERSAL 1HP VERTICAL MILL | 2/1/2004 | 10 yr 0 mo | 2,000.00 |
| 000669 | 75T HYDRAULIC SHOP PRESS | 2/1/2004 | 10 yr 0 mo | 1,500.00 |
| 000673 | 5 MOLDS VACUUM | 2/1/2004 | 5 yr 0 mo | 120.00 |
| 000674 | MOLD 1 GAL W/ INSERTS & EMBOSSMENT | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000675 | MOLDS 1 GAL E & F | 2/1/2004 | 5 yr 0 mo | 132.00 |
| 000676 | MOLDS 1 QUART A & B | 2/1/2004 | 5 yr 0 mo | 90.00 |
| 000677 | MOLD 20 L WITH INSERTS | 2/1/2004 | 5 yr 0 mo | 120.00 |
| 000678 | MOLD 1GAL 2 UP | 2/1/2004 | 9 yr 0 mo | 23,840.00 |
| 000679 | MOLDS BOTTOM SECTIONS H/P C & D | 2/1/2004 | 5 yr 0 mo | 460.00 |
| 000680 | MOLD WINPAK J 5GL ALUM SWING HANDLE | 2/1/2004 | 5 yr 0 mo | 497.00 |
| 000681 | MOLDS HEDPAK B & H | 2/1/2004 | 5 yr 0 mo | 242.00 |
| 000682 | MOLDS HEDPAK 5 GAL C & D | 2/1/2004 | 5 yr 0 mo | 286.00 |
| 000683 | MOLDS WINPAK D & E | 2/1/2004 | 5 yr 0 mo | 1,039.00 |
| 000684 | MOLDS 3 HEDPAK 2.5 GAL | 2/1/2004 | 5 yr 0 mo | 809.00 |
| 000685 | MOLD WINPAK 5 GAL K | 2/1/2004 | 5 yr 0 mo | 422.00 |
| 000686 | 3 & 6 GAL DRILL REMAKE | 2/1/2004 | 5 yr 0 | 97.00 |

| | | | mo | |
|---|---|---|---|---|
| 000687 | MOLD WINPAK C SECTION | 2/1/2004 | 5 yr 0 mo | 263.00 |
| 000688 | NECK INSERT HEDPAK 2.5 GAL | 2/1/2004 | 5 yr 0 mo | 74.00 |
| 000689 | MOLD WINPAK D REMACHINE | 2/1/2004 | 5 yr 0 mo | 57.00 |
| 000690 | MOLDS WINPAK REMACHINE 5 | 2/1/2004 | 5 yr 0 mo | 265.00 |
| 000691 | MOLD WINPAK L REMACHINE | 2/1/2004 | 5 yr 0 mo | 99.00 |
| 000692 | WINPAK MOLD REMACHINE | 2/1/2004 | 5 yr 0 mo | 87.00 |
| 000693 | MOLD WINPAK RECTANGULAR 20L | 2/1/2004 | 9 yr 0 mo | 47,680.00 |
| 000694 | NECK INSERTS DESIGN 70MM TE | 2/1/2004 | 9 yr 0 mo | 2,476.00 |
| 000695 | MOLD 5 GAL | 2/1/2004 | 5 yr 0 mo | 62.00 |
| 000696 | MOLDS 5 GAL SPOUT 'C' | 2/1/2004 | 5 yr 0 mo | 81.00 |
| 000697 | MOLD REVERSER 5 GAL 'C' | 2/1/2004 | 5 yr 0 mo | 39.00 |
| 000698 | MOLD 5 IMP GAL | 2/1/2004 | 5 yr 0 mo | 38.00 |
| 000699 | MOLD 2 1/2 5 GAL 'A' | 2/1/2004 | 5 yr 0 mo | 42.00 |
| 000700 | MOLDS 1 & 5 GAL | 2/1/2004 | 5 yr 0 mo | 234.00 |
| 000701 | MOLDS 5 GALLON | 2/1/2004 | 5 yr 0 mo | 97.00 |
| 000702 | COLD 5 GAL 'I' | 2/1/2004 | 5 yr 0 mo | 66.00 |
| 000703 | MOLD 3 GAL | 2/1/2004 | 5 yr 0 mo | 51.00 |
| 000704 | MOLDS RAISE 4 'A' MOLDS | 2/1/2004 | 5 yr 0 mo | 176.00 |
| 000705 | MOLDS 5 & 2 1/2 GAL INSERTS | 2/1/2004 | 5 yr 0 mo | 17.00 |
| 000706 | MOLD 4 GAL | 2/1/2004 | 5 yr 0 mo | 106.00 |
| 000707 | MOLD 5 GAL MODIFIED | 2/1/2004 | 5 yr 0 | 100.00 |

