

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| | | |
| **HEDWIN CORPORATION,** | * | Case No. 14-15194 |
| | | (Chapter 11) |
| **Debtor.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTOR OF POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL OTHER SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING**

THIS MATTER having come before this Court upon motion (the "**DIP Motion**") by Hedwin Corporation (the "**Debtor**"), as debtor and debtor-in-possession in the above captioned chapter 11 case (the "**Case**"), seeking, among other things, entry of an interim order (this "**Interim Order**") authorizing the Debtor to:

(i)      Obtain post-petition loans, advances and other financial accommodations on an interim basis from Bank of America, N.A., a national banking association ("**BofA**," and in its capacity as post-petition lender, the "**DIP Lender**"), successor to LaSalle Business Credit, LLC, for a period from the commencement of the Case through and including May 2, 2014 (the

"**Interim Period**") in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Pre-Petition Loan Agreement (as amended by the DIP Facility), the Pre-Petition Financing Documents (as amended by the DIP Facility), the DIP Financing Agreement and DIP Financing Documents (each as defined below), and in accordance with this Interim Order secured by first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**")) on property of the Debtor's estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein. During the Interim Period, the DIP Loans (as defined below) will be used solely to the extent necessary to avoid immediate and irreparable harm to the Debtor, which for the purposes hereof, shall mean proceeds of the DIP Loans used (a) to pay any of the credit extensions or other obligations under the DIP Financing Documents (as defined below), (b) for purposes specified (and in amounts not to exceed those shown) in the Budget (as defined below), (c) to make adequate protection and other payments to the Pre-Petition First Lien Lender (as defined below) to the extent authorized or required herein, and (d) to pay other expenses that are required to be paid, prior to the Final Hearing (as defined below) under the DIP Financing Agreement (as defined below);

(ii)      Establish and enter into that financing arrangement (the "**DIP Facility**") pursuant to that certain Agreement for Post-Petition Financing (the "**DIP Financing Agreement**")[1], a copy of which is attached hereto as Exhibit A and incorporated herein by reference, which ratifies, extends, adopts and amends the Pre-Petition Loan Agreement and Pre-Petition Financing Documents. The DIP Financing Agreement, the Pre-Petition Loan Agreement and the Pre-Petition Financing Documents (as defined below), and all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Lender pursuant to the DIP

---

[1] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreement.

Facility, including, without limitation, securities agreements, notes, mortgages, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto, all as may be amended, modified or supplemented and in effect from time to time, shall sometimes collectively hereinafter be referred to as the "**DIP Financing Documents**";

(iii)    incur the Post-Petition Obligations under and as defined in Section 1.1 of the DIP Financing Agreement (collectively, the "**Post-Petition Obligations**");

(iv)    Use the proceeds of any loans, advances and other financial accommodations provided to the Debtor under the DIP Financing Documents (net of any amounts used to pay fees, costs and expenses of Lender (defined below) under the DIP Financing Documents) in each case in a manner consistent with the terms and conditions of the DIP Financing Documents, and in accordance with the Budget (as defined below), as more fully set forth herein;

(v)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Lender first priority priming, valid, perfected and enforceable liens, subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon all of the Debtor's real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Documents;

(vi)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender superpriority administrative claim status in respect of all Post-Petition Obligations, subject only to the Carve Out as provided herein;

(vii)    Authorize the use of "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which BofA as the Debtor's pre-petition lender (in such capacity, the "**Pre-Petition First Lien Lender**") has an interest;

(viii)    Grant the BofA Pre-Petition Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) in favor of the Pre-Petition First Lien Lender to the extent of any diminution in the value of the Pre-Petition First Lien Lender's interest in the Pre-Petition Collateral (as defined below) and make adequate protection payments to the Pre-Petition First

Client Documents:4813-3330-0249v1|G1506-0000049|3/7/2014

Lien Lender as adequate protection for the granting of the Post-Petition Liens (as defined below), for the subordination to the Carve Out, the use of Cash Collateral, and for the imposition of the automatic stay;

(ix)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary (a) to implement and effectuate the terms and provisions of the DIP Financing Documents and this Interim Order and (b) to permit the Pre-Petition First Lien Lender and DIP Lender (collectively, in their respective capacities, the "**Lender**") to exercise its rights and remedies after an Event of Default in accordance with the procedures set forth herein;

(x)    Grant the Lender automatically perfected security interests in and liens on the Collateral (as defined below);

(xi)    Grant the ACP Replacement Liens (as defined below) in favor of ACP-I, L.P., a Delaware limited partnership ("**ACP**"), to the extent of any diminution in the value of the ACP's interest in the Pre-Petition Collateral;

(xii)    Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(xiii)    Waive any applicable stay and provide for immediate effectiveness of this Interim Order.

The Bankruptcy Court having considered the DIP Motion, the Declaration of Charles S. Deutchman in Support of First Day Motions, the exhibits attached thereto, the DIP Facility and the DIP Financing Documents, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court, due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and in the best

interests of the Debtor, its creditors, its estate and its equity holders, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and there is adequate protection of the interests of holders of liens on the property of the estate on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.    On April 2, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Maryland.  The Debtor has continued in the management and operation of its business and property as a Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

B.    **Jurisdiction and Venue**.    This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**.    A statutory committee of unsecured creditors has not yet been appointed in the Case.

D.    **Notice**.    The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and this Court's Local Rule 4001-4.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery on April 2, 2014, to certain parties in

interest, including: (i) the Office of the United States Trustee, (ii) the creditors identified on the Debtor's list of 20 largest unsecured creditors, (iii) counsel to the Lender, (iv) the Lender, (v) all secured creditors of record, and (vi) all parties in interest that have requested notice.  Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

     E.     **Debtor's Acknowledgements and Agreements**.  Without prejudice to the rights of the parties in interest as set forth in paragraph 9 below (and after the deadlines set forth therein with respect to any official committee of unsecured creditors (if formed) and other parties in interest), the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E (i) through E (ix) hereof shall be referred to herein as the "**Debtor's Stipulations**"):

     (i)     **BofA Pre-Petition Financing Documents**.  Prior to the commencement of the Case, the Pre-Petition First Lien Lender made loans, advances and provided other financial accommodations to the Debtor pursuant to the terms and conditions set forth in  (A) that certain First Amended and Restated Loan and Security Agreement dated as of January 19, 2010 by and between the Debtor, and the Pre-Petition First Lien Lender, as amended by (a) that certain First Amendment to First Amended and Restated Loan and Security Agreement dated as of December 23, 2010, (b) that certain Second Amendment to First Amended and Restated Loan and Security Agreement dated as of June 30, 2011, (c) that certain Limited Forbearance Agreement and Third Amendment to First Amended and Restated Loan and Security Agreement dated as of December 29, 2011, (d) that certain First Amendment to Limited Forbearance Agreement and Fourth Amendment to First Amended and Restated Loan and Security Agreement dated as of June 30, 2012, (e) that certain Second Amendment to Limited Forbearance Agreement dated as of July 31, 2012, (f) that certain Third Amendment to Limited Forbearance Agreement dated as of August 31, 2012, (g) that certain Fifth Amendment to First Amended and Restated Loan and Security Agreement dated as of October 31, 2012, (h) that certain Sixth Amendment to First Amended and Restated Loan and Security Agreement dated as of March 29, 2013, (i) that certain Seventh Amendment to First Amended and Restated Loan and Security Agreement dated as of September 19, 2013, and (j) that certain Eighth

