

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | Case No. 14-15194 |
| **Debtor** | * | **Chapter 11** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**AMENDED ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTOR'S ASSETS; (B) AUTHORIZING AND SCHEDULING AN AUCTION; (C) SCHEDULING HEARING FOR APPROVAL OF THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER; (D) APPROVING BREAKUP FEE AND EXPENSE REIMBURSEMENT; (E) APPROVING PROCEDURES AND SETTING DEADLINES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING CURE AMOUNTS RELATING THERETO; (F) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (G) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "Bidding Procedures Motion") of Hedwin Corporation, debtor

and debtor in possession (the "Debtor") for entry of an Order (a) approving bidding procedures

for the sale of substantially all of the Debtor's assets; (b) setting a date for and authorizing an

auction (the "Auction") to sell the Debtor's assets; (c) scheduling a hearing (the "Sale

1

Hearing") for approval of a sale of the Debtor's assets free and clear of liens, claims, encumbrances and other interests, and of the assumption and assignment of certain executory contracts and unexpired leases;  (d) authorizing payment of a breakup fee and expense reimbursement; (e) approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases, including cure claims relating thereto; and (f) approving certain deadlines and the form, manner and sufficiency notice of the foregoing; and (g) granting other related relief,[1] and it appearing that the Court has jurisdiction over the Bid Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Bidding Procedures Motion; and it appearing that the relief requested in the Bidding Procedures Motion is in the best interests of the Debtor's bankruptcy estate, its creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    Notice of the Bid Procedures Motion was adequate and sufficient under the circumstances of this chapter 11 case, and such notice complied with all applicable requirements of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

B.    All objections to the relief requested in the Bid Procedures Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Bidding

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Procedures Motion. The term "Assets" shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA. The purchaser under the Stalking Horse APA will be Fujimori Kogyo Co., Ltd. or its designee, a direct or indirect wholly-owned subsidiary.

Procedures Motion or by stipulation filed with the Court, are overruled except as otherwise expressly set forth herein.

C.    The bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") are necessary, reasonable and appropriate under the circumstances of this Chapter 11 case.

D.    The Notice of Bidding Procedures, Auction Date and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale and Bidding Procedures Notice"), the Notice of Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 3** (the "Creditor Notice"), and the notice substantially in the form attached hereto as **Exhibit 4** to be served on counterparties to the Assumed Contracts (the "Cure Notice"), are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the Assumed Contracts, as contemplated in the Stalking Horse APA, and are intended to provide due and adequate notice of the relief sought in the Sale Motion.

E.    Fujimori Kogyo Co., Ltd.    ("Buyer") has expended considerable time and expense in connection with the Stalking Horse APA and the negotiation thereof and the identification and quantification of assets of the Debtor, justifying the Break-Up Fee and Expense Reimbursement (each defined below) and the terms relating thereto approved by the Court below.

F.    The entry of this Order is in the best interests of the Debtor, the bankruptcy estate, its creditors and other parties in interest.

IT IS HEREBY ORDERED THAT:

1.    The relief requested in the Bid Procedures Motion is granted as set forth in this Order.

2.      The Bidding Procedures, as modified by this Order, are approved in their entirety, and are incorporated into this Order as though fully set forth herein and shall apply to the proposed Auction and sale of the Assets.

3.      The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The proposed sale of the Assets, the proposed assumption and assignment of the Assumed Contracts, and the Auction shall be conducted in accordance with the provisions of this Order and the Bidding Procedures.

5.      The Sale and Bidding Procedures Notice attached hereto as **Exhibit 2**, the Creditor Notice attached hereto as **Exhibit 3**, and the Cure Notice attached hereto as **Exhibit 4** provide proper notice to all parties in interest and are approved.

6.      Within three (3) business days following entry of this Order, the Debtor shall serve by first class mail the Sale and Bidding Procedures Notice on the following parties: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Trustees of the ESOP; (d) the Trustees of the Pension Plan; (e) counsel to the Bank of America; (f) counsel to ACP-I, L.P.; (g) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-I, L.P.) on any of the Assets and who would appear as potentially holding a lien on any search conducted to determine who asserts a lien on the Debtor's assets; (h) all known counterparties to the Assumed Contracts (including Toyota Motor Corporation); (i) all entities known to have expressed an interest in bidding on the Assets; (j) the United States Attorney's Office for the District of Maryland; (k) the Securities and Exchange Commission; (l) the Pension Guaranty Corporation;

4

(m) the state taxing authorities in Maryland and Nevada and the Internal Revenue Service; (n) the state attorney generals in Maryland and Nevada; (o) the U.S. Environmental Protection Agency; (p) the Maryland Department of the Environment; (q) the U.S. Department of Labor-OSHA; (r) the Maryland Occupational Safety and Health (MOSH); and (s) all other parties that filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of this Order.

7.     Within three (3) business days following entry of this Order, the Debtor shall serve the Creditor Notice on all known creditors of the Debtor. Except as set forth in paragraph 6 and 7 of this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

8.     Within three (3) business days following entry of this Order, the Debtor shall file and serve the Cure Notice on the counterparties to the Assumed Contracts as contemplated by the Stalking Horse APA; provided, however that the Debtor may add executory contracts to the schedule of Assumed Contracts up to ten (10) calendar days prior to the Sale Hearing and mail and serve a Cure Notice on the relevant additional counterparties. Counterparties to the Assumed Contracts[2] (each a "Counterparty," and together, the "Counterparties") must file and serve any objection to the assumption and assignment of any Assumed Contract, including any objection to any Cure Cost and such objections must attach a complete copy of the Assumed Contract (together with all amendments), and set forth with specificity (a) all defaults under the

---

[2]     The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtor that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement included as an Assumed Contract.

#2167831v.3

Assumed Contract, the cure costs that the Counterparty believes are owing and must be paid as a condition to assumption, and (b) any other objections to the assumption and assignment of the Assumed Contract, by **May 5, 2014 at 4:00 p.m. (Eastern Daylight Time)**.

9.      Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the (a) assumption and assignment of the Assumed Contract and shall be forever barred from objecting to the Cure Costs and from asserting any additional cure costs or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty, and (b) the reinstatement, without default, of the Assigned Contract upon receipt by the Counterparty of payment of the applicable Cure Cost.  Notwithstanding anything to the contrary, none of the Assumed Contracts, and no executory contract or unexpired lease, will be assumed unless and until the occurrence of the closing by the Debtor and the Successful Bidder pursuant their asset purchase agreement as approved by order of this Court.

