**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re: | * |
| **HEDWIN CORPORATION** | *   Case No. 14-15194 |
| Debtor | *   Chapter 11 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEBTOR'S MOTION FOR AN ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

Hedwin Corporation, the debtor and debtor in possession ("Hedwin" or the "Debtor"), by counsel, moves, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, for the entry of an Order, the proposed form of which is attached as **Exhibit 1** (the "Sale Order"): (a) approving an asset purchase agreement and authorizing the sale of assets outside the ordinary course of business; (b) authorizing the sale of assets free and clear of all liens, claims, encumbrances and interests pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code; (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (d) granting related relief (this motion is referred to herein as the "Sale Motion," and the hearing on this motion is referred to herein as the "Sale Hearing").

In support of this Sale Motion, the Debtor states as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

#2166235v.2



3.      The statutory or other predicates for the relief sought herein are sections 105, 363, 365, 503, 1107 and 1108 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 and 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland.

## The Bankruptcy Case

4.      On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

5.      The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      As of the date of this Sale Motion, no official committee of unsecured creditors (the "Committee") has been appointed by the Office of the United States Trustee for the District of Maryland (the "U.S. Trustee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

7.      Concurrently with the filing of this Sale Motion, the Debtor filed Debtor's Motion for an Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice and, (G) Granting Other Related Relief (the "Bidding Procedures Motion"), which seeks approval of certain sale and bidding procedures for the sale, as more particularly set forth therein (the "Bidding Procedures"). The sale, approval of which is sought by this Sale Motion (the "Sale"), shall be either

2

to (i) Fujimori Kogyo Co., Ltd. ("Fujimori" or the "Stalking Horse Bidder")[1] pursuant to that certain Asset Purchase Agreement dated April 1, 2014 between Fujimori and the Debtor (the "Stalking Horse APA") or (ii) the highest and best bidder at the auction (the "Auction"), if any, conducted by the Debtor pursuant to the terms of Bidding Procedures and the order approving the Bidding Procedures and Bidding Procedures Motion (the "Bidding Procedures Order").    The successful bidder (i.e,, the party to whom the Debtor, at the Sale Hearing, will seek Court approval to sell substantially of its assets), whether Fujimori (in the event of no Auction), or the highest and best bidder at the Auction (which may also be Fujimori), is referred to herein as "Successful Bidder."

8.    In addition, on the Petition Date, the Debtor filed a Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, (C) Authorizing Use of Cash Collateral, (D) Granting Adequate Protection to Prepetition Secured Parties, and (E) Scheduling a Final Hearing (the "DIP Motion"), seeking authorization to, among other things, obtain secured postpetition financing from Bank of America, N.A. ("Bank of America") and use of the cash collateral of Bank of America and ACP-I, L.P. ("ACP"). Bank of America, which holds a first priority lien on all of the Debtor's assets, and ACP, which holds a second priority lien on all of the Debtor's assets, are sometimes collectively referred to as the "Secured Parties."

### Company Background

9.    The Debtor is a Maryland corporation and since 2004 has been wholly owned by current and former employees of the company pursuant to an Employee Stock Option Plan (the "ESOP").

---

[1]    As used herein, the term "Purchaser" includes Fujimori and its designee to purchase the Assets, a direct or indirect wholly-owned subsidiary of Fujimori.

10. The company was founded in 1946 as a manufacturer of molten sheet thermoforms for use in plastic heat-sealing. In 1956, Hedwin patented its Cuitainer® design. In subsequent years, the company's product lines grew to include blow molding and injection molding technologies.

11. The Debtor is a leading manufacturer of customized industrial plastic packaging, which it sells to wholesalers and distributors throughout the United States, Canada and Europe. The company's products include high performance and regulated specialty industrial packaging for use in the chemical, medical and institutional food industries. The principal product lines consist of: (i) the Cubitainer® Package with accompanying Cube® Insert, which is a high performance alternative to open pail heads; (ii) blow-molded high density polyethylene containers, which include branded and custom extruded and lightweight containers, bottles and pails; and (iii) branded liners designed to protect materials processed in pails and drums.

12. As of the Petition Date, the Debtor employed approximately 300 employees, of which approximately 50 are salaried and approximately 250 are hourly. None of the Debtor's employees are represented by a labor union.

13. The Debtor's manufacturing facility is located at 1600 Roland Heights Avenue, Baltimore, Maryland. The Debtor has a warehouse facility at 1700 West 41st Street, Baltimore, Maryland and a warehouse and assembly facility at 9175 Moya Blvd. (Unit D), Reno, Nevada. All of the Debtor's facilities are leased.

14. In 2012, the Debtor recorded net sales of $44 million with $4.5 million in gross profit. In 2013, the Debtor generated net sales of $43.5 million and had gross profits of $3.4 million. The decline in revenue in 2013 was primarily attributable to the business interruption resulting from a major fire in June 2013 to the Debtor's manufacturing facility. The fire negatively affected the Debtor's operations, causing a shutdown in certain assembly lines.

4

#2166235v.2

15.     As of the fiscal year end December 31, 2013, the Debtor had total net assets of approximately $15 million.

16.     A combination of factors and events has negatively impacted and continue to adversely affect the Debtor's business operations and its financial condition.  The Debtor's current weakened and worsening financial condition stems from, among other things: (i) expenses incurred and losses sustained due to the June 2013 fire to the Debtor's manufacturing facility; (ii) fluctuating and higher resin prices; (iii) margin compression; and (iv) delayed capital investment in equipment and production processes, resulting in increased production costs and inefficiencies.

17.     In October, 2013, the Debtor hired Shared Management Resources, Ltd. ("SMR"), by and through its managing director Charles S. Deutchman, as Chief Restructuring Officer (the "CRO").  The CRO has conducted extensive due diligence into the Debtor's financial condition, has explored various strategies with management for improving the company's performance, and has assisted and continues to assist management in restructuring the current operations of its business.

18.     In December 2013, the Debtor retained Mesirow Financial, Inc. ("Mesirow") as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction.

19.     The Debtor, in consultation with its advisors and the Secured Parties, determined the filing of a Chapter 11 bankruptcy case was necessary and appropriate and that a sale of substantially all of the Debtor's assets was the best option presently available to maximize value and preserve employee jobs.  The Debtor has minimal liquidity and the Secured Parties are unwilling to extend additional credit to the Debtor except to the limited extent set forth in the DIP Motion.  Absent a sale, the Debtor would have to immediately terminate its employees and begin the wholesale liquidation of its assets to the detriment of the estate and its creditors.

#2166235v.2

## The Initial Sale Process

20.     For several months preceding the Petition Date, the Debtor, together with its CRO and Mesirow, worked cooperatively to analyze and evaluate the business, operations and financial condition of the Debtor.  As part of this process, Mesirow assisted in: (i) preparing and negotiating confidentiality agreements for prospective purchasers; (ii) preparing an offering memorandum containing detailed information about the Debtor's business, operations and financial condition; (iii) identifying and contacting potential purchasers of the Debtor's assets; (iv) establishing a data room for due diligence to be conducted by prospective purchasers; (v) evaluating proposals from prospective purchasers; and (vi) negotiating a stalking horse offer.

21.     As part of its marketing efforts, Mesirow contacted 78 parties to elicit interest in acquiring all or portion of Hedwin's business.  Interested parties were given operational, organizational and financial information on the Debtor and all were offered the opportunity to conduct on site due diligence.  Only 10 parties conducted on site due diligence and used the virtual data room set up by the Debtor.

