IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| IN RE: | * |
| HEDWIN CORPORATION | *   Case No. 14-15194-NVA |
| Debtor | *   (Chapter 11) |

* * * * * * * * * * * * *

**OBJECTION TO CURE AMOUNT PROVIDED
FOR LEASE OF NON-RESIDENTIAL REAL PROPERTY
LOCATED AT 1600 ROLAND HEIGHTS AVENUE,
BALTIMORE, MARYLAND 21211**

WWGS, LLC and Stonewall Corporation (jointly, the "Lessor" or "Landlord"), by its undersigned counsel, hereby object to the cure amount provided in the Notice to Counter-Parties to Executory Contracts and Unexpired Leases that may be assumed and assigned (the "Cure Notice") for the lease of non-residential real property located at 1600 Roland Heights Avenue, Baltimore, Maryland 21211 (the "Premises"), between the Lessee and Hedwin Corporation (the "Debtor" or "Lessee") (the "Lease"), and states as follows:

**I. The Lease**

1. On June 8, 2007 the Lessee and the Debtor entered into a lease for the Premises. A true and correct copy of the Lease is attached hereto as **Exhibit A** and incorporated herein by reference.

2. The term of the Lease is ten (10) years commencing on July 1, 2007 and ending on June 30, 2017 (the "Lease Term").

3. Paragraph 6 of the Lease specifically provides as a covenant that:

Lessee warrants, covenants and agrees as follows:

      a.     To maintain the exterior of the building, including the foundation, roof, gutters, downspouts and exterior walls in good order and condition and shall make all necessary repairs thereto.

\*\*\*

      d.     That it will pay all utilities which are billed to the Demised Premises in connection Lessee's use of the Demised Premises.

\*\*\*

      g.     That it will, at its own expense, make all structural and non-structural repairs in or to the Demised Premises.

**Exhibit A** at ¶ 6(a), (d) and (g).

## II. Proposed Assignment and Assumption

4. On April 2, 2014, the Debtor filed its Voluntary Petition for relief under Chaper 11 of the United States Bankruptcy Code.

5. On that same date, the Debtor filed the Debtor's Motion for an Order (A) Approving bidding procedures for sale of substantially all of the Debtor's assets; (B) Authorizing and scheduling an auction; (C) Scheduling hearing for approval of the sale of assets free and clear of liens and the assumption and assignment of certain executory contracts and unexpired leases to the successful bidder; (D) Approving break-up fee and expense reimbursement; (E) Approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases including cure amounts relating thereto; (F) Approving deadlines and the form, manner and sufficiency of notice; and (G) Granting other related relief (the "Sale and Assignment Motion").

6. Pursuant to the Sale and Assignment Motion, the Debtor is seeking to sell substantially all of its assets to Fujimori Kogyo Co., Ltd. (the "Stalking Horse"), subject to higher and better offers.

7. Pursuant to the Asset Purchase Agreement between the Debtor and the Stalking Horse (the "Stalking Horse APA"), the Lease is to be assumed by the Debtor and assigned to the Stalking Horse.

8. On April 17, 2014, the Court entered an Order approving the Sale Assignment Motion pursuant to which the Debtor sent out the Cure Notice.

### III. The Cure Amount Alleged by the Debtor

9. Pursuant to the Cure Notice filed by the Debtor, the amount necessary to cure the Lease as of April 2, 2014 was Twenty-Six Thousand Three Dollars ($26,003.00). *See,* Notice Document 80, pp. 32-34 and Attachment A.

10. This amount represents the rent due for the month of April 2014.

11. On April 21, 2014, the Landlord filed a Motion to Approve and Compel Payment of Post-Petition Obligation Under Lease of Non-Residential Real Property Pursuant to 11 U.S.C. §365(d)(3) (the "Rent Motion"). *See,* Docket No. 96.

12. In response to the Motion, the Debtor agreed to pay a pro rata portion of the April 2014 rent from April 2 through April 30 in the amount of Twenty-Four Thousand Two Hundred Sixty-Nine Dollars and Fifty-Six Cents ($24,269.56).[1]

13. As a result of the payment of the pro-rated April rent, the cure amount as to outstanding rent for April 2014 is One Thousand Seven Hundred Thirty-Three Dollars and Seventy-Seven Cents ($1,733.77).

14. After payment of the pro-rated April rent, the Landlord withdrew the Rent Motion, Docket No. 125.

---

[1] This calculation is not accurate because it appears that the Debtor believed that there was 31 days in the month of April.

### IV.  Other Defaults Not Listed in the Cure Notice

15. As set forth above, the Lease requires the Lessee to (1) maintain the exterior of the Premises specifically including the roof, gutters, downspouts, and exterior walls; (2) make all repairs to the Premises; and (3) pay all utilities.  As set forth below, the Debtor is in default of these covenants.  These non-monetary defaults must be cured in order for the Lease to be assumed and assigned.  11 U.S.C. § 365(b).

16. As set forth in the Consultant's Report issued by Jerry Sachs, Inc. on April 23, 2014:

> I inspected the roofing on the entire complex and found it be in extremely poor condition.  The roofing cannot be repaired and should be replaced as soon as possible.
>
> Some of the existing problems are as follows:
>
> (1) Ponding water 2-3 inches deep over large areas of the roof;
> (2) The coping is disintegrating;
> (3) Flashing was installed over the coping;
> (4) Roof drains are not operational;
> (5) Flashing has fallen off the parapet walls in several areas;
> (6) Rafters are stressed due to the weight of water;
> (7) Equipment not in use should be removed;
> (8) The half-round metal gutters are rotted;
> (9) Windows and walls located above the roof are leaking.

