IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **In re:** | * |
| **HEDWIN CORPORATION,** | *   Case No. 14-15194 |
| | (Chapter 11) |
| Debtor. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**I) CONDITIONAL CONSENT OF ACP-1, L.P. TO DEBTOR'S MOTION FOR AN ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF; AND II) RESPONSE OF ACP-1, L.P. TO THE LIMITED OBJECTION AND RESERVATION OF RIGHTS BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE SAME**

ACP-1 L.P. ("ACP"), a subordinated secured lender of the above captioned debtor and debtor in possession (the "Debtor"), by counsel, hereby submits this Conditional Consent (this "Response") which: I) conditionally consents to the Debtor's Emergency Motion for Order Approving Asset Purchase Agreement and Authorizing Sale of Assets Outside Ordinary Course of Business, Authorizing Sale of Assets Free and Clear of Liens, Authorizing Assumption and Assignment of Executory Contracts and Leases and Granting Other Relief [Doc. No. 27] (the "Sale Motion"); and II) responds to the Limited Objection and Reservation of Rights [Doc. No. 150] (the "Objection") by the Official Committee of Unsecured Creditors (the "Committee") to the Sale Motion.

## I. JURISDICTION

1. This Court has jurisdiction to consider this Response and the Sale Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

2. On January 30, 2004, Hedwin Holdings (an affiliate of the Debtor) and ACP entered into that certain Securities Purchase Agreement (the "SPA"). The SPA and its amendments are approximately 350 pages long. Thus, ACP will provide electronic copies of the SPA and its amendments to any party in interest who requests them.[1] Pursuant to the SPA, the Debtor executed an 11.5% Senior Subordinated Promissory Note that was originally due on July 30, 2009 (the "Note"). The Note was amended and restated four times (collectively, the "Notes"), including a second time on December 31, 2008 and a fourth time June 30, 2011 (the "Second Amended Note" and the "Fourth Amended Note," respectively). The Fifth Amended and Restated Senior Subordinated Promissory Note (the "Final Note") was executed by the Debtor on October 31, 2012, in the principal amount of $2,437,854.30 and was due on March 31, 2014. The Notes are attached hereto as Exhibit A.

3. In conjunction with the Second Amended Note, the Debtor and ACP executed that certain Security Agreement dated as of December 31, 2008 (the "2008 Security Agreement"). The 2008 Security Agreement is attached hereto in Exhibit B. In the 2008 Security Agreement, the Debtor assigned to ACP, and granted ACP, a continuing perfected lien, charge and security interest in all of the property of the Debtor. *See* 2008 Security Agreement, ¶1. Concurrently with the Security Agreement, on December 31, 2008, ACP filed a UCC

---

[1] Requests can be made by emailing Paul Linehan at plinehan@mcdonaldhopkins.com.

financing statement (the "2008 UCC") in order to perfect its security interest. The 2008 UCC is attached hereto in Exhibit C. Pursuant to the SPA and other transactional documents, ACP's security interest in the Debtor's property is subordinate to the interest of the Debtor's senior secured lender, Bank of America, N.A. ("BofA" and collectively with ACP, the "Secured Lenders").

4. In conjunction with the Fourth Amended Note, the Debtor and ACP executed that certain Security Agreement dated as of June 30, 2011 (the "2011 Security Agreement"). The 2011 Security Agreement is included in the attached Exhibit B. In the 2011 Security Agreement, the Debtor assigned to ACP, and granted ACP, a continuing perfected lien, charge and security interest in all of the property of the Debtor. See 2011 Security Agreement, ¶1. Concurrently with the 2011 Security Agreement, on June 30, 2011, ACP filed a UCC financing statement (the "2011 UCC") in order to perfect its security interest. The 2011 UCC is included in the attached Exhibit C. Pursuant to the SPA and other transactional documents, ACP's security interest in the Debtor's property is subordinate to the interest of the Debtor's senior secured lender, BofA.

5. The 2008 Security Agreement and the 2008 UCC encompass the same property of the Debtor that the 2011 Security Agreement and the 2011 do. Therefore, ACP did not file a continuation statement extending the perfection of the 2008 UCC in 2013. Instead, the 2011 UCC is valid until 2016, when ACP can file a continuation statement.

