

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| In re: | * | |
| **HEDWIN CORPORATION** | * | **Case No. 14-15194** |
| Debtor | * | **Chapter 11** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Sale Motion") filed by Hedwin Corporation, debtor and debtor-in-possession (the "Debtor"), for the entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules: (a) approving that certain Asset Purchase Agreement dated April 1, 2014[1] between the Debtor and Fujimori Kogyo Co., Ltd. ("Buyer")[2] or, alternatively, the

---

[1] As used herein, the term "APA" means the Asset Purchase Agreement dated April 1, 2014 between the Debtor and Fujimori Kogyo Co., Ltd., as amended pursuant to paragraphs 14

asset purchase agreement of the highest and best bidder at auction authorized by the Court; (b) approving the sale of the Debtor's assets (the "Assets")[3] to the Buyer or the party with the highest and best bid at auction; (c) approving the assumption and assignment of certain executory contracts and unexpired leases to the Buyer or the party with the highest and best bid at auction; and (d) granting related relief; and this Court having entered the Bidding Procedures Order and the "Bidding Procedures" attached thereto, authorizing the Debtor to conduct (and approving the terms and conditions of), the Auction[4] (and to consider higher and better offers for the Assets), setting a date for the Auction, and approving: (i) the Bidding Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Cure Notice; and (iii) the procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed cure amounts; the

---

and 15 of that certain Amended Order Approving Bidding Procedures entered April 17, 2014 (dkt. 80) (the "Bidding Procedures Order"). For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order or otherwise, the High Bid (as defined in the Bidding Procedures) of Buyer at the Auction was $22,200,000, and its "Cash Consideration" (as referenced in Section 2.06 of the APA) is $21,350,000 (and all references herein to the Buyer's APA are based upon $21,350,000 in Cash Consideration). Similarly, for the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order or otherwise, the Back-up High Bid (as defined in the Bidding Procedures) of Inteplast at the Auction was $22,000,000 (subject to payment of a break up fee and expense reimbursement to the Buyer assuming that all others conditions to payment of the break up fee and expense reimbursement have been met) , and its "Cash Consideration" (as referenced in Section 2.06 of the Inteplast Asset Purchase Agreement) is $22,000,000 (and all references herein to the Inteplast Asset Purchase Agreement are based upon $21,350,000 in Cash Consideration).

[2]     As used herein, the term "Buyer" includes Fujimori and its designee to purchase the Assets, a direct or indirect wholly-owned subsidiary of Fujimori.

[3]     As used herein, the term "Assets" has the same meaning as "Purchased Assets" under the APA.

[4]     All capitalized terms used but not defined herein have the meaning ascribed to such terms in the Sale Motion (dkt 27) or, if not defined in the Sale Motion, in the APA.

Auction having occurred on May 9, 2014 in accordance with both the Bidding Procedures Order (dkt. 80) and a Scheduling Order (dkt.67); the Buyer having submitted the highest and best offer with a bid of $22,200,000.00 (which included Buyer's $600,000 break-up fee and $250,000 expense reimbursement) and Inteplast Group, Inc. ("Inteplast") having submitted a back up bid of $22,000,000.00; and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been noted on the record at the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its bankruptcy estate, its creditors and all other parties in interest; and for good cause shown;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[5]

      A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

      B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      C.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Assets to be sold, transferred or conveyed pursuant to the APA, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing relating to the Sale Motion and the matters addressed by this Sale Order are hereby incorporated herein to the extent not inconsistent with this Sale Order.

D.      The statutory and other predicates for the relief sought in the Sale Motion (including the approvals and authorizations sought in the Motion) are as follows:  (i) Sections 102, 105, 363 and 365 of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

E.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

F.      On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued in possession and management of its business and property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing was provided in accordance with sections 102(1), 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and such notice complied with the Bidding Procedures Order.  The Debtor also gave due and proper notice of the assumption, sale, and assignment of each contract or lease proposed to be assumed and assigned pursuant to the APA (the "Assumed Contracts" and each an "Assumed Contract") through the Cure Notices given in accordance with the Bidding Procedures Order to each non-debtor party under each such Assumed Contract.  The notices described above were sufficient and appropriate

- 4 -

under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the sale of the Assets, the assumption and assignment of the Assumed Contracts, or of the entry of this Sale Order is necessary or required.

