**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**(Baltimore Division)**

In re:                                              *

**HEDWIN CORPORATION,**               *          **Case No. 14-15194**
                                                                    **(Chapter 11)**

    **Debtor.**                                      *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE**
**(EXECUTIVE INCENTIVE BONUSES)**

Hedwin Corporation (the "Debtor"), Debtor and Debtor-in-Possession, by its undersigned attorneys, files this Motion for Approval of Settlement and Compromise (Executive Incentive Bonuses) (the "Motion to Compromise") with Richard Broo and Maurice LeCompte, pursuant to Fed. R. Bankr. P. 9019 and Local Bankruptcy Rule 9019-1, and in support thereof states as follows:

## I.        Jurisdiction

1.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(a).

2.        Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

4.        The Court has authority to grant the relief requested in this Motion to Compromise pursuant to Federal Rule of Bankruptcy Procedure 9019 and Local Bankruptcy Rule 9019-1.

## II.        Background

5.        On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and, pursuant to §§ 1107 and 1108 of the

Bankruptcy Code, has continued in the possession of its property and management of its business as a Debtor-in-Possession.

6.        On April 9, 2014, the Office of the United States Trustee appointed the Unofficial Committee of Unsecured Creditors (the "Committee") pursuant to §1102 of the Bankruptcy Code.

### III.    The Sale Process

7.        The Chapter 11 filing by the Debtor represented the culmination of a sale process that commenced in January 2014.  The Debtor's investment banker, Mesirow Financial, Inc. ("Mesirow") informed 78 parties that the Debtor was looking to sell its business operations. Interested parties were provided with access to the Virtual Data Room set up by Mesirow and the Debtor's Chief Restructuring Officer, Charles Deutchman.  Interested parties then scheduled onsite visits to Hedwin so that they could complete their due diligence.

8.        The Debtor filed Chapter 11 after it had negotiated an Asset Purchase Agreement with a stalking horse bidder, Fujimori Kogyo Co., Ltd. ("Fujimori").  On April 17, 2014, this Court entered an Amended Order approving bidding procedures (dkt. 80) (the "Bidding Procedures Order"). The Bidding Procedures Order provided for an auction sale in the event that the Debtor received a Qualified Bid.  Such a Qualified Bid was received from Inteplast Group, Inc. ("Inteplast"). The Debtor's operating assets were sold at Auction to Fujimori on May 9, 2014 for $22.2 million (including a $600,000 break up fee and $250,000 expense reimbursement), plus the assumption of trade debt (the "Sale").  The  Sale closed effective June 1, 2014.

9.        The Debtor's senior management, consisting of Richard Broo, President ("Broo") and Maurice LeCompte, Chief Operating Officer ("LeCompte"), had significant involvement in

many aspects of the sale process. Broo's activities revolved around the sales and customer service operations. Prospective purchasers interviewed Broo at length to ascertain possible steps that could be taken to improve the profitability of the business. LeCompte received information requests from prospective purchasers pertaining to the operations of the plant and possible changes.  Those interested parties who made a site visit met with senior management for, on the average, of four or five hours.   Broo and LeCompte were also involved in providing due diligence documents for uploading to the Virtual Data Room and made themselves available for specific question and answer sessions with representatives of prospective buyers, and later for follow up discussions with  Fujimori and Inteplast after it became apparent that those two parties would be competing at the auction for the Debtor's assets.

10.     The committed involvement of Broo and LeCompte was important to the Debtor's successful implementation of the sale procedure and successful auction. The target sale price for the Debtor's assets as projected by Mesirow was $12 Million. The auction price exceeded the target price by more than $10 Million.

### IV.     The Incentive Bonus Letter Agreements

11.     The Debtor's Board of Directors retained Broo on May 21, 2013 as the Director of Sales & Marketing. In October 2013, upon the departure of Randy Wolfinger, Broo became President and Chief Executive Officer.

12.     LeCompte joined the Debtor on April 29, 2013 as the Director of Engineering & Development.  In October 2013, upon the departure of Randy Wolfinger, LeCompte became the Chief Operating Officer.

#2194332v.3

13.     The Hedwin Board of Directors decided in early December 2013 that the Debtor would conduct a marketing effort to sell the business. Broo and LeCompte were both in key positions necessary for a successful sale of the Debtor's business.

