**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

In re:                                                    *
HEDWIN CORPORATION                    **Case No. 14-15194-NVA**
                                                            *
                                                            **(Chapter 11)**
                                                            *
          **Debtor**

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**PROPOSED DISCLOSURE STATEMENT**

          Hedwin Corporation (the "Debtor"), debtor and debtor-in-possession, and

the Official Committee of Unsecured Creditors (the "Committee"),  by undersigned

counsel, provides this proposed Disclosure Statement in order to disclose the information

believed to be material for creditors to arrive at a reasonably informed decision, and to

exercise the right to vote on acceptance of the Joint Plan of Liquidation (the "Plan") filed

by the Debtor with the United States Bankruptcy Court for the District of Maryland on

July 15 , 2014.

          **NO REPRESENTATIONS CONCERNING THE DEBTOR**

**(PARTICULARLY AS TO THE VALUE OF ITS ASSETS) ARE AUTHORIZED,**

**OTHER THAN AS SET FORTH IN THIS STATEMENT.  ANY**

**REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE**

**OF THE PLAN WHICH ARE NOT CONTAINED IN THIS DISCLOSURE**

**STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR, AND**

**SHOULD BE REPORTED TO THE UNDERSIGNED COUNSEL FOR THE**

**DEBTOR.  MUCH OF THE INFORMATION CONTAINED IN THIS**

**STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THE**

#2209535v.1

RECORDS KEPT BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

### Company Background

On April 2, 2014, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date").  On April 9, 2014, the Office of the United States trustee appointed the Committee.

The Debtor is a Maryland corporation and since 2004 has been wholly owned by current and former employees of the company pursuant to an Employee Stock Option Plan (the "ESOP").

The company was founded in 1946 as a manufacturer of molten sheet thermoforms for use in plastic heat-sealing.  In 1956, the Debtor patented its Cubitainer® design.  In subsequent years, the company's product lines grew to include blow molding and thermoform technologies.

The Debtor is a leading manufacturer of customized industrial plastic packaging, which it sells to wholesalers and distributors throughout the United States, Canada and Europe.  The company's products include high performance and regulated specialty industrial packaging for use in the chemical, medical and institutional food industries. The principal product lines consist of: (i) the Cubitainer® Package with accompanying Cube® Insert, which is a high performance alternative to open pail heads; (ii) blow-molded high density polyethylene containers, which include branded and custom extruded and lightweight containers, bottles and pails; and (iii) branded liners designed to protect materials processed in pails and drums.

The Debtor's manufacturing facility is located at 1600 Roland Heights Avenue, Baltimore, Maryland. The Debtor has a warehouse facility at 1700 West 41st Street, Baltimore, Maryland and a warehouse and assembly facility at 9175 Moya Blvd. (Unit D), Reno, Nevada. All of the Debtor's facilities are leased.

In 2012, the Debtor recorded net sales of $44 million with a gross profit of $4.5 million. In 2013, the Debtor generated net sales of $43.5 million and had a gross profit of $3.4 million. The decline in profitability in 2013 was primarily attributable to (a) the business interruption resulting from a major fire in June 2013 to the Debtor's manufacturing facility and (b) an increase in the prices of prime raw materials which were not able to be passed through to customers due to long term fixed price sales arrangements. The fire negatively affected the Debtor's operations, causing a shutdown in certain assembly lines.

As of the fiscal year end December 31, 2013, the Debtor had total net assets of approximately $14 million.

A combination of factors and events negatively impacted the Debtor's business operations and its financial condition prior to the Petition Date. The Debtor's weakened and worsening financial condition stemmed from, among other things: (i) expenses incurred and losses sustained due to the June 2013 fire; (ii) fluctuating and higher resin prices; (iii) margin compression; (iv) delayed capital investment in both equipment and in the production process, resulting in increased production costs and inefficiencies; and (v) quality control problems.

In October, 2013, due to the Debtor's deteriorating financial condition, the Debtor hired Charles S. Deutchman, of Shared Management Resources, Ltd. ("SMR"), as Chief

Restructuring Officer (the "CRO").  The CRO conducted extensive due diligence into the Debtor's financial condition, explored various strategies with management for improving the company's performance, and assisted management in restructuring the operations of the business.  After considerable evaluation of alternative plan to restructure the operations of the Debtor, the Board of Directors concluded that there was insufficient time, capital and management personnel to effectively implement the majority of the restructuring options and thus concluded that the Debtor should be placed on the market for sale.

Prior to the Petition Date, the Debtor maintained a pension plan for the benefit of its employees.  The Pension Benefit Guaranty Corporation ("PBGC") has notified the Debtor that the plan will be terminated, and that the PBGC will pay monthly retirement benefits of the Debtor's terminated pension plan, up to a certain guaranteed maximum. The PBGC will assert a general unsecured claim against the Debtor in connection with the termination and any other unpaid liability that the PBGC funds.