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000708 | MOLD 2 1/2 GAL W/ EMBOSSMENT | 2/1/2004 | 5 yr 0 mo | 136.00 |
| 000709 | MOLD 20 L SET W/ ADAPTOR | 2/1/2004 | 5 yr 0 mo | 103.00 |
| 000710 | MOLDS 1 US GAL 'G' & 1 IMP GAL | 2/1/2004 | 5 yr 0 mo | 140.00 |
| 000711 | MOLD 4 US GAL | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000712 | MOLD 5 US GAL | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000713 | MOLD 20 L | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000714 | MOLD 5 IMPERIAL GAL | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000715 | MOLD 10 L | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000716 | DIE EDI EXTRUSION | 2/1/2004 | 5 yr 0 mo | 2,434.00 |
| 000717 | MOLD 5 L 2UP | 2/1/2004 | 5 yr 0 mo | 4,492.00 |
| 000718 | DIE SHEET DUAL LIP | 2/1/2004 | 5 yr 0 mo | 200.00 |
| 000719 | MOLD 5 GAL | 2/1/2004 | 5 yr 0 mo | 200.00 |
| 000720 | MOLD 5 GAL | 2/1/2004 | 5 yr 0 mo | 200.00 |
| 000721 | MOLD 4 GAL | 2/1/2004 | 5 yr 0 mo | 400.00 |
| 000722 | MOLD 2.5 GAL | 2/1/2004 | 5 yr 0 mo | 400.00 |
| 000723 | MOLD 20 L | 2/1/2004 | 5 yr 0 mo | 400.00 |
| 000724 | MOLD 5 GAL | 2/1/2004 | 5 yr 0 mo | 1,110.00 |
| 000725 | MOLD 20 L | 2/1/2004 | 5 yr 0 mo | 3,373.00 |
| 000726 | MOLD 10 CAV HANDLE | 2/1/2004 | 5 yr 0 mo | 1,800.00 |
| 000727 | MOLD ABBOTT LAB | 2/1/2004 | 5 yr 0 mo | 4,347.00 |
| 000728 | MOLD 1/2 GAL 2UP | 2/1/2004 | 5 yr 0 | 7,047.00 |

| | | | mo | |
|---|---|---|---|---|
| 000729 | MOLD 32 0Z GIM | 2/1/2004 | 7 yr 0 mo | 8,090.00 |
| 000730 | MOLD 20L & SUPPLEMENT | 2/1/2004 | 8 yr 0 mo | 20,863.00 |
| 000731 | MOLD 20 L | 2/1/2004 | 8 yr 0 mo | 13,600.00 |
| 000732 | BUILD 1 SET OF 2 DIE LIPS | 2/1/2004 | 9 yr 0 mo | 2,320.00 |
| 000733 | BUILD 1 SET OF 2 DIE LIPS | 2/1/2004 | 9 yr 0 mo | 2,678.00 |
| 000734 | MOLDS 30 GAL HEDLINER | 2/1/2004 | 5 yr 0 mo | 33.00 |
| 000735 | INSERT TOOL 55 GAL OPEN HEAD | 2/1/2004 | 5 yr 0 mo | 139.00 |
| 000736 | MOLD 15 GAL HEDLINER | 2/1/2004 | 5 yr 0 mo | 104.00 |
| 000737 | TOOL HEDLINER ASSEMBLY | 2/1/2004 | 5 yr 0 mo | 178.00 |
| 000738 | MOLDS REBUILD HEDLINER 5 GALLONS | 2/1/2004 | 5 yr 0 mo | 14.00 |
| 000739 | MOLD REBUILD 15 GAL HEDLINER | 2/1/2004 | 5 yr 0 mo | 18.00 |
| 000740 | TOOL 15 GAL OPEN HEAD FORMING | 2/1/2004 | 5 yr 0 mo | 205.00 |
| 000741 | TOOL 21 1/2" 'G' | 2/1/2004 | 5 yr 0 mo | 88.00 |
| 000742 | SET  OF 30 GAL HEDLINER DISC | 2/1/2004 | 5 yr 0 mo | 26.00 |
| 000743 | TOOL CASTING FOR HEDLINER | 2/1/2004 | 5 yr 0 mo | 38.00 |
| 000744 | KYDEX DISCS TO REPLACE PVC 21 | 2/1/2004 | 5 yr 0 mo | 24.00 |
| 000745 | TOOL MODIFY 1 1/1 HEDLINER | 2/1/2004 | 5 yr 0 mo | 60.00 |
| 000746 | TWO SETS HEDLINER MOLDS 18 1/2 | 2/1/2004 | 5 yr 0 mo | 197.00 |
| 000747 | 5 GAL HL MOLDS ON CUBE PROCESS | 2/1/2004 | 5 yr 0 mo | 66.00 |
| 000748 | TOPLINER TRAY MOLD | 2/1/2004 | 5 yr 0 mo | 1,000.00 |
| 000749 | MODIFY 30 GAL MOLD | 2/1/2004 | 5 yr 0 | 213.00 |