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

Amendment to First Amended and Restated Loan and Security Agreement dated as of December 30, 2013 (all as amended, restated, supplemented or otherwise modified are, collectively, the "**Pre-Petition Loan Agreement**"),  and (B) the "Notes" (as that term is defined in the Pre-Petition Loan Agreement) and all other agreements, documents, and instruments previously, simultaneously or thereafter executed and/or delivered with, to, or in favor of the Lender, including, without limitation, the agreements listed on Exhibit A to the DIP Financing Agreement and all security agreements, notes, mortgages, and UCC financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same may have been amended, modified extended, renewed, restated, supplemented and/or replaced at any time prior to the Petition Date, collectively,  the "**Pre-Petition Financing Documents**").

**(ii)**     **BofA Pre-Petition Debt Amount**.  As of the close of business on March 28, 2014, the Debtor was indebted under the Pre-Petition Financing Documents as follows: (A) under the Revolving Loans (as more fully described in the DIP Financing Agreement, and defined therein, the "**Revolving Loans**"), principal in an amount not less than Four Million Nine Hundred Eighty-Two Thousand One Hundred Twenty Dollars and Fifty-Eight Cents ($4,982,120.58), plus an undetermined amount of accrued interest; (B) under the Term Loan A Note (as more fully described in the DIP Financing Agreement, and defined therein, the "**Term Loan**"), principal in the amount of Six Hundred Thousand Dollars ($600,000.00), plus an undetermined amount of accrued interest; and (C) interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations, including, without limitation, cash management, credit card, depository, investment, hedging and other banking or financial services (collectively, (A)-(C) above, together with all other obligations of the Debtor in respect of indemnities, guaranties and other payment assurances given by the Pre-Petition First Lien Lender for the benefit of the Debtor, and all interest, fees, costs, legal expenses and all other amounts accruing thereon or at any time chargeable to the Debtor in connection therewith, collectively, the "**Pre-Petition Obligations**").

**(iii)**     **Pre-Petition Collateral**.  To secure the Pre-Petition Obligations, the Debtor granted security interests and liens (the **"BofA Pre-Petition Liens")** to the Pre-Petition First Lien Lender upon all of the Pre-Petition Collateral, as that term is defined in the DIP Financing Agreement (collectively, the "**Pre-Petition**

Collateral"),[2] with priority over all other liens except any liens otherwise permitted by the Pre-Petition Financing Documents (to the extent any such permitted liens are valid, properly perfected, unavoidable, and senior, they are referred to herein as the "**Permitted Prior Liens**").

**(iv)**    **BofA Pre-Petition Liens**.  (a) As of the Petition Date, the Debtor believes that (i) the BofA Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Permitted Prior Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Pre-Petition Financing Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Obligations constitute allowed secured claims; and (b) on the date that this Interim Order is entered, the Debtor has waived, discharged and released the Pre-Petition First Lien Lender and its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtor may have (x) to challenge or object to any of the Pre-Petition Obligations, (y) to challenge or object to the security for the Pre-Petition Obligations, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Obligations, the BofA Pre-Petition Liens, the BofA Pre-Petition Financing Documents or otherwise. The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations, the Pre-Petition Financing Documents or the BofA Pre-Petition Liens, or any rights or claims of the Pre-Petition First Lien Lender pursuant to the Pre-Petition Financing Documents.   The foregoing Debtor's Stipulation shall be subject only to the right of an interested party (other than Debtor) having standing to do so to commence an appropriate adversary proceeding or contested matter objecting to the validity or amount of the Pre-Petition Obligations, or the validity, extent, perfection, priority or non-avoidability of the BofA Pre-Petition Liens and security interests of the Pre-Petition First Lien Lender in the Pre-Petition Collateral or seeking disgorgement

---

[2]      The acknowledgment and agreement by Debtor of the Pre-Petition Obligations and the related liens, rights priorities and protections granted to or in favor of the Pre-Petition First Lien Lender, as set forth herein and in the Pre-Petition Financing Documents shall constitute proofs of claim on behalf of the Pre-Petition First Lien Lender in this Case.

of all or part of the payment of the Pre-Petition Obligations, which adversary proceeding or contested matter must be filed during the Challenge Period (as defined in Section 9 below) in accordance with the provisions of Section 9 below.

**(v)**     **ACP Subordinated Debt**.  On or about January 30, 2004, the Debtor entered into that Securities Purchase Agreement (as amended, restated, supplemented or otherwise modified, the **"Subordinated ACP Purchase Agreement**"), with ACP pursuant to which ACP agreed to make a senior subordinated loan in an amount equal to $1,969,000 to the Debtor, as evidenced by certain promissory notes in favor of ACP (as amended, modified, restated, or replaced, the "**ACP Note**"). As security for payment of the obligations and indebtedness of Debtor to ACP owing in respect of the ACP Note (such obligations and indebtedness being referred to herein collectively as the "**ACP Debt**"), Debtor granted ACP a security interest in and liens upon certain Pre-Petition Collateral (the "**ACP Liens**"). The ACP Debt and the ACP Liens are subordinate to the Pre-Petition Obligations and the BofA Pre-Petition Liens pursuant to a certain Intercreditor Agreement dated as of June 30, 2011 by and between BofA and ACP (as amended, restated, supplemented or otherwise modified, the "**Intercreditor Agreement**"); and further evidenced by those certain Purchaser Subordination Agreements dated January 30, 2004 and June 30, 2011, by and among BofA, ACP, and the Debtor (collectively, the "**Subordination Agreement**"). As of the close of business on March 28, 2014, the Debtor was indebted to ACP under the ACP Note for principal and interest in an amount of Three Million One Hundred Ninety-Six Thousand Nine Hundred Eight Dollars and Sixteen Cents ($3,196,908.16), plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) and other charges.

**(vi)**     **ACP Liens**.  As of the Petition Date, the Debtor believes that (i) the ACP Liens are valid, binding, enforceable, and perfected liens, subject only to BofA Pre-Petition Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the ACP Debt constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the ACP Note, the Intercreditor Agreement, the Subordination Agreement and the other pre-petition financing documents in connection with the ACP Debt (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the ACP Debt exists, and no portion of the ACP Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as set forth in the

Intercreditor Agreement and the Subordination Agreement, and (iii) the ACP Debt constitutes an allowed secured claim, subject to the terms of the Intercreditor Agreement and the Subordination Agreement.