10.      Any other objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and shall be filed with the Court (with a courtesy copy to the Judge's chambers) on or before **May 5, 2014, at 4:00 p.m. (Eastern Daylight Time)**, and, and such objections shall be served in accordance with the Sale and Bidding Procedures Notice and the Creditor Notice so as to be received by such date and time by the Notice Parties and the Office of the United States Trustee.

11.      Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed Sale of the Assets free and clear of all liens, claims, interests and

encumbrances (all as set forth in the Sale Motion and proposed order submitted therewith (the "Sale Order")), the contemplated assumption and assignment of each Assumed Contract and the proposed amount of Cure Costs with respect to each such Assumed Contract (all as set forth in the Bid Procedures Motion, this Order, the Sale Motion, and the Sale Order), and no additional notice of such contemplated transactions need be given.

12.     If the Debtor receives more than one Qualified Bid (as defined in the Bidding Procedures), an Auction shall be held on **May 9, 2014, at 10:00 a.m.** (**Eastern Daylight Time),** at the offices of Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or at any such other location as the Debtor may hereafter designate.

13.     The Court hereby approves the following terms:

a.     Notwithstanding anything contained in the Bid Procedures Order or in the Bidding Procedures to the contrary, Bank of America, N.A. shall be deemed a Qualified Bidder and shall be entitled to credit bid, as a Qualified Bid, all or a portion of its claims against the Debtor, without the need to pay the Deposit, to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Nothing in this Order shall prejudice any investigation and challenge rights that are granted to the Committee under any financing order entered by the Court.

b.     In the event the Court approves an Alternative Transaction (as defined in the Stalking Horse APA), the Debtor shall pay (as a general, not super-priority, administrative claim) a break-up fee to Buyer in an amount equal to $600,000 (the "Break-Up Fee") and shall reimburse Buyer in an amount not to exceed $250,000 (the "Expense Reimbursement") for Buyer's reasonable and documented out-of-pocket expenses incurred in connection with the transaction contemplated by the Stalking Horse APA. The Break-Up Fee and the Expense Reimbursement shall be paid to Buyer from the proceeds (the "Alternative Transaction Proceeds") of sale on the closing of an Alternative Transaction approved by Bankruptcy Court. Notwithstanding anything to the contrary,such payments shall be made to Buyer (i) on the closing date of the Alternative Transaction and (ii) prior to any other distributions to creditors (or otherwise) from the Alternative Transaction Proceeds. No further or additional order from the Court shall be required in order to give effect to these provisions relating to the terms of payment of the Break-Up Fee and the Expense Reimbursement.

#2167831v.3

14.     The following language will be included as new Section 2.01(a)(xiv) in the Stalking Horse APA:

(xiv)   notwithstanding anything to the contrary in this Agreement, Seller assumes and releases, and covenants not to assert, all Avoidance Claims (including Actions related thereto) against (x) any counterparty to an Assigned Contract or (y) any supplier.

15.     Paragraph 2.02(e) of the Stalking Horse APA is replaced with the following language:

(e)     all Avoidance Claims (including Actions related thereto), all rights, claims or causes of action of Seller against third parties relating to the Excluded Assets, and all rights, claims and causes of action of Seller against former officers, directors, employees, members, principals, agents, and representatives of Seller arising out of events occurring prior to the Closing Date, including and, for the avoidance of doubt, arising out of events occurring prior to the Petition Date; except as provided in **Section 2.01(a)(xiv);**

16.     Counsel to the Debtor is authorized to hold and conduct the Auction in accordance with the Bidding Procedures.

17.     The Sale Hearing shall be conducted on **May 12, 2014, at  2:00   p.m. (Eastern Daylight Time)**, and may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing.

18.     The rights of the Committee to object or seek any relief from the Court in connection with the Auction, the Sale or any other issues in the Debtor's chapter 11 case shall not, and shall not be deemed to, be impaired or limited; provided, however, that notwithstanding anything to the contrary, the Committee is bound by the terms of this Order and the Bidding Procedures.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

20.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

cc:    Alan M. Grochal
       Tydings & Rosenberg LLP
       100 East Pratt Street, 26th Floor
       Baltimore, Maryland 21202

       And the parties on the attached matrix

#2167831v.3

Hedwin Ltd. Matrix
4/11/14

Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard St., Suite 2625
Baltimore, MD  21201

Linda V. Donhauser, Esquire
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD  21202

Bank of America
John Getz
300 Galleria Parkway, Suite 800
Atlanta, GA  30339

Specialty Industries
175 East Walnut Street
Red Lion, PA  17356

Serv Pro
102 Cockeysville Road
Cockeysville, MD  21030

Chevron Phillips Chemical
1400 Jefferson Avenue
Pasadena, TX  77502

Electronic Restoration Services
12001 Levan Road
Livonia, MI  48150

Zacros America
1821 Walden Office Square
Suite 400
Schaumburg, IL  60173

Meyers Construction
1121 Greenwood Road
Suite 101
Pikesville, MD  21208

Constellation Newenergy, Inc.
800 Boylston Street
Site 28
Boston, MA 02199

Ineos Olefins & Polymers USA
13536 Collections Center Drive
Chicago, IL  60693

PCA – Salt Lake City
4654 West 1525 South
Salt Lake City, UT  84104

MD Unemployment Insurance
Division
1100 North Eutaw Street
Baltimore, MD  21201

Equistar Chemical, LP
2718 Collections Center Drive
Chicago, IL  60693

Worldwide Dispensers
Merton Industrial Park
Lee Road
London SW19 3WD
United Kingdom

Green Bay Packaging
1100 Gilroy Road
Hunt Valley, MD 21031

Transamerica Retirement Solutions
PO Box 13699
Newark, NJ  07188

Transamerica Retirement
Solutions
Connie McDonald
4333 Edgewood Road NE
Cedar Rapids, IA  52499

Anchor Staffing
6960 Aviation Blvd.
Suite D
Glen Burnie, MD  21061

South Franklin Street Partners
c/o Paul W. Linehan
McDonald Hopkins
600 Superior Avenue East, Suite 2100
Cleveland, OH  44114

Pillsbury
Patrick J. Potter, Esq.
2300 N. Street, NW
Washington, DC 20037

Sixth Sense Partners
3041 Warrington Road
Cleveland, OH 44120

PolyOne
114 Morehead Road
Statesville, NC 28677

Guernsey Office Products
45070 Old Ox Road
Sterling, VA 20166

Priority Worldwide Services
7361 Coca Cola Dr.
Hanover, MD 21076

Ampacet Corporation
660 White Plaines Road
Tarrytown, NY 10591

#2167831v.3

BGE
c/o Constellation Energy
Barbara A. Gaughan
100 Constellation Way, Ste. 1700P
Baltimore, MD 21202