22.     Mesirow, after consultation with the Debtor, set a deadline of March 12, 2014, for the submission of offers and gave notice of the deadline to each party that had expressed an interest in making an offer.  The Debtor prepared a proposed form of asset purchase agreement for the contemplated sale, which was made available to prospective bidders in the virtual data room established by Debtor for such prospective bidders to conduct due diligence.

## The Stalking Horse Offer

23.     The Debtor has received offers to purchase substantially all of the assets of the Debtor from: (i) Fujimori; (ii) Peak Rock Capital; (iii) Blackstreet Capital Management, LLC; and (iv) Platinum Equity Advisors, LLC.

6

#2166235v.2

24.     After consultation with its advisors, the Debtor determined that the offer of Fujimori is presently the highest and best offer submitted (the "Stalking Horse Offer"). Accordingly, the Debtor and Fujimori (as the Stalking Horse Bidder) entered into the Stalking Horse APA, attached to the Bidding Procedures Motion as Exhibit 2, subject to higher and better offers and conditioned upon approval of the Bankruptcy Court.

25.     The terms of sale agreed to by the Debtor and the Stalking Horse Bidder are set forth with particularity in the Stalking Horse APA. Under the Stalking Horse APA, other than specifically "Excluded Assets," the Debtor would sell (and the Stalking Horse Bidder will buy) all of the Debtor's right, title and interest in, to and under all assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), whether presently existing or hereafter acquired, owned, leased, licensed or used or held for use in or relating to the operation of the Debtor's business (the "Assets"). [2] The Assets include, among other things, all of the Debtor's accounts receivable, certain contracts, equipment, intellectual property, inventory, leases, and other tangible personal property.

26.     Under the Stalking Horse APA, certain "Excluded Assets" are not being sold to the Stalking Horse Bidder. The "Excluded Assets" include, without limitation, all of Debtor's cash and cash equivalents, all avoidance claims arising under Chapter 5 of the Bankruptcy Code (with the exception of certain claims, such as those against creditors whose debts are being assumed), all of Debtor's bank accounts, certain insurance claims and rights to proceeds therefrom, all of Debtor's corporate and organizational documents; and all contracts not assumed.

27.     The purchase price for the Assets under the Stalking Horse APA is $16,500,000.00 plus the assumption of certain liabilities.

---

[2]     As used herein, the term Assets has the same meaning as "Purchased Assets" in the Stalking Horse APA. In the event of a conflict between the summary descriptions of the Stalking Horse APA contained herein and the Stalking Horse APA, the latter shall control.

7

28.    The Stalking Horse APA also provides, among other things, as follows:

(a)    The Assets will be sold free and clear of liens, claims, encumbrances and other interests.

(b)    The Court shall approve payment to the Stalking Horse Bidder (as a general, not super-priority, administrative claim) of a break-up fee in an amount equal to $600,000 (the "Break-Up Fee") and an expense reimbursement in an amount not to exceed $250,000 (the "Expense Reimbursement") for the Stalking Horse Bidder's reasonable and documented out-of-pocket expenses incurred in connection with the transaction contemplated hereby.  The Break-Up Fee and the Expense Reimbursement shall be paid to the Stalking Horse Bidder from the proceeds (the "Alternative Transaction Proceeds") of sale on the closing of an Alternative Transaction (defined in the Stalking Horse APA) approved by the Bankruptcy Court. Such payments shall be made to the Stalking Horse Bidder (i) on the closing date of the Alternative Transaction and (ii) prior to any other distributions to creditors (or otherwise) from the Alternative Transaction Proceeds.

(c)    The Stalking Horse Bidder will assume certain liabilities (the "Assumed Liabilities"), including the payment of all trade account payables that remain unpaid as of closing. The trade account payables that will be assumed by the Stalking Horse Bidder include the cure costs for executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Stalking Horse Bidder.

(d)    Certain executory contracts and unexpired leases will be assumed by the Debtor and assigned to the Stalking Horse Bidder, with the payment of all cure costs being advanced by the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

8

(e)     Except as expressly stated in the Stalking Horse APA, the Debtor is making no representation or warranties whatsoever, express or implied, with respect to any matter relating to the Assets.  The Assets are being sold "AS IS," "WHERE IS," and "WITH ALL FAULTS."

(f)     The Staking Horse APA provides for the retention of all employees of the Debtor actively at work on the closing date.

29.     The Stalking Horse Offer is the basis for soliciting opening bids for a possible auction of the Assets.  Pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtor receives one or more "Qualified Bids" (as defined in the Bidding Procedures)  an Auction will be commenced on a date set by the Court at Tydings & Rosenberg, LLP, 100 East Pratt Street, 26th Floor, Baltimore Maryland 21202 (the "Auction).  All bids for and at the Auction must comply with the Bidding Procedures approved by this Court.  In the event of an Auction, the Debtor intends to enter into a definitive asset purchase agreement (the "APA")[3] with the Successful Bidder.

30.     The Debtor believes that the sale of the Assets as a going concern to the highest or best bidder determined in accordance with the Bidding Procedures is far preferable to a piecemeal liquidation of the Assets.

<u>Relief Requested</u>

31.     The Debtor is requesting that this Court: (i) authorize the sale of the Assets to the Successful Bidder pursuant to such agreement(s) entered into in accordance with the Bidding Procedures Order, free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f) and (m) and 365 of the Bankruptcy Code, with such liens, claims, rights, interests and encumbrances (collectively, the "Interests") to attach to the sale proceeds of the Assets with the same validity (or invalidity), priority and perfection as existed immediately prior to such sale and with the closing to occur on or before June 30, 2014, unless such date is extended in writing by

---

[3]     The Stalking Horse APA may be the "APA."

9

the Debtor, the Purchaser and Bank of America (ii) approve the assumption and assignment of the

Assumed Contracts  (defined ) under section 365 of the Bankruptcy Code, subject to, and at the time

of, closing under the APA; and (iii) grant such other relief as may be necessary or appropriate.

## Basis for Relief

**A.  Sale Negotiated In Good Faith And To Be Made For Sound Business Reasons; and the Purchase Price is Fair and Reasonable**

        32.      The Bankruptcy Code permits a debtor to sell some or substantially all of its

assets outside the ordinary course of business and prior to confirmation of a Chapter 11 plan. Section

363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell,

or lease, other than in the ordinary course of business, property of the estate."  This Court has held

that transactions should be approved under section 363(b) (1) of the Bankruptcy Code when they are

supported by a sound business reason. *See In re Naron & Wagner, Chartered*, 88 B.R. 85, 87 (Bankr.

D. Md. 1988).  *See also In re WBQ P'ship*, 189 B.R. 97 (Bankr. E.D. VA 1995) (citing *Stephens

Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Committee of Equity Security Holders v.

Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In reviewing such a proposed

transaction, courts give substantial deference to the business judgment of the debtor-in-possession.

*See e.g., Esposito v. Title Inc. Co. of Pa. (In re Fernwood Mkts)*, 73 B.R. 616, 621 n.2 (Bankr. E.D.

Pa. 1987).