A true and correct of the Consultant's Report is attached hereto as **Exhibit B** and included herein by reference.

17. The Landlord has obtained two estimates for the necessary repairs and/or replacement of the roof.  Attached hereto as **Exhibit C** and incorporated hereby by reference is an estimate from Ruff Roofers dated April 25, 2014 providing a cost to repair/replace the roof over the entire Premises totaling One Million Ninety-Five Thousand Dollars ($1,095,000.00).  Attached hereto as **Exhibit D** and incorporated herein by reference is an estimate dated April 28,

2014 from Liberty Roofing Company, LLC reflecting a cost of One Million Two Hundred Twenty-Two Thousand Five Hundred and Five Dollars ($1,222,505.00).

18.     Furthermore, the exterior of the building requires maintenance, specifically including painting at a cost of One Hundred One Thousand, Two Hundred Fifty Dollars ($101,250.00).

19.     This amount is set out in detail on page 4 of a May 1, 2014 proposal from Maryland Bay Construction (the "Bay Construction Proposal").  The Bay Construction Proposal is attached hereto as **Exhibit E** and incorporated herein by reference.

20.     Page 1 of the Bay Construction Proposal lists an additional Twenty-Six Thousand Eight Hundred Seventy-Five Dollars ($26,875.00) in repairs to the Premises.

21.     Attached hereto as **Exhibit F** and incorporated herein by reference are true and correct copies of delinquent water bills totaling Two Thousand Seven Hundred Twenty-Three Dollars and Eighty-Nine Cents ($2,723.89).

## V.  The True Cure Amount

22.     As a result of the Tenant's breach of Paragraph 6(a), (d) and (g) of the Lease, the appropriate cure amount is One Million Two Hundred Twenty-Five Thousand One Hundred Thirty-Two Dollars and Fifty Cents ($1,225,132.50), comprised of the remaining unpaid April 2014 rent; lower estimate to replace the roof; the cost of painting the exterior of the building and repairs; and outstanding water bills.

23.     Notwithstanding the above amount, the Landlord is willing to accept a cure amount of Five Hundred Thousand Dollars ($500,000.00) (the "Cure Amount").

24. In the event the Cure Amount is litigated, the Landlord reserves the right to seek the entire One Million Two Hundred Twenty-Five Thousand One Hundred Thirty-Two Dollars and Fifty Cents ($1,225,132.50).

25. The Landlord is willing to negotiate with the ultimate assignee in what manner the Five Hundred Thousand Dollars ($500,000.00) (less the remaining April 2014 Rent and water bills), or some other amount that may be agreed upon, will be used for repairs to the Premises.

### VII.  Conclusion

26. It should be clear that the Landlord favors the assumption and assignment of the Lease to the Stalking Horse or any other party that may submit a higher and better offer, provided that either the Cure Amount is paid or adequate assurance is provided that the necessary maintenance to the Premises set forth above and required by the Lease will be performed in a timely manner by the Debtor and/or Stalking Horse or any other successful bidder that wishes to assume the Lease.

WHEREFORE, Landlord respectfully requests that the Court enter an Order providing for a cure amount in the amount of Five Hundred Thousand Dollars ($500,000.00) or adequate assurance that the required maintenance above will be performed by either the Debtor or the ultimate assignee and for such other relief as is just and proper.

Dated: May 5, 2014         /s/ Marc E. Shach
                            Curtis C. Coon, Esquire (01275)
                            Marc E. Shach, Esquire (06788)
                            Coon & Cole, LLC
                            401 Washington Avenue, Suite 501
                            Towson, Maryland  21204
                            (410) 244-8800
                            mshach@ccclaw.net
                            *Counsel for WWGS, LLC and*
                             *Stonewall Corporation*

- 6 -

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 5th day of May, 2014, a copy of the foregoing Objection to Cure Amount Provided for Lease of Non-Residential Real Property Located at 1600 Roland Heights Avenue, Baltimore, Maryland 21211, and proposed Order was sent via U.S. first class mail, electronic mail or facsimile as noted below:

Tydings & Rosenberg LLP
100 E. Pratt Street, 26th Floor
Baltimore, Maryland 21202
Attn: Alan M. Grochal and
  Stephen M. Goldberg
Facsimile: 410-727-5460
*Attorneys for the Debtor*

Lowenstein Sandler, LLP
65 Livingston Avenue
Roseland, NJ
Attn: Sharon L. Levine, Esq.
  and S. Jason Teele, Esq.
slevine@lowenstein.com
steele@lowenstein.com

and

Maria Ellena Chavez-Ruark, Esquire
Saul Ewing LLP
500 East Pratt Street, Suite 900
Baltimore, MD 21202
*Counsel to the Official Committee
  of Unsecured Creditors*

Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
Attn: Linda V. Donhauser and
 Frederick W. Runge
Facsimile: 410-385-3800
*Counsel to the Bank of America, N.A.*

McDonald Hopkins
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Attn: Paul W. Linehan
*Counsel to ACP-I, L.P.*

- 8 -

Office of the U.S. Trustee
101 W. Lombard Street, Suite 2625
Baltimore, MD  21201

Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY  10036-4039
Attn:  Shinya Akiyama
Facsimile:  212-858-1500
*Counsel to the Stalking Horse Bidder*


Electronically to all parties requesting notice via CM/ECF.

                                    /s/ Marc E. Shach
                                    Marc E. Shach