6. The Final Note provides for a 20.50% accrued "PIK" Interest Rate. In the event of default, the interest rate rises to a 24.00% accrued "PIK" Interest Rate. As of April 1, 2014, the Debtor owed ACP $3,196,908.16 which is secured by a subordinated lien on all of the Debtor's property. Additionally, the Final Note serves as an amendment to and a restatement of the Fourth Amended Note, and thus did not constitute a novation and did not otherwise affect the

security interest that ACP held in the Debtor's property as evidenced by the 2011 Security Agreement and the 2011 UCC.

7.  On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8.  The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.  No trustee or examiner has been appointed in the Debtor's bankruptcy case.

10. On the Petition Date, the Debtor filed an Emergency Motion to Approve Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtor of Post-Petition Secured Indebtedness with Priority Over All Other Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtor Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection, (4) Modifying the Automatic Stay, and (5) Scheduling a Final Hearing [Doc. No. 18] (the "DIP Motion"). On April 4, 2014, this Court granted the DIP Motion on an interim basis [Doc. No. 32]. On April 7, 2014, this Court amended its April 4, 2014 order granting the DIP Motion on an interim basis [Doc. No. 46]. On April 21, 2014, the Court granted the DIP Motion on a final basis [Doc. No 95] (the "Final DIP Order").

11. On April 4, 2014, the Debtor filed an Emergency Motion for Order (A) Approving Bidding Procedures for Sale of Assets, (B) Authorizing Auction, (C) Scheduling Hearing, (D) Approving Breakup Fee, (E) Approving Procedures for Assumption and Assignment of Contracts and Leases, (F) Approving Deadlines and (G) Other Relief [Doc. No. 25] (the "Bidding Procedures Motion"). This Court grated the Bidding Procedures on April 16,

2014, and amended its order granting the Bidding Procedures Motion on April 17, 2014 [Doc. No 80].

12. On April 9, 2014 (the "Formation Date"), the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Final DIP order provided the Debtor with a Challenge Period (defined below) to challenge the validity, extent and priority of BoA's liens. The Challenge Period expires on the earlier of: (1) June 8, 2014; (ii) the close of the sale; or (3) an earlier agreed date.

13. The Debtor filed the Sale Motion on April 4, 2014. The Sale Motion seeks that the prepetition obligations owed to the Debtor's pre-petition secured lenders, BofA and ACP, be paid in full from the proceeds of the sale of the Assets by wire transfer at the closing of the Sale.

### III. CONDITIONAL CONSENT

14. Pursuant to the Sale Motion, the Debtor seeks authority pursuant to 11 U.S.C. § 363 to sell the Assets (as defined in the Sale Motion) to Fujimori Kogyo Co., Ltd. for $16,500,000.00 plus the assumption of certain liabilities. The assets and terms of the proposed sale are more fully described in the Sale Motion and related exhibits. The sale of the Assets is subject to higher and better offers. Pursuant to the Bid Procedures Order, qualified bids for the sale of the Debtor's assets had to be submitted no later than May 5, 2014 at 5:00 p.m. (ET). Upon information and belief, ACP submits that the Debtor received bids high enough to pay the secured claims of BofA and ACP in full, with interest and reasonable costs (including attorneys' fees), while also providing some return to the Debtor's unsecured creditors.

15. ACP consents to the relief sought by the Debtor in the Sale Motion on the condition that any Order approving the sale of the Assets provides the following: (a) ACP's second-priority lien on the Assets shall attach to the proceeds of the sale at closing; (b) all of the Obligations (including all pre-petition obligations and post-petition obligations) owed to ACP,

including all principal and interest, attorneys' fees, costs and other expenses shall be indefeasibly paid in full at closing; and (c) the closing shall occur on or before June 30, 2014.

## IV. RESPONSE

16. The Committee objects to the Sale Motion's proposal that the Secured Lenders be paid the full amount of their claims at the close of the sale of the Debtor's assets. The Committee argues that the distribution would be inappropriate solely because the Committee alleges that it will not have sufficient time to investigate the secured status of the Secured Lenders. This argument is: (1) contrary to the best interest of the Debtor, the Debtor's estate, and the unsecured creditors the Committee has a fiduciary duty to represent; and (2) contrary to the Final DIP Order. However, while these points should be fatal to the Committee's argument, a clearer reason exists to deny the Objection: as demonstrated by the Exhibits to this response, ACP has a valid, perfected and enforceable security interest in substantially all of the Debtor's personal property. Therefore, ACP respectfully requests that this Court deny the Objection and grant the Sale Motion for the reasons further articulated below. All of these items are included in the proposed sale order attached to the Sale Motion.