H.     Notice of the Sale Motion has been provided, and a reasonable opportunity to object or be heard regarding the requested relief has been afforded, to all interested persons and entities, including, without limitation, (a) the U.S. Trustee; (b) counsel to the Secured Parties and the Official Committee of Unsecured Creditors (the "Committee"); (c) the Trustees of the Employee Stock Ownership Plan; (d) the Trustees of the Debtor's pension plan; (e) all parties known to be asserting a lien (which includes Bank of America, N.A. and ACP-1, L.P.) on any of the Assets and who would appear as potentially holding a lien in any search conducted to determine who asserts a lien on the Assets; (f) all known counterparties to the Assumed Contracts (including Toyota Motor Corporation); (g) all entities known to have expressed an interest in bidding on the Assets; (h) the U.S. Attorney's Office for the District of Maryland; (i) the U.S. Department of Justice; (j) the U.S. Environmental Protection Agency; (k) the Securities and Exchange Commission; (l) the Pension Guaranty Corporation; (m) the attorney generals in Maryland and Nevada; (n) the state and local taxing authorities in Maryland and Nevada and the Internal Revenue Service; (o) the Debtor's unsecured creditors; and (p) all other parties that filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order.  All other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

I.     The Debtor's notice of the sale was reasonably calculated to provide all interested parties with timely and proper notice of the sale and the Sale Hearing.

J.      The disclosures made by the Debtor concerning the Sale Motion, the APA, the Auction, and the sale of the Assets at the Sale Hearing were sufficient, complete and adequate.

K.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the APA, sell the Assets, and assume and assign the Assumed Contracts, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its bankruptcy estate and its creditors.  Such business reasons include, but are not limited to, the facts that (i) the APA and the Closing (as defined in the APA) present the best opportunity to realize the highest and best value of the Debtor on a going concern basis; (ii) there is substantial risk of deterioration of the value of the Assets if the sale is not consummated quickly; and (iii) the APA evidences the highest and best offer for the Assets.

L.      The Debtor has also demonstrated (i) good, sufficient and sound business purposes and justifications, and (ii) compelling circumstances for the sale of the Assets other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the sale to the Buyer is necessary and appropriate to maximize the value of the Debtor's estate, and the sale will provide the means for the Debtor to maximize distributions to creditors.

M.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, and substantively and procedurally fair to all parties and were proposed by the Debtor in good faith.

N.      The Debtor and its professionals conducted an auction process in accordance with, and otherwise have complied, in good faith, in all respects with the Bidding Procedures Order, as demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale

Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing. Through extensive marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest and best offer to purchase the Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, and (c) considered all bids, if any, submitted on or before the Bid Deadline. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.

O.     The Auction was held on May 9, 2014. There were two qualified bidders, the Buyer and Inteplast. The Auction concluded with the Buyer having submitted the highest and best bid of $22,200,000 (which included Buyer's $600,000 break-up fee and $250,000 expense reimbursement) . Inteplast submitted the next highest bid of $22,000,000. In accordance with the Bidding Procedures, the Debtor accepted the Buyer's bid as the highest and best offer (i.e., the "High Bid") and has designated Inteplast as the "High Back-up Bidder," in each case as defined (and provided for) in the Bidding Procedures. The Buyer's offer, which includes the assumption of "trade accounts payable" pursuant to Section 2.03(e) of the APA, will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Bidding Procedures obtained the highest and best value for the Assets for the Debtor and its bankruptcy estate.

P.     The offer of the Buyer, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtor pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and best offer for the Assets, (iii) is in the best interests of the Debtor's bankruptcy estate and its creditors; and (iv) constitutes full and adequate

consideration and reasonably equivalent value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Acts and any other applicable laws of the United States, any state, territory or possession, and the District of Columbia. No other person or entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Buyer. Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its estate and creditors and other parties in interest.

Q.    The Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The Buyer is buying the Assets in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m). The Buyer has proceeded in good faith in all respects in connection with this chapter 11 proceeding in that, *inter alia*: (a) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Assets; (b) the Buyer complied with the provisions in the Bidding Procedures Order to the extent applicable to the Buyer; (c) the Buyer in no way induced or caused the chapter 11 filing by the Debtor; (d) all payments to be made by the Buyer in connection with the sale of the Assets have been disclosed; and (e) no common identity of directors or stockholders exists between the Buyer and the Debtor.

R.    The APA was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit (i) the application of or implicate section 363(n) of the Bankruptcy Code to the APA or to the consummation of the sale transaction and transfer of the Assets and the Assumed Contracts to the Buyer, or (ii) costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Specifically, the Buyer has not acted in a

collusive manner with any person and the purchase price was not controlled by any agreement among other interested purchasers.

S.    The Debtor's execution of the APA and any other documents contemplated thereby is approved, and the Debtor is authorized to consummate the transaction contemplated by the APA.

T.    The Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the APA, and (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.  The sale of the Assets has been duly and validly authorized by all necessary corporate action of the Debtor.  No further consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to consummate the sale and transfer of the Assets to Buyer, the APA, and the transactions contemplated thereby.  Further, the sale and transfer of the Assets and the assumption and assignment of the Assumed Contracts are legal, valid and effective transfers of the Assets and Assumed Contracts under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a) and 365, and all applicable requirements of such sections have been complied with in respect thereof.