14.     The Debtor desired to provide Broo and LeCompte with reasonable and appropriate incentives during the sale process. The Debtor's Board of Directors began discussing incentives with Mr. Broo and Mr. LeCompte in January 2014.  In the exercise of its business judgment, the Debtor's board agreed to provide Broo and LeCompte with a retention bonus, an incentive bonus tied to both the amount of the sales price and how quickly the sale was able to close, and, if their services were not retained by the Buyer, severance pay. Letter Agreements Regarding Employment Incentives (the "Letter Agreements") were signed by both Mr. Broo and Mr. LeCompte on March 13, 2014. See **Exhibit A.**

15.     The Letter Agreements, among other things, proposed a formula incentive bonus tied to the sales price to the extent that the Debtor's assets  were sold for more than the target sales price of $12 Million. Under the terms described therein, Broo and LeCompte would have each earned incentive bonuses of $400,000.00 based upon the cash consideration received from Fujimori at closing and possibly more.[1]

16.     The Letter Agreements were negotiated at a point in time when the Debtor was hoping to effectuate a sale of its assets without filing Chapter 11. The terms of the Letter Agreements did not comply with the Bankruptcy Code in several respects. The proposed retention bonus component did not comply with §503(c)(1) and the proposed severance payment did not comply with §503(c)(2). Incentive bonus formulas are approved on a case by case basis, and are dictated by relevant case law and are typically tied to a percentage of the annual

---

[1] This figure would vary depending on whether or not the assumption of liabilities and trade debt were considered in the sale price of the Debtor.

compensation received by the party slated to receive an incentive bonus. *See e.g.* In re Foothills Texas, Inc. 408 B.R. 573 (Bankr. D.Del. 2009); In re Global Home Products, LLC, 369 B.R. 778 (Bankr. D.Del. 2007).

17.    Counsel for the Debtor has met with counsel for Broo and LeCompte, solicited input from both the Office of the United States Trustee and the Creditors Committee, and has negotiated a settlement of the amount of the incentive bonus to be paid to both Broo and LeCompte, subject to the approval of this Court.

## V.    The Proposed Settlement

18.    The Debtor has reached an agreement with Broo and LeCompte whereby they shall each receive a reduced incentive bonus of $120,000 in full and final settlement of the Letter Agreements.  By this Motion to Compromise, the Debtor seeks entry of an order approving the settlement and compromise between the Debtor and Broo and LeCompte.  Payment shall be made to Broo and LeCompte within 15 days of the Court's entry of an order granting the Motion to Compromise.

19.     In recognition of the constraints imposed by both the Bankruptcy Code and relevant case law, this settlement represents a significant reduction in the amounts that the Debtor's Board of Directors were otherwise prepared to pay Broo and LeCompte.   The Debtor believes that this settlement represents a fair compromise and its approval is in the best interest of the bankruptcy estate.

20.    Both the United States Trustee and the Creditors Committee do not oppose the settlement of the incentive bonus payments to Broo and LeCompte.

21.    Further, the terms of the proposed compromise comply with the Bankruptcy Code. The provisions of section 105 and 363(b) of the Bankruptcy Code and the policies

#2194332v.3

underlying those provisions support the relief requested in this Motion. In addition, to the extent that section 503(c)(3) of the Bankruptcy Code applies as a result of the status of Mr. Broo and Mr. LeCompte as insiders under the Bankruptcy Code, the facts and circumstances likewise justify the requested relief under section 503(c)(3) of the Bankruptcy Code.

## VI.   The Legal Standard and Request for Relief

22.    Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve compromises and settlements. The approval or rejection of a compromise is left to the sound discretion of the bankruptcy court, and is to be determined by the particular circumstances of each proposed compromise.  The term "sound discretion" indicates the absence of a hard-and-fast rule. When invoked as a guide to judicial action, it means a decision giving due regard to what is right and equitable under the particular circumstances and the applicable law.  Langes v. Green, 282 U.S. 531, 541 (1931).  A proposed settlement should be approved so long as "it does not fall below the 'lowest point of reasonableness.'"  United States of America ex rel. Rahman v. Oncology Associates, PC, 269 B.R. 139, 153 (D. Md. 2001).

23.    Compromises are favored in bankruptcy because they minimize the costs of litigation and expedite administration of the bankruptcy case.  In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (citing 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 2001)).

24.    In considering whether to approve a settlement, a court must determine whether such settlement is fair and reasonable and in the best interests of the estate, which requires an examination of the litigation's probable costs and benefits. *See e.g.,* Nussbaum v. United States (In re Smith), 210 B.R. 689, 692 (Bankr. D. Md. 1997).

25.    For the reasons contained herein, the Debtor believes that the settlement is fair and reasonable, and in the best interests of the Debtor's estate, its creditors and parties in interest.

Any litigation would be an expense to the estate and that expense would outweigh the savings contemplated in this compromise.

26.    No separate memorandum will be filed in support of this Motion to Compromise.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order approving the settlement, authorizing the Debtor to enter into the settlement, as the terms are described in this Motion, authorizing the Debtor to pay the incentive bonuses to Broo and LeCompte, and granting such other and further relief as the Court deems just and proper.