### Employment of Professionals

The Debtor has engaged, or is in the process of engaging, the following professionals in this case:

1. SMR, by virtue of the Order Granting Application to Employ Shared Management Resources, LTD as Chief Restructuring Officer to the Debtor Pursuant to 11 U.S.C Section 327(a) and Approval of Compensation Arrangement Pursuant to 11 U.S.C. Section 328(a) (dkt. 93) centered on April 21, 2014;

2. Tydings & Rosenberg LLP ("Debtor's Counsel"), by virtue of the Order Authorizing Employment Tydings & Rosenberg LLP as Attorney for Debtor (dkt. 122), entered on April 28, 2014;

3. Mesirow Financial, Inc. ("Mesirow"), by virtue of the Order Granting Application To Employ Mesirow Financial, Inc. As Financial Advisor/Investment Banker To The Debtor And Approval Of Compensation Arrangement Pursuant To 11 U.S.C. §§ 327(a), 328(a), And 365, *Nunc Pro Tunc* To The Petition Date (dkt. 135), entered on April 30, 2014; and

4. CBIZ, as the Debtor's Pension Consultant.

The Committee has engaged the following professionals in this case:

1. Lowenstein Sandler LLP as its legal counsel pursuant to the Order Authorizing the Retention of Lowenstein Sandler LLP as Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to April 9, 2014 (dkt. 193), entered by Order entered May 19, 2014;

2. Saul Ewing LLP as local counsel pursuant to the Order Approving Application of the Official Committee of Unsecured Creditors to Retain Saul Ewing LLP as Its Counsel, *Nunc Pro Tunc* to April 11, 2014 (dkt 191), entered May 29, 2014; and

3. EisnerAmper LLP as accountants and financial advisors, pursuant to the Order Authorizing the Retention of EisnerAmper LLP as Accountants and Financial Advisors to the Official Committee of Unsecured Creditors

*Nunc pro Tunc* to April 14, 2014 pursuant to an order entered on June 23, 2014 (dkr. 245).

## The Sale of the Debtor's Assets

In December 2013, the Debtor retained Mesirow as its investment banker to assist the Debtor in identifying strategic alternatives and to assist the Debtor in connection with any possible sale transaction. Pursuant to a sale process created by SMR and Mesirow, Fujimori Kogyo Co., Ltd. (the "Purchaser") submitted the most favorable offer, and became the stalking horses bidder after the Purchaser executed an Asset Purchase Agreement with the Debtor dated as of April 1, 2014 (the "APA") in the amount of $16,500,000 in cash consideration plus the assumption of defined Assumed Liabilities.

Shortly after the Petition Date, the Debtor sought approval of a sale of substantially all of its assets, with the Purchaser serving as the stalking horse bidder with respect to the auction sale of the Debtor's assets.  After obtaining authorization from the Court to conduct the sale auction, as well as Court approval of bidding procedures in connection therewith, the Purchaser became the winning bidder at the auction of the Debtor's assets held on May 9, 2014 by offering a total purchase price of $22,200,000 in cash consideration plus the assumption of defined Assumed Liabilities.  Pursuant to the Order (A) Approving Asset Purchase Agreement and Authorizing Sale of Assets Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief [dkt. 186] (the "Sale Order"), the asset sale was approved.

#2209535v.1

The Purchaser assigned its rights and obligations under the APA (as subsequently modified and amended pursuant to the Sale Order) to its subsidiary, Zacros America, Inc. (the "Assignee Purchaser"), and on May 30, 2014, the Debtor closed its sale of substantially all of its assets to the Assignee Purchaser, effective June 1, 2014.  In conjunction with the sale, the Debtor, on May 30, 2014, entered into a Repair Escrow Agreement (the "Repair Escrow Agreement") with the Assignee Purchaser to ensure that certain repairs from the damage caused by the fire, were made to the leased real property at 1600 Roland Heights Avenue assumed and assigned by the Debtor to the Assignee Purchaser.  The Debtor and the Assignee Purchaser also entered into an Escrow Agreement with the Bank of America, N.A. ("BofA") dated May 30, 2014 (the "Escrow Agreement"), with respect to the distribution of $2,650,000 in sale proceeds held by BofA pending resolution of certain post-closing adjustments as further detailed in the APA.

The sale proceeds received from the Assignee Purchaser were used to immediately pay in full the claims of (1) the Debtor's two primary secured lenders[1], including the secured lenders' authorized attorneys' fees; and (2) Mesirow.  On June 27, 2014, the Debtor filed Mesirow's application for final compensation (dkt. 253), which is pending.

Other than the amounts held by third parties in connection with the Repair Escrow Agreement and Escrow Agreement, the Debtor is in possession of the remaining sale proceeds, which represent the primary source of funding with respect to Plan

---

[1] The Debtor's two secured creditors were BofA and ACP-1, L.P.

distributions. The remaining source of funding for the Plan are proceeds from the Debtor's fire insurance claim.

<u>**Administrative Responsibilities**</u>

The Debtor is current in the filing of its Debtor-in-Possession Monthly Operating Reports, as well as in payment of its quarterly fees.

<u>**Factors Bearing on the Success or Failure of the Plan**</u>

Because the primary source of funding of the Plan is the net sale proceeds received from its sale of substantially all of its assets to the Assignee Purchaser, there will be few factors that may bear on the success or failure of the Plan. The final adjustments of proceeds to be distributed in connection with the Escrow Agreement and Repair Escrow Agreement will impact the Plan to the extent that additional proceeds may become available for distribution to creditors. Although the Debtor has not yet received all projected fire insurance proceeds, the Plan Proponents are hopeful that these will be released by the insurance company in the near future without the need for litigation. Because the Debtor waived its right to pursue avoidance actions in accordance with the APA, as set forth in the Sale Order, avoidance actions will not play a role in the amount of proceeds available for distribution. The resolution and determination of the final claim of the PBGC in connection with the Debtor's terminated pension plan, litigation over the payment of the fire insurance proceeds and any other material claim object or claim dispute will impact the distribution of funds to non-normal course unsecured creditors under this Plan.