Schedule 2.01(a)(vi)

| | | | mo | |
|---|---|---|---|---|
| 000750 | REFURBISH 13 7/8" HL TOOL | 2/1/2004 | 8 yr 0 mo | 6,359.00 |
| 000751 | 16 GAL DRUM TOOLING | 2/1/2004 | 9 yr 0 mo | 24,720.00 |
| 000752 | 4 HL 55 GAL SEAL RING TOOLING | 2/1/2004 | 9 yr 0 mo | 12,560.00 |
| 000753 | 2-23 1/2 FIBER DRUM TOOLS | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000754 | 10 OZ EK CARTRIDGE MOLDS | 2/1/2004 | 5 yr 0 mo | 4,130.00 |
| 000755 | 32 OZ EK MOLD | 2/1/2004 | 5 yr 0 mo | 5,210.00 |
| 000756 | ALUMINUM TOPLINER TRAY MOLD | 2/1/2004 | 5 yr 0 mo | 20.00 |
| 000757 | LID MOLD & EMBOSSMENT INSERTS | 2/1/2004 | 5 yr 0 mo | 64.00 |
| 000758 | PAYLINER MOLD | 2/1/2004 | 5 yr 0 mo | 1,500.00 |
| 000759 | 3 GAL PAYLINER MOLD | 2/1/2004 | 5 yr 0 mo | 44.00 |
| 000760 | TOPLINER TOOLING | 2/1/2004 | 5 yr 0 mo | 25.00 |
| 000761 | TWO 2GL PAYLINER MOLDS | 2/1/2004 | 5 yr 0 mo | 30.00 |
| 000762 | BINKS TOPLINER TOOLING | 2/1/2004 | 5 yr 0 mo | 35.00 |
| 000763 | 21 1/2' HEDLINER TOOLING SET | 2/1/2004 | 5 yr 0 mo | 245.00 |
| 000764 | 22 N TOOLING SET | 2/1/2004 | 5 yr 0 mo | 225.00 |
| 000765 | 2 GL DEVILBISS MOLD | 2/1/2004 | 5 yr 0 mo | 330.00 |
| 000766 | PAYLINER MOLDS | 2/1/2004 | 5 yr 0 mo | 660.00 |
| 000767 | BINKS 2 GAL PAYLINER MOLD | 2/1/2004 | 5 yr 0 mo | 85.00 |
| 000768 | 4 3/4" DEEP TOPLINER TRAY MOLD | 2/1/2004 | 5 yr 0 mo | 42.00 |
| 000769 | TF1 DRUM COVER TOOLING | 2/1/2004 | 5 yr 0 mo | 430.00 |
| 000770 | TF1 INSTALLATION AND TOOLING | 2/1/2004 | 5 yr 0 | 230.00 |