**(vii)   Cash Collateral.**  The Lender has a security interest in Cash Collateral including all amounts on deposit in the Debtor's banking, checking, or other deposit accounts and all proceeds of the Pre-Petition Collateral to secure the Pre-Petition Obligations.  The Debtor agrees that until such time as the Pre-Petition Obligations and the Post-Petition Obligations (sometimes referred to herein collectively as the "**Obligations**") are indefeasibly paid in full in cash and the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents and the DIP Financing Documents are terminated in accordance with the terms thereof, the Debtor shall not seek Bankruptcy Court authority to use, sell or lease Cash Collateral over the objection of the Lender at any time in the Case.

**(viii)   Priming of DIP Facility.**  In entering into the DIP Financing Documents, and as consideration therefor, the Debtor hereby agrees that until such time as the Obligations are indefeasibly paid in full in cash and the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents, and the DIP Financing Documents are terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the security interests and liens of the Lender, including without limitation the BofA Pre-Petition Liens, the  BofA Pre-Petition Replacement Liens (as defined below) and Post-Petition Liens (as defined below) provided to the Lender under the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents, and the DIP Financing Documents and this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

F.     **Findings Regarding the Post-Petition Financing.**

**(a)     Need for Post-Petition Financing.**  The Debtor has requested from the DIP Lender, and the DIP Lender is willing to extend the DIP Facility on the terms and conditions set forth in this Interim Order and the DIP Financing Documents. The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate in the ordinary course of its business without the financing requested under the DIP Motion. An immediate need exists for the Debtor to obtain funds pursuant to the DIP Financing Documents

in order to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the DIP Lender as set forth in this Interim Order and the DIP Financing Documents is vital to the preservation and maintenance of the going concern value of the Debtor. The ability of the Debtor to maximize a return for all creditors requires the availability of working capital pursuant to the DIP Financing Documents, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders and the possibility for a successful reorganization or sale of the Debtor's assets as a going concern or otherwise.

(b)     **No Credit Available on More Favorable Terms**. The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Financing Documents and this Interim Order. Financing on a post-petition basis is not otherwise available without granting the DIP Lender the protections set forth in this Interim Order.

(c)     **The DIP Facility.**     Pursuant to the terms of the DIP Financing Documents, the DIP Lender has agreed to make available to the Debtor the DIP Facility pursuant to which the Debtor may obtain loans from time to time (the "**DIP Loans**"), which consists of the post-petition continuation and gradual "roll up" of the Debtor's pre-petition Revolving Loans.

G.     **Section 506(c) Waiver**. The DIP Lender requests a waiver of the provisions of section 506(c) of the Bankruptcy Code, which request will be delayed until the Final Hearing.

This Court specifically does not approve such 506(c) waiver at this time, but will consider the issue further at the Final Hearing.

H.    **Use of Post-Petition Loan Proceeds**.  Proceeds of any loans or other financial accommodations obtained by the Debtor pursuant to the DIP Financing Documents, (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in a manner consistent with the terms and conditions of the DIP Financing Documents, and in accordance with the Budget (as defined below), as follows: (a) solely for (i)  payment of  post-petition obligations for working capital and general corporate purposes and (ii) payment of costs of administration of the Case, to the extent set forth in the Budget; (b) to make adequate protection and other payments to the Pre-Petition First Lien Lender to the extent authorized and required herein; and (c) to pay any of the credit extensions or other Post-Petition Obligations or other expenses that are required or authorized to be paid under the DIP Financing Documents.

I.    **Adequate Protection**.  The Pre-Petition First Lien Lender is entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the grant of Post-Petition Liens, subordination to the Carve-Out, the imposition of the automatic stay or the Debtor's use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Case.   As adequate protection, the Pre-Petition First Lien Lender will receive: (1) the BofA Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, and (3) the adequate protection payments.

J.    **Section 552**.  The Pre-Petition First Lien Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

K.    **Extension of Financing**.  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Financing Agreement and subject to (i) the entry of this Interim Order and a Final Order, (ii) findings by the Bankruptcy Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Facility will not be affected by any subsequent reversal or modification of this Interim Order or the Final Order unless the Interim Order and/or the Final Order were stayed pending appeal, as provided in section 364(e) of the Bankruptcy Code; (iii) Debtor's provision of adequate protection for Pre-Petition First Lien Lender's interests in the Pre-Petition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code, and (iv) DIP Lender receiving, as security for the prompt payment of all Post-Petition Obligations, a security interest in and lien upon all of the Collateral (as that term is defined in the DIP Financing Agreement).  Notwithstanding anything contained in this Interim Order to the contrary, during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

L.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Financing Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; the DIP Facility and the DIP Financing Documents were negotiated in good faith and at arms' length between the Debtor and the DIP Lender; and the use of the proceeds to be extended under the DIP Financing Agreement will be so extended in good faith, and for valid business purposes and uses, as a consequence of

which the DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

M. **Relief Essential; Best Interest**. The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property. It is in the best interest of Debtor's estate to be allowed to establish the DIP Facility contemplated by the DIP Financing Documents.

N. **Entry of Interim Order**. For the reasons stated above, the Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtor and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor and the Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Financing Documents.

2. **Application of Proceeds of Collateral to Obligations**. The Debtor is authorized and directed to make all payments and all transfers of proceeds from the sale or other disposition of the Collateral (as that term is defined in the DIP Financing Agreement) to reduce the Obligations as provided, permitted and/or required under the DIP Financing Agreement, the other DIP Financing Documents and this Interim Order, which payments and transfers, subject to Section 9 herein, shall not be avoidable or recoverable from the Lender under sections 544, 547, 548, 549, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

otherwise; provided however, nothing in this paragraph shall prevent any interested party (other than Debtor) having standing to do so to commence an appropriate adversary proceeding or contested matter objecting to the validity or amount of the Pre-Petition Obligations, or the validity, extent, perfection, priority or non-avoidability of the BofA Pre-Petition Liens and security interests of the Pre-Petition First Lien Lender in the Pre-Petition Collateral or seeking disgorgement of all or part of the payment of the Pre-Petition Obligations, which adversary proceeding or contested matter must be filed during the Challenge Period (as defined in Section 9 below) in accordance with the provisions of Section 9 below.  Without limiting the generality of the provisions of this paragraph, the Debtor is authorized, without further order of this Court and without regard to the provisions of the Budget, to pay or reimburse the Lender for all present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender in connection with the financing transactions as provided in this Interim Order and the DIP Financing Documents, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral.  Notwithstanding the forgoing, during the Interim Period, the Lender will not be reimbursed for professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender.

     3.    **Continuation of Prepetition Procedures**.  Except as modified by the DIP Financing Documents and this Interim Order, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the Lender and the funding pursuant to the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents, and the DIP Financing Documents, including any lockbox or

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

      4.    **DIP Financing Documents**.