Peter Trost
ESOP Services
North Star Trust Co.
311 W. Monroe Street, 14th Floor
Chicago, IL 60606

BGE
2 Center Plaza
110 West Fayette Street
Baltimore, MD 21201

BGE
c/o Corporate Creations Network,
Inc., Resident Agent
2 Wisconsin Circle, #700
Chevy Chase, MD 20815

Marc E. Shach, Esquire
Curtis C. Coon, Esquire
Coon & Cole, LLC
401 Washington Avenue, Suite 301
Towson, MD 21204

Tammy Cohn, Esquire
Sellman Hoff, LLC
The Cooperage
2201 Old Court Road
Baltimore, MD 21208

Mark D. Maneche, Esquire
Tiffany S. Franc, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Rd., Suite 400
Towson, MD 21204

Samuel C. Batsell
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 k Street, NW
Washington, DC 20005-4026

**END OF ORDER**

#2167831v.3

EXHIBIT 1

## Bidding Procedures

### A.    General

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of substantially all of the assets (the "Assets") of Hedwin Corporation, debtor-in-possession in Case No. 14-15194 (the "Debtor"). These Bidding Procedures are being distributed in connection with the Debtor's Motion (the "Bidding Procedures Motion") for Entry of Order: (A) Approving Bidding Procedures for Sale of Substantially All of the Debtor's Assets; (B) Authorizing and Scheduling an Auction; (C) Scheduling Hearing for Approval of the Sale of Assets Free and Clear of Liens and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to Successful Bidder (D) Approving Breakup Fee and Expense Reimbursement; (E) Approving Procedures and Setting Deadlines for the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Cure Amount Relating Thereto; (F) Approving Certain Deadlines and the Form, Manner and Sufficiency of Notice; and (G) Granting Other Related Relief.

On April ___, 2014, the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") approving, incorporating, and authorizing, among other things, the implementation of these Bidding Procedures and scheduling a timeline for the sale of the Assets (the "Sale").

### B.    Stalking Horse Bid

On April 1, 2014, the Debtor entered into an Asset Purchase Agreement (the "APA")[1] with Fujimori Kogyo Co., Ltd.   (the "Buyer") pursuant to which the Debtor agreed to sell and

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Stalking Horse APA.  As used herein, the term Assets means the same as "Purchased Assets" under the Stalking Horse APA.  The terms of the Stalking Horse APA shall not be deemed modified by the terms of the Bidding Procedures or the order approving the Bidding Procedures.

the Buyer agreed to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets for (i) the sum of $16,500,000.00 (subject to adjustments as set forth in the APA); plus (iii) the assumption of the Assumed Liabilities (the "Initial High Bid"). Pursuant to the terms of the APA, the Buyer proposes to acquire the Assets free and clear of all Encumbrances.[2]

### C.    The Bidding Process

Pursuant to the Bidding Procedures Order and the terms contained herein, the Debtor may conduct an auction (the "Auction") to sell the Assets to the person or entity making the highest and best bid (the "High Bid" and such person or entity making such bid, the "High Bidder") or to the person or entity making next highest and best bid (the "High Back-up Bid" and such person or entity making such bid, the "High Back-up Bidder") for the Assets submitted in accordance with these Bidding Procedures provided the bid is a Qualified Bids (defined below) made by a Qualified Bidder (defined below). If no Qualified Bids are received by the Debtor prior to the Bid Deadline, the Initial High Bid shall be deemed the High Bid and the Buyer shall be deemed the High Bidder for the purposes of the Sale Hearing (defined below). The Assets will only be offered and sold as a package and not individually. The Buyer is deemed to be a Qualified Bidder (defined below) without the need to take any action and may, but it is not required to, participate at the Auction and may submit additional higher bids.

The Debtor, after consultation with the Official Committee of Unsecured Creditors (the "Committee") and Bank of America, N.A. (the "Bank"), shall have the sole right, subject to the terms and conditions set forth herein to: (i) determine whether any person is a Qualified Bidder; (ii) determine whether any further due diligence investigation regarding the Assets shall be

---

[2]    The scope and nature of the "free and clear" Sale will be described in the Court's order approving the Sale (the "Sale Order"), the proposed form of which is attached to the APA and was submitted with the Sale Motion.

permitted and, if so, coordinate the efforts of potential bidders in conducting their respective due diligence investigations regarding the Assets; (iii) receive offers from Qualified Bidders; (iv) invite Qualified Bidders to any Auction; (v) negotiate any offer made to purchase the Assets; and (vi) determine the High Bid and the High Back-up Bid, subject only to Bankruptcy Court approval (collectively, clauses (i) through (vi) are the "Bidding Process").

Based upon the terms and conditions of the bids received from Qualified Bidders, the level of interest expressed by the bidders in the Assets, and such other information as the Debtor, after consultation with both the Bank and the Committee, determines is relevant, the Debtor may conduct the Auction in the manner it determines will achieve the maximum value for the Assets including, but not limited to, offering the Assets for bidding in such successive rounds as the Debtor determines to be appropriate.

Any person that wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Debtor nor its representatives, after consultation with both the Bank and the Committee, shall be obligated to furnish information of any kind whatsoever to any person that is not a Qualified Bidder and the Debtor and its professionals shall use good faith efforts to provide all Qualified Bidders with substantially similar information, all of which shall be provided to counsel for the Bank and counsel for the Committee.

**D.  Required Bid Documents**

All bids must include the following to constitute a Qualified Bid (the "Required Bid Documents"):

1.  A written irrevocable offer that expressly states the terms of the offer, including the purchase price being offered for the Assets, with an acknowledgement that the purchase price shall be paid in immediately available U.S. funds at closing. Any offer must include: (a) the full name and identity of the bidder; (b) the full name and identity of the bidder's broker (if any); and

(c) an express statement that the bidder has read, understands, and agrees to be bound by and comply with these Bidding Procedures.  The foregoing shall apply to all bids made by any bidder or on behalf of any bidder by a broker.

2.      An acknowledgement by the bidder that the bidder agrees to and will be bound by all of the terms set forth in the form of APA attached to the Sale Motion as **Exhibit 2**, except for specifically enumerated proposed modifications (which in no event shall include a financing contingency).  Any modifications proposed by the bidder shall be clearly shown in a clean and blacklined version (a "Marked APA") of the APA signed by an individual authorized to bind the proposed bidder.  No bidder, except for the Buyer, shall be eligible for a breakup fee or reimbursement of expenses under the APA.  Subject to the first sentence of this paragraph, the Debtor reserves the right, where appropriate in its business judgment, after consultation with both the Bank and the Committee,   to modify the APA with any bidder by accepting reasonable changes as determined by the Debtor.