        33.      In this case, the sale of the Assets serves a sound business purpose.  The sale

is designed to preserve and enhance the value of the Assets as a whole, and to assure that the

Assumed Contracts are assigned while they have their highest value and prior to any risk of a

premature termination.  The sale of the Assets, when coupled with access to the Debtor's wholesale

and distributor network and sale channels, and the Debtor's recognized name and goodwill in the

customized industrial plastic packing industry, preserves the enterprise value of the Assets and is a

sound exercise of business judgment.  Such a sale will return a greater benefit to the Debtor's estate

#2166235v.2

than any of the alternatives, including a sale at a later date, the continuation of operations until confirmation of a plan, or the piecemeal liquidation of the Assets.

34.     A sale of the Assets is the best option presently available to maximize value and preserve employee jobs and is proposed by the Debtor in good faith.  Absent a sale, the Debtor would have to immediately terminate its employees and begin the wholesale liquidation of its assets to the detriment of its estate and creditors. The Debtor has proposed the sale of the Assets as the only viable approach currently available to this estate and has concluded that the sale is supported by a number of sound business reasons.

35.     Whether or not the Stalking Horse Bidder is ultimately the Successful Bidder, the Stalking Horse APA was the product of good faith, arm's-length negotiations, and is on commercially reasonable terms.  The Debtor and the Stalking Horse Bidder, with the assistance of their professional advisors, negotiated the terms of Stalking Horse APA.  The Stalking Horse Bidder provided substantial value to the estate in providing a baseline value for the Assets, and an opening bid for the Auction, and bidding at any Auction will be conducted in accordance with the Bidding Procedures and the Bidding Procedures Order.  If the Stalking Horse Bidder is not the Successful Bidder, the APA between the Debtor and the Successful Bidder will also be the product of good faith, arm's-length negotiations.

36.     As approved by the Court, the notice of the Sale, Sale Motion and Sale Hearing provides all creditors and parties-in-interest adequate and reasonable notice of the Sale, and provides sufficient information regarding the sale of substantially all of the Debtor's assets, terms and conditions of the Sale, the time for filing objections to the Sale, and meets the requirements of the Bankruptcy Code, the Bankruptcy Rules and due process.

37.     The fairness and reasonableness of the consideration ultimately to be paid by the Successful Bidder is demonstrated by the marketing efforts that the Debtor engaged in over the

11

past several months, followed by a fair, reasonable and competitive sale process under the Bidding

Procedures including a potential Auction, and culminating in a proposed sale of the Debtor's Assets.

Each of these efforts by the Debtor demonstrates that the purchase price obtained, after completion of

the process, is fair and reasonable.

### B. Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code For a Sale Free and Clear of Liens, Claims, and Interests

    38. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

    39. Section 363(f) of the Bankruptcy Code provides for the sale of assets "free

and clear of any interests." The term "any interest," as used in section 363(f), is not defined in the

Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F. 3d 252, 259 (3rd Cir.

2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest."

209 F. 3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that

phrase to mean only *in rem* interests in Property," the trend in modern cases is towards "a broader

interpretation which includes other obligations that may flow from ownership of the Property." *Id.* at

258 (citing 3 COLLIER ON BANKRUPTCY ¶ 363.06[1]). As determined by the Fourth Circuit in *In re

Leckie Smokeless Coal Co.*, 99 F. 3d 573, 581-582 (4th Cir. 1996), section 363(f) is not limited to *in*

12

*rem* interests. Thus, a debtor "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Leckie* 99 F. 3d at 581-582.

40.    Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to allow the sale of the Assets free and clear of all the Interests, except with respect to any Interests that constitute Assumed Liabilities under the APA. The Debtor submits that each Interest that is not one of the Assumed Liabilities satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or attaching to the proceeds of the sale, subject to any claims and defenses the Debtor may possess with respect thereto. The Debtor accordingly requests authority to convey the Assets to the Successful Bidder, free and clear of all Interests except the Assumed Liabilities under the express terms of the APA, with such Interests to attach to the proceeds of the Sale, with the same validity (or invalidity), priority and perfection as existed immediately prior to the Sale, subject to the terms of the APA and the proposed Sale Order. The Debtor requests that any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to Bank of America, arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents, post-petition financing documents and interim and final Orders of this Court authorizing use of cash collateral and debtor-in-possession financing (collectively, the "Bank of America Obligations") be paid in full to Bank of America from the proceeds of the sale of the Assets by wire transfer at Closing. The Debtor further requests that any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to ACP, arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents and interim and final Orders of this Court authorizing use of cash collateral and debtor-in-possession financing (collectively, the

#2166235v.2

"ACP Obligations") be paid in full to ACP from the proceeds of the sale of the Assets by wire transfer at Closing.

41.    The Debtor will serve this Sale Motion on all purported lienholders against the Assets.  Other than the Secured Parties identified in paragraph 5 above, the Debtor knows of no other liens against the Assets.  The Debtor expects that as of the Sale Hearing, the Secured Parties will consent to the proposed sale.

42.    Accordingly, this Court should approve the sale of the Assets to the Successful Bidder free and clear of Interests under Bankruptcy Code section 363(f), and all potential claimants should be compelled to look exclusively to the proceeds of the Sale for satisfaction of their claims, provided however, that Bank of America and ACP-1should only be required to release any Interests in the Assets after receiving payment in full of all of the Bank of America Obligations and the ACP Obligations at Closing.

43.    Further, the Debtor submits that the Sale should not expose the Successful Bidder to any liability as a successor of the Debtor or its estate.  *See Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F. 3d 252, 258 (3rd Cir. 2000); *Leckie Smokeless Coal Co.*, 99 F. 3d at 582; *In re Remember Enters.*, 425 B.R. 757, 765 (4th Cir. 2010) (there is no dispute that, in the 4th Circuit, a sale pursuant to Section 363(f) is free and clear of any claim of successor liability).  The Successful Bidder will only be assuming those obligations expressly set forth in the APA.

## C.    Sale Closed in Good Faith Under Section 363(m) of the Bankruptcy Code; and Not in Violation of Section 363(n) of the Bankruptcy Code

44.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

14

11 U.S.C. §363(m).  Section 363(n) of the Bankruptcy Code, among other things, provides, in turn, that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders at the sale.  While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3rd Cir. 1986) has held that:

> [t]he requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F. 2d at 147 (citations omitted).

45.     As explained above, the APA between the Debtor and the Successful Bidder will be the product of good faith, arm's-length negotiations.  The Debtor intends to establish at the Sale Hearing that such APA was a negotiated, arm's-length transaction, in which the Successful Bidder has acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standard.  The evidence at the Sale Hearing will further establish that neither the Debtor nor the Successful Bidder has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or allow the Debtor to avoid the Sale pursuant to section 363(n) of the Bankruptcy Code with respect to the consummation of the sale transaction or the transfer of the Assets and the Assumed Contracts to the Successful Bidder.

46.     Accordingly, the Debtor requests that the Court find that the Successful Bidder has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is entitled to the protections of sections 363(m) of the Bankruptcy Code.

**D.  Authorization of Assumption and Assignment of Assumed Contracts**

47.     In order to enhance the value to the Debtor's estate, the Debtor requests approval of the assumption and assignment of the executory contracts and unexpired leases, identified in the attached **Exhibit 2** (the "Assumed Contracts"),[4] to the Successful Bidder upon the closing of the transaction contemplated under the APA and payment of the cure costs (the "Cure Costs"), to be identified and set forth in separate cure notices to be mailed within three (3) business days following entry of the Bidding Procedures Order, which amounts, if any, are what the Debtor believes are owed to each counterparty (each a "Counterparty," and collectively, the "Counterparties") to an Assumed Contract in order to cure any defaults that exist under such contract or lease.   Notwithstanding the foregoing, the Successful Bidder may add to the list of Assumed Contracts (so long as the Debtor files and serves a Cure Notice on each affected Counterparty within ten (10) calendar days before the Sale Hearing), and may remove any executory contract or lease from the list of Assumed Contracts until seven (7) calendar days prior to the closing of the sale.