**A.  ACP Has a Valid, Perfected and Enforceable Security Interest in Substantially All of the Debtor's Personal Property.**

17. In general, "a security agreement is effective according to its terms between the parties." Md. Code Ann., Com. Law, §9-201. Maryland courts have said that "a security interest is not enforceable against the debtor ... with respect to the collateral ... unless: (a) ... the debtor has signed a security agreement which contains a description of the collateral...; (b) Value has been given; and (c) The debtor has rights in the collateral." Tilghman Hardware, Inc. v. Larrimore, 331 Md. 390, 399 (1993). Under Maryland law, in order to have the security interest in personal property be enforceable against the rights of third parties the security interest must be

perfected by filing a financing statement with the appropriate government agency. Md. Code Ann., Com. Law, §§ 9-308, 9-310. A filed financing statement is effective for a period of five years after the date of filing. *Id.*, at § 9-515(a).

18. ACP's security interest in the Debtor's personal property attached upon the execution of the 2011 Security Agreement, and was perfected upon ACP's filing of the 2011 UCC. For the Court and the Committee's convenience, ACP has attached all of the relevant documents to this Response. Exhibits A-C confirm that ACP has a valid, perfected and enforceable lien on all of the Debtor's personal property. Therefore, the Committee's Objection will serve no purpose but to delay the payment of ACP's claim, and thus cause additional interest on the Final Note to accrue, to the detriment of the Debtor, its estate, and the Debtor's unsecured creditors.

**B.    It is in the Best Interest of the Debtor, the Debtor's Estates and the Debtor's Creditors to Pay ACP's Claim at the Closing.**

19. If the Debtor is prevented from paying ACP's claim at Closing, the Debtor's estate and the Debtor's unsecured creditors will all be harmed. Pursuant to the Section 506(b) of the Bankruptcy Code: "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. 506(b). An oversecured creditor can recover post-petition interest under section 506(b) as part of its allowed claim. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). There is no dispute that interest accumulated between filing the bankruptcy petition and confirmation of the bankruptcy plan is calculated at the contract rate under Section 506(b). In re Keita, 12-19970-PM, 2013 WL 1788033 (Bankr. D. Md. Apr. 26,

2013) *citing* In re Delta Res., Inc., 54 F.3d 722, 730 (11th Cir.1995).  No party in interest in this case contests the fact that both BofA and ACP are oversecured.

20. As of the Petition Date, the Debtor owed $3,196,908.16 to ACP under the Final Note.  The contract interest rate under the Final Note is a 20.5% per annum payment-in-kind or "PIK" interest rate.  Upon an Event of Default (as defined in the Final Note), the interest rate rises to a 24% per annum PIK interest rate.  The interest is capitalized into the principal of the Final Note at the end of each month.  The Debtor was in default under the Final Note as of the Petition Date, as the Final Note came due two days before the Petition Date.

21. During the month of April 2014, the Final Note accrued an additional $63,938.16 in interest.  Because of the capitalization of interest provided under the Note, this raised the principal due on the note as of May 1, 2014, to $3,260,846.32.  During the months of May and June, the Final Note will accrue $65,216.93 and $66,521.26 in interest, respectively.  If ACP is paid at the closing of the sale, the accrual of interest on the Final Note will halt.  However, if the proceeds of the sale are held in escrow, pending the Committee's further investigation, the Final Note will accrue an additional $67,851.69 during the month of July 2014, or $2,188.76 per diem.

22. This accrual of interest would be adverse to the Debtor's estate and the Debtor's unsecured creditors even if there were any reason to question the validity of ACP's security interest.  In this circumstance, the Debtor's estate would be better served by paying ACP at the closing of the sale while providing the Committee with standing to bring an adversary claim against ACP if it finds a valid justification to challenge ACP's secured status.

23. This is not a situation where ACP's secured status is reasonably in doubt.  As demonstrated by the Exhibits to this Response, ACP has a valid, perfected and enforceable security interest against the Debtor's personal property, subordinated only by the security interest

held by BofA. Neither the Debtor, BofA nor the Committee challenge that the Sale of the Debtor's assets will be sufficient to pay both BofA and ACP in full.