U.    Except as otherwise provided in the APA, the Assets shall be sold free and clear of any and all liens (whether contractual, statutory or otherwise), hypothecations, encumbrances, security interests, mortgages, pledges, restrictions, charges, claims, instruments, licenses, preferences, priorities, security agreements, easements, covenants, encroachments, options, warrants, trusts or deemed trusts (whether contractual, statutory or otherwise), obligations, liabilities, demands, guarantees, restrictions, contractual commitments, rights, or other interest in

the subject property, including without limitation any right of recovery, Tax (including foreign, federal, state and local Tax), order of any Governmental Authority, rights of first refusal and rights of set-off, liens, executions, levies, penalties, charges, or other financial or monetary claims, adverse claims, rights of use, or other Claim there against or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that Buyer is a successor, transferee or continuation of the Debtor or the Assets, and (iv) any leasehold interest, license or other right, in favor of a person other than Buyer, to use any portion of the Assets), whether arising prior to or subsequent to the commencement of this chapter 11 case, whether or not they have attached or been perfected, registered or filed and whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown, legal, equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or before any governmental authority or person at law or in equity whether imposed by agreement, understanding, law, equity or otherwise, and any claim or demand resulting therefrom (collectively, "Interests") (other than the Permitted Encumbrances) with such Interests (other than the Permitted Encumbrances) to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

      V.     The Debtor is the sole and lawful owner of the Assets.  The transfer of the Assets to Buyer is a legal, valid and effective transfer of the Assets and shall vest Buyer with all right,

title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances). Except as specifically provided in the APA or this Sale Order, the Buyer shall not assume or become liable for any Interests (other than the Permitted Encumbrances) relating to the Assets being sold by the Debtor.

W.      The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever (other than the Permitted Encumbrances) because, with respect to each creditor asserting an Interest, one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Interests from which the Assets are to be sold free and clear (including, to the extent applicable, the non-debtor parties to the Assumed Contracts) who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented to the Sale Motion and the sale of the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled, with the Landlord Objection (as defined below) being resolved as provided in Item AA below. All holders of Interests (other than the Permitted Encumbrances) are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Interests.

X.      The sale of Assets other than one free and clear of all Interests (other than the Permitted Encumbrances) would yield substantially less value than the sale of the Assets to Buyer and would adversely impact the Debtor's bankruptcy estate and its creditors. Thus, the sale of the Assets free and clear of all Interests, other than the Assumed Liabilities (as defined in the APA) and the Permitted Encumbrances, in addition to all of the relief provided herein, is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

Y.      The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and creditors and other parties in interest, if either: (i) the sale of the Assets to the Buyer was not free and clear of all Interests, other than the Assumed Liabilities and the Permitted Encumbrances; or (ii) the Buyer would, or in the future could, be liable for any of such Interests or any claims against the Debtor based upon successor or vicarious liability or otherwise.  Unless otherwise expressly included in the Assumed Liabilities or the Permitted Encumbrances, the Buyer shall not be responsible for any Interests or any such claims against the Debtor based upon successor or vicarious liability or otherwise.

Z.      The Debtor and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtor, its bankruptcy estate, its creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtor.

AA.     The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of this chapter 11 case.  The Buyer, on behalf of the Debtor, has provided for the cures and/or other payments or actions required for the Debtor to assume and assign the Assumed Contracts to the Buyer.  To the extent necessary, the Buyer has provided adequate assurance of its future performance under the Assumed Contracts; however, with respect to the objection (the "Landlord Objection"; dkt. 151) filed by WWGS, LLC and

Stonewall Corporation (collectively, the "Roland Heights Landlord") in connection its lease to the Debtor of certain premises in Baltimore, Maryland, the Debtor has agreed, in order to provide the Roland Heights Landlord with adequate assurance that it will cure certain alleged non-monetary defaults, to deposit into escrow $500,000 from the sale proceeds pending resolution of the Landlord Objection, which funds the Court finds sufficient to provide adequate assurance that the Debtor will be able to cure any non-monetary defaults under such lease pending resolution of such objection. Notwithstanding the fact that the Debtor has agreed to escrow $500,000 in connection with this contested matter, the right of the Roland Heights Landlord to seek recovery from the Debtor is not limited to the $500,000 to be held in escrow by the Debtor. The Buyer has no liability for the amount that is ultimately determined to be due and owing by virtue of the Landlord's Objection (other than the unpaid April 2014 pre-petition rent and related utility charges described in more detail in paragraph 27). The Buyer's promise to pay the Cure Costs (as defined below) and to perform the obligations under the Assumed Contracts, together with the foregoing escrow of funds by the Debtor, as of the Closing will constitute adequate assurance within the meaning of sections 365(b)(1)(A) through (C) and 365(f)(2)(B) of the Bankruptcy Code.

BB.    In clarification and, to the extent necessary in amendment of the Bidding Procedures Order and the APA: the Debtor and its bankruptcy estate waive, release and covenant not to assert any and all Avoidance Claims (including Actions relating thereto) against any and all parties.