Date: June 24, 2014                              /s/ Alan M. Grochal
                                                 Alan M. Grochal, Bar No. 01447
                                                 Marissa K. Lilja, Bar No. 19004
                                                 Tydings & Rosenberg, LLP
                                                 100 East Pratt Street, 26th Floor
                                                 410-752-9700
                                                 agrochal@tydingslaw.com
                                                 mlilja@tydingslaw.com
                                                 *Attorneys for Hedwin Corporation*

#2194332v.3

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of June, 2014, I served a copy of the

foregoing Motion for Approval of Settlement and Compromise (Executive Incentive Bonuses)

and Proposed Order via email through the Court's CM/ECF system and/or via first class mail,

postage pre-paid on all parties on the attached matrix and to Lawrence D. Coppel, Gordon

Feinblatt LLC, 233 E. Redwood Street, Baltimore MD 21202.


/s/ Stephen M. Goldberg
Stephen M. Goldberg

- 8 -

#2194332v.3

Hedwin Ltd. Matrix
5/1/14

Bank of America
John Getz
300 Galleria Parkway, Suite 800
Atlanta, GA  30339

Chevron Phillips Chemical
1400 Jefferson Avenue
Pasadena, TX  77502

Meyers Construction
c/o Tiffany S. Franc, Esq
901 Dulaney Valley Rd. Ste 400
Towson, MD 21204

PCA – Salt Lake City
4654 West 1525 South
Salt Lake City, UT  84104

Worldwide Dispensers
Merton Industrial Park
Lee Road
London SW19 3WD
United Kingdom

Transamerica Retirement Solutions
Connie McDonald
4333 Edgewood Road NE
Cedar Rapids, IA  52499

Pillsbury Winthrop Shaw Pittman LLP
Patrick J. Potter, Esq.
2300 N. Street, NW
Washington, DC 20037

Guernsey Office Products
45070 Old Ox Road
Sterling, VA 20166

Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard St., Suite 2625
Baltimore, MD  21201

Specialty Industries
Attention John Forray
175 East Walnut St
Red Lion,PA 17356

Electronic Restoration Services
12001 Levan Road
Livonia, MI  48150

Constellation Newenergy, Inc.
100 Constellation Way
Suite 1200C
Baltimore, MD 21202

MD Unemployment Insurance Division
1100 North Eutaw Street
Baltimore, MD  21201

Green Bay Packaging
1100 Gilroy Road
Hunt Valley, MD 21031

Anchor Staffing
c/o Tammy Cohen , Esq
2201 Old Court Rd.
Baltimore, MD 21208

Sixth Sense Partners
3041 Warrington Road
Cleveland, OH 44120

Priority Worldwide Services
7361 Coca Cola Dr.
Hanover, MD 21076

Linda V. Donhauser, Esquire
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202

Serv Pro
C/O Fair Harbor Capital
Ansonia Finance Station
PO BOX 237037
New York, NY 10023

Zacros America
1821 Walden Office Square
Suite 400
Schaumburg, IL  60173

Ineos Olefins & Polymers USA
13536 Collections Center Drive
Chicago, IL  60693

Gary S. Beling
Managing Director
Mizuhu Securities USA, Inc.
320 Park Avenue, 12th Floor
New York, NY  10022

BGE
110 West Fayette Street
Baltimore, MD  21201
Attn:  G. Bush

South Franklin Street Partners
c/o Paul W. Linehan
McDonald Hopkins
600 Superior Avenue East, Suite 2100
Cleveland, OH  44114

Polyone
33587 Walker Road
Avon Lake OH, USA 44012

Ampacet Corporation
660 White Plaines Road
Tarrytown, NY 10591

#2194332v.3

Sharon L. Levine, Esquire
S. Jason Teele, Esquire
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ  07068

James S. Carr, Esquire
Jason Adams, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178

Mark D. Maneche, Esquire
Tiffany S. Franc, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Rd., Suite 400
Towson, MD  21204

Marie-Josee Dube
IBM Corporation
275 Viger East
Montreal, Quebec H2X 3R7
Canada

Scott D. Fink, Esquire
Weltman, Weinberg & Reis Co., L.P.A.
Lakeside Place, Suite 200
323 West Lakeside Avenue
Cleveland, OH  44113-1099

Peter Trost
ESOP Services
North Star Trust Co.
311 W. Monroe Street, 14th Floor
Chicago, IL 60606

Marc E. Shach, Esquire
Curtis C. Coon, Esquire
Coon & Cole, LLC
401 Washington Avenue, Suite 301
Towson, MD  21204

Samuel C. Batsell
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 k Street, NW
Washington, DC  20005-4026

Richard E. Lear, Esquire
Philip T. Evans, Esquire
Holland & Knight LLP
800 17th Street, NW, Suite 1100
Washington, DC  20006

Maria Ellena Chavez-Ruark, Esquire
Saul Ewing LLP
500 East Pratt Street, 9th Floor
Baltimore, MD  21202

Tammy Cohn, Esquire
Sellman Hoff, LLC
The Cooperage
2201 Old Court Road
Baltimore, MD  21208

Irving Walker, Esquire
Cole Schotz
300 East Lombard Street, Suite 2000
Baltimore, MD  21202

Arthur E. Rosenberg, Esquire
Holland & Knight LLP
31 West 52nd Street, 11th Floor
New York, NY  10019

#2194332v.3