## Voting On The Plan And Confirmation

Voting on acceptance or rejection of the Plan will be governed by the provisions of the Bankruptcy Code.  Each voting creditor will be supplied with an official ballot, in a form prescribed by the Court.  Creditors may vote to accept or reject the Plan by filing a completed ballot with the Clerk of the Court.  A class of creditors will be considered to have accepted the Plan (a) if it is accepted by creditors holding at least two-thirds (2/3) in amount, and more than one-half (1/2) in number of the allowed claims of each class that has voted, or (b) if the class is unimpaired within the meaning of the Bankruptcy Code.

After the time for voting on the Plan passes, the Court will hold a hearing, and rule on confirmation of the Plan in accordance with the Bankruptcy Code.  If all requirements for confirmation of the Plan under the Bankruptcy Code are satisfied, except that the Plan is not accepted by one or more classes of creditors, the Court may confirm the Plan without the acceptance of creditors if the Court finds that the Plan does not discriminate unfairly, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to any class of creditors that does not accept the Plan.

## Alternatives To The Plan Of Reorganization

In the event that the Plan is not confirmed and this case is converted to Chapter 7, there would be additional administrative expenses consisting of Chapter 7 trustee commissions and the fees and expenses incurred by the trustee's professionals.  Furthermore, the trustee would incur time and expenses associated with the learning curve regarding the details of the sale of the Debtor's assets, as well as the Debtor's financial matters.  Therefore, it is anticipated that creditors will fare considerably better if this case remains in Chapter 11 and the Joint Plan is confirmed.

#2209535v.1

<u>The Joint Plan of Lquidation.</u>

CREDITORS ARE URGED TO READ THE ENTIRE PLAN, AND TO CONSULT WITH COUNSEL, OR EACH OTHER IN ORDER TO FULLY UNDERSTAND THE PLAN.  A COPY OF THE PLAN HAS BEEN FILED WITH THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, 101 WEST LOMBARD STREET, U.S. COURTHOUSE, BALTIMORE, MARYLAND 21201, AND IS AVAILABLE FOR INSPECTION AND REVIEW.

THE PLAN IS COMPLEX, AND REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR.  AN INFORMED JUDGMENT CONCERNING THE PLAN, THEREFORE, CANNOT BE MADE WITHOUT UNDERSTANDING IT.

<u>ARTICLE I - DEFINITIONS</u>

For purposes of this Plan, the following terms shall have the meanings hereinafter set forth:

1.1     "Administrative Bar Date" means forty-five (45) days after the Effective Date and is the date by which applications for allowance of Administrative Expense Claims incurred through the Confirmation Date must be filed with the Court or be forever barred and discharged.  Notice of confirmation of the Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

1.2     "Administrative Expense(s)" means a Claim for costs and expenses of administration of the Chapter 11 case allowed under section 503(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating

10

the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, lease equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under 28 U.S.C. §1930.

      1.3     "Allowed Claim(s)" means any Claim:

      (a)     in respect of which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Bankruptcy Rule 3003;

      (b)     which is listed in Schedules D, E or F filed by Debtor with the Court, including any amendments thereto, and is not listed as disputed, contingent, or unliquidated as to amount; or

      (c)     for which an application has been filed pursuant to §§ 329 and 330 of the Bankruptcy Code;

and further, as to any such claim, either no objection to the allowance thereof has been filed, or if an objection to the allowance thereof has been filed, the objection has been overruled or the amount of such claim fixed by a Final Order.

      1.4     "APA" means the Asset Purchase Agreement between the Debtor and the Purchaser, Fujimori Kogyo Co., Ltd., dated as of April 1, 2014, as was modified or amended by the Sale Order, as that term is defined below.

      1.5     "Assignee Purchaser" means Zacros America, Inc.

      1.6     "Avoidable Transfer(s)" means any transfer that may be avoided under any provision of the Bankruptcy Code including, but not limited to, §§ 544, 547,

11

548 or 549."Avoidance Action(s)" means all actions, causes of action, claims, powers, rights and remedies arising under §§ 544, 545, 546, 547, 548, 549, 550, 553 or 558 of the Bankruptcy Code including, but not limited, to any right, power or remedy to avoid any statutory lien or any pre-petition or post-petition transfer.

   1.7 "Bankruptcy Code" means Title 11 of the United States Code ("U.S.C.") as enacted by the Bankruptcy Reform Act of 1978, Public Law No. 95-598 and subsequently amended, and such portions of Title 28 of the United States Code as are applicable to bankruptcy cases.

   1.8 "Bankruptcy Rules" means (a) the Federal Rules of Bankruptcy Procedure, and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland, both as now in effect or hereafter amended.

   1.9 "Bidding Procedures Order" means the Amended Order (A) Approving Bidding Procedures For Sale Of Debtor's Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Breakup Fee And Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts, Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; entered by the Court on April 17, 2014 And (G) Granting Other Related Relief (Dkt. 80).

1.10    "Claim(s)" means any claim against the Debtor as defined in § 101(5) of the Bankruptcy Code, including, but not limited to, all claims arising from the rejection of unexpired leases and/or executory contracts.