Schedule 2.01(a)(vi)

| | | | | |
|---|---|---|---|---|
| | | | mo | |
| 000771 | TF1 2 GAL TOOLING | 2/1/2004 | 5 yr 0 mo | 660.00 |
| 000772 | TF1 2 GAL INSERTS | 2/1/2004 | 5 yr 0 mo | 360.00 |
| 000773 | TF1 PROTECTIVE DRUM COVER MOLD | 2/1/2004 | 5 yr 0 mo | 90.00 |
| 000774 | TF1 55 GL LID MOLD | 2/1/2004 | 5 yr 0 mo | 107.00 |
| 000775 | TF1 21 1/2" TRAY | 2/1/2004 | 5 yr 0 mo | 123.00 |
| 000776 | LYLE 5 GL TOOLING | 2/1/2004 | 5 yr 0 mo | 680.00 |
| 000777 | FOUR 2 GL .160 DEEP LINER INSERTS | 2/1/2004 | 5 yr 0 mo | 28.00 |
| 000778 | FIBER DRUM PROTECT MOLD | 2/1/2004 | 5 yr 0 mo | 20.00 |
| 000779 | TF1 5 GL MODIFY TOOLING | 2/1/2004 | 5 yr 0 mo | 666.00 |
| 000780 | TF1 5 GL LINER MOLD | 2/1/2004 | 5 yr 0 mo | 2,400.00 |
| 000781 | 5 GL LINER INSERT | 2/1/2004 | 5 yr 0 mo | 5,760.00 |
| 000782 | 5 GL PLUG ASSISTS FOR LINER TOOL | 2/1/2004 | 5 yr 0 mo | 860.00 |
| 000783 | PLB1117 INSERT PLATE | 2/1/2004 | 5 yr 0 mo | 817.00 |
| 000784 | HL LID PLUG ASSISTS | 2/1/2004 | 5 yr 0 mo | 540.00 |
| 000785 | MODIFY 5 GL TOOLING | 2/1/2004 | 5 yr 0 mo | 660.00 |
| 000786 | TOPLINER CRADLE TOOLING | 2/1/2004 | 5 yr 0 mo | 2,137.00 |
| 000787 | 2 GL PLUG ASSISTS | 2/1/2004 | 5 yr 0 mo | 1,290.00 |
| 000788 | PLB1117 MOLD CAVITY EMBOSSMENT | 2/1/2004 | 5 yr 0 mo | 3,150.00 |
| 000789 | 5 GL PAIL COVER TOOLING | 2/1/2004 | 5 yr 0 mo | 3,075.00 |
| 000790 | 2 GL PLUG ASSIST 1 | 2/1/2004 | 7 yr 0 mo | 490.00 |
| 000791 | 2 GL PLUG ASSIST 2 | 2/1/2004 | 7 yr 0 mo | 490.00 |

| | | | mo | |
|---|---|---|---|---|
| 000792 | 2 GL PLUG ASSIST 3 | 2/1/2004 | 7 yr 0 mo | 490.00 |
| 000793 | 2 GL PLUG ASSIST 4 | 2/1/2004 | 7 yr 0 mo | 490.00 |
| 000794 | 5 GL PLUG ASSIST | 2/1/2004 | 7 yr 0 mo | 900.00 |
| 000795 | 5 GL PLUG ASSIST | 2/1/2004 | 7 yr 0 mo | 900.00 |
| 000796 | 5 GL PLUG ASSIST | 2/1/2004 | 7 yr 0 mo | 900.00 |
| 000797 | 5 GL PLUG ASSIST | 2/1/2004 | 7 yr 0 mo | 900.00 |
| 000798 | 5 GL MOLD CAVITIES | 2/1/2004 | 7 yr 0 mo | 17,805.00 |
| 000799 | 5 GL PLASTIC PAIL LINER | 2/1/2004 | 7 yr 0 mo | 7,990.00 |
| 000800 | PL THERMO MOLDS | 2/1/2004 | 7 yr 0 mo | 11,700.00 |
| 000801 | ENCORE 5 GL LINER TOOLING | 2/1/2004 | 7 yr 0 mo | 2,000.00 |
| 000802 | 5 GL REPLACEMENT PLUGS | 2/1/2004 | 8 yr 0 mo | 2,535.00 |
| 000803 | ENCORE 5 GL SUPPLEMENT | 2/1/2004 | 8 yr 0 mo | 510.00 |
| 000804 | BLD/QUALIFY NEW TOP RING PLASTIC... | 2/1/2004 | 9 yr 0 mo | 1,600.00 |
| 000805 | 2.5 GL PRESSURE POT LINER TOOLING | 2/1/2004 | 9 yr 0 mo | 13,060.00 |
| 000806 | 15 GL LID TOOLING | 2/1/2004 | 5 yr 0 mo | 50.00 |
| 000807 | 5 GL WINPAK 'M' MOLD W/ SWING | 2/1/2004 | 5 yr 0 mo | 295.00 |
| 000808 | 5 GL WINPAK "B" MOLD | 2/1/2004 | 5 yr 0 mo | 295.00 |
| 000809 | 5 GL WINPAK "G" MOLD W/ SWING | 2/1/2004 | 5 yr 0 mo | 295.00 |
| 000810 | 5 GL WINPAK "F" MOLD | 2/1/2004 | 5 yr 0 mo | 295.00 |
| 000811 | WINPAK MOLD CONVERSION TO MAKE 5...... | 2/1/2004 | 5 yr 0 mo | 65.00 |
| 000812 | WINPAK MOLD | 2/1/2004 | 5 yr 0 mo | 245.00 |