      (a)    **Approval of Entry Into DIP Financing Documents**. The Debtor, through its authorized officers, are expressly and immediately authorized and empowered to execute, deliver and comply with the DIP Financing Documents and to incur and to perform the Post-Petition Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Financing Agreement and the DIP Financing Documents and the creation and perfection of the Post-Petition Liens described in and provided for by this Interim Order and the DIP Financing Documents. The Debtor is authorized, directed and obligated to comply with and perform, and is bound by, all of the terms, conditions, waivers and releases contained in the DIP Financing Documents and this Interim Order, and to pay the principal, interest, fees, expenses and other amounts described in the DIP Financing Agreement and all other DIP Financing Documents as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Documents which amounts shall not otherwise be subject to approval of this Court. Notwithstanding the forgoing, during the Interim Period, the Lender will not be reimbursed for professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender. Except as provided in Section 9 of this Interim Order, none of the DIP Financing Documents nor this Interim Order, nor any provision of any thereof, nor any right arising under any provisions thereof, shall be voidable or avoidable under

sections 544, 547, 548 and 549 of the Bankruptcy Code or under any applicable state uniform fraudulent transfer act, uniform fraudulent conveyance act, or similar statute or common law. Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms. Notwithstanding anything contained in this Interim Order to the contrary, during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

(b)      **Authorization to Borrow**.  In order to enable it to continue to operate its business, the Debtor is hereby authorized to: (1) enter into, execute, and deliver, perform and comply with all of the terms, conditions and covenants of the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents, the DIP Financing Documents, the DIP Financing Agreement, and this Interim Order; and (2) borrow and obtain loans and other financial accommodations, and to incur Post-Petition Obligations, under the DIP Facility, pursuant to the terms and conditions of this Interim Order, the DIP Financing Agreement, the other DIP Financing Documents, the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents and the Budget (as defined below).  The Debtor ratifies, reaffirms, extends, assumes and adopts the Pre-Petition Loan Agreement, the Pre-Petition Financing Documents, the DIP Financing Documents, and the DIP Financing Agreement.

(c)      **Use of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in a manner consistent with the terms and conditions of the DIP Financing Documents, and in accordance with the Budget (as defined below), as follows: (a) solely for (i)  payment of  post-petition obligations for working capital and general corporate purposes and (ii) payment of costs of administration of the Case, to the extent set forth in the Budget; (b) to make adequate

protection and other payments to the Pre-Petition First Lien Lender to the extent authorized and required herein; and (c) to pay any of the credit extensions or other Post-Petition Obligations or other expenses that are required or authorized to be paid under the DIP Financing Documents. DIP Lender shall not have any obligation or responsibility to monitor Debtor's use of the proceeds of the DIP Facility and may rely upon Debtor's representations that the amount of credit extensions requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the DIP Financing Documents and Bankruptcy Rule 4001(c)(2).

(d)　**Conditions Precedent**.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Financing Documents or the Pre-Petition Financing Documents during the Interim Period unless the conditions precedent to make such loans and advances under the DIP Financing Documents and the Pre-Petition Financing Documents have been satisfied in full or waived in writing by the DIP Lender in its sole discretion.

(e)　**Post-Petition Liens**.  To secure the prompt payment and performance of any and all Post-Petition Obligations of the Debtor to the DIP Lender, of whatever kind or nature, effective immediately upon the execution of this Interim Order, the DIP Lender is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests and liens (collectively, the "**Post-Petition Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate except as otherwise provided in this Interim Order and the Final Order, upon and to all presently owned and hereafter acquired Collateral, as that term is defined in the DIP Financing Agreement. Notwithstanding the forgoing provision of this paragraph or anything to the contrary in the DIP

Financing Documents, the Post Petition Liens shall not attach to avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof (the "**Avoidance Actions**"), unless the Debtor shall grant or consent to any lien or security interest in Avoidance Actions in favor of any other person or entity, in which event all such property shall be subject to the Post Petition Liens and such Post Petition Liens shall be first priority liens with respect to such property.  In no event shall any of the Post-Petition Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of Debtor's estate under Section 551 of the Bankruptcy Code; and in no event shall any person or entity who pays (or, through the extension of credit to Debtor, causes to be paid) any of the Post-Petition Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, DIP Lender by the terms of the DIP Financing Documents or this Interim Order, until such time as all of the Pre-Petition Obligations and all of the Post-Petition Obligations are  indefeasibly paid in full and the DIP Facility is terminated.

(f)    **Post-Petition Lien Priority**.  The Post-Petition Liens created and granted to the DIP Lender, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral, and (c) are subject only to: (i) the Carve Out and (ii) the Permitted Prior Liens.  The Post-Petition Liens shall secure all Post-Petition Obligations.  The Post-Petition Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or

in any other proceedings related to any of the foregoing (any "**Successor Case**"), and/or upon the dismissal of the Case.  The Post-Petition Liens shall not be subject to sections 510(b) and (c), 549, 550 or 551 of the Bankruptcy Code, or if approved in the Final Order, section 506(c) of the Bankruptcy Code.

(g)     **Enforceable Obligations**.  The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtor, which obligations shall be enforceable against the Debtor, its estate and any successor thereto and its creditors, in accordance with their terms.  Notwithstanding anything contained in this Interim Order to the contrary**,** during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

(h)     **Protection of Lender and Other Rights**.  From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Documents and this Interim Order (and, if entered, the Final Order) and in strict compliance with the Budget (as that term is defined below), subject to any variances permitted by the DIP Financing Agreement.

(i)     **Superpriority Administrative Claim Status.**  Subject only to the Carve Out, all Post-Petition Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the Post-Petition Liens, the "**DIP Protections**") with priority in the Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims of the kinds specified in, arising, or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or

attachment. Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the Post-Petition Obligations.

5.        **Authorization to Use Cash Collateral and Proceeds of DIP Financing Documents**.    Pursuant to the terms and conditions of this Interim Order, the Pre-Petition Financing Documents and the DIP Financing Documents, and in accordance with the **Budget** (as that term is defined in the DIP Financing Agreement), the Debtor is authorized to use Cash Collateral and the advances under the DIP Facility during the period commencing immediately after the entry of the Interim Order and terminating upon the Commitment Termination Date (as defined in paragraph 15 below). Notwithstanding anything to the contrary contained herein, the Lender may, upon reasonable belief that an Event of Default has occurred, provide notice to the Debtor that an Event of Default has occurred and is continuing, but that the Lender will agree to continue advances under the DIP Facility or the use of its Cash Collateral subject to certain terms and conditions as the Lender may, in its sole and absolute discretion, require.  A copy of the Budget for the weeks beginning March 31, 2014 through June 23, 2014 is attached hereto as Exhibit B and incorporated herein by reference.  The Budget may be amended, modified, supplemented, extended, renewed, restated or replaced with Lender's express prior written consent, which consent may be given or withheld in the Lender's sole and absolute discretion, provided that such new or amended Budget shall be filed with the Bankruptcy Court.  The Debtor shall be required always to comply with the Budget and the DIP Financing Documents. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its

estate outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Financing Documents and in accordance with the Budget.