3.      The payment, by wire transfer or certified check to Tydings & Rosenberg LLP, as escrow agent for the Debtor (or such other escrow agent as may be appointed by the Debtor for such purpose), of a good faith deposit equal to at least 10% of the purchase price (the "Deposit").  Any party claiming a lien on the Assets and making a credit bid must submit a deposit based upon the full amount of the bid without regard to the amount of credit included within such bid.  Notwithstanding anything contained in the Bidding Procedures Order or in the Bidding Procedures to the contrary, Bank of America, N.A. shall be deemed a Qualified Bidder and shall be entitled to credit bid, as a Qualified Bid, all or a portion of its claims against the Debtor, without the need to pay the Deposit, to the fullest extent permissible under section 363(k) of the Bankruptcy Code. Nothing in this Order shall prejudice any investigation and challenge rights that are granted to the Committee under any financing order entered by the Court.

4

4.      Written evidence of the bidder's financial ability to purchase the Assets in whole, which, in the Debtor' sole discretion, after consultation with both the Bank and the Committee, evidences the bidder's ability to timely consummate the Sale and perform under the Marked APA and satisfy the requirements of section 363 of the Bankruptcy Code. Such written evidence may include a written commitment for financing from a financial institution (but which shall not be a condition of closing), the bidder's current audited financial statement, the most recent quarterly report filed with the U.S. Securities and Exchange Commission, if the bidder is a public entity, or if the bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the bidder, which persons and/or entities shall guarantee the performance of the bidder, and/or other form of financial disclosure acceptable to the Debtor and its representatives.

5.      A fully completed Bidder Registration Form.

6.      A written list of each executory contract and unexpired lease the assumption and assignment of which is a condition to consummation of the Sale.

7.      If any bid is conditioned on the assumption and assignment of executory contracts or unexpired leases of real property, then such bidder shall be required to provide adequate assurance of future performance of such contracts or leases with the bid.

8.      If the bidder employs a broker, a disclosure of the identity of the broker and terms of the broker's proposed commissions.

9.      Written evidence that the bidder has obtained the requisite authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid, execution of the APA, and consummation of the transaction, or a representation that no such authorization or approval is required.

     **E.**      <u>**Qualified Bids**</u>

A "Qualified Bid" is a bid that includes each of the Required Bid Documents and:

(i)     is a bid for the Assets as a package, and NOT a bid for a portion of the Assets;

(ii)    is a binding irrevocable offer to purchase the Assets for cash only, with no contingencies to closing (other than the conditions set forth in the APA);

(iii)   has been timely received by each of the parties listed in the Section F below no later than the Bid Deadline or any extended Bid Deadline;

(iv)    the bid must not be materially more burdensome or conditional than the terms of the APA in the reasonable discretion of the Debtor, after consultation with both the Bank and the Committee;

(v)     the bidder must establish that, in the Debtor's business judgment, after consultation with both the Bank and the Committee,   the bidder has the ability and is reasonably likely to timely close on its proposed acquisition of the Assets if selected as the High Bid;

(vi)    is not subject to or conditioned on obtaining financing;

(vii)   is not conditioned on the outcome of unperformed due diligence;

(viii)  does not entitle the bidder, other than the Buyer, to any termination or break-up fee, expense reimbursement, or similar type of payment;

(ix)    is a good faith, bona fide offer to purchase the Assets;

(x)     is in an amount equal to or greater than the Initial Incremental Bid Amount (defined below in Section G);

(xi)    is a Qualified Bid, as determined in the sole and absolute discretion of the Debtor, after consultation with both the Bank and the Committee,  ;

(xii) by its terms will remain open and irrevocable until the earlier of: (i) the closing with respect to the High Bid or the High Back-Up Bid, as applicable; or (ii) 90 days after entry of the Order of the Bankruptcy Court approving the sale;

(xiii) contains evidence satisfactory to the Debtor, after consultation with both the Bank and the Committee, that the bidder is reasonably likely to obtain prompt regulatory approval, if required, to purchase the Assets.

Any person or entity that submits a Qualified Bid shall be a "Qualified Bidder." The Buyer is deemed to be a Qualified Bidder and may participate at the Auction, if any, without otherwise complying with the pre-Auction terms of these Bidding Procedures.

### F. **Bid Deadline**

To be considered a timely bid for the Auction (described below), written copies of its bid containing each of the Required Bid Documents (described above) must be delivered to: (i) the Debtor's Chief Restructuring Officer, Charles S. Deutchman, c/o Hedwin Corporation, 1600 Roland Heights Avenue, Baltimore, MD 21211, cdeutchman@shrmgtres.com; (ii) the Debtor's investment banker and financial advisor, Mesirow Financial, 353 North Clark Street, Chicago, IL 60654, Attention: Ketan Shah, Senior Vice President and Associate General Counsel, kshah@mesirowfinancial.com; (iii) the Debtor's counsel, Alan M. Grochal, Esq. and Stephen M. Goldberg, Esq., Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, agrochal@tydingslaw.com and sgoldberg@tydingslaw.com; (iv) Buyer's Counsel, Shinya Akiyama, Esq., Pillsbury Winthrop Shaw Pittman, LLP, 1540 Broadway, New York, NY 10036-4039, shinya.akiyama@pillsburylaw.com; and (v) coun sel for the Committee, Sharon L. Levine, Esq. and S. Jason Teele, Esq., Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ, Attention: Sharon L. Levine, Esq. and S. Jason Teele, Esq., slevine@lowenstein.com and steele@lowenstein.com and Maria Ellena Chavez-Ruark, Esq.,

#2167834v.2

Saul Ewing LLP, 500 East Pratt Street, Suite 900, Baltimore, MD 21202, SO THAT SUCH BID IS RECEIVED NO LATER THAN 5:00 P.M. (EASTERN DAYLIGHT TIME) ON MAY 5, 2014 (the "Bid Deadline"). The Debtor may, in its sole discretion, after consultation with both the Bank and the Committee,   extend the Bid Deadline once or successively without further notice but is not obligated to do so.

The submission of a bid shall constitute an express consent by the bidder to the exclusive jurisdiction of the Bankruptcy Court to hear and determine all disputes relating to the bid, the Auction, and the Sale.

In the event that the Debtor determines in good faith, after consultation with both the Bank and the Committee,   that is has not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the one represented by the APA, the Debtor shall seek the approval of the APA without conducting an Auction, and pursuant to the Sale Motion filed with the Court.