48.     In accordance with the terms of its APA, the Successful Bidder shall promptly pay or cause to be paid the Cure Costs with respect to the Assumed Contracts.   The Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contracts.   The Debtor proposes that the Court make its determinations concerning the Cure Costs and adequate assurance of future performance under the Assumed Contracts pursuant to section 365(b) of the Bankruptcy Code at the Sale Hearing or in the case of any Assumed Contracts not assumed and assigned to the Successful Bidder at the Sale Hearing, at such other properly noticed hearing to approve assumption and assignment of such Assumed Contract to the Successful Bidder.

---

[4]     The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtor that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement included as an Assumed Contract.

16

49.    Except to the extent otherwise provided in the APA entered into with the Successful Bidder, subject to the payment of any Cure Costs, the Successful Bidder will not be subject to any liability to the Assigned Contract Counterparty that accrued or arose before the Closing of the sale of the Assets and the Debtor shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

50.    The Debtor further requests that the Sale Order provide that the Assumed Contracts will be assigned to, and remain in full force and effect for the benefit of the Successful Bidder, notwithstanding any provisions in the Assumed Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

51.    Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).   Under § 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

17

11 U.S.C. § 365(b)(1).

52.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g.*, *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *In re Talco, Inc.*, 558 F. 2d 1369, 1173 (10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and assignment of the Assumed Contracts, or any of them, is a necessary part of the Sale and, therefore will benefit the estate of the Debtor.

53.     As set forth above, the Debtor will serve a copy of this Sale Motion to all Counterparties to the Assumed Contracts, notifying such Counterparties of the potential assumption by the Debtors and assignment to the Successful Bidder of the Assumed Contracts at the Sale Hearing.

54.     The Counterparties will have sufficient opportunity to file an objection to the proposed Cure Costs. To the extent no objection is filed with regard to a particular cure amount, such cure amount shall be binding on the applicable contract or lease Counterparty. The payment of the Cure Costs will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to Section 365(b)(1) of the Bankruptcy Code, unless the Debtor determines that a particular contract is not truly executory, and does not need to be cured to transfer the Assets to the Successful Bidder.

55.     Cure Costs disputed by any Counterparties, with respect to any Assumed Contracts to be assumed and assigned to the Successful Bidder at Closing, will be resolved by the Court at the Sale Hearing or other hearing as determined by the Court.

56.     The Successful Bidder is responsible for providing evidence of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of any Assumed Contracts.  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989)*; see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).  If necessary, the Successful Bidder shall provide evidence of its ability to provide adequate assurances to Counterparties at the sale hearing.

**E.  Notice**

57.     Concurrently with this filing, this Sale Motion will be served on: (a) the U.S. Trustee; (b) counsel to the Committee (or if none, to the members of the Committee), and the Debtor's twenty (20) largest creditors; (c) the Trustee of the ESOP; (d) the Trustees of the Pension Plan; (e) counsel to the Secured Parties (f) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-I, L.P.) on any of the Assets and who would appear as potentially holding a lien on any search conducted to determine who asserts a lien on the Debtor's assets; (g) all known Counterparties to the Assumed Contracts (including Toyota Motor Corporation); (h) all entities known to have expressed an interest in bidding on the Assets; (i) the United States Attorney's Office for the District of Maryland; (j) the Securities and Exchange Commission; (k) the Pension Guaranty Corporation; (l) the state taxing authorities in Maryland and Nevada and the Internal Revenue Service; (m) the state attorney generals in Maryland and Nevada; (n) the U.S. Environmental Protection Agency; (o) the Maryland Department of the Environment; (p) the U.S. Department of Labor-OSHA; (q) the Maryland Occupational Safety and Health (MOSH); and (r) all

19

other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order.

58.     In addition, within three (3) business days from the date of entry of the Bidding Procedures Order, the Debtor will serve that order and notice thereof on (a) the U.S. Trustee; (b) counsel to the Committee (or if none, to the members of the Committee), and the Debtor's twenty (20) largest creditors; (c) the Trustee of the ESOP; (d) the Trustees of the Pension Plan; (e) counsel to the Secured Parties (f) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-I, L.P.) on any of the Assets and who would appear as potentially holding a lien on any search conducted to determine who asserts a lien on the Debtor's assets; (g) all known Counterparties to the Assumed Contracts (including Toyota Motor Corporation); (h) all entities known to have expressed an interest in bidding on the Assets; (i) the United States Attorney's Office for the District of Maryland; (j) the Securities and Exchange Commission; (k) the Pension Guaranty Corporation; (l) the state taxing authorities in Maryland and Nevada and the Internal Revenue Service; (m) the state attorney generals in Maryland and Nevada; (n) the U.S. Environmental Protection Agency; (o) the Maryland Department of the Environment; (p) the U.S. Department of Labor-OSHA; (q) the Maryland Occupational Safety and Health (MOSH); and (r) all other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order. Notice of this Sale Motion and Sale Hearing will also be provided to all known creditors of the Debtor within three (3) business days from the date of entry of the Bidding Procedures Order.

59.     The Debtor submits that the notice that they have provided and intend to provide of this Sale Motion and the Sale Hearing is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice to grant the relief sought herein and to enter an order granting this Sale Motion in the form submitted herewith. *See, e.g., In re Naron & Wagner,*

20

*Chartered*, 88 B.R. 85, 87 (Bankr. D. Md. 1988); *In re WBQ P'ship*, 189 B.R. 97, 103 (Bankr. E.D. VA 1995).

60.    The Debtor requests, pursuant to Bankruptcy Rules 6004(g) and 6006(d), that the order approving this Sale Motion become effective immediately upon its entry (without any stay, automatic or otherwise).

**WHEREFORE**, the Debtor requests that the Court grant this Sale Motion by entering either the proposed order submitted herewith (in the event of a sale to the Stalking Horse Bidder) or an order (substantially similar to the proposed order submitted herewith) approving the sale to an alternative Successful Bidder.  In doing so, the Debtor requests that the Court  (i) approve the APA of the Successful Bidder and authorize the sale of the Assets to the Successful Bidder pursuant to the terms of such APA; (ii) approve the assumption and assignment of the Assumed Contracts in accordance with the Successful Bidder's APA; (iii) authorize the distribution of such proceeds of the sale of the Assets to Bank of America and ACP-1 at Closing, in an amount sufficient to satisfy the Bank of America Obligations and the ACP Obligations (iv) approve the form and manner of notice of (a) the Sale Motion and sale Hearing ,(b) the proposed Sale and (c) the proposed assumption and assignment of Assumed Contracts; and (v) grant such other and further relief as is just and proper

Dated: April 4, 2014

/s/ Alan M. Grochal
Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone:  410-752-9700
Facsimile:  410-722-5460
agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
Counsel for Debtor and Debtor in Possession

21

#2166235v.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

In re:                                    *

**HEDWIN CORPORATION**              *    Case No. 14-15194

     **Debtor**                         *    Chapter 11

*      *      *      *      *      *      *      *      *      *      *      *      *