C. **The Committee Has Sufficient Time between Now and June 8, 2014, or in the Alternative, June 30, 2014, to File an Objection to ACP's Claim or File an Adversary Proceeding.**

24. Pursuant to the Final DIP Order, the Committee has until the **earlier** of: "(a) 60 days following the appointment of the Committee; (b) the date of any closing of a sale of all or substantially all of the Debtor's assets or any closing of a sale of the right to sell such assets as an agent of the Debtor; or (c) such later time period consented to by [BofA] in writing…" to challenge the validity, priority or extent of BofA's liens. *See* Final DIP Order, ¶9. The earliest of those three options may be June 8, 2014, 60 days after the Formation Date (the "Challenge Period"). However, if the Sale closes before June 8, 2014, the Challenge Period would end at the closing of the Sale. The Final DIP Order does not provide a similar challenge period for the challenge of ACP's liens. However, the closing of the sale, scheduled for, at the latest, June 30th, provides a quasi-deadline for the Committee to challenge the validity, extent and priority of ACP's liens as the Sale Motion requests the authority to pay ACP's claim in full at the time of the closing.

25. The Final DIP Order's omission of a Challenge Period regarding ACP's liens is a product of the fact that ACP, unlike BofA, did not provide the Debtor with postpetition financing. However, there is no equitable reason that ACP's liens should be treated any differently than BofA. Therefore, ACP respectfully requests that the Challenge Period apply to the liens of both BofA and ACP.

26. If this Court does not incorporate ACP's liens into the Challenge Period, however, the Committee will still have, if the closes on June 30th, an additional twenty-two (22) days to challenge the validity, priority and extent of ACP's liens before the close of the sale. In that

scenario, the Committee would have had a total of eighty-two days between the Formation Date and the close of the sale to investigate the validity, priority and extent of ACP's liens before ACP is paid through the proceeds of the sale. If the Sale closes before June 8th, 2014, the Committee would still have the same amount of time to challenge the liens of ACP as it did to challenge the liens of BofA. It would be inequitable to treat the two secured claims differently solely because BofA provided the Debtor with DIP Financing.

27. This quasi-deadline would not be an absolute bar to the Committee's investigation. The Debtor's schedules are considered *per se* valid until the filing of a proof of claim or an objection. In re Kincaid, 388 B.R. 610, 617 (Bankr. E.D. Pa. 2008) *quoting* In re Bohrer, 266 B.R. 200, 201 (Bankr.N.D.Cal.2001) ("statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions")). Without the prohibition provided by the Challenge Period, the Committee would still be free to launch an adversary proceeding challenging the validity, priority and extent of ACP's liens after the close of the sale. Additionally, the Debtor's estate would have the benefit of not having to pay the interest on ACP's claims during the pendency of this hypothetical litigation.

28. If the Committee wants to prevent ACP from being paid in full as of the close of the Sale, it should file an objection to the scheduled designation of ACP's claim, or file an adversary proceeding. Its chosen path, the Objection, is devoid of any allegation and simply seeks to "kick the can down the road", depriving ACP of prompt payment of its claim, and more importantly, threatening the Debtor's unsecured creditors recovery due to the increased interest that ACP's claim will accrue.

29. The Committee may still be allowed to bring an adversary proceeding, after the close of the sale, in order to claw back the distribution, if it found proper justification. Considering that ACP has provided the Committee with the documents needed to complete its investigation as attachments to this Response, ACP respectfully submits that the Committee has ample time to complete its investigation.

WHEREFORE, ACP respectfully requests that this Court: (a) deny the Committee's Objection; (b) grant the Sale Motion, subject to the Order approving the Sale Motion being consistent with this Conditional Consent; and (c) make the Challenge Period applicable to the liens of both BofA and ACP.

Dated:   May 8, 2014                    Respectfully submitted,

                                        COLE SCHOTZ

                                        /s/Irving E. Walker
                                        Irving E. Walker (No. 00179)
                                        300 East Lombard Street
                                        Suite 2000
                                        Baltimore, MD 21202
                                        Telephone: 410-230-0660
                                        Facsimile: 410-230-0667
                                        iwalker@coleschotz.com

                                        -and-

                                        Paul W. Linehan (OH 0070116)
                                        McDONALD HOPKINS LLC
                                        600 Superior Avenue E., Suite 2100
                                        Cleveland, OH 44114
                                        Telephone:    (216) 348-5400
                                        Facsimile:    (216) 348-5474
                                        plinehan@mcdonaldhopkins.com

                                        *Counsel to ACP-1, L.P.*