CC.    In the absence of a stay pending appeal, the Buyer is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the APA at any time on or after the entry of this Sale Order and cause has been shown as to why

this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

DD.    The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtor and/or its bankruptcy estate, there is no substantial continuity between the Buyer and the Debtor, there is no common identity between the Debtor and the Buyer, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere continuation of the Debtor or its bankruptcy estate and the Buyer does not constitute a successor to the Debtor or its bankruptcy estate.

EE.    The sale of the Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The sale does not constitute a *sub rosa* chapter 11 plan.

FF.    Time is of the essence in consummating the sale.  In order to maximize the value of the Assets and preserve the viability of the business as a going concern, it is essential that the sale of the Assets occur within the time constraints set forth in the APA.  Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

GG.    Other than the Assumed Liabilities, and except as expressly provided for by the terms of the APA, the Buyer shall have no obligations with respect to any other claims or liabilities of the Debtor.  The Buyer shall have no obligations with respect to any Excluded Liabilities.

HH.    The Debtor, in connection with offering products or services, did not disclose to an individual any policy prohibiting the transfer of personally identifiable information and,

therefore, the sale of the Assets may be approved pursuant to section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman.

II.    Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the purchase price, the proposed sale of the Assets to the Buyer constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

JJ.    The consummation of the sale of the Assets is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS ORDERED THAT:

1.    a.    The findings set forth in Paragraph A through and including Paragraph JJ above, are incorporated herein by reference and made a part of this Order. In addition, the findings set forth in the Bidding Procedures Order are incorporated herein by reference and made a part of this Sale Order.

b.    The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein, and the sale of the Assets contemplated thereby is approved.

2.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Sale Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.      Any objections to the assumption and assignment of any of the Assumed Contracts to the Buyer or to the Cure Costs that have not been withdrawn, waived, or settled are hereby overruled on the merits with prejudice; provided, however, with respect to (a) the objection of the Roland Heights Landlord (dkt 151), the Court reserves on, and makes no finding with respect to, the amount necessary to cure alleged non-monetary defaults on the Roland Heights Lease, and (b) the Amended Objection of Express Services, Inc. (dkt. 169), the Debtor acknowledges that the Cure Cost is $15,308.43. All other counterparties failed to object to their respective Cure Cost, and as such are deemed to have consented to such Cure Cost and reinstatement (without default) and assignment of its Assumed Contract to the Buyer.

4.      Notice of the Sale Hearing was fair, reasonable, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006, and all due process requirements.

### ***Approval of Sale***

5.      The sale of the Assets, the terms and conditions of the Buyer's APA (as the High Bidder) and Inteplast (as the High Back-up Bidder) (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are, authorized and approved in all respects.

6.      The sale of the Assets to Buyer and the consideration to be paid by the Buyer under the APA, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7.      In the event that the sale of the Assets to Buyer is not consummated due to Buyer's breach of the APA (or the mutual termination of the APA by Debtor and Buyer), Inteplast shall become the "Buyer" under this Sale Order and the sale of Assets to Inteplast and

the consideration to be paid by the Inteplast under the APA,[6] as modified by its High Back-up Bid, shall be deemed fair and reasonable and, for all purposes, to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

8.      Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to Bank of America, N.A. ("Bank of America"), arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents, postpetition financing documents and  interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing (collectively, the "Bank of America Obligations") shall be indefeasibly paid in full to Bank of America from the proceeds of the sale of the Assets by wire transfer at Closing.  The Debtor shall distribute such proceeds of the sale of the Assets to Bank of America at Closing.

9.      Notwithstanding any other provisions of this Sale Order to the contrary, any and all indebtedness, duties, obligations and liabilities arising before or after the Petition Date of the Debtor to ACP-1, L.P., arising under, pursuant to, in connection with and/or on account of the provisions of any prepetition financing documents and interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing (collectively, the "ACP-1, L.P. Obligations") shall be indefeasibly paid in full to ACP-1, L.P. from the proceeds of the sale

---

[6]      In the event of a sale to Inteplast pursuant to this Sale Order, the term "APA" (as used herein) shall be deemed to be the Asset Purchase Agreement dated May 5, 2014, which is on the substantially same terms as the APA of the Buyer, except as modified by its High Back-up Bid of $22 million at the Auction and this Sale Order.

of the Assets by wire transfer at Closing.  The Debtor shall distribute such proceeds of the sale of the Assets to ACP-1, L.P. at Closing.

10.    The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts (as part of the sale of the Assets) pursuant to section 365 of the Bankruptcy Code and this Sale Order.

11.    Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacating shall not affect the validity and enforceability of any transfer or assignment made pursuant to this Order or the APA, including any obligation or right granted pursuant to the terms of this Sale Order, unless such transfer or right was made despite issuance by this Court (or another court of competent jurisdiction) of a stayed pending appeal.

12.    The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

13.    The Debtor is hereby authorized to fully perform under, consummate and implement the terms of the APA, together with any and all additional instruments and documents that may be reasonably necessary to implement and effectuate the terms of the APA, this Sale Order and sale of the Assets including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take any and all further actions necessary to consummate the

APA or necessary for the purpose of assigning, transferring, granting, conveying and conferring the Assets to the Buyer, or reducing to possession any or all of the Assets or Assumed Contracts, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the APA, without any further corporate action, approval, or orders of this Court.