1.11    "Committee" means the committee officially appointed to represent the unsecured creditors of the Debtor, as such committee may be constituted from time to time.

1.12    "Confirmation Date" means the date on which the Court enters the Confirmation Order.

1.13    "Confirmation Order" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.14

1.15    "City" means Baltimore City, Maryland.

1.16    "Court" means the United States Bankruptcy Court for the District of Maryland or any court having jurisdiction to enter the Confirmation Order.

1.17    "Claims Bar Deadline" means August 5, 2014.

1.18    "Claim Objection Deadline" means November 5, 2014, which is the date that occurs ninety (90) days following the Claims Bar Deadline of August 5, 2014.

1.19    "Debtor" means Hedwin Corporation.

1.20    "Disbursing Account" means the bank account(s) maintained by the Debtor that holds monies of the Estate.  The Disbursing Account shall be utilized for the purpose of paying Liquidation Expenses and making distributions to creditors pursuant to the Plan.

13

1.21    "Disputed Claim(s)" means any Claim or a portion of any Claim as to which the Debtor, the Committee, or any other party in interest has filed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

1.22    "Effective Date" means the later of (a) the fourteenth (14th) day after the Confirmation Order becomes final by expiration of the time for appeal therefrom, and (b) if an appeal is taken, the fourteenth (14th) day after an order on appeal in favor of confirmation (and all orders on appeal relating to said order) becomes a final non-appealable order.

1.23    "Escrow Account" means the escrow account held in connection with and pursuant to that certain Asset Purchase Agreement, dated as of April 1, 2014, as amended pursuant to the Bidding Procedures Order entered on April 17, 2014 and the Sale Order entered on May 15, 2014, and as assigned by Fujimori Kogyo Co., Ltd. pursuant to an Assignment and Assumption Agreement dated as of May 26, 2014.

1.24    "Escrow Agreement" means the Escrow Agreement between the Debtor and Bank of America, N.A., dated May 30, 2014.

1.25    "ESOP" means the Debtor's Employee Stock Ownership Program.

1.26    "Estate" means the bankruptcy estate created pursuant to § 541 of the Bankruptcy Code upon commencement of this bankruptcy case.

1.27    "Final Order" means an order that has not been reversed, stayed, modified or amended and the time to appeal from or to seek review of or rehearing on such order has expired, and which order has become final.

14

1.28   "Fire Damage" means any and all damages or losses suffered by the Debtor as a result of a June 2013 fire at the Debtor's manufacturing facility in Baltimore, Maryland.

1.29   "Governmental Claims Bar Deadline" means September 29, 2014.

1.30   "Liquidation Expenses" means all reasonable and necessary expenses incurred after the Effective Date in connection with implementation of this Plan, which expenses shall include, without limitation, compensation to the Debtor's counsel and other persons employed by the Debtor, to counsel for the Committee and to any other professionals whose employment is authorized by the Court.

1.31   "PBGC" means the Pension Benefit Guaranty Corporation.

1.32   "Petition Date" means April 2, 2014.

1.33   "Plan" means this Plan of Liquidation, or as hereafter amended or modified.

1.34   "Plan Proponents" means the Debtor and the Committee.

1.35   "Professional Person(s)" means an attorney, accountant, appraiser, consultant or other professional retained or to be compensated pursuant to an order of the Court entered under sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.

1.36   "Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.37   "Repair Escrow Agreement" means the Repair Escrow Agreement between the Debtor and the Assignee Purchaser, as that term is defined above, dated May 30, 2014.

15

1.38   "Sale Order" means the Order (A) Approving Asset Purchase Agreement and Authorizing Sale of Assets Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief (dkt. 186).

1.39   "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with § 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

## ARTICLE II – CLASSIFICATION OF CLAIMS

Claims against the Estate shall be classified as follows:

2.1   Class 1.  Class 1 consists of (i) Allowed Claims for costs and expenses of administration of the Estate, as defined above as Administrative Expenses, including fees of Professional Persons approved by the Court and other post-petition operating expenses and Liquidation Expenses, and (ii) fees payable to the United States Trustee by the Debtor under 28 U.S.C. § 1930(a)(6).

2.2   Class 2.  Class 2 consists of all Allowed Claims against the Debtor that are entitled to priority under section 507 of the Bankruptcy Code excluding 11 U.S.C. § 507(a)(2) administrative claims and § 507(a)(8) unsecured tax claims.

2.3   Class 3.  Class 3 consists of all Allowed Claims for unsecured taxes of government units entitled to priority under section 507(a)(8).

2.4   Class 4.  Class 4 consists of all Allowed Claims arising from Fire Damage excluding, however, the Fire Damage claim of Electronic Restoration Services,

16

Inc. (which has waived any claim against the Debtor pursuant to a Consent Order Granting Relief from the Automatic Stay (dkt. 208) and any Fire Damage claim paid or reimbursed, or to be paid or reimbursed, from insurance proceeds.

        2.5    <u>Class 5</u>.  Class 5 consists of general unsecured Allowed Claims against the Estate other than those in Class 1, Class 2, Class 3 or Class 4, including, but not limited to, trade debt incurred by the Debtor and not assumed by the Purchaser Assignee; excluded liabilities pursuant to section 2.04 of the APA; rejection claims by various lessors; allowed final claims of the PBGC arising out of the termination of the Debtor's pension plan; and the portion of employee wage and benefit claims that exceed the statutory priority amounts set forth in section 507(a)(4).