Schedule 2.01(a)(vi)

| | | | | mo | |
|---|---|---|---|---|---|
| 000813 | REFURBISH WINPAK MOLD | | 2/1/2004 | 5 yr 0 mo | 275.00 |
| 000814 | 2 1/2 GL HEDPAK 3M-BLDG PRODUCTS | | 2/1/2004 | 5 yr 0 mo | 495.00 |
| 000815 | HEDPAK MOLDS - 5 GL & 2L | | 2/1/2004 | 5 yr 0 mo | 310.00 |
| 000816 | HEDPAK 2.5 GL 'D' MOLD | | 2/1/2004 | 5 yr 0 mo | 405.00 |
| 000817 | REFURBISH WINPAK MOLD | | 2/1/2004 | 5 yr 0 mo | 215.00 |
| 000818 | 6 GL MOLD | | 2/1/2004 | 5 yr 0 mo | 255.00 |
| 000819 | 2 1/2 CONTAINER MOLDS | | 2/1/2004 | 5 yr 0 mo | 395.00 |
| 000820 | WINPAK 5 GL ALUMINUM 'H' MOLD | | 2/1/2004 | 5 yr 0 mo | 420.00 |
| 000821 | WINPAK GL ALUMINUM 'T' MOLD | | 2/1/2004 | 5 yr 0 mo | 420.00 |
| 000822 | WINPAK 5 GL 'L' MOLD | | 2/1/2004 | 5 yr 0 mo | 420.00 |
| 000823 | REFURBISH ALUMINUM MOLD FACE | | 2/1/2004 | 5 yr 0 mo | 120.00 |
| 000824 | WINPAK 6 GL MOLD CENTER SECTION | | 2/1/2004 | 5 yr 0 mo | 395.00 |
| 000825 | REFURBISH 1 GL HEDPAK MOLD | | 2/1/2004 | 5 yr 0 mo | 85.00 |
| 000826 | HEDPAK 20L MOLD CENTER SECTION | | 2/1/2004 | 5 yr 0 mo | 145.00 |
| 000827 | NEW HEAD 3M 5KG FLU MOLD | | 2/1/2004 | 5 yr 0 mo | 100.00 |
| 000828 | ECOSET MOLD | | 2/1/2004 | 5 yr 0 mo | 1,300.00 |
| 000829 | ECOSET 20L SECTION | | 2/1/2004 | 5 yr 0 mo | 95.00 |
| 000830 | ECOSET 30L SECTION | | 2/1/2004 | 5 yr 0 mo | 95.00 |
| 000831 | ECOSET REIKE 70MM NECK INSERT | | 2/1/2004 | 5 yr 0 mo | 95.00 |
| 000832 | ECOSET DIN 70MM NECK INSERT | | 2/1/2004 | 5 yr 0 mo | 95.00 |
| 000833 | ECOSET REIKE 70MM TE NECK INSERT | | 2/1/2004 | 5 yr 0 mo | 95.00 |

Schedule 2.01(a)(vi)