      6.    **Adequate Protection.**  As adequate protection for the interest of the Pre-Petition First Lien Lender in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the Post-Petition Liens, subordination to the Carve Out, the Debtor's use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtor's use, sale, or disposition or other depreciation of the Pre-Petition Collateral, the Pre-Petition First Lien Lender shall receive adequate protection as follows:

      (a)    **BofA Pre-Petition Replacement Liens**. Solely to the extent of the diminution of the value of the interests of the Pre-Petition First Lien Lender in the Pre-Petition Collateral, the Pre-Petition First Lien Lender shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the Collateral (the "**BofA Pre-Petition Replacement Liens**") which shall be junior only to the Post-Petition Liens, any liens permitted under the Pre-Petition Financing Documents, the DIP Financing Documents and/or this Interim Order, and the Carve Out as provided herein.

      (b)    **BofA Pre-Petition Superpriority Claim**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition First Lien Lender in the Pre-Petition Collateral, the Pre-Petition First Lien Lender shall have an allowed superpriority administrative expense claim (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to the Post-Petition Liens, the DIP Superpriority Claim, and the Carve Out) in the Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims against the Debtor and its estate, now, pre-petition or hereafter

arising, of any kind or nature of the kinds specified in or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Post-Petition Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Superpriority Claim.

(c)    **Application of Proceeds of Pre-Petition Accounts**.  All collections and proceeds of Debtor's accounts receivable and other rights to payment existing or arising on or prior to the Petition Date (the "**Pre-Petition Accounts**") and all payments by account obligors indebted to Debtor with respect to transactions entered into or concluded prior to the Petition Date, may in the discretion of Lender be applied to pay (or in the case of contingent obligations, cash collateralize) the Pre-Petition Obligations, in such order of application as Pre-Petition First Lien Lender shall elect, in its discretion, until the Pre-Petition Obligations are indefeasibly paid in full, and then applied to the Post-Petition Obligations in such order of application as DIP Lender may elect in its discretion until full payment thereof.  Debtor shall use its reasonable, good faith efforts to provide promptly to Lender statements identifying the portion of each deposit to the Dominion Account (as that term is defined in the Pre-Petition Loan Agreement) that represents proceeds of Pre-Petition Accounts so as to assist the Lender in the application of the proceeds of Pre-Petition Accounts in accordance herewith.  Lender shall be entitled to assume that all deposits to the Dominion Account and all collections of accounts receivable

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

received by Debtor or the Lender after the Petition Date constitute proceeds of Pre-Petition Accounts, until such time as the Lender has received and applied to their respective claims an amount equal to the aggregate balance of the Pre-Petition Accounts on the books and records of Debtor as of the Petition Date.

        (d)     **Sale of Pre-Petition Inventory**. In consideration of Debtor's sale or other disposition of any raw materials, work-in-process, finished goods, packaging materials or labels that were in existence on the Petition Date (collectively, the "**Pre-Petition Inventory**"), the Debtor shall (unless otherwise directed by Pre-Petition First Lien Lender in writing) pay to Pre-Petition First Lien Lender, concurrently with any sale or other disposition thereof, the value of such Pre-Petition Inventory (which shall be deemed to be no less than 85% of cost) and Pre-Petition First Lien Lender shall be authorized to apply all such payments to the Pre-Petition Obligations (in such order of application as Pre-Petition First Lien Lender may elect in its discretion consistent with the Pre-Petition Loan Agreement) until the Pre-Petition Obligations are indefeasibly paid in full and thereafter to the Post-Petition Obligations (in such order of application as DIP Lender may elect in its discretion) until the Post-Petition Obligations are indefeasibly paid in full and the DIP Facility is terminated.  Pursuant to the Debtor's books and records, the total value at cost of all Pre-Petition Inventory as of the Petition Date was approximately $4,919,203.00 (the "**Pre-Petition Inventory Amount**") and, therefore, the aggregate of all payments made to the Pre-Petition First Lien Lender pursuant to the provisions of this subparagraph shall not exceed such amount.  For purposes of implementing this measure of adequate protection, it shall be assumed that Debtor's sale or disposition of any inventory after the Petition Date, including, without limitation, raw materials, work-in-process, finished goods, packaging materials or labels, constitutes a use of Pre-Petition Inventory until the aggregate

amount of the payments received by Pre-Petition First Lien Lender under this subparagraph equals the Pre-Petition Inventory Amount.  DIP Lender is authorized to make DIP Loans in amounts sufficient to satisfy Debtor's payment obligations under this subparagraph and to disburse such DIP Loans directly to Pre-Petition First Lien Lender for application to the Pre-Petition Obligations and thereafter to the Post-Petition Obligations as hereinabove provided.  All such DIP Loans shall be entitled to all of the benefits and security of the DIP Financing Documents and this Interim Order.

(e)    **Use of Other Pre-Petition Collateral**. In consideration of Debtor's use, consumption, sale or other disposition of Pre-Petition Collateral other than Pre-Petition Inventory or Pre-Petition Accounts, including, without limitation, equipment, vehicles, general intangibles, chattel paper, documents, instruments, investment property, intellectual property, and deposit accounts ("**Other Pre-Petition Collateral**"), Pre-Petition First Lien Lender may apply the proceeds of Other Pre-Petition Collateral to the Pre-Petition Obligations, in such order of application as Pre-Petition First Lien Lender shall elect, until the Pre-Petition Obligations are indefeasibly paid in full, and thereafter to the Post-Petition Obligations in such order as DIP Lender may elect in its discretion.  Nothing herein shall be construed to be a consent by Pre-Petition First Lien Lender or DIP Lender to any sale or other disposition of any Collateral.

(f)    **ACP Replacement Liens**. Solely to the extent of the diminution of the value of the interests of ACP in the Pre-Petition Collateral, ACP shall have additional and replacement security interests and liens in the Collateral that is of the same type and nature as the Pre-Petition Collateral (the "**ACP Replacement Liens**") which shall be junior in priority to the BofA Pre-Petition Liens, the BofA Pre-Petition Replacement Liens, the Post-Petition Liens, any

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

liens permitted under the Pre-Petition Financing Documents, the DIP Financing Documents and/or this Interim Order, and the Carve Out as provided herein.

7.      **Section 507(b) Reservation**. Nothing herein shall impair or modify the Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is insufficient to compensate for the diminution in value of the interest of the Lender in the Pre-Petition Collateral during the Case or any Successor Case.