### G.    Pre-Auction Overbids

To constitute a Qualified Bid, a bidder's initial bid must exceed by at least $100,000, the combination of (i) the Initial High Bid,[3] (ii) the $600,000 Break-Up Fee and (iii) $250,000, the maximum amount of the Expense Reimbursement (the "Initial Incremental Bid Amount").

### H.    Due Diligence

Each bidder must complete all required due diligence prior to the submission of its bid. Due diligence information can be obtained by contacting the Debtor's investment banker, Mesirow Financial, 353 North Clark Street, Chicago, IL 60654, Attention: Ketan Shah, Senior Vice President and Associate General Counsel, (312)-595-6118, kshah@mesirowfinancial.com.

---

[3]    The amount of the Initial High Bid is $16,500,000.00 plus the amount of the Assumed Liabilities. The Debtor estimates that the Assumed Liabilities as of March 31, 2014 (excluding accrued liabilities associated with payroll) total approximately $4,064,305. Potential bidders may obtain additional information on the nature and magnitude of the Assumed Liabilities from Debtor's counsel prior to the Auction.

All bidders seeking due diligence information will be required to execute a Confidentiality Agreement prior to the disclosure of such information. The Confidentiality Agreement shall be no less favorable to the Debtor than the Confidentiality Agreement signed by the Buyer. The Confidentiality Agreement will be provided to all bidders by Mesirow Financial upon request of due diligence information. The Debtor and Mesirow Financial shall not be obligated to furnish any due diligence information after the Bid Deadline or to any party that the Debtor, after consultation with both the Bank and the Committee, determines, in its sole discretion, is not reasonably likely to be a Qualified Bidder.

**I.    Acceptance of Qualified Bids**

The Debtor intends to sell the Assets to the Qualified Bidder who submits the High Bid at the Auction, if any, or in the event no additional Qualified Bids are received, to the Buyer. The High Bid and any High Backup-Bid are subject to approval by the Bankruptcy Court at the Sale Hearing. No bid shall be deemed rejected until such rejection is communicated in writing by the Debtor.

In evaluating whether any Qualified Bidder has submitted a higher and better bid, the Debtor may, after consultation with both the Bank and the Committee, consider, among other things: (i) the number, type and nature of any changes to the APA as indicated on the Marked APA required by each bidder; (ii) the extent to which such modifications are likely to delay closing of the Sale to such bidder and the cost to the bankruptcy estate from such modifications or delay; (iii) the purchase price and the bidder's financial status; and (iv) the probability of a prompt closing.

The Debtor shall provide the Buyer, the Bank and the Committee with all copies of what the Debtor has determined to be Qualified Bids at least five (5) calendar days prior to the date of the Auction.

9

### J.     Auction

If, on or before the Bid Deadline, the Debtor has received at least one Qualified Bid, other than the Initial High Bid, the Debtor shall conduct an Auction with respect to the Assets. **The Auction shall take place on May 9, 2014, at 10:00 A.M.** at the offices of Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other time and place to be designated by the Debtor in writing.  At the start of the Auction, the Debtor (or their agent(s) as the case may be) will announce the highest and best Qualified Bid, as determined by the Debtor in its sole and absolute discretion, after consultation with both the Bank and the Committee.  During the Auction, bidding shall begin initially with the highest and best Qualified Bid as determined by the Debtor, after consultation with both the Bank and the Committee . The Debtor shall not consider any subsequent bid at the Auction unless the bid exceeds the previous highest bid by at least $100,000 (the "Bid Increment").  The Buyer shall have the right to include the amount of the Break-up Fee and Expense Reimbursement in the amount of any subsequent bid that it makes at the Auction.

During the course of the Auction, the Debtor may inform the participants which Qualified Bid reflects, in the Debtor's view, after consultation with both the Bank and the Committee,  the highest and best offer and, if such bid has been determined to be the highest and best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the APA or the APA of the Qualified Bidder, as applicable, other than an increase in the cash purchase price, the value reasonably ascribed by the Debtor to such added, deleted or modified provision or provisions.

ONLY  QUALIFIED  BIDDERS  THAT  HAVE  SUBMITTED  QUALIFIED  BIDS SHALL BE ELIGIBLE TO PARTICIPATE IN THE AUCTION.  THE DEBTOR RESERVES THE RIGHT TO EXCLUDE ANY PARTY (OTHER THAN THE BUYER, THE BANK, THE

COMMITTEE AND ACP-I LP AND THEIR PROFESSIONALS) FROM PARTICIPATING IN OR BEING PRESENT AT THE AUCTION FOR ANY REASON THAT THE DEBTOR DETERMINES MAY IMPACT NEGATIVELY UPON THE SUCCESS OF THE AUCTION OR THE DEBTOR'S BUSINESS.

The Auction may be adjourned in the Debtor' reasonable discretion, after consultation with both the Bank and the Committee. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to the Buyer and all Qualified Bidders.

At the conclusion of the Auction the Debtor will identify the High Bid and the High Back-Up Bid, each of which shall be bound to comply with the terms of their respective sale agreements. Within three (3) business days of the conclusion of the Auction, the High Bidder and the High Back-Up Bidder shall supplement their Deposit by delivering to the escrow agent for the Debtor such additional immediately available funds as may be necessary so that their Deposit equals ten percent (10%) of the High Bid.

### K.  Sale Hearing

After the Auction, the Debtor will seek the entry of an order authorizing and approving the Sale to the High Bidder and the High Back-Up Bidder (in the event the Sale to the High Bidder is unable to close) at the **Sale Hearing which is scheduled for May 12, 2014 at 2:00 p.m., Courtroom of the Honorable Nancy V. Alquist_Chief Judge, United States Bankruptcy Court for the District of Maryland, 101 W. Lombard Street, Baltimore, MD 21201,** or as soon thereafter as counsel may be heard. Following approval of the Sale to the High Bidder, if the High Bidder fails to consummate an approved sale within 90 days after entry of the order approving the Sale to the High Bidder, the Debtor shall be authorized to consummate the Sale with the High Back-Up Bidder without further order of the Court.

### L.  Irrevocability Period

#2167834v.2

ALL BIDS, INCLUDING BIDS BY THE BUYER, ARE IRREVOCABLE AND
SHALL REMAIN BINDING UPON THE BIDDERS UNTIL THE EARLIER OF: (I) THE
CLOSING OF THE SALE TO THE HIGH BIDDER OR HIGH BACK UP BIDDER, AS
APPLICABLE, OR (II) 90 DAYS AFTER ENTRY OF THE SALE ORDER.