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING
SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B)
AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b),
(f) AND (m) OF THE BANKRUPTCY CODE, (C) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Sale Motion") filed by Hedwin Corporation,

debtor and debtor-in-possession (the "Debtor"), for the entry of an order pursuant to sections

105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and applicable local rules: (a) approving that certain Asset Purchased Agreement dated

April 1, 2014 (the "APA") between the Debtor and Fujimori Kogyo Co., Ltd. ("Purchaser")[1] or,

---

[1]    As used herein, the term "Purchaser" includes Fujimori and its designee to purchase the
Assets, a direct or indirect wholly-owned subsidiary of Fujimori.

alternatively, the asset purchase agreement of the highest and best bidder at auction authorized by the Court in the Bidding Procedures (defined below); (b) approving the sale of the Debtor's assets (the "Assets")[2] to the Purchaser or the party with the highest and best bid at auction; (c) approving the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser or the party with the highest and best bid at auction; and (d) granting related relief; and this Court having entered that certain Order dated April___, 2014 (Doc. ___) (the "Bidding Procedures Order" and the "Bidding Procedures" attached thereto), authorizing the Debtor to conduct (and approving the terms and conditions of), the Auction,[3] and to consider higher and better offers for the Assets, setting a date for the Auction, and approving: (i) the Bidding Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Cure Notice; and (iii) the procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed cure amounts; and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been noted on the record at the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its bankruptcy estate, its creditors and all other parties in interest; and for good cause shown;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]

---

[2]    As used herein, the term "Assets" has the same meaning as "Purchased Assets" under the APA.

[3]    All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Sale Motion (Doc. __) or, if not defined in the Sale Motion, in the APA (as defined below).

[4]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing relating to the Sale Motion and the matters addressed by this Sale Order are hereby incorporated herein to the extent not inconsistent with this Sale Order.

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Assets to be sold, transferred or conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory and other predicates for the relief sought in the Sale Motion (including the approvals and authorizations sought in the Motion) are as follows:  (i) Sections 102, 105, 363 and 365 of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

E.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

F.      On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued in possession and management of its business and property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

- 3 -

G.    As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing was provided in accordance with sections 102(1), 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and such notice complied with the Bidding Procedures Order.  The Debtor also gave due and proper notice of the assumption, sale, and assignment of each contract proposed to be assumed and assigned pursuant to the APA (the "Assumed Contracts" and each an "Assumed Contract") through the Cure Notices given in accordance with the Bidding Procedures Order to each non-debtor party under each such Assumed Contract.  The notices described above were sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the sale of the Assets, the assumption and assignment of the Assumed Contracts, or of the entry of this Sale Order is necessary or required.

H.    Notice of the Sale Motion has been provided, and a reasonable opportunity to object or be heard regarding the requested relief has been afforded, to all interested persons and entities, including, without limitation, (a) the U.S. Trustee; (b) counsel to the Secured Parties and the Committee of Unsecured Creditors (if any); (c) the Trustees of the Employee Stock Ownership Plan; (d) the Trustees of the Debtor's pension plan; (e) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-1, L.P.) on any of the Assets and who would appear as potentially holding a lien in any search conducted to determine who asserts a lien on the Assets; (f) all known counterparties to the Assumed Contracts (including Toyota Motor Corporation); (g) all entities known to have expressed an interest in bidding on the Assets; (h) the U.S. Attorney's Office for the District of Maryland; (i) the U.S. Department of

Justice; (j) the U.S. Environmental Protection Agency; (k) the Securities and Exchange Commission; (l) the Pension Guaranty Corporation; (m) the attorney generals in Maryland and Nevada; (n) the state and local taxing authorities in Maryland and Nevada and the Internal Revenue Service; (o) the Debtor's unsecured creditors; and (p) all other parties that filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order. All other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

I.        The Debtor's notice of the sale was reasonably calculated to provide all interested parties with timely and proper notice of the sale and the Sale Hearing.

J.        The disclosures made by the Debtor concerning the Sale Motion, the APA, the Auction, and the sale of the Assets at the Sale Hearing were sufficient, complete and adequate.

K.        The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the APA, sell the Assets, and assume and assign the Assumed Contracts, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its bankruptcy estate and its creditors. Such business reasons include, but are not limited to, the facts that (i) the APA and the Closing (as defined in the APA) present the best opportunity to realize the highest and best value of the Debtor on a going concern basis; (ii) there is substantial risk of deterioration of the value of the Assets if the sale is not consummated quickly; and (iii) the APA evidences the highest and best offer for the Assets.

L.        The Debtor has also demonstrated (i) good, sufficient and sound business purposes and justifications, and (ii) compelling circumstances for the sale of the Assets other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code,

before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate, and the sale will provide the means for the Debtor to maximize distributions to creditors.

M.    The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, and substantively and procedurally fair to all parties and were proposed by the Debtor in good faith.

N.    The Debtor and its professionals conducted an auction process in accordance with, and otherwise have complied, in good faith, in all respects with the Bidding Procedures Order, as demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing.  Through extensive marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest and best offer to purchase the Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, and (c) considered all bids, if any, submitted on or before the Bid Deadline.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.

O.    The Purchaser submitted the highest and best offer and is the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  The Purchaser's offer will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Bidding Procedures obtained the highest and best value for the Assets for the Debtor and its bankruptcy estate.

P.      The offer of the Purchaser, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtor pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and best offer for the Assets, (iii) is in the best interests of the Debtor's bankruptcy estate and its creditors; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Acts and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Purchaser.  Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its estate and creditors and other parties in interest.

Q.      The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchaser is buying the Assets in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m).  The Purchaser has proceeded in good faith in all respects in connection with this chapter 11 proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order to the extent applicable to the Purchaser; (c) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; (d) all payments to be made by the Purchaser in connection with the sale of the Assets have been disclosed; and (e) no common identity of directors or stockholders exists between the Purchaser and the Debtor.

R.      The APA was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit (i) the application of or implicate section 363(n) of the Bankruptcy Code to the APA or to the consummation of the sale transaction and transfer of the Assets and the Assumed Contracts to the Purchaser, or (ii) costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among other interested purchasers.

S.      The Debtor's execution of the APA and any other documents contemplated thereby is approved, and the Debtor is authorized to consummate the transaction contemplated by the APA.

T.      The Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the APA, and (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.  The sale of the Assets has been duly and validly authorized by all necessary corporate action of the Debtor.  No further consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to consummate the sale and transfer of the Assets to Purchaser, the APA, and the transactions contemplated thereby.  Further, the sale and transfer of the Assets and the assumption and assignment of the Assumed Contracts are legal, valid and effective transfers of the Assets and Assumed Contracts under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a) and 365, and all applicable requirements of such sections have been complied with in respect thereof.