14.    The provisions of this Sale Order authorizing the sale of the Assets free and clear of the Interests, other than the Permitted Encumbrances and the Assumed Liabilities shall be self-executing and neither the Debtor nor the Buyer shall be required to execute any instrument or document in order to effectuate, consummate and implement the provisions of this Sale Order. However, the Debtor and each other person or entity having duties or responsibilities under the APA, any agreements related thereto or this Sale Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA, to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; to take any and all actions contemplated by the APA, any related agreements or this Sale Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the APA, any related agreements and this Sale Order and the transaction contemplated thereby without further application to, or order of, the Court.

15.    Richard Broo, the Debtor's President, shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required

to make any such action valid, binding, and enforceable). The Debtor is further authorized and empowered to cause to be filed with the Maryland State Department of Assessments and Taxation or with other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers or other duly authorized representatives of the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Maryland and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate names, with respect to the implementation and consummation of the APA, any related agreements and this Sale Order, and the transactions contemplated thereby.

16.     The Closing (as define in the APA) shall occur within the time frame and on the terms and conditions set forth in the APA unless such date is extended in writing by the Debtor, the Buyer and Bank of America. Effective as of the Closing: (a) the sale of the Assets by the Debtor to the Buyer shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and vests Buyer with all right, title and interest of the Debtor in and to the Assets, free and clear of all Interests of any

kind (other than the Permitted Encumbrances), pursuant to section 363(f) of the Bankruptcy Code; and (b) the assumption of any Assumed Liabilities by the Buyer constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and divests the Debtor of all liability with respect to any Assumed Liabilities.

17.    The sale of the Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

18.    The Buyer has given substantial consideration under the APA for the benefit of the Debtor and its estate and creditors.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Interests pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests against the Debtor or any of the Assets, other than holders of Interests relating to the Assumed Liabilities or the Permitted Encumbrances.  The consideration provided by the Buyer for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### *Transfer of Assets*

19.    Except to the extent specifically provided in the APA, upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer the Assets to the Buyer.  The sale and transfer of the Assets shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Buyer with all right, title and interest of the Debtor to the Assets free and clear of any and all Interests (other than the Permitted Encumbrances), with all such Interests (other than the Permitted Encumbrances) to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they have in or against the Assets at Closing, subject to all

claims and defenses the Debtor may possess with respect thereto. The Sale Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Assets free and clear of Interests. Following the Closing Date, no holder of any Interests (other than the Permitted Encumbrances) in the Assets or against the Debtor shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Interests, or any actions that the Debtor may take in this chapter 11 case; provided however, that this sentence shall not be applicable to Bank of America and ACP-1, L.P. unless the Bank of America Obligations and the ACP-1, L.P. Obligations, respectively, are paid in full at Closing. Except with respect to enforcing the terms of the APA or this Sale Order, no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Sale Order. Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

20.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

21.    All of the Debtor's interests in the Assets to be acquired by the Buyer under the APA shall be, upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Sale Order shall be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired

by the Buyer under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Buyer.

22.     All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Buyer on the Closing Date.  On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist; provided, however, that Bank of America and ACP-1, L.P. shall only be required to release any Interests in the Assets after receiving payment in full of all of the Bank of America Obligations and the ACP-1, L.P. Obligations at Closing.

23.     Except as expressly provided in or pursuant to the APA, the Buyer is not assuming and is not deemed to assume, and the Buyer shall not be, nor shall any affiliate of Buyer be, in any way liable for or responsible for, as a successor or otherwise, any liabilities, debts or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Assets prior to the consummation of the transactions contemplated by the APA, or any liabilities calculable by reference to the Debtor or its operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transaction contemplated by the APA, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Buyer or any of its affiliates.

### *Assumed Contracts*

24.     Subject to the terms of the APA and the occurrence of the Closing, the assumption by the Debtor of the Assumed Contracts and the assignment of such agreements to

the Buyer, as provided for or contemplated by the APA, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code. The Debtor is authorized and, to the extent necessary to comply with the terms of the APA, directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to: (a) assume and assign to Buyer, effective upon the Closing, the Assumed Contracts free and clear of all Interests (other than the Assumed Liabilities and the Permitted Encumbrances), provided, however, upon the agreement of the Debtor and the Buyer and reasonable notice to the Committee, the Debtor and the Buyer may defer Debtor's assumption and assignment to Buyer of any contract or lease or may elect to have the Debtor reject such contract or lease; and (b) execute and deliver to the Buyer such documents or other instruments as the Buyer deems may be necessary to assign and transfer the Assumed Contracts to the Buyer. Notwithstanding anything to the contrary contained in this Sale Order, the agreement identified on Buyer's May 10, 2014 Notice of Exclusion of Certain Contracts from Assumed Contracts shall neither constitute Assumed Contracts nor be assumed by the Debtor and assigned to Buyer; and, provided further, the Debtor intends to assume, but not assign to the Buyer, the contract between the Debtor and Alex N. Sill & Company (as set forth in a pending Motion for Authority to Assume, dkt.86) and the Debtor shall not assume the Employment/Management Retention Agreements between the Debtor and Richard Broo or Maurice LeCompte, items 20 on the Schedule of Executory Contracts and Leases, dkt. 109-3.