        2.6    <u>Class 6</u>.  Class 6 consists of the equity interests in the Debtor, including but not limited to claims of individuals that relate directly to the claimant's participation in the Debtor's ESOP.

## <u>ARTICLE III – TREATMENT OF CLAIMS AND INTERESTS</u>

        3.1    <u>Class 1</u>.  The Debtor shall pay each Class 1 allowed claim in full, in cash, from the Disbursing Account, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, (c) a date agreed upon by the Debtor and the particular claimant, or (d) the date that the Debtor has sufficient funds in the Disbursing Account.  Class 1 is not a class of claims impaired under the Plan.

        3.2    <u>Class 2</u>.  The Debtor shall pay each Class 2 allowed claim in full, in cash, from the Disbursing Account but only to the extent each is entitled to priority under section 507, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after

such claim has become an Allowed Claim, (c) a date agreed upon by the Debtor and the particular claimant, or (d) the date that the Debtor has sufficient funds in the Disbursing Account. Class 2 is not a class of claims impaired under the Plan.

        3.3    <u>Class 3</u>. The Debtor shall pay each Class 3 allowed claim in full, in cash, from the Disbursing Account but only to the extent each is entitled to priority under section 507, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, (c) a date agreed upon by the Debtor and the particular claimant, or (d) the date that the Debtor has sufficient funds in the Disbursing Account. Class 3 is not a class of claims impaired under the Plan.

        3.4    <u>Class 4</u>. Holders of allowed Class 4 claims shall be paid in full from insurance proceeds due to the Debtor and within thirty (30) days after the Debtor receives insurance proceeds relating to such claims. Class 4 is not a class of claims impaired under the Plan.

        3.5    <u>Class 5</u>. The Debtor shall make a first distribution to allowed Class 5 claimholders on or before November 19, 2014, which is the date that occurs fourteen (14) days following the Claim Objection Deadline. The first distribution shall be in an amount determined by the Debtor, in consultation with the Committee, which amount shall not be less than forty percent (40%) of the respective allowed Class 4 claims. To the extent Class 4 claims are not paid in full after the first distribution, the Debtor shall make a second distribution to holders of remaining allowed Class 4 claims on or before May 19, 2015, which amount shall not be less than ten percent (10%) of the remaining allowed Class 4 claims. To the extent Class 4 claims are not paid in full after the second distribution, the Debtor shall make a third and final distribution to holders of

18

remaining allowed Class 4 claims on the early of (a) November 19, 2015; or (b) such time as the remaining Class 4 claim becomes allowed and final. Class 5 is a class of claims impaired under the Plan.

       3.6    <u>Class 6</u>. All Class 6 claims shall be extinguished on the Effective Date. The Debtor shall pay each Class 5 allowed Claim from any surplus funds in the Disbursing Account after the satisfaction, pursuant to the Plan of the holders of Classes 1 through 4. Class 5 is a class of claims impaired under the Plan.

<b><u>ARTICLE IV– MEANS FOR EXECUTION OF THE PLAN</u></b>

       4.1    <u>Funding of Plan</u>. The Plan shall be funded from cash on hand plus the following assets: (a) release of any funds to the Debtor pursuant to the Escrow Agreement and/or Repair Escrow Agreement; and (b) the receipt of insurance proceeds.

       4.2    <u>Special Tax Provision</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or equity securities under the Plan, sales of the Debtor's assets, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, the Debtor established the ESOP in January 2004. The Debtor is a Subchapter S corporation and the ESOP is the 100% shareholder. Because ESOPs are not taxable entities, the income produced by an S corporation that is otherwise attributable to an ESOP shareholder is not subject to a current income tax. To the extent that income is ultimately

19

distributed from the ESOP to its participants, it will be subject to a single-level federal income tax. Because Maryland has a similar provision in its tax laws, no state tax obligations will be created,

        4.3    <u>Duties and Powers of Plan Proponents</u>.  The Plan Proponents shall have the sole right, power and authority, but not the obligation, among other things, to: (a) object to any Claim; (b) file suit  commence an action or proceeding with respect to any claim or cause of action of the Debtor and/or the Estate, and otherwise prosecute, settle, compromise or pursue such claim or cause of action; except as prohibited by the terms of the Sale Order;  (c) retain and employ professionals as the Plan Proponents deem necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Plan Proponents deem reasonable (including counsel for the Debtor and counsel for the Committee); (d) execute and enter into contracts on behalf of the Estate as the Plan Proponents deem necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtor deems reasonable; (e) liquidate all assets of the Debtor and the Estate and to pay the related Liquidation Expenses; (f) distribute funds to holders of allowed Claims consistent with the terms of the Plan; (g) file a final report and move to close the Debtor's Chapter 11 case; and (h) to take such other and further actions as may be necessary or appropriate to carry out the terms and purposes of the Plan.

        4.4    <u>Disbursing Accounts</u>.  All proceeds from the collection of the Debtor's assets shall be placed in one or more disbursing accounts.  The Debtor, in consultation with the Committee, shall be empowered to invest these funds in any institution or in an investment backed by security, which has the highest rating that is federally insured.

20

4.5    <u>Interim Distributions</u>.  The Debtor, after consultation with the Commttee, is authorized to make interim distributions to Class 1 claimants, subject to a reserve, determined in the discretion of the Debtor, to cover ongoing administrative expenses.