8.      **Post-Petition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Post-Petition Liens and the BofA Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Post-Petition Liens and the Pre-Petition Replacement Liens or to entitle the Post-Petition Liens and the BofA Pre-Petition Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the Lender may, in its sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Case.  The Debtor shall execute and deliver to the Lender all such financing statements, mortgages, notices and other documents as the Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Post-Petition Liens and the BofA Pre-Petition

Client Documents:4813-3330-0249v1|G1506-0000049|3/7/2014

Replacement Liens granted pursuant hereto.  The Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

9. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**  Nothing in this Interim Order or the DIP Financing Agreement shall prejudice whatever rights any official committee(s) or any other party in interest with requisite standing may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Lender in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of Pre-Petition Obligations; or (b) to bring suit, on behalf of or in the name of the Debtor and the Debtor's estate, against the Lender in connection with or related to the Pre-Petition Obligations, or the actions or inactions of the Lender arising out of or related to the Pre-Petition Obligations, or seeking disgorgement of all or part of the payment of the Pre-Petition Obligations; provided, however, that, unless any official committee(s) or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Lender in the nature of a setoff, counterclaim or defense to the Pre-Petition Obligations, including but not limited to, those under sections 506, 544, 547, 548, 549, 550, 552 and/or 553 of the Bankruptcy Code or by way of suit against the Lender, within a date no later than the earlier to occur of (a) 60 days following the appointment of the first official committee of unsecured creditors, (b) 60 days following entry of the Final Order for parties in interest (other than the Debtor) if no official

committee of unsecured creditors is appointed, (c) the date of any closing of a sale of all or substantially all of the Debtor's assets or any closing of a sale of the right to sell such assets as an agent of Debtor, or (d) such later time period consented to by the Lender in writing, or otherwise ordered by this Court (collectively, the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s), any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Pre-Petition Obligations shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Case or any Successor Case, and the Debtor's Stipulations, waivers and releases in this Interim Order and the DIP Financing Documents shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the Lender shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Obligations to the extent allowable under section 506(b) of the Bankruptcy Code.

10.    **Carve Out**.  Subject to the terms and conditions contained in this paragraph, the Post-Petition Liens, DIP Superpriority Claims, the BofA Pre-Petition Liens, the BofA Pre-Petition Replacement Liens and the Pre-Petition Superpriority Claims are subordinate only to the following (the "Carve Out"): (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6); and (b) allowed reasonable fees and expenses of attorneys and financial advisors

employed by the Debtor and any official committee(s) of creditors pursuant to sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals") up to an aggregate amount not to exceed the actual fees and expenses incurred but unpaid through the date the Lender ceases making, and continues not to make, advances in accordance with its rights under the terms of the DIP Financing Agreement and this Interim Order or Final Order provided those unpaid fees and expenses are included in the Budget and only to the extent those unpaid fees and expenses do not exceed the amounts set forth in the Budget; provided, all such fees and expenses of Case Professionals shall be allowed by the Bankruptcy Court under sections 105(a), 330 and 331 of the Bankruptcy Code. For the avoidance of doubt, the Carve Out for Debtor's counsel shall be $175,000.00, the Carve Out for Shared Management Resources, Ltd. shall be $156,000.00, and the Carve Out for the Committee and its professionals shall be $75,000.00.  The amount of the Carve Out shall be reduced dollar for dollar for each Case Professional by the amount of fees and expenses actually paid to each Case Professionals in accordance with the terms of the Budget. No portion of the Carve Out and no proceeds of the DIP Facility including advances pursuant to the Budget shall be used to pay any professional fees or expenses incurred in connection with (i) any challenge to the amount, extent, priority, validity, perfection or enforcement of indebtedness of the Debtor owing to the Lender; or (ii) any investigation of or challenge to the Pre-Petition Collateral or the perfection, priority or validity of the liens granted in favor of the Lender with respect to the Pre-Petition Obligations, or (iii) any investigation, assertion, initiation or prosecution, directly or indirectly, of any claim, causes of action, adversary proceedings or other litigation against the Lender, or any person affiliated thereto; or (iv) any investigation, assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment,

determination or similar relief (a) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations, the BofA Pre-Petition Liens in the Pre-Petition Collateral, the Post-Petition Liens, or any other liens and security interests granted to the Lender under this Order, or (b) preventing, hindering or delaying, whether directly or indirectly, the Lender's assertion or enforcement of its liens, security interest or realization upon any Collateral or the BofA Pre-Petition Replacement Liens. If, after any payment that utilizes any portion of the Carve Out, the proceeds of unencumbered assets from any source become available, the Lender shall be granted a first priority perfected lien on such assets and their proceeds to the extent of the Carve Out paid. Except as otherwise provided in this paragraph, nothing contained in this Interim Order shall be deemed a consent by the Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, DIP Loans may be used to pay up to $10,000 of expenses incurred in connection with review by any official committee(s) of creditors of the validity, perfection, priority or amount of the Pre-Petition Obligations, the BofA Pre-Petition Liens and the Pre-Petition Financing Documents. Except for the Carve Out provisions set forth above, nothing herein shall be construed to obligate the Lender in any way, to pay any professional fees or U.S. Trustee Fees, or to assure that the Debtor has sufficient funds on hand to pay any professional fees or U.S. Trustee Fees. So long as Lender has not ceased making advances in accordance with its rights under the DIP Financing Agreement, this Interim Order or Final Order, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, to the extent provided for in the Budget and allowed by the Bankruptcy Court, as the same may be due and payable. The payments of the Carve Out shall not reduce the amount of the Obligations.

11.    **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, any official committee or of any person or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget. Nevertheless, Lender agrees that it will not object to the allowance of professional fees of the Case Professionals provided they are in amounts set forth in the Budget and are otherwise reasonable.

12.    **Section 506(c) Claims**.  Nothing contained in this Interim Order shall be deemed a consent by the Lender to any charge, lien, assessment or claim against the Collateral or the BofA Pre-Petition Replacement Liens (to the extent applicable) under section 506(c) of the Bankruptcy Code or otherwise.  Notwithstanding anything contained in this Interim Order to the contrary, during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

13.    **Collateral Rights**.  Unless the Lender has provided its prior written consent or all Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, all Letters of Credit (as defined in the Pre-Petition Loan Financing Agreement) have been secured as required by the DIP Financing Agreement, and all indemnity obligations under the DIP Financing Agreement have been cash collateralized there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)    Except as permitted in the DIP Financing Documents, the obtaining of credit or the incurring of indebtedness that is (i) secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral or the BofA Pre-Petition Replacement

Liens or (ii) entitled to priority administrative status which is equal or senior to those granted to the Lender;

(b)      Absent approval of this Court on notice to the Lender, relief from stay by any person other than the Lender on all or any material portion of the Collateral; or

(c)      The Debtor's return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Financing Documents.

(d)      The alteration, modification, extension, or impairment of any security interests and liens granted to Lender hereunder and/or  the rights of Lender pursuant to this Interim Order, the Pre-Petition Financing Documents or the DIP Financing Documents with respect to any of the Obligations or any of the Collateral.

14.      **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 13 above, if at any time prior to the repayment in full of all Obligations and the termination of the Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Chapter 11 plan (the "**Plan**") with respect to the Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Financing Documents and this Interim Order, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Lender to be applied to the Obligations in such order as the Lender may elect in its sole and absolute discretion.