**M.** **Return of Deposit**

The Deposit of any Qualified Bidder will be held in escrow as provided in Section D.3
above in a non-interest bearing trust account until the earlier of: (i) the closing of the High Bid or
the High Back-Up Bid, as applicable, or (ii) 90 days after entry of an Order of the Bankruptcy
Court approving the Sale, unless such bid is sooner expressly rejected in writing by the Debtor or
the Debtor causes a termination of the applicable APA. If the High Bidder fails to consummate
the Sale due to the breach by such party, the Debtor shall retain the Deposit as partial liquidated
damages and have such other remedies as may be set forth in the breached APA, and the High
Back-Up Bidder shall immediately proceed to closing with the Debtor.

**N.** **"As Is" and "Where Is"**

The sale of the Assets shall be on an "As Is" and "Where Is" basis and without warranties
or representations of any kind by the Debtor or their agents concerning the condition of the
Assets, except to the extent set forth in the APA of the High Bidder. Except as provided in the
APA, all of the Debtor's right, title and interest in and to the Assets shall be sold free and clear of
all Encumbrances, if any, in accordance with sections 363 and 365 of the Bankruptcy Code, with
such Encumbrances attaching to the net proceeds of Sale received by the Debtor, subject to any
rights and defenses of the Debtor thereto and subject to further order of the Court.

By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and
represent that, except as otherwise set forth in the Qualified Bidder's APA, it has had an
opportunity to inspect and examine the Assets and conduct any and all due diligence regarding

the Assets prior to making its bid; that it has relied solely upon its own independent review, investigation and/or inspection of the Assets in making its bid; and that it did not rely upon or receive any written or oral statements, representation, promises, warranties or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, with respect to the Assets, or the completeness of any information provided in connection with the Assets or the Auction, except as expressly stated in these Bidding Procedures.

**O.    Expenses**

Any bidders, other than the Buyer, presenting bids shall bear their own expenses in connection with the bidding and sale process, whether or not such Sale is ultimately approved, in accordance with the terms of the APA.  Buyer may recover expenses in accordance with the terms of the APA and the Bidding Procedures Order.

**P.    Debtor's Reservation of Rights**

The Debtor may, in its sole discretion, after consultation with both the Bank and the Committee:  (a) determine, in its business judgment, which bid, if any, is the highest or best offer for the Assets; and (b) reject at any time before entry of an order by the Bankruptcy Court approving a successful bid, any bid that, in the Debtor's sole discretion, after consultation with both the Bank and the Committee, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor, its estate, and/or its creditors.

The Debtor, after consultation with both the Bank and the Committee, shall have the right to adopt such other rules for the bidding process that, in its sole discretion, will better promote the goals of the bidding process.

EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re:                                          *

**HEDWIN CORPORATION**                          *    Case No. 14-15194

     **Debtor**                              *    Chapter 11

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## NOTICE OF BIDDING PROCEDURES,
## AUCTION DATE, AND SALE HEARING

     **PLEASE TAKE NOTICE** that on April 2, 2014, Hedwin Corporation, debtor and debtor in possession (the "Debtor") filed the Debtor's Motion For An Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief (the "Bidding Procedures Motion").[1]

     On April ___, 2014, the Court entered an order (the "Bidding Procedures Order") granting the Bidding Procedures Motion and approving the bidding procedures attached hereto (the "Bidding Procedures") to be used in connection with a sale of substantially all of the Debtor's assets (the "Assets"). Pursuant to separate motion (the "Sale Motion," Doc. # 27), the Assets are being sold free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code.

     Fujimori Kogyo Co., Ltd. ("Fujimori") has submitted an offer, as the "Stalking Horse Bidder" to the Debtor to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets on the terms set forth in that certain Asset Purchase Agreement dated April 1, 2014, between the Debtor and Fujimori (the "APA"), which is conditioned on Court approval and is subject to higher or better offers. The sale terms are set forth with more particularly in the APA. The purchase price for the Assets under the APA is $16,500,000.00 plus the assumption of certain liabilities.

     Other relevant terms of the APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party, the Stalking Horse Bidder will be paid a breakup fee of $600,000 (the "Breakup Fee"), plus up to an additional $250,000 for reimbursement of expenses that the Stalking Horse Bidder

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Motion. The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the APA (defined herein). The APA is attached to the Sale Motion (defined herein) as Exhibit 2. To the extent there is any conflict between the terms of this Notice and either the APA, the Bidding Procedures Order, or the Bidding Procedures (defined herein), the APA, Bidding Procedures Order and Bidding Procedures, as the case may be, shall control.

incurs in connection with the sales transaction (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain liabilities including all trade accounts payable remaining unpaid as of the closing and that were either reflected on the Debtor's balance sheet for the period ending December 31, 2013 or which thereafter arise in the ordinary course of business; (d) certain executory contracts and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse Bidder, all as set forth in the APA; (e) except as expressly stated in the Stalking Horse APA, the Debtor is making no representation or warranties whatsoever, express or implied, with respect to any matter relating to the Assets; (the Assets are being sold "AS IS," "WHERE IS," and "WITH ALL FAULTS"); and (f) the APA provides for the retention of all employees of the Debtor actively at work on the closing date.

As set forth in the Bidding Procedures Motion: (i) the Debtor is suffering a liquidity crisis and continues to suffer major cash flow problems; (ii) in October, 2013, due to the Debtor's deteriorating financial condition, the Debtor hired Shared Management Resources, Ltd. ("SMR"), by and through its managing directors Charles S. Deutchman, as Chief Restructuring Officer (the "CRO"), who has conducted extensive due diligence into the Debtor's financial condition, explored various strategies with management for improving the company's performance, and assisted and continues to assist management in restructuring the current operations of the business; (iii) in December 2013, the Debtor retained Mesirow Financial, Inc. ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction; (iv) for several months preceding the Petition Date, the Debtor, together with its CRO and Mesirow, worked cooperatively to analyze and evaluate the business, operations and financial condition of the Debtor and, as part of that process, Mesirow assisted in preparing and negotiating confidentiality agreements for prospective purchasers, preparing an offering memorandum containing detailed information about the Debtor's business, operations and financial condition, identifying and contacting potential purchasers, establishing a data room for due diligence to be conducted by prospective purchasers, evaluating proposals from prospective purchasers, and) negotiating a stalking horse offer; (v) Mesirow contacted 78 parties to elicit interest in acquiring all or part of the business; (vi) interested parties were given operational, organizational and financial information on the Debtor and all were offered the opportunity to conduct on site due diligence; (vii) only 10 parties conducted on site due diligence; and (viii) a deadline of March 12, 2014 was set for the submission of offers and notice of the deadline was given to those parties that had expressed an interest in making an offer.