U.      Except as otherwise provided in the APA, the Assets shall be sold free and clear

of any and all liens (whether contractual, statutory or otherwise), hypothecations, encumbrances,

security interests, mortgages, pledges, restrictions, charges, claims, instruments, licenses,

preferences, priorities, security agreements, easements, covenants, encroachments, options,

warrants, trusts or deemed trusts (whether contractual, statutory or otherwise), obligations,

liabilities, demands, guarantees, restrictions, contractual commitments, rights, or other interest in

the subject property, including without limitation any right of recovery, Tax (including foreign,

federal, state and local Tax), order of any Governmental Authority, rights of first refusal and

rights of set-off, liens, executions, levies, penalties, charges, or other financial or monetary

claims, adverse claims, rights of use, or other Claim there against or therein, of any kind or

nature (including (i) any conditional sale or other title retention agreement and any lease having

substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement

in the nature of a security device, (iii) any claims based on any theory that Purchaser is a

successor, transferee or continuation of the Debtor or the Assets, and (iv) any leasehold interest,

license or other right, in favor of a person other than Purchaser, to use any portion of the Assets),

whether arising prior to or subsequent to the commencement of this chapter 11 case, whether or

not they have attached or been perfected, registered or filed and whether secured or unsecured,

choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, contingent or non-contingent, material or non-material, known or unknown, legal,

equitable, possessory or otherwise, actual or threatened civil, criminal, administrative,

regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute,

petition or proceeding by or before any governmental authority or person at law or in equity

whether imposed by agreement, understanding, law, equity or otherwise, and any claim or

demand resulting therefrom (collectively, "Interests") (other than the Permitted Encumbrances) with such Interests (other than the Permitted Encumbrances) to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

V.       The Debtor is the sole and lawful owner of the Assets. The transfer of the Assets to Purchaser is a legal, valid and effective transfer of the Assets and shall vest Purchaser with all right, title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances). Except as specifically provided in the APA or this Order, the Purchaser shall not assume or become liable for any Interests (other than the Permitted Encumbrances) relating to the Assets being sold by the Debtor.

W.       The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever (other than the Permitted Encumbrances) because, with respect to each creditor asserting an Interest, one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Interests from which the Assets are to be sold free and clear (including, to the extent applicable, the non-debtor parties to the Assumed Contracts) who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented to the Sale Motion and the sale of the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled. All holders of Interests (other than the Permitted Encumbrances) are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Interests.

X.       The sale of Assets other than one free and clear of all Interests (other than the Permitted Encumbrances) would yield substantially less value than the sale of the Assets to

Purchaser and would adversely impact the Debtor's bankruptcy estate and its creditors. Thus, the sale of the Assets free and clear of all Interests, other than the Assumed Liabilities and the Permitted Encumbrances, in addition to all of the relief provided herein, is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

Y.    The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and creditors and other parties in interest, if either: (i) the sale of the Assets to the Purchaser was not free and clear of all Interests, other than the Assumed Liabilities and the Permitted Encumbrances; or (ii) the Purchaser would, or in the future could, be liable for any of such Interests or any claims against the Debtor based upon successor or vicarious liability or otherwise. Unless otherwise expressly included in the Assumed Liabilities or the Permitted Encumbrances, the Purchaser shall not be responsible for any Interests or any such claims against the Debtor based upon successor or vicarious liability or otherwise.

Z.    The Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtor, its bankruptcy estate, its creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtor.

AA.    The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of this chapter 11 case. The Purchaser, on behalf of the Debtor,

has provided for the cures and/or other payments or actions required for the Debtor to assume

and assign the Assumed Contracts to the Purchaser. To the extent necessary, the Purchaser has

provided adequate assurance of its future performance under the Assumed Contracts. The

Purchaser's promise to pay the Cure Costs (as defined below) and to perform the obligations

under the Assumed Contracts as of the Closing will constitute adequate assurance of future

performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy

Code.

      BB.    The Debtor has released all Avoidance Claims (including Actions relating thereto)

against all (a) counterparties to Assumed Contracts, and (b) customers and suppliers who paid to

Seller or received from Seller aggregate consideration greater than or equal to $400,000 for each

of the two most recent fiscal years; and such releases shall be, and hereby are, approved by the

Court.

      CC.    In the absence of a stay pending appeal, the Purchaser is acting in good faith,

pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by

the APA at any time on or after the entry of this Sale Order and cause has been shown as to why

this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and

6006(d).

      DD.    The transactions contemplated under the Agreement do not amount to a

consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or its bankruptcy

estate, there is no substantial continuity between the Purchaser and the Debtor, there is no

common identity between the Debtor and the Purchaser, there is no continuity of enterprise

between the Debtor and the Purchaser, the Purchaser is not a mere continuation of the Debtor or

its bankruptcy estate and the Purchaser does not constitute a successor to the Debtor or its bankruptcy estate.

EE.   The sale of the Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.   The sale does not constitute a *sub rosa* chapter 11 plan.

FF.   Time is of the essence in consummating the sale.   In order to maximize the value of the Assets and preserve the viability of the business as a going concern, it is essential that the sale of the Assets occur within the time constraints set forth in the APA.   Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

GG.   Other than the Assumed Liabilities, and except as expressly provided for by the terms of the APA, the Purchaser shall have no obligations with respect to any other claims or liabilities of the Debtor.   The Purchaser shall have no obligations with respect to any Excluded Liabilities.

HH.   The Debtor, in connection with offering products or services, did not disclose to an individual any policy prohibiting the transfer of personally identifiable information and, therefore, the sale of the Assets may be approved pursuant to section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman.

II.   Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the purchase price, the proposed sale of the Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

JJ.   The consummation of the sale of the Assets is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections

105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS ORDERED THAT:

1.      The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein, and the sale of the Assets contemplated thereby is approved.

2.      All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Sale Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.      Any objections to the assumption and assignment of any of the Assumed Contracts to the Purchaser or to the Cure Costs that have not been withdrawn, waived, or settled are hereby overruled on the merits with prejudice.  To the extent that any counterparty has failed to object to its respective Cure Cost, such counterparty is deemed to have consented to such Cure Cost and reinstatement (without default) and assignment of its Assumed Contract to the Purchaser.

4.      Notice of the Sale Hearing was fair, reasonable, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006, and all due process requirements.

   *Approval of Sale*

5.      The sale of the Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are, authorized and approved in all respects.

6.      The sale of the Assets and the consideration provided by the Purchaser under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7.      Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to Bank of America, N.A. ("Bank of America"),arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents, postpetition financing documents and  interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing  (collectively, the "Bank of America Obligations") shall be paid in full to Bank of America from the proceeds of the sale of the Assets by wire transfer at Closing. The Debtor shall distribute such proceeds of the sale of the Assets to Bank of America at Closing.

8.      Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to ACP-1, L.P., arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents and  interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing (collectively, the "ACP-1, L.P. Obligations") shall be paid in full to ACP-1, L.P. from the proceeds of the sale of the Assets

by wire transfer at Closing. The Debtor shall distribute such proceeds of the sale of the Assets to ACP-1, L.P. at Closing.

9.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts as part of the sale of the Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order.

10.     Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacating shall not affect the validity and enforceability of any transfer under the APA or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal).

11.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

12.     The Debtor is hereby authorized to fully perform under, consummate and implement the terms of the APA, together with any and all additional instruments and documents that may be reasonably necessary to implement and effectuate the terms of the APA, this Sale Order and sale of the Assets including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take any and all further actions necessary to consummate the APA or necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Assets or Assumed Contracts, as may

be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the APA, without any further corporate action, approval, or orders of this Court.

13.    The provisions of this Sale Order authorizing the sale of the Assets free and clear of the Interests, other than the Permitted Encumbrances and the Assumed Liabilities shall be self-executing and neither the Debtor nor the Purchaser shall be required to execute any instrument or document in order to effectuate, consummate and implement the provisions of this Sale Order.    However, the Debtor and each other person or entity having duties or responsibilities under the APA, any agreements related thereto or this Sale Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA, to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; to take any and all actions contemplated by the APA, any related agreements or this Sale Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the APA, any related agreements and this Sale Order and the transaction contemplated thereby without further application to, or order of, the Court.