25.    The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and assigned to the Buyer at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to, as applicable: (a) the payment by Buyer of the Cure Costs identified in the notice of Cure Costs (less amounts paid to the Roland Heights Landlord for the post-petition period) served on parties by the Debtor, dkt. 109_, (b) the

escrowing of $500,000 in the case of the Roland Heights Landlord, and (c) the payment of $15,308.43 to Express Services, Inc. as the Cure Cost under its executory contract with the Debtor. Upon such assumption and assignment, the non-Debtor parties to such Assumed Contracts shall be without basis to assert against Buyer, among other things, defaults, breaches or claims of pecuniary losses existing as of the Closing or by reason of the Closing.

26. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. The Debtor is authorized to take all actions reasonably necessary to effectuate the foregoing.

27. Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Sale Order, the Buyer, on behalf of the Debtor, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in the Cure Notice served by the Debtor on each of the parties to the Assumed Contracts (the "Cure Costs"), with respect to the assumption and assignment thereof. The Cure Costs in the Cure Notices, the Cure Cost payable to the Roland Heights Landlord representing unpaid April 2014 rent in the amount of $1,733.77 and unreimbursed water bills totaling $2,723.89 , and the Cure Cost of $15,308.43 payable to Express Services, Inc., reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to Buyer of the Assumed Contracts (including the Roland Heights Lease and the Express Services, Inc. contract). The Cure Costs are fixed at such amounts, and the non-Debtor parties to the Assumed Contracts are forever bound by such Cure Costs and are

hereby enjoined from taking any action against the Buyer or the Assets with respect to any claim for cure under any Assumed Contract occurring prior to closing.

28.     Aside from the pending dispute between the Debtor and the Roland Heights Landlord with respect to alleged non-monetary defaults described in paragraph AA above, all defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs and the non-Debtor parties to such contracts shall be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtor or Buyer, or their respective property: (i) any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or against the Buyer, (ii) any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor; or (iii) that any additional amounts are due or other defaults exist.   Upon the Debtor's assignment of the Assumed Contracts, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Buyer under such Assumed Contract or (b) otherwise take action against the Buyer as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Contract.

29.     With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract under section 365 of the Bankruptcy Code; and (b) the Debtor may assume and assign each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code.   Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtor is

unenforceable and constitutes an unenforceable anti-assignment provision that is void and of no force and effect. All Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-Debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the APA and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract pursuant to the terms of the APA in any respect constitutes a default under any Assumed Contract. In the absence of objection, the non-Debtor party to each Assumed Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

30.     The Buyer has satisfied any and all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts. The Buyer shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Contract.

31.     The Debtor and its bankruptcy estate shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

32.     Non-Debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to Buyer as a result of the assumption and assignment of the Assumed Contracts.

33.     The validity of the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assumed Contract relating to such Assumed Contract's respective Cure Cost.

34.     The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Buyer's rights to enforce every term and condition of the Assumed Contracts.

### ***Additional Provisions***

35.     Without limiting the applicability or enforceability of any provision of the APA, and for the avoidance of doubt, the "trade accounts payable" that Buyer assumes pursuant to Section 2.03(e) of the APA, include those "trade accounts payable" (as such term is used in Section 2.03(e)) accrued and unpaid through (and as of), the Closing Date.  With respect to the "trade accounts payable" assumed by Buyer under the APA that were due as of the Petition Date (and remain unpaid as of the Closing Date), Buyer shall pay such sums within 35 days of the Closing Date.   With respect to the "trade accounts payable" assumed by Buyer under the APA that accrued on and after the Petition Date (and remain unpaid as of the Closing Date), Buyer shall pay such sums as they come due.

36.     Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

37.     After Closing and after payment in full of the Bank of America Obligations and the ACP-1, L.P. Obligations, a certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities or included in Permitted Encumbrances.

38.     If any person or entity that has filed statements or other documents or agreements evidencing Interests in all or any portion of the Assets (other than Assumed Liabilities or Permitted Encumbrances) does not deliver to the Debtor, after  the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests that the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets; provided however, that neither the Buyer nor the Debtor shall be authorized to release any Interests of  Bank of America or of ACP-1, L.P. in all or any portion of the Assets or otherwise unless and until the Bank of America Obligations and the ACP-1, L.P. Obligations are paid in full at Closing.

39.     No governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this chapter 11 case or the consummation of the transaction contemplated by the APA.