4.6    <u>Resolution of Disputed Claims</u>. To the extent a Claim is a Disputed Claim, the Debtor, after consultation with the Committee, shall not be required to make the applicable disputed portion of a payment to the holder of the Disputed Claim that would otherwise be payable with respect to the Disputed Claim.  In the event that the Disputed Claim is allowed, the Debtor shall thereafter pay the appropriate amount to the holder of such Claim in accordance with the terms of the Plan and in the same manner as any other creditor of the same Class.

4.7     <u>Distributions.</u>  The Debtor, after consultation with the Committee, may stop payment on any distribution check made pursuant to the Plan that has not cleared the issuing bank within ninety (90) days of the date of distribution of such check.  All unclaimed funds or property may be used to satisfy any additional expenses or fees.  Thereafter, such funds shall be subject to contribution by the Estate to the ABI Endowment Fund .  Distributions to holders of Allowed Claims shall be made at the address of each such holder as determined in accordance with the proof of claim filed by the respective claimholder, or if no proof of claim is filed, in accordance with the Schedules.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Proponent are notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without interest, from the date of the first attempted distribution.  All

21

unclaimed distributions shall be used to satisfy the costs of administering and fully consummating this Plan and the holder of any such claim or interest shall not be entitled to any other further distribution under this Plan on account of such claim or interest.

## ARTICLE V - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    Rejection of Remaining Leases and Contracts.  All executory contracts and unexpired leases of the Debtor that are not rejected prior to the Confirmation Date, or as to which the Debtor has not applied to the Court for permission to reject prior to the Confirmation Date, or which have not been specifically rejected pursuant to the terms of this Plan, the APA, or the Sale Order, shall be deemed rejected by the Debtor on the Confirmation Date.

5.2    Rejection Claims.  Pursuant to Bankruptcy Rule 3002 (c)(4), and except as otherwise ordered by the Court, Claims arising from the rejection of an executory Contract or unexpired lease shall be filed, by way of motion, with the Court no later than thirty (30) days after the later of the entry of a Final Order approving such rejection and the Confirmation of the Plan, or such Claim shall be forever barred.  Any Claim arising from the rejection of an executory Contract or unexpired lease shall be deemed a Class 4 Claim for distribution purposes as of the date of the entry of an order of the Court approving said Claim.

## ARTICLE VI - ROLE OF THE COMMITTEE

6.1    The Committee shall continue in existence until the Plan Proponents have filed a final report and have moved to close the Debtor's Chapter 11 Case.  The Plan Proponents shall make joint decisions with respect to the implementation of the Plan, and shall jointly make all business decisions and take other actions, including whether to prosecute causes of action pursuant to section 4.3 of the Plan, and the Plan

22

Proponents shall make joint decisions with respect to any other purpose consistent with the Bankruptcy Code, payment to creditors and the implementation of the Plan.

## ARTICLE VII- MODIFICATION OF PLAN

7.1     <u>Pre-Confirmation Modification</u>.  The Plan Proponents reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan or the treatment of any Claim prior to the Confirmation Date.

7.2     <u>Post-Confirmation Modification</u>.  After the Confirmation Date, the Plan Proponents may amend or modify the Plan, or any portion thereof, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan, in such a manner as may be necessary to carry out the purpose and intent of the Plan.

## ARTICLE VIII - EFFECT OF CONFIRMATION

8.1     <u>Binding Effect</u>. On or after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an interest in, the Debtor, whether or not such Claim or interest of such holder is impaired under this Plan and whether such holder has accepted this Plan.

8.2     <u>Discharge</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a discharge and dismissal, effective as of the Effective Date, of all Claims against the Debtor that arose at any time before the Confirmation Date.

8.3     <u>Claims Injunction</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall also constitute an injunction against any action by or on behalf of the holder of any Claim so discharged under the previous paragraph, seeking to collect a Claim from or against the Debtor or reorganized

23

Debtor in any manner other than as specified in the Plan. Nothing in this Plan is meant to discharge any party other than the Debtor and the reorganized Debtor from any claim, debt or liability of any type whatsoever.

8.4    <u>Exculpation</u>.  Notwithstanding any other provision of the Plan, no holder of a Claim or Interest shall have any right of action against the Debtor, the Estate, the Committee, or any of their respective managers, officers, directors, agents, attorneys, investment bankers, financial advisors, other professionals, or any of their respective property and assets for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence.

## <u>ARTICLE IX - GENERAL PROVISIONS</u>

9.1    <u>Retention of Jurisdiction</u>.  Notwithstanding the Confirmation of the Plan, the Court will retain jurisdiction until consummation of the Plan to ensure that the purposes and intent of the Plan are carried out.  The Court's jurisdiction shall be over any and all disputes and litigation pending at the time of the Confirmation of the Plan, any controversies that may arise thereafter, and any controversies that may affect the Plan Proponents' ability to effectuate the consummation of the Plan.  By way of illustration of the jurisdiction retained by the Court, but not by way of limitation of the same, the Court shall retain jurisdiction in this case, among other things, for the following purposes:

(a)    The resolution of any dispute arising out of the APA, Escrow Agreement, or Repair Escrow Agreement.

(b)    The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the Claims of creditors.  The failure by the Debtor, and/or the

24

Committee to object, or to examine any Claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's, or the Committee's right to object to or re-examine any Claim in whole or in part.