15.      **Commitment Termination Date**.  All (i) Post-Petition Obligations of the Debtor to the Lender shall be immediately due and payable, and (ii) authority to use Cash Collateral and the proceeds of the DIP Facility shall cease, both on the date (the "**Commitment**

**Termination Date**") that is the earliest to occur of: (i) Friday, May 2, 2014, unless on or prior to that date, the Bankruptcy Court enters the Final Order, (ii) the date on which the maturity of the Post-Petition Obligations is accelerated in accordance with the DIP Financing Agreement, or (iii) the Termination Date (as that term is defined in the DIP Financing Agreement). Notwithstanding the occurrence of the Commitment Termination Date, the Termination Date, an Event of Default (as defined below), or anything herein, all of the rights, remedies, benefits and protections provided to the Lender under this Interim Order shall survive the Commitment Termination Date or the Termination Date.

      16.    **<u>Disposition of Collateral</u>**.  The Debtor shall not (a) sell, transfer, lease, encumber or otherwise dispose of all or any portion of the Collateral, without the prior written consent of the Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender or an order of this Court), except for sales of the Debtor's inventory in the ordinary course of business as otherwise provided for in the DIP Financing Agreement, or (b) reject or assign any leasehold interest without consent of the Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender or an order of this Court), except as otherwise provided for in the DIP Financing Agreement.  Upon the sale of any Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code, any such Pre-Petition Collateral shall be sold free and clear of the BofA Pre-Petition Liens and the BofA Pre-Petition Replacement Liens, provided however, the such Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order, the Pre-Petition Financing Documents and the DIP Financing Documents, and such amounts shall be paid immediately to Lender at closing of any such sale, and may be applied by Lender to the Obligations in such order as the Lender may elect from time to time in its sole and absolute discretion.

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

17.    **Events of Default.**   The occurrence of any of the following events shall constitute an Event of Default under this Interim Order ("Event of Default"):

      (a)    Failure by the Debtor to comply with any term of this Interim Order; or

      (b)    The occurrence of the Commitment Termination Date; or

      (c)    The occurrence of any Event of Default under the DIP Financing Agreement, the DIP Financing Documents or the Pre-Petition Loan Agreement.

Unless and until the Obligations are irrevocably repaid in full, all commitments to lend have irrevocably terminated, and all Letters of Credit (as defined in the DIP Financing Documents) have been cash collateralized as required by the DIP Financing Agreement, the protections afforded to the Lender and pursuant to this Interim Order and under the DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting this Case into a Chapter 7 or Successor Case, and the Post-Petition Liens, the DIP Super-Priority Claim, the BofA Pre-Petition Replacement Liens and the Pre-Petition Superpriority Claim shall continue in these proceedings and in any Successor Case, and all such liens and claims shall maintain their respective priority as provided by this Interim Order.

18.    **Rights and Remedies Upon Event of Default.**  Upon the occurrence of and during the continuance of an Event of Default (i) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Financing Documents, and (ii) Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 20 below, which Section does not preclude the Debtor from requesting a hearing) as provided in this Interim Order or DIP Financing Documents, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations,

ceasing to extend loans or provide or arrange for any other financing accommodations on behalf of the Debtor, setting off any Obligations with Collateral or proceeds in  the Lender's possession, terminating, reducing or restricting the ability of the Debtor to use any Cash Collateral, and enforcing any and all rights with respect to the Collateral.  The Lender shall have no obligation to lend or advance any additional funds to or on behalf of the Debtor, or provide any other financial accommodations to the Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence and continuance of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.  In the event that Lender determines that an Event of Default has occurred and is continuing and that Lender shall cease making advances, Lender shall provide the Debtor with written notice to that effect.  However, the Lender may, in its sole and absolute discretion, provide notice to the Debtor that an Event of Default has occurred and is continuing, but that the Lender will agree to continue advances under the DIP Facility or permit the use of its Cash Collateral subject to certain terms and conditions as the Lender may, in its sole and absolute discretion, require. In the event that the Lender continues advances under the DIP Facility or use of its Cash Collateral after the occurrence of an Event of Default, the Debtor is authorized to execute any amendments to the DIP Financing Agreement required by the Lender as a condition to such advances or Cash Collateral use.  Any amended Budget submitted in connection with such post-Event of Default advances shall be deemed approved pursuant to this Interim Order and the Final Order.   After the occurrence of any Event of Default and at any time thereafter, nothing herein shall preclude the Lender from seeking relief from stay to exercise its rights and remedies in accordance with the Pre-Petition Financing Documents and the DIP Financing Documents, and applicable law, to the extent the Lender deems it necessary.

19.    **Expiration of Commitment**.  Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from the Lender pursuant to the terms of this Interim Order and the DIP Financing Documents (except if such authority shall be extended with the prior written consent of the Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by the Lender), unless an Event of Default set forth herein occurs sooner, all of the Obligations shall immediately become due and payable and, after entry of the Final Order and subject to the provisions of Section 20 below, the Lender shall be relieved from the effect of any stay under sections 362 or 105 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to the Lender pursuant to the terms and conditions of the DIP Financing Documents or this Interim Order and, after entry of the Final Order and subject to the provisions of Section 20 below, the Lender shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the DIP Financing Documents, the Pre-Petition Financing Documents or applicable law which the Lender may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtor's estate.

20.    **Relief from Automatic Stay.**  No actions taken to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the DIP Financing Documents shall be deemed to violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  After entry of the Final Order and to the extent approved in the Final Order, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "**Enforcement Notice**") to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee, the Lender shall

be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Financing Documents or applicable law as the Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtor's estate upon which the Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Nothing contained in this Interim Order or otherwise shall be construed to obligate any Lender in any way to lend or advance any additional funds to the Debtor, or provide other financial or credit accommodations to the Debtor or consent to the use of Cash Collateral upon or after the occurrence of an Event of Default.

21.     **Proofs of Claim**.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, DIP Lender shall not be required to file any proof of claim with respect to any of the Post Petition Obligations, all of which shall be due and payable in accordance with the DIP Loan Agreement and the other DIP Financing Documents without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Financing Documents or prejudice or otherwise adversely affect DIP Lender's rights remedies, powers or privileges under the DIP Financing Documents and this Interim Order.

22.     **Other Rights and Obligations.**

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the

DIP Financing Documents contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified by a subsequent order of this or any other Court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, provided that the Interim Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such reversal or modification, any claim granted to the Lender hereunder arising prior to the effective date of such reversal or modification of any DIP Protections granted to the Lender shall be governed in all respects by the original provisions of this Interim Order, and the Lender and shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim, provided that the Interim Order was not stayed at the time the claim arose. Since the loans made pursuant to the DIP Financing Agreement are made in reliance on this Interim Order, the obligations owed the Lender prior to the effective date of any reversal or modification of this Interim Order cannot, as a result of any subsequent order in the Case or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Interim Order and/or the DIP Financing Documents, provided that the Interim Order was not stayed.