The Debtor, after consultation with the Committee and the Bank of America N.A. (the "Bank"), determined that the offer of the Stalking Horse Bidder is presently the highest and best offer.

If offers are received by the Debtor from other qualified bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtor the opportunity to subject the Assets to competitive bidding while preserving the bid of the Stalking Horse Bidder, thereby providing a floor price for the Assets.

The Debtor is seeking to sell substantially all of its assets under Chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtor will no longer operate its business, although the Debtor anticipates that the purchaser of its assets will continue such business operations. The Debtor believes the sale of the Assets is in the best interest of the Debtor's estate and will provide the highest and best value for the Assets.

**Bidding Procedures**

2

A copy of the Bidding Procedures is attached hereto as **Exhibit 1**. The Bidding Procedures describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction. In the event of any inconsistency or conflict between this Notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as the case may be, shall control.

## The Auction

**PLEASE TAKE FURTHER NOTICE** that the Debtor is authorized to conduct the Auction in accordance with the Bidding Procedures to determine, after consultation with the4 Committee and the Bank, the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (Eastern Daylight Time) on May 9, 2014**, at Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other date or location as designated prior to the Auction.

## The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **May 12, 2014, at 2:00 p.m. (Eastern Daylight Time)** (the "Sale Hearing") to consider either approval of the APA in the absence of an Auction or approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable Nancy V. Alquist, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, 2nd Floor, Courtroom No. 2A, Baltimore, Maryland 21201.

**PLEASE BE TAKE FURTHER NOTICE** that the Bidding Procedures attached hereto shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments) or the Bidding Procedures Order (with all attachments) shall make such request in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, attention: Alan M. Grochal and Stephen M. Goldberg.

## Objections

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to judge's chambers, and shall be served on: (i) counsel to the Debtor: Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460; (ii) counsel to the Committee: Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ, Attention: Sharon L. Levine, Esq. and S. Jason Teele, Esq., slevine@lowenstein.com and steele@lowenstein.comand Maria Ellena Chavez-Ruark, Esq., Saul Ewing LLP, 500 East Pratt Street, Suite 900, Baltimore, MD 21202; and (iii) counsel to the Bank of America, N.A.: Miles and Stockbridge P.C., 100 Light Street, Baltimore, MD 21202 (Attention: Linda V. Donhauser and Frederick W. Runge): Facsimile: (410) 385-3800; (iv) counsel to ACP-I, L.P.: McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (Attention: Paul W. Linehan); (v) the Office of the United States Trustee, 101 West Lombard, Suite 2625, Baltimore, Maryland 21201; and (vi) counsel to the Stalking Horse Bidder: Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039 (Attention: Shinya Akiyama): Facsimile: (212) 858-1500, so as to be received by **May 12, 2014, at 9:00 a.m. (Eastern Daylight Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets and all requests for information concerning the Bidding Procedures, should be directed in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg).

Dated: April ___, 2014

                                            _____

                                            Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone:  410-752-9700
Facsimile:  410-722-5460
emails: agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Counsel for Debtor and Debtor in Possession

4

EXHIBIT 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re:                                   *

**HEDWIN CORPORATION**           *    **Case No. 14-15194**

    **Debtor**                         *    **Chapter 11**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## NOTICE OF AUCTION AND SALE HEARING

### YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

      **PLEASE TAKE NOTICE** that on April 2, 2014, the above-captioned debtor and debtor in possession (the "Debtor") filed the Debtor's Motion For An Order: (A) Approving Bidding Procedures For Sale Of Substantially All of the Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief (the "Bidding Procedures Motion").[1]

      On April ___, 2014, the Court entered an order (the "Bidding Procedures Order" Doc #___) granting the Bidding Procedures Motion and approving the bidding procedures (the "Bidding Procedures") to be used in connection with an auction (the "Auction") of the Debtor's assets (the "Assets").  Pursuant to a separate motion (the "Sale Motion," Doc. #27), the Debtor has requested Court authority to sell the Assets free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code.

      Fujimori Kogyo Co., Ltd. ("Fujimori") has submitted an offer, as a "Stalking Horse Bidder" to the Debtor to purchase (on its own behalf or through a direct or indirect wholly-owned subsidiary) the Assets on the terms set forth in that certain Asset Purchase Agreement, dated April 1, 2014, between the Debtor and Fujimori (the "APA"), which is

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Motion.  The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the  APA (as defined herein).   The APA is attached to the Sale Motion (defined herein) as Exhibit 2.   To the extent there is any conflict between the terms of this Notice and either the APA, the Bidding Procedures Order, or the Bidding Procedures (defined herein), the APA, Bidding Procedures Order and Bidding Procedures, as the case may be, shall control.

conditioned on Bankruptcy Court approval and is subject to higher or better offers. The sale terms are set forth with more particularly in the APA. The purchase price for the Assets under the APA is $16,500,000.00 plus the assumption of certain liabilities.

Other relevant terms of the APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party, the Stalking Horse Bidder will be paid a breakup fee of $600,000 (the "Breakup Fee"), plus up to an additional $250,000 for reimbursement of expenses that the Stalking Horse Bidder incurs in connection with the sales transaction (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain liabilities including all trade accounts payable remaining unpaid as of the closing and that were either reflected on the Debtor's balance sheet for the period ending December 31, 2013 or which thereafter arise in the ordinary course of business; (d) certain executory contracts and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse Bidder, all pursuant to the terms of the APA; (e) except as expressly stated in the Stalking Horse APA, the Debtor is making no representation or warranties whatsoever, express or implied, with respect to any matter relating to the Assets (the Assets are being sold "AS IS," "WHERE IS," and "WITH ALL FAULTS"); and (f) the APA provides for the retention of all employees of the Debtor actively at work on the closing date.

As set forth in the Bidding Procedures Motion: (i) the Debtor is suffering a liquidity crisis and continues to suffer major cash flow problems; (ii) in October, 2013, due to the Debtor's deteriorating financial condition, the Debtor hired Shared Management Resources, Ltd. ("SMR"), by and through its managing director Charles S. Deutchman, as Chief Restructuring Officer (the "CRO"), who has conducted extensive due diligence into the Debtor's financial condition, explored various strategies with management for improving the company's performance, and assisted and continues to assist management in restructuring the current operations of the business; (iii) in December 2013, the Debtor retained Mesirow Financial, Inc. ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction; (iv) for several months preceding the Petition Date, the Debtor, together with its CRO and Mesirow, worked cooperatively to analyze and evaluate the business, operations and financial condition of the Debtor and, as part of that process, Mesirow assisted in preparing and negotiating confidentiality agreements for prospective purchasers, preparing an offering memorandum containing detailed information about the Debtor's business, operations and financial condition, identifying and contacting potential purchasers, establishing a data room for due diligence to be conducted by prospective purchasers, evaluating proposals from prospective purchasers, and negotiating a stalking horse offer; (v) Mesirow contacted 78 parties to elicit interest in acquiring all or part of the business; (vi) interested parties were given operational, organizational and financial information on the Debtor and all were offered the opportunity to conduct on site due diligence; (vii) only 10 parties conducted on site due diligence; and (viii) a deadline of March 12, 2014 was set for the submission of offers and notice of the deadline was given to those parties that had expressed an interest in making an offer.