14.    The _____ of the Debtor shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtor is further authorized and empowered to cause to be filed with the Maryland State Department of Assessments and

- 17 -

Taxation or with other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers or other duly authorized representatives of the Debtor may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Maryland and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate names, with respect to the implementation and consummation of the APA, any related agreements and this Sale Order, and the transactions contemplated thereby.

15.    The Closing Date shall occur on or before June 30, 2014, unless such date is extended in writing by the Debtor, the Purchaser and Bank of America.  Effective as of the Closing: (a) the sale of the Assets by the Debtor to the Purchaser shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and vests Purchaser with all right, title and interest of the Debtor in and to the Assets, free and clear of all Interests of any kind (other than the Permitted Encumbrances), pursuant to section 363(f) of the Bankruptcy Code; and (b) the assumption of any Assumed Liabilities by the

Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtor of all liability with respect to any Assumed Liabilities.

16.    The sale of the Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

17.    The Purchaser has given substantial consideration under the APA for the benefit of the Debtor and its estate and creditors. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Interests pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtor or any of the Assets, other than holders of Interests relating to the Assumed Liabilities or the Permitted Encumbrances. The consideration provided by the Purchaser for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### *Transfer of Assets*

18.    Except to the extent specifically provided in the APA, upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer the Assets to the Purchaser. The sale and transfer of the Assets shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Purchaser with all right, title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances), with all such Interests (other than the Permitted Encumbrances) to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they have in or against the Assets at Closing, subject to all claims and defenses the Debtor may possess with respect thereto. The Sale Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Assets free and

clear of Interests.   Following the Closing Date, no holder of any Interests (other than the Permitted Encumbrances) in the Assets or against the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Interests, or any actions that the Debtor may take in this chapter 11 case; provided however, that this sentence shall not be applicable to Bank of America and ACP-1, L.P. unless the Bank of America Obligations and the ACP-1, L.P. Obligations, respectively, are paid in full at Closing.  Except with respect to enforcing the terms of the APA or this Sale Order, no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Sale Order. Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

19.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing.

20.     All of the Debtor's interests in the Assets to be acquired by the Purchaser under the APA shall be, upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Sale Order shall be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets

acquired by the Purchaser under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.

21.     All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser on the Closing Date.  On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist; provided however, that Bank of America and ACP-1, L.P. shall only be required to release any Interests in the Assets after receiving payment in full of all of the Bank of America Obligations and the ACP-1, L.P. Obligations at Closing.

22.     Except as expressly provided in or pursuant to the APA, the Purchaser is not assuming and is not deemed to assume, and the Purchaser shall not be, nor shall any affiliate of Purchaser be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Assets prior to the consummation of the transactions contemplated by the APA, or any liabilities calculable by reference to the Debtor or its operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transaction contemplated by the APA, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

### *Assumed Contracts*

23.     Subject to the terms of the APA and the occurrence of the Closing, the assumption by the Debtor of the Assumed Contracts and the assignment of such agreements to

the Purchaser, as provided for or contemplated by the APA, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code. The Debtor is authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing, the Assumed Contracts free and clear of all Interests (other than the Assumed Liabilities and the Permitted Encumbrances), and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

24.     The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all Cure Costs required to assume and assign the Assumed Contracts to the Purchaser, and with non-debtor parties to such Assumed Contracts being without basis to assert against Purchaser, among other things, defaults, breaches or claims of pecuniary losses existing as of the Closing or by reason of the Closing.

25.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. The Debtor is authorized to take all actions reasonably necessary to effectuate the foregoing.

26.     Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Sale Order, the Purchaser, on behalf of the Debtor, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in the Cure Notice served by the Debtor on each of the parties to the Assumed Contracts (the "Cure Costs"), with respect to the assumption and assignment thereof. The Cure Costs in

the Cure Notices (or such other amounts as may have been determined on the record of the Sale Hearing) reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to Purchaser of the Assumed Contracts. The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice served by the Debtor, or the amounts determined on the record of the Sale Hearing, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Purchaser or the Assets with respect to any claim for cure under any Assumed Contract occurring prior to closing.

27.    All defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs and the non-debtor parties to such contracts shall be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtor or Purchaser, or their respective property, (i) any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or against the Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor; or (ii) that any additional amounts are due or other defaults exist. Upon the Debtor's assignment of the Assumed Contracts, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Contract.

28.     With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract under section 365 of the Bankruptcy Code; and (b) the Debtor may assume and assign each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code.  Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable and constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  All Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any.  No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the APA and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract pursuant to the terms of the APA in any respect constitutes a default under any Assumed Contract.  In the absence of objection, the non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

29.     The Purchaser has satisfied any and all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the

Case 14-15194    Doc 27-1    Filed 04/04/14    Page 25 of 33

Assumed Contracts. The Purchaser shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Contract.

30.    The Debtor and its bankruptcy estate shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

31.    Non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to Purchaser as a result of the assumption and assignment of the Assumed Contracts.

32.    The validity of the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assumed Contract relating to such Assumed Contract's respective Cure Cost.

33.    The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

### *Additional Provisions*

34.    Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

35.    After Closing and after payment in full of the Bank of America Obligations and the ACP-1, L.P. Obligations, a certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities or included in Permitted Encumbrances.

36.     If any person or entity that has filed statements or other documents or agreements evidencing Interests in all or any portion of the Assets (other than Assumed Liabilities or Permitted Encumbrances) does not deliver to the Debtor, after the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests that the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets; provided however, that neither the Purchaser nor the Debtor shall be authorized to release any Interests of Bank of America or of ACP-1, L.P. in all or any portion of the Assets or otherwise unless and until the Bank of America Obligations and the ACP-1, L.P. Obligations are paid in full at Closing.

37.     No governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this Chapter 11 case or the consummation of the transaction contemplated by the APA.

38.     The Debtor's obligations relating to Taxes, whether arising under law, the APA or otherwise, shall be fulfilled and paid by the Debtor.

39.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtor's liabilities other than the Assumed Liabilities and as otherwise set forth in the APA, and the Purchaser has not purchased any of the Excluded Assets.   Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Interests (other than Permitted Encumbrances) based upon or arising out of liabilities

retained by the Debtor are hereby enjoined from taking any action against the Purchaser or the Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Interests (other than Permitted Encumbrances) or on account of any liabilities of the Debtor other than Assumed Liabilities pursuant to the APA.  All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Interests or cause of action against the Purchaser or the Assets for any liability associated with the Excluded Assets.