40.     The Debtor's obligations relating to Taxes, whether arising under law, the APA or otherwise, shall be fulfilled and paid by the Debtor.

41.     The Buyer has not assumed and is otherwise not obligated for any of the Debtor's liabilities other than the Assumed Liabilities and as otherwise set forth in the APA, and the Buyer has not purchased any of the Excluded Assets.  Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Interests (other than Permitted Encumbrances) based upon or arising out of liabilities retained by the Debtor are hereby enjoined from taking any action against the Buyer or the Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Interests (other than Permitted Encumbrances) or on account of any liabilities of the Debtor other than Assumed Liabilities pursuant to the APA.  All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Interests or cause of action against the Buyer or the Assets for any liability associated with the Excluded Assets.

42.     Neither the Buyer, nor its affiliates, members, or shareholders, shall be deemed, as a result of any action taken in connection with the sale of the Assets or the Buyer's post-Closing use or operation of the Assets, to: (a) be a successor to the Debtor; (b) have, de facto or otherwise, merged or consolidated with or into the Debtor; or (c) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Except for the Assumed Liabilities and the Permitted Encumbrances, the transfer of the Assets to the Buyer under the APA and this Sale Order shall not result in the Buyer Releasees (defined below) having any liability or responsibility whatsoever:  (y) for any Interest against the Debtors or against an insider of the Debtor; or (z) to the Debtor, except as is expressly set forth in the APA and/or this Sale Order. Without limiting the generality of the foregoing, except as otherwise provided in the APA, neither the conveyance of the Debtor's rights, title, and interest in the Assets to the Buyer under the APA, nor the assumption of the Assumed Contracts shall result in any Buyer Releasee

(defined below) having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly; (b) obligation under any of the Debtor's labor or employment agreements; (c) of the Debtor's mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtor and any non-Debtor subsidiary; (e) of the Debtor's pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including the Debtor's Benefit Plan; (f) any of the Debtor's, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including without limitation, claims that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1976 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, products liability law, product warranty law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this

chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtor or any obligations of the Debtor, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtor or its affiliates.  For the avoidance of doubt, the Buyer is not assuming, and shall not have any liability or responsibility whatsoever for, the Debtor's liabilities to (or in any way relating to) the Pension Benefit Guaranty Corporation.

43.    Except to the extent expressly included in the Assumed Liabilities or to enforce the APA or Permitted Encumbrances, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, the Committee, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding an Interest of any kind or nature whatsoever against, in or with respect to any of the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Buyer, shall be forever barred, prohibited, estopped and permanently enjoined from (i) after the Closing Date, asserting, prosecuting or otherwise pursuing such Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer, its affiliates, successors or assigns, and current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives (the "Buyer Releasees"), or the Assets; and (ii) taking any

action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Buyer in accordance with the terms of the APA and this Sale Order.  For the avoidance of doubt, the foregoing shall not prevent the Debtor, its bankruptcy estate, successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the APA.  Notwithstanding the forgoing, until such time as all of the Bank of America Obligations have been paid in full, Bank of America shall not be precluded from taking any action and shall be entitled to enforce any and all rights and remedies as provided in any interim and final Orders of this Court authorizing use of cash collateral and debtor in possession financing.

44.    None of the Buyer Releasees shall have or incur any liability to, or be subject to any action by the Debtor, or any of the Debtor's predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, or the entry into and consummation of the sale of the Assets.

45.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the APA and any related agreements.

46.    The failure specifically to include any particular provisions of the APA or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the Buyer that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

47.    To the extent any provisions of this Sale Order conflict with the terms and conditions of the APA, this Sale Order shall govern and control.

48.    This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor's bankruptcy estate, the Debtor, its successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's bankruptcy estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), the Buyer and its successors and assigns, the Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required to report or insure any title in or to the Assets or who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee of the Assets free and clear of all Interests, except as otherwise provided in the APA or this Sale Order, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

49.    The terms and provisions of the APA and this Sale Order shall be binding on and inure to the benefit of the Debtor, its bankruptcy estate, the Buyer, the Debtor's creditors, and all other parties in interest, and any successors of the Debtor, the Buyer and the Debtor's creditors, including any trustee, examiner, or receiver appointed in this case or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, its creditors, or any trustee, examiner, or receiver.

50.     The provisions of this Sale Order are non-severable and mutually dependent.

51.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted cases of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, or in any related proceeding, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

52.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion or notice thereof shall be deemed to provide sufficient notice of the Debtor's request for waiver of the otherwise applicable stay of this Sale Order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Buyer are free to close under the APA at any time, subject to the terms of the APA.  The Buyer has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtor and the Buyer close under the APA the Buyer shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the APA if this Sale Order or any authorization contained herein is reversed or modified on appeal.

53.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sale of the Assets.