(c)      Except to the extent that the Plan Proponents choose to invoke the jurisdiction of a state court, the determination of all causes of action, controversies, disputes and conflicts involving, or relating to, the Debtor or its assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtor, and any other party or parties, including but not limited to, any right of the Debtor to recover assets pursuant to applicable provisions of the Bankruptcy Code.

(d)      The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Order of Confirmation, as may be necessary or otherwise appropriate to carry out and/or clarify the intended purposes of the Plan or the Order of Confirmation.

(e)      The allowance of compensation for professional services rendered to the Estate by the Debtor's professionals, and the Committee professionals pursuant to § 330(a) of the Bankruptcy Code, upon application for such compensation.

(f)       The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an Allowed Claim.

(g)      The determination of the existence of any liens, encumbrances, or interests of other parties in property of the Estate or the Debtor, and the extent and priority thereof.

(h)      The enforcement of, and the continuation of, the automatic stay and any similar equitable relief with respect to post-confirmation actions against the Debtor, the Estate, and/or property of the Estate.

(i)      The resolution of any disputes between the Debtor and the Committee regarding implementation of the Plan.

(j)      Entry of an order concluding and terminating the case.

(k)      This Chapter 11 Plan shall be deemed fully administered upon the payment of any Allowed Claim, in full or in part, including but not limited to, any payment of post-petition professional fees.

25

9.2     <u>Payment as Release</u>.  The tender of full payment to the holder of an Allowed Claim in any class as provided for under this Plan shall be deemed to effect a settlement, release, and discharge of the Debtor and its property by such holder on behalf of itself, successors and assigns.

9.3     <u>Extension of Dates</u>.  If any date or deadline under this Plan falls on a Saturday, Sunday, or legal holiday, the date or deadline shall be deemed to occur on the next business day thereafter, unless otherwise provided herein.

9.4     <u>Rules of Construction.</u>  Except as otherwise provided herein, this Plan shall be construed in conformance with the rules of construction in § 102 of the Bankruptcy Code.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

9.5     <u>Addresses for Notices</u>.  In the event a party is required to give notice to the Plan Proponents under this Plan, such notice shall be in writing, shall reference the above-referenced case number, and shall be sent by commercially reasonable means under the circumstances to the following:

Alan M. Grochal, Esq.
Stephen M. Goldberg, Esq.
Catherine K. Hopkin, Esq.
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Fax: 410-727-5460
Email:  agrochal@tydingslaw.com

and

Sharon L Levine, Esq.
S. Jason Teele, Esq.
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, New Jersey 07068
Fax:  973-597-2400
Email:  slevine@lowenstein.com
          steele@lowenstein.com

9.6     Section 1129(b) Election.  In order to confirm the Plan, and to the extent necessary, the Plan Proponents invoke the entitlement of section 1129(b) of the Bankruptcy Code, such that, as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class of Claims that is impaired under and has not accepted the Plan, the Plan may be confirmed by the Court.

9.7     Statutory Fees.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Court on the Confirmation Date, shall be payable on the Effective Date.  Any statutory fees accruing after the Effective Date shall constitute Administrative Expenses.

9.8     Deadline for Filing Administrative Expense Claims. Notwithstanding section 503(a) of the Bankruptcy Code, any person or entity seeking the allowance or payment of an Administrative Expense Claim under section 503 of the Bankruptcy Code and/or any Professional Person or firm retained with approval by order of the Court seeking compensation in this Chapter 11 case pursuant to sections 330 or 503(b) of the Bankruptcy Code, shall be required to file on or before the Administrative Bar Date an application for the allowance and/or payment of an Administrative Expense Claim including, without limitation, an application for the final compensation of a Professional Person and reimbursement of expenses.  Any such Administrative Expense

27

Claim not filed by the Administrative Bar Date shall be forever barred and discharged. Objections to any such application shall be filed on or before a date to be set by the Court. The provisions of this paragraph are not intended to limit or expand the ability of the Court to allow the payment of compensation to Professional Persons for services performed after the Confirmation Date; all such compensation remaining subject to approval by the Court.

9.9     <u>Closing of Case</u>.  When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and the Plan Proponents have determined that all causes of action have been fully and finally resolved, and all distributions required pursuant to the Plan have been completed, the Plan Proponents may seek authority from the Bankruptcy Court to close this case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

9.10     <u>Invalidity of Plan Provisions</u>. Should any provision of this Plan be determined to be invalid, void or unenforceable, such determination shall not in any way limit or affect the enforceability and operative effect of any or all other provisions of the Plan and the Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and in no way shall be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall

provide that each term and provision of the Plan, as it may have been altered or

interpreted in according with the foregoing, is valid and enforceable pursuant to its terms.

Dated:   July15, 2014

/s/ Alan M. Grochal
Alan M. Grochal, Bar No. 01447
Stephen M. Goldberg, Bar No. 01156
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
 Baltimore, Maryland  21202
agrochal@tydingslaw.com
sgoldberg@tydingslaw.com
chopkin@tydingslaw.com
 Telephone (410) 752-9700

*Counsel for the Debtor*

/s/ Sharon L. Levine
Sharon L. Levine, Esquire
S. Jason Teele, Esquire
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, New Jersey 07068
slevine@lowenstein.com
steele@lowenstein.com
Telephone: 973-597-2500
*Counsel for Committee*

/s/ Maria Ellena Chavez-Ruark
Maria Ellena Chavez-Ruark, Esquire
Saul Ewing LLP
500 East Pratt Street, 8th Floor
Baltimore, Maryland  21202
mruark@saul.com
Telephone: 410-332-8600
*Counsel for Committee*

#2209535v.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of July, 2014, a copy of the Proposed Disclosure Statement was served via first class mail, postage pre-paid or electronically via the Court's CM/ECF electronic notification system on all the parties listed on the attached matrix.