(b)    **Expenses**.  Notwithstanding any other provision of this Interim Order to the contrary and as provided in the DIP Financing Documents, all Enforcement Costs (as defined in the  DIP Financing Agreement) and all costs and expenses of the Lender in connection with the DIP Financing Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses

of other consultants, indemnification and reimbursement of fees and expenses, unused line fees, letter of credit fees, post-petition financing commitment fees, servicing fees and other out of pocket expenses whether any of the forgoing were incurred prior to or after the Petition Date, shall form a part of the Post-Petition Obligations and shall be paid by the Debtor in accordance with the terms of the DIP Financing Documents.  Notwithstanding the forgoing, during the Interim Period, the Lender will not be reimbursed for professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender**.**  In no event shall any statement submitted by Lender to Debtor, the Committee or any other interest person (or any of their respective Professionals) with respect to fees or expenses incurred for any professional retained by Lender operate to waive the attorney/client privilege, the work-product doctrine, or any other evidentiary privilege or protection recognized under applicable law. Payment of such fees shall not be subject to allowance by the Bankruptcy Court.

(c)     **Court Modification**.     In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of the Lender pursuant to this Interim Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(d)     **No Waiver**.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under the DIP Financing Documents, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Lender

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

under the Bankruptcy Code or under non-bankruptcy law to request additional or further protection of its interests or its Collateral, including without limitation, the rights of the Lender to (i) request conversion of the Case to a case under Chapter 7, dismissal of the Case, or the appointment of a trustee in the Case, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Lender, or (iv) move for relief from the automatic stay, or (v) to request any other relief in this case; nor shall anything herein or in any of the DIP Financing Documents constitute an admission by the Lender regarding the quantity, quality or value of any Collateral securing the Pre-Petition Obligations or the Post-Petition Obligations or constitute a finding of adequate protection with respect to the interests of Lender in the Collateral.  Pre-Petition First Lien Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Collateral, to the extent that the protection afforded by this Interim Order to Pre-Petition First Lien Lender's interests in any Collateral proves to be inadequate.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Discharge; Credit Bid Rights**.  The Post-Petition Obligations shall not be discharged by the entry of any order confirming a plan or reorganization or liquidation in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, Debtor has waived such discharge.  No plan of reorganization or liquidation, nor any order entered in connection with a sale of assets under Section 363 of the Bankruptcy Code, shall limit or

otherwise restrict the right of Pre-Petition First Lien Lender or DIP Lender to submit a credit bid for all or any part of the Collateral.

        (g)    **No Marshaling**.  Subject to the provisions of Section 9 of this Interim Order, the Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable.

        (h)    **Section 552(b)**.  The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

        (i)    **Amendments to DIP Financing Documents**.  The Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents and without further order of the Court, any amendments to and modifications of any of the DIP Financing Documents provided: (i) the amendment or modification must not constitute a material change to the terms of the DIP Financing Documents, (ii) copies of the amendment or modification must be served upon counsel for the Committee (and, prior to the appointment of a Committee, upon Debtor's 20 largest unsecured creditors), the Office of the United States Trustee and other interested parties specifically requesting such notice, and (iii) notice of the amendment must be filed with the Court.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "material change" shall mean a change that operates to shorten the DIP Facility or the maturity of the Post-Petition Obligations, increase the aggregate amount of the commitments of DIP Lender under the DIP Facility and this Interim Order, increase the rate of interest other than as currently provided in or contemplated by the DIP Financing Documents, add specific Events of Default, or enlarge the nature and extent of remedies available to DIP Lender following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, any

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

amendment of the DIP Loan Agreement to postpone or extend any date or deadline therein (including, without limitation, the Commitment Termination Date) shall not constitute a "material change" and may be effectuated by Debtor and DIP Lender without the need for further approval of the Court.

(j)      **Binding Effect and Survival of Interim Order**.  The provisions of this Interim Order and the DIP Financing Documents, and any and all rights, remedies, privileges and benefits in favor of the Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(h) and 7062, shall continue in full force and effect in the Case and any Successor Case, and shall survive entry of any such other order, including without limitation any order which may be entered (i) confirming any Plan in the Case, (ii) converting the Case to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Case, (iv) withdrawing of the reference of the Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Documents and any protections granted the Lender, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Lender shall maintain their priority as provided by this Interim Order until all the Obligations of the Debtor to the Lender have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Financing Documents which survive such discharge by their terms).  The  Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtor having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.  The Debtor shall not

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

propose or support any Plan that is not conditioned upon the payment in full in cash of all of the Obligations, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Commitment Termination Date.  In no event shall DIP Lender have any obligation to extend credit to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of Debtor.

(k)     **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Agreement and of this Interim Order, the provisions of this Interim Order shall govern and control.

(l)     **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)     **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(n)     **No Waivers or Modification of Interim Order**.  The Debtor irrevocably waives any right to seek any modification or extension of this Interim Order without the prior written consent of Lender and no such consent shall be implied by any other action, inaction or acquiescence of the Lender.

(o)     **Waiver of Any Applicable Stay**.  Any applicable stay is hereby waived and shall not apply to this Interim Order.

(q)     **Other.**  In making decisions to permit advances under the DIP Financing Documents or the collection of the Obligations of the Debtor, Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and

Liability Act, as amended, or any similar Federal or state statute) by virtue of the interests, rights and remedies granted to or conferred upon Lender under the DIP Financing Documents, including the DIP Financing Agreement or this Interim Order, including, without limitation, such rights and remedies as may be exercisable by Lender in the making (or causing to be made), administration or collection of the loans, advances and other financial accommodations to be provided thereunder.

23.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____ at _____ _.m. prevailing Eastern Time at the United States Bankruptcy Court for the District of Maryland, Baltimore Division. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order, subject to approval of Lender, may be presented by the Debtor and entered by this Court.

(b)     On or before _____, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order (without exhibits), the proposed Final Order (without exhibits), and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for any official committee(s), if any. Exhibits may be obtained from counsel to the Debtor upon request to its counsel in writing.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than three (3) business days prior to the date of the Final Hearing, which objections shall be served so that the

same are received on or before 4:00 p.m. Eastern time on such date by: (a) counsel for Debtor, Alan M. Grochal, Esq., Tydings & Rosenberg LLP, 100 East Pratt Street, 26th Floor, Baltimore, Maryland 21202, Fax: (410) 727-5460; (b) counsel for the Lender, Miles & Stockbridge P.C., 100 Light Street, Baltimore, Maryland 21202, Attn: Linda V. Donhauser, Esq. and Kristen M. Siracusa, Esq., Fax (410) 385-3700; (c) counsel to any Committee; and (d) the Office of the United States Trustee, 101 West Lombard Street, Suite 2625, Baltimore, MD 21201. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) and the rights of the Lender to terminate the DIP Financing Documents if such Final Order is not acceptable to them. In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following such further hearing, such modifications shall not affect the rights and priorities of Lender pursuant to this Interim Order with respect to the Collateral, and any portion of the Post-Petition Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

24. **Retention of Jurisdiction**. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**[END OF ORDER]**

# **EXHIBIT A**

## **Post-Petition Financing Agreement**

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014

# **EXHIBIT B**

## **Budget**

Client Documents:4813-3330-0249v1|G1506-000049|3/7/2014