The Debtor, after consultation with the Committee and the Bank of America N.A. (the "Bank"), determined that the offer of the Stalking Horse Bidder is presently the highest and best offer.

If offers are received by the Debtor from other qualified bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtor the opportunity to subject the Assets to competitive bidding while preserving the bid of the Stalking Horse Bidder, thereby providing a floor price for the Assets.

The Debtor is seeking to sell substantially all of its assets under Chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtor will no longer operate its business, although the Debtor anticipates that the purchaser of its assets will continue such business operation. The Debtor believes the sale of the Assets is in the best interest of the Debtor's estate and will provide the highest and best value for the Assets.

### The Auction

**PLEASE TAKE FURTHER NOTICE** that the Debtor is authorized to conduct the Auction in accordance with the terms of the Bidding Procedures to determine, after consultation with the Committee and the Bank, the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (Eastern Daylight Time) on May 9, 2014**, at Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, or such other date or location as designated prior to the Auction.

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **May 12, 2014, at 2:00 p.m. (Eastern Daylight Time)** (the "Sale Hearing") to consider either approval of the APA in the absence of an Auction or approval of the winning bid and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable Nancy V. Alquist, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, 2nd Floor, Courtroom No. 2A, Baltimore, Maryland 21201.

**PLEASE BE TAKE FURTHER NOTICE** that the Bidding Procedures approved by the Court shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments) or the Bidding Procedures Order (with all attachments) shall make such request in writing to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, attention: Alan M. Grochal and Stephen M. Goldberg.

### Objections

Any objection to any of the relief to be requested at the Sale Hearing must be in

EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| | | |
| **HEDWIN CORPORATION** | * | **Case No. 14-15194** |
| | | |
| Debtor | * | **Chapter 11** |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

### NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED

**PLEASE TAKE NOTICE** that on April 2, 2014 (the "Petition Date"), Hedwin Corporation, debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on April __, 2014 the Court entered an Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; And (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief (the "Bidding Procedures Order," Doc. # ___). This Notice is issued pursuant to the requirements of the Bidding Procedures Order. The Bidding Procedures Order and the order approving the Sale Motion (defined below) shall govern the Debtor's assumption and assignment of the Assumed Contracts (defined below).

**PLEASE TAKE FURTHER NOTICE** that on April 2, 2014, the Debtor filed its Motion for an Order (i) Approving Asset Purchase Agreement and Authorizing the Sale of Certain of Substantially All Assets Outside the Ordinary Course of Business; (ii) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtor seeks, *inter alia*, the Bankruptcy Court's approval of the sale of the Debtor's assets, including the assumption and assignment of various executory contracts and unexpired leases (the "Assumed Contracts"), to the Successful Bidder (as defined in the Sale Motion), free and clear of liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Sale Motion has been set for **May12, 2014, at 2:00 p.m. (Eastern Daylight Time)** before the Honorable Nancy V. Alquist, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, 2nd Floor, Courtroom No. 2A, Baltimore, Maryland 21201.

**PLEASE TAKE FURTHER NOTICE** that the amount shown on **Exhibit A** attached to this Notice as the "Cure Cost" for the Assumed Contract listed on **Exhibit A** to which you are a party is the

amount, based upon the Debtor's books and records, which the Debtor asserts is owed to cure any defaults existing under the Assumed Contract as of the Petition Date.[1]

**PLEASE TAKE FURTHER NOTICE** that the buyer may exclude any agreement or agreements from the list of Assumed Contracts at any time within seven (7) calendar days prior to the closing.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has previously mailed a copy of the Sale Motion to you and will do so again by facsimile, email or overnight delivery if you fax a written request for such delivery to Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460 or request a copy by email to agrochal@tydingslaw.com or sgoldberg@tydingslaw.com. Such request must specify how the information is to be transmitted.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown for the Assumed Contract on **Exhibit A**, or if you object to the assumption and assignment of your Assumed Contract on any ground, you must file an objection in writing with the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, Baltimore, Maryland 21201 on or before 4:00 p.m. Eastern Daylight Time on May 5, 2014. In addition, any objection must attached a complete copy of your contract (including all amendments thereto) and set forth the specific default or defaults alleged, set forth any such other ground for objection, and set forth any Cure Cost as alleged by you.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and assumption of your Assumed Contract or to the Cure Cost must be served so as to be received by that same date and time stated above upon the following parties: (i) the Debtor: Tydings & Rosenberg LLP, 100 E. Pratt Street, 26th Floor, Baltimore, MD 21202, (Attention: Alan M. Grochal and Stephen M. Goldberg), Facsimile: (410) 727-5460; (ii) counsel to the Official Committee of Unsecured Creditors: Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ, Attention: Sharon L. Levine, Esq. and S. Jason Teele, Esq., slevine@lowenstein.com and steele@lowenstein.com and Maria Ellena Chavez-Ruark, Esq., Saul Ewing LLP, 500 East Pratt Street, Suite 900, Baltimore, MD 21202; (iii) counsel to the Bank of America, N.A.: Miles and Stockbridge P.C., 100 Light Street, Baltimore, MD 21202 (Attention: Linda V. Donhauser and Frederick W. Runge): Facsimile: (410) 385-3800; (iv) counsel to ACP-I, L.P.: McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (Attention: Paul W. Linehan); (v) the Office of the United States Trustee, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201; and (vi) counsel to the Stalking Horse Bidder: Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039 (Attention: Shinya Akiyama): Facsimile: (212) 858-1500.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE. ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH ASSUMED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT**

---

[1]     Your receipt of this notice does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement.

#2167844v.2

**OF THE ASSUMED CONTRACT ON THE TERMS AND CONDITIONS REQUESTED BY THE DEBTOR.**

Dated: April__, 2014

Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone: 410-752-9700
Facsimile: 410-722-5460
emails: agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Counsel for Debtor and Debtor in Possession

- 3 -