40.     Neither the Purchaser, nor its affiliates, members, or shareholders, shall be deemed, as a result of any action taken in connection with the sale of the Assets or the Purchaser's post-Closing use or operation of the Assets, to: (a) be a successor to the Debtor; (b) have, de facto or otherwise, merged or consolidated with or into the Debtor; or (c) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Except for the Assumed Liabilities and the Permitted Encumbrances, the transfer of the Assets to the Purchaser under the APA and this Sale Order shall not result in the Purchaser Releasees (defined below) having any liability or responsibility whatsoever: (y) for any Interest against the Debtors or against an insider of the Debtor; or (z) to the Debtor, except as is expressly set forth in the APA and/or this Sale Order.  Without limiting the generality of the foregoing, except as otherwise provided in the APA, neither the conveyance of the Debtor's rights, title, and interest in the Assets to the Purchaser under the APA, nor the assumption of the Assumed Contracts shall result in any Purchaser Releasee (defined below) having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly; (b) obligation under any of the Debtor's labor or employment agreements; (c) of the Debtor's mortgages, deeds of trust, and security interests;

(d) intercompany loans and receivables between the Debtor and any non-Debtor subsidiary; (e) of the Debtor's pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including the Debtor's Benefit Plan; (f) any of the Debtor's, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including without limitation, claims that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1976 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, products liability law, product warranty law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtor or any obligations of the Debtor, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the

operation of the Debtor's business prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtor or its affiliates. For the avoidance of doubt, the Purchaser is not assuming, and shall not have any liability or responsibility whatsoever for, the Debtor's liabilities to (or in any way relating to) the Pension Benefit Guaranty Corporation.

41.    Except to the extent expressly included in the Assumed Liabilities or to enforce the APA or Permitted Encumbrances, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, the Committee, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding an Interest of any kind or nature whatsoever against, in or with respect to any of the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be forever barred, prohibited, estopped and permanently enjoined from (i) after the Closing Date, asserting, prosecuting or otherwise pursuing such Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser, its affiliates, successors or assigns, and current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives (the "Purchaser Releasees"), or the Assets; and (ii) taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the APA and this Sale Order. For the avoidance of doubt, the foregoing shall not prevent the Debtor, its bankruptcy estate, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its

successors and assigns in accordance with the terms of the APA. Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

42.     None of the Purchaser Releasees shall have or incur any liability to, or be subject to any action by the Debtor, or any of the Debtor's predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, or the entry into and consummation of the sale of the Assets.

43.     Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the APA and any related agreements.

44.     The failure specifically to include any particular provisions of the APA or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the Purchaser that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

45.     To the extent any provisions of this Order conflict with the terms and conditions of the APA, this Order shall govern and control.

46.     This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor's bankruptcy estate, the Debtor its

successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's bankruptcy estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), the Purchaser and its successors and assigns, the Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required to report or insure any title in or to the Assets or who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Assets free and clear of all Interests, except as otherwise provided in the APA or this Sale Order, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

47.     The terms and provisions of the APA and this Sale Order shall be binding on and inure to the benefit of the Debtor, its bankruptcy estate, the Purchaser, the Debtor's creditors, and all other parties in interest, and any successors of the Debtor, the Purchaser and the Debtor's creditors, including any trustee, examiner, or receiver appointed in this case or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, its creditors, or any trustee, examiner, or receiver.

48.     The provisions of this Sale Order are non-severable and mutually dependent.

49.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted cases of the

Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, or in any related proceeding, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

50.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Debtor's request for waiver of the otherwise applicable stay of the Sale Order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to close under the APA at any time, subject to the terms of the APA.  The Purchaser has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtor and the Purchaser close under the APA the Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the APA if this Order or any authorization contained herein is reversed or modified on appeal.

51.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sale of the Assets.

52.     This Court shall retain exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or that has been assigned by the Debtor to the Purchaser in all respects, and to decide any disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser; (b) interpret, implement and enforce the terms, conditions and provisions of this Sale Order and the APA, (c) determine the status, nature and extent of the

Assets and any Assumed Contracts; (d) protect the Purchaser against any Interests in or against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the sale. Any proceeding commenced pursuant to this paragraph may be commenced as a contested matter.

53.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Sale Order shall govern.

**END OF ORDER**

| Count | Name & Mailing Address | Description of Contract |
|---|---|---|
| 1 | **WWGS, LLC d/b/a** **Stonewall Corporation** Attn: Louis J. Glick Esq. 2 Reservoire Circle, Suite 102 Baltimore, MD. 21208 | Lease of Non-Residential Real Estate 1600 Roland Heights Avenue Baltimore, MD 21211 10 Year Lease maturing on 6/30/17 |
| 2 | **Kin Properties, Inc.** Attn: Jeffrey Sandleman, President 185 NW Spanish River Blvd, Suite 100 Boca Raton, FL 33431-9921 | Lease of Non-Residential Real Estate 1700 W. 41st Street Baltimore, MD 21211 3 Year Lease maturing on 1/31/16 |
| 3 | **Imelda Reno, LLC** Attn: Edwin Gallagher P. O. Box 779 Lafayette, CA. 94549 | Lease of Non-Residential Real Estate 9175 Moya Blvd., Unit D Reno, NV 89506 10 Year Lease maturing on 9/30/20 |
| 5 | **Toyota Motor Credit Corp** P. O. Box 2431 Carol Stream, IL 60132-2431 | Lease for (12) Toyota Propane Powered Lift Trucks. (11) located in Baltimore, MD. (1) located in Reno, NV. |
| 6 | **De Lage Landen Financial Services** 1111 Old Eagle School Road Wayne, PA. 19087 | Lease for (3) Caterpillar Lift Trucks. (3) units located in Baltimore, MD. |
| 7 | **Ryder Transportation Services** Attn: Mr. Gaylon Morris 201 Northpoint Blvd. Baltimore, MD 21224 | Lease for (2) Trucks used for moving inventory between Hedwin's Baltimore plant and warehouse. Both, located in Baltimore, MD. |
| 8 | **Bowman Trailer Leasing** Attn: Mike Starliper 10233 Governor Lane Blvd. Williamsport, MD. 21795 | Lease for (14) "Road Worthy" and (5) "Non Road Worthy" Storage Trailers. All units located in Baltimore, MD. |
| 9 | **Automotive Rentals, Inc.** Attn: Lisa Mrak P. O. Box 8500-4375 Philadelphia, PA. 19178-4375 | Lease for (2) vehicles and Monthly Maintenance agreement for (3) other vehicles. (3) units located in Baltimore, MD. (1) unit located in Cincinnati, OH. (1) unit located in TX. Client Code 2R78-01 |
| 10 | **ASG Software Solutions** P. O. Box 2197 Carol Stream, IL. 60132-2197 | Annual Service Agreement on Safari Interface Software One year agreement maturing 8/31/14. |



| 11 | NCAS<br>1501 S. Clinton St.<br>Baltimore, MD 21225 | Administrative Service Agreement<br>Medical and Dental Claims Admin. |
|---|---|---|
| 12 | NCAS<br>1501 S. Clinton St.<br>Baltimore, MD 21225 | Administrative Service Agreement<br>RX Benefits Claims Admin.<br>2/1/14 - 12/31/16 |
| 13 | Symetra<br>1 E. Uwchlan Avenue<br>Exton, PA. 19341 | Life Insurance & Long Term Disability<br>1/1/14 - 12/31/14 |
| 14 | RCM&D<br>555 Fairmount Avenue<br>Baltimore, MD 21286 | Payments for Insurance Policy Premiums<br>2/2/14 - 10/31/14 |
| 15 | First Insurance Funding<br>P. O. Box 66468<br>Chicago, IL 60062 | Payments for Insurance Policy Premiums<br>2/2/14 - 10/31/14 |
| 16 | Constellation Energy<br>1221 Lamar Street, Suite 750<br>Houston, Texas 77010 | Master Load Response Agreement |
| 17 | AEG Environmental<br>27 Liberty Street<br>Westminster, MD 21157 | Emergency Response Services Contract |