54.     This Court shall retain exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or that has been assigned by the Debtor to the Buyer in all respects, and to decide any disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the

APA and this Sale Order including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer; (b) interpret, implement and enforce the terms, conditions and provisions of this Sale Order and the APA, (c) determine the status, nature and extent of the Assets and any Assumed Contracts; (d) protect the Buyer against any Interests in or against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the sale.  Any proceeding commenced pursuant to this paragraph may be commenced as a contested matter.

55.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

56.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Sale Order shall govern.

57.    Notwithstanding the entry of this Sale Order, the respective rights of the Debtor, Committee and Buyer to enforce the provisions of this Sale Order are reserved and preserved in full.

58.    Notwithstanding the entry of this Sale Order, the respective rights of the Debtor and Buyer to enforce the provisions of the APA reserved and preserved in full.

**END OF ORDER**

cc: Alan M. Grochal, Esquire
     Tydings & Rosenberg LLP
      100 East Pratt Street
      Baltimore, Maryland 21202

        All parties on the attached matrix

Hedwin Ltd. Matrix
5/1/14

Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard St., Suite 2625
Baltimore, MD  21201

Linda V. Donhauser, Esquire
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD  21202

Bank of America
John Getz
300 Galleria Parkway, Suite 800
Atlanta, GA  30339

Specialty Industries
Attention John Forray
175 East Walnut St
Red Lion,PA 17356

Serv Pro
C/O Fair Harbor Captial
Ansonia Finance Station
PO BOX 237037
New York, NY 10023

Chevron Phillips Chemical
1400 Jefferson Avenue
Pasadena, TX  77502

Electronic Restoration Services
12001 Levan Road
Livonia, MI  48150

Zacros America
1821 Walden Office Square
Suite 400
Schaumburg, IL  60173

Meyers Construction
c/o Tiffany S. Franc, Esq
901 Dulaney Valley Rd. Ste 400
Towson, MD 21204

Constellation Newenergy, Inc.
100 Constellation Way
Suite 1200C
Baltimore, MD 21202

Ineos Olefins & Polymers USA
13536 Collections Center Drive
Chicago, IL  60693

PCA – Salt Lake City
4654 West 1525 South
Salt Lake City, UT  84104

MD Unemployment Insurance Division
1100 North Eutaw Street
Baltimore, MD  21201

Gary S. Beling
Managing Director
Mizuhu Securities USA, Inc.
320 Park Avenue, 12th Floor
New York, NY  10022

Worldwide Dispensers
Merton Industrial Park
Lee Road
London SW19 3WD
United Kingdom

Green Bay Packaging
1100 Gilroy Road
Hunt Valley, MD 21031

BGE
110 West Fayette Street
Baltimore, MD  21201
Attn:  G. Bush

Transamerica Retirement Solutions
Connie McDonald
4333 Edgewood Road NE
Cedar Rapids, IA  52499

Anchor Staffing
c/o Tammy Cohen , Esq
2201 Old Court Rd.
Baltimore, MD 21208

South Franklin Street Partners
c/o Paul W. Linehan
McDonald Hopkins
600 Superior Avenue East, Suit
Cleveland, OH  44114

Pillsbury Winthrop Shaw Pittman LLP
Patrick J. Potter, Esq.
2300 N. Street, NW
Washington, DC 20037

Sixth Sense Partners
3041 Warrington Road
Cleveland, OH 44120

Polyone
33587 Walker Road
Avon Lake OH, USA 44012

Guernsey Office Products
45070 Old Ox Road
Sterling, VA 20166

Priority Worldwide Services
7361 Coca Cola Dr.
Hanover, MD 21076

Ampacet Corporation
660 White Plaines Road
Tarrytown, NY 10591

Sharon L. Levine, Esquire
S. Jason Teele, Esquire
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ 07068

James S. Carr, Esquire
Jason Adams, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Mark D. Maneche, Esquire
Tiffany S. Franc, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Rd., Suite 400
Towson, MD 21204

Marie-Josee Dube
IBM Corporation
275 Viger East
Montreal, Quebec H2X 3R7
Canada

Peter Trost
ESOP Services
North Star Trust Co.
311 W. Monroe Street, 14th Floor
Chicago, IL 60606

Marc E. Shach, Esquire
Curtis C. Coon, Esquire
Coon & Cole, LLC
401 Washington Avenue, Suite 301
Towson, MD 21204

Samuel C. Batsell
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 k Street, NW
Washington, DC 20005-4026

Richard E. Lear, Esquire
Philip T. Evans, Esquire
Holland & Knight LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006

Maria Ellena Chavez-Ruark, Esquire
Saul Ewing LLP
500 East Pratt Street, 9th Floor
Baltimore, MD 21202

Tammy Cohn, Esquire
Sellman Hoff, LLC
The Cooperage
2201 Old Court Road
Baltimore, MD 21208

Irving Walker, Esquire
Cole Schotz
300 East Lombard Street, Suite 2000
Baltimore, MD 21202

Arthur E. Rosenberg, Esquire
Holland & Knight LLP
31 West 52nd Street, 11th Floor
New York, NY 10019