/s/ Alan M. Grochal
Alan M. Grochal

#2209535v.1

Hedwin Ltd. Matrix
6/27/14

Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard St., Suite 2625
Baltimore, MD  21201

Linda V. Donhauser, Esquire
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202

Bank of America
John Getz
300 Galleria Parkway, Suite 800
Atlanta, GA  30339

Specialty Industries
Attention John Forray
175 East Walnut St
Red Lion,PA 17356

Serv Pro
C/O Fair Harbor Capital
Ansonia Finance Station
PO BOX 237037
New York, NY 10023

Chevron Phillips Chemical
10001 Six Pines Drive
The Woodlands, TX  77380

Electronic Restoration Services
12001 Levan Road
Livonia, MI  48150

Zacros America
1821 Walden Office Square
Suite 400
Schaumburg, IL  60173

Meyers Construction
c/o Tiffany S. Franc, Esq
901 Dulaney Valley Rd. Ste 400
Towson, MD 21204

Constellation Newenergy, Inc.
Attn: SCS
100 Constellation Way, Suite 600C
Baltimore, MD 21202

Ineos Olefins & Polymers USA
13536 Collections Center Drive
Chicago, IL  60693

PCA – Salt Lake City
4654 West 1525 South
Salt Lake City, UT  84104

MD Unemployment Insurance
Division
1100 North Eutaw Street
Baltimore, MD  21201

Gary S. Beling
Managing Director
Mizuhu Securities USA, Inc.
320 Park Avenue, 12th Floor
New York, NY  10022

Worldwide Dispensers
Merton Industrial Park
Lee Road
London SW19 3WD
United Kingdom

Green Bay Packaging
1700 N. Webster Court
Green Bay, WI 54302

BGE
110 West Fayette Street
Baltimore, MD  21201
   Attn:  G. Bush

Transamerica Retirement
Solutions
Connie McDonald
4333 Edgewood Road NE
Cedar Rapids, IA  52499

Anchor Staffing
c/o Tammy Cohen , Esq
2201 Old Court Rd.
Baltimore, MD 21208

South Franklin Street Partners
c/o Paul W. Linehan
McDonald Hopkins
600 Superior Avenue East, Suite 2100
Cleveland, OH  44114

Pillsbury Winthrop Shaw Pittman
LLP
Patrick J. Potter, Esq.
2300 N. Street, NW
Washington, DC 20037

Sixth Sense Partners
3041 Warrington Road
Cleveland, OH 44120

Polyone
33587 Walker Road
Avon Lake OH, USA 44012

Guernsey Office Products
PO BOX 61770
Harrisburg, PA 17106

Priority Worldwide Services
7361 Coca Cola Dr.
Hanover, MD 21076

Ampacet Corporation
660 White Plaines Road
Tarrytown, NY 10591

#2209535v.1

Sharon L. Levine, Esquire
S. Jason Teele, Esquire
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ  07068

Peter Trost
ESOP Services
North Star Trust Co.
311 W. Monroe Street, 14th Floor
Chicago, IL 60606

Maria Ellena Chavez-Ruark, Esquire
Saul Ewing LLP
500 East Pratt Street, 9th Floor
Baltimore, MD  21202

James S. Carr, Esquire
Jason Adams, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178

Marc E. Shach, Esquire
Curtis C. Coon, Esquire
Coon & Cole, LLC
401 Washington Avenue, Suite 301
Towson, MD 21204

Tammy Cohn, Esquire
Sellman Hoff, LLC
The Cooperage
2201 Old Court Road
Baltimore, MD  21208

Mark D. Maneche, Esquire
Tiffany S. Franc, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Rd., Suite 400
Towson, MD  21204

Samuel C. Batsell
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 k Street, NW
Washington, DC  20005-4026

Irving Walker, Esquire
Cole Schotz
300 East Lombard Street, Suite 2000
Baltimore, MD  21202

Marie-Josee Dube
IBM Corporation
275 Viger East
Montreal, Quebec H2X 3R7
Canada

Richard E. Lear, Esquire
Philip T. Evans, Esquire
Holland & Knight LLP
800 17th Street, NW, Suite 1100
Washington, DC  20006

Arthur E. Rosenberg, Esquire
Holland & Knight LLP
31 West 52nd Street, 11th Floor
New York, NY  10019

Scott D. Fink, Esquire
Weltman, Weinberg & Reis Co.,
L.P.A.
Lakeside Place, Suite 200
323 West Lakeside Avenue
Cleveland, OH  44113-1099

International Business Machine
ATTN: BANKRUPTCY COORDINATOR
MARIE-JOSEE DUBE
274 VIGER EAST, 4TH FLOOR,
MONTREAL, QC, CANADA H2X 3R7

Jan I. Berlage, Esquire
Gohn Hankey & Stichel, LLP
201 North Charles Street, Suite 2101
Baltimore, MD  21201